AMY M. ROSS (STATE BAR NO. 215692)
aross@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

BEN AU (STATE BAR NO. 237854)
ben.au@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd.
Suite 2C
Santa Monica, CA 90401
Telephone: +1 310 633 2800
Facsimile: +1 310 633 3849

Attorneys for Defendants
AMERICAN EXPRESS COMPANY AND
PETER GRIMM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORINA

| | |
|---|---|
| CHRISTOPHER PSAILA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, and DOES 1 TO 10, Inclusive<br><br>Defendants. | Case No. 2:23-cv-07120-MWF (SKx)<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS BY DEFENDANTS AMERICAN EXPRESS COMPANY AND PETER GRIMM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: January 8, 2024<br>Time: 10:00 AM<br>Courtroom: 5A<br>Judge: Hon. Michael W. Fitzgerald |

DEFENDANTS AMERICAN EXPRESS COMPANY AND PETER GRIMM'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................2

II. FACTUAL BACKGROUND ................................................................................3

    A. PSAILA'S ARBITRATION AGREEMENTS WITH AMERICAN EXPRESS ..........................................................................3

    B. PSAILA'S ALLEGATIONS ...................................................................6

III. ARGUMENT .........................................................................................................7

    A. THE FAA MANDATES THAT PSAILA ARBITRATE HIS CLAIMS AGAINST THE AMERICAN EXPRESS DEFENDANTS ON AN INDIVIDUAL BASIS ................................7

    B. CALIFORNIA LAW MANDATES THAT PSAILA ARBITRATE HIS CLAIMS AGAINST THE AMERICAN EXPRESS DEFENDANTS ON AN INDIVIDUAL BASIS ...............8

        1. THE ARBITRATION AGREEMENTS ARE VALID CONTRACTS ..............................................................................9

        2. THE ARBITRATION AGREEMENTS ENCOMPASS THE CLAIMS AT ISSUE ....................................................11

    C. THE ARBITRATION AGREEMENTS EXTEND TO DEFENDANT GRIMM ....................................................................12

    D. THE COURT SHOULD STAY THIS ACTION AS TO THE AMERICAN EXPRESS DEFENDANTS PENDING ARBITRATION ......................................................................................13

IV. CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)
**Cases**

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
   622 F. Supp. 2d 825 (N.D. Cal. 2007) ................................................................. 12

*Arthur Andersen, LLP v. Carlisle*,
   556 U.S. 624 (2009) ............................................................................................. 12

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................................... 7, 8

*Bono v. David*,
   147 Cal. App. 4th 1055 (2007) ....................................................................... 11, 12

*Britton v. Co-op Banking Grp.*,
   4 F.3d 742 (9th Cir. 1993) ................................................................................... 12

*Chan v. Drexel Burnham Lambert, Inc.*,
   178 Cal. App. 3d 632 (1986) ................................................................................. 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ............................................................................... 8

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ................................................................................................. 7

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*,
   83 Cal. App. 4th 677 (2000) .................................................................................. 9

*Creative Telecomms., Inc. v. Breeden*,
   120 F. Supp. 2d 1225 (D. Haw. 1999) ................................................................... 7

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................... 8

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) .............................................................................. 11

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ............................................................................................. 11

*eFund Cap. Partners v. Pless*,
   150 Cal. App. 4th 1311 (2007) .................................................................. 12

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ..................................................................................... 8

*Green Tree Fin. Corp. Ala. v. Randolph*,
   531 U.S. 79 (2000) ....................................................................................... 9

*King v. Larsen Realty, Inc.*,
   121 Cal. App. 3d 349 (1981) .................................................................. 9, 11

*Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc.*,
   2011 WL 1086035 (N.D. Cal. Mar. 24, 2011) ............................................. 9

*Letizia v. Prudential Bache Sec., Inc.*,
   802 F.2d 1185 (9th Cir. 1986) .................................................................... 12

*Lucas v. Hertz Corp.*,
   875 F. Supp. 2d 991 (N.D. Cal. 2012) ......................................................... 9

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) .................................................................... 12

*Nezri v. PayPal, Inc.*,
   606 F. Supp. 3d 985 (C.D. Cal. 2022) ......................................................... 9

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ...................................................................... 12

*Slaught v. Bencomo Roofing Co.*,
   25 Cal. App. 4th 744 (1994) ........................................................................ 9

*Smith v. Mass. Mut. Life Ins. Co.*,
   2010 WL 11545610 (C.D. Cal. May 25, 2010) ......................................... 12

*Southland Corp. v Keating*,
   465 U.S. 1 (1984) ......................................................................................... 7

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) ................................................................................... 11

*Wolschlager v. Fid. Nat'l Title Ins. Co.*,
   111 Cal. App. 4th 784 (2003) ................................................................. 9, 10

**Statutes**

9 U.S.C. § 1 ............................................................................................................. 8

9 U.S.C. § 3 ....................................................................................................... 2, 13

9 U.S.C. § 4 ............................................................................................................. 8

Cal. Civ. Proc. Code § 1281.4 ............................................................................... 13

Federal Arbitration Act ................................................................................*passim*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 8, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5A of the above-captioned Court located at 350 West First Street, Los Angeles, California 90012, the Honorable Michael W. Fitzgerald presiding, defendants American Express Company and Peter Grimm will, and hereby do, move this Court, pursuant to the Federal Arbitration Act and California law, for an order (1) compelling Plaintiff to resolve the instant matter through binding arbitration and (2) staying the litigation pending arbitration. This motion is made on the grounds that Plaintiff and American Express entered into valid and enforceable agreements to resolve all claims through binding arbitration, and the Federal Arbitration Act and California law compel that the parties' agreement be upheld, and that the instant litigation be stayed as to American Express Company and Peter Grimm pending arbitration.

This Motion is brought following the conference of counsel pursuant to Local Rule 7-3, which took place on October 12, 2023.

This Motion is based on the Memorandum of Points and Authorities below; the accompanying Declaration of Keith Herr and exhibits attached thereto; the accompanying Proposed Order; oral argument of counsel at the hearing; and any other matters the Court deems proper.

Dated: November 7, 2023         ORRICK, HERRINGTON & SUTCLIFFE LLP

                                            */s/ Ben Au*
                                            Ben Au

                                     Attorneys for Defendants
                                American Express Company and Peter Grimm

- 1 -
DEFENDANTS AMERICAN EXPRESS COMPANY AND PETER GRIMM'S MOTION TO COMPEL ARBITRATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants American Express Company ("American Express") and Peter Grimm ("Grimm") (collectively, the "American Express Defendants") seek an order compelling Plaintiff Christopher Psaila ("Psaila") to arbitrate his claims against the American Express Defendants on an individual basis, as provided by the terms of the arbitration provisions contained within the merchant agreements that govern Psaila's relationships with American Express, and by extension, Grimm. Psaila, both in his individual capacity and as the principal of his business MarcoSquared LLC (formerly Marco Marco LLC, "Marco Marco"), entered into valid arbitration agreements with American Express providing that "[a]ll Claims [against American Express] shall be resolved, upon your or our election, through arbitration" and "[a]ny and all disputes, claims or controversies . . . will be submitted for binding arbitration." This language encompasses Psaila's claims and requires their arbitration. The American Express Defendants also seek an order staying the prosecution of Psaila's claims against them pending completion of the arbitration. 9 U.S.C. § 3.

Psaila's claims arise from allegations that the American Express Defendants acted wrongfully with respect to claims by a cardholder (Erika Jayne Girardi) that Psaila—through his business which, at all relevant times, accepted American Express Cards (the "Card")—had fraudulently charged her account. For Psaila to be able to accept Card payments via American Express, he and his business had to agree to certain merchant agreements and corollary, required merchant operating guidelines. Specifically, throughout the relevant time period, Psaila accepted Card payments via two merchant payment processors. Psaila executed merchant agreements with these payment processors, both of which contained binding arbitration clauses as a condition of accepting the Card as payment at his place of business. As demonstrated below, both arbitration agreements are valid and

enforceable under the Federal Arbitration Act ("FAA") and California law. Additionally, the agreements to arbitrate may be extended to an employee of a signatory to the agreements under relevant law, and thus Psaila's arbitration agreements with American Express apply equally to Defendant Grimm. Notwithstanding his obligations under those agreements, Psaila has filed this lawsuit, asserting unsupportable claims against American Express and Grimm for allegedly aiding and abetting malicious prosecution and conspiracy to commit malicious prosecution.

## II.   FACTUAL BACKGROUND

### A.   Psaila's Arbitration Agreements with American Express

American Express is a financial services corporation specializing in payment cards. Grimm is a Senior Special Agent - Investigations in the Global Security department at American Express. Psaila is the founder and owner of self-described celebrity fashion company Marco Marco. Consistent with the facts alleged by Psaila, and for the purposes of this proceeding, Psaila is Marco Marco. In order to accept the Card as payment at his business, Psaila executed merchant agreements with two merchant payment processors, Priority Payment Systems, LLC ("Priority") and Stripe, Inc. ("Stripe"). Both Priority's and Stripe's merchant agreements with Psaila contain binding arbitration clauses as a condition of accepting the Card as payment.[1]

Psaila executed Marco Marco's Merchant Processing Application and Agreement (the "Priority Agreement") with Priority on February 17, 2012. Declaration of Keith Herr ("Herr Decl."), ¶ 5, Ex. A. The Merchant Services Program Terms and Conditions ("Program Guide"), attached to the Priority Agreement, sets forth the terms and conditions pursuant to which Priority would provide merchant processing services to Plaintiff's business. Psaila signed page 4

---

[1] As an active merchant, Psaila, vis-à-vis Marco Marco, is subject to American Express's updated Merchant Operating Guidelines, *see* Herr Decl. ¶¶ 14-15, Ex. F at 122–123, which require him to pay half the arbitration fees and the filing fee.

of the Priority Agreement, which contains the following language: "[t]his signature page also serves as a signature page to the . . . American Express Card Acceptance Agreement appearing in the Third Party Section of the Program Guide" and "[b]y signing below, I represent that I have read and am authorized to sign and submit this application for the above entity which agrees to be bound by the American Express Card Acceptance Agreement[.]" Ex. A at 4.[2] The American Express Card Acceptance Agreement, found in the Third-Party Section of the Program Guide, states in relevant part:

> Section 2.1(a). Scope:  The Agreement governs your acceptance of American Express Cards in the United States . . .
>
> Section 2.7(a). Dispute Resolution:  Arbitration Rights.  **All Claims shall be resolved, upon your or our election, through arbitration pursuant to this Section 2.7 rather than by litigation.**
>
> Section 2.1(c). Definitions, defines "Claim" as:  **any claim (including initial claims, counterclaims, cross-claims, and third party claims), dispute, or controversy between you and us arising from or relating to the Agreement or prior Card acceptance agreements, or the relationship resulting therefrom, whether based in contract, tort (including negligence, strict liability, fraud, or otherwise), statutes, regulations, or any other theory, including any question relating to the existence, validity, performance, construction, interpretation, enforcement, or termination of the Agreement or prior Card acceptance agreements or the relationship resulting therefrom.**
>
> Section 2.7(d).  Individually Named Parties Only.  All parties to the arbitration must be individually named.  There is no right or authority for any Claims to be arbitrated or litigated on a class-action or consolidated basis, on behalf of the general public or other parties, or joined or consolidated with claims of other parties, and you and we are specifically barred from doing so . . . **The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and**

---

[2] Page 4 of the Priority Agreement further states that "[b]y accepting the American Express Card for the purchase of goods and/or services . . . the entity agrees to be bound by the Agreement." *Id.* at 4.

- 4 -

> **the arbitrator's authority to make awards is limited to awards to you and us alone.**

Herr Decl. ¶ 6, Ex. B (emphasis added). Page 5 of the Priority Agreement, above Psaila's additional signature, further states that "[b]y its signature below, Client acknowledges that it has received . . . the complete Program Guide [version PPS1409(ia)] consisting of 35 pages . . . [and] further **acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agreement**." Ex. A at 5 (emphasis added).

Psaila also agreed to arbitrate all claims against American Express by accepting American Express as payment through payment processor Stripe. As a Shopify-connected account[3], Plaintiff electronically consented to the Stripe Services Agreement and Stripe Connect Platform Agreement via Shopify Payments' Terms of Service on March 10, 2014, and again on April 4, 2016. Herr Decl. ¶ 7, Exs. C and D. The Stripe Connect Platform Agreement states:

> You agree to the terms and conditions of this Connect Platform Agreement and to the Stripe Terms of Service ("Stripe ToS"). The Stripe ToS may also incorporate separate agreements with financial services providers. . . . Please read them carefully, as both your use of the Stripe Service and your treatment of Connected Accounts are subject to your acceptance of these terms and conditions.

Ex. C at 1.

The operative Stripe Terms of Service (the "Stripe Services Agreement") from 2016 reiterates that a merchant "may not access or use any Services unless [they] agree to abide by all of the terms and conditions in this Agreement." Ex. D at 1. The Stripe Services Agreement further contains an American Express Addendum with an express instruction that "[b]y using [Stripe's] Payment Services, you consent to the following Payment Addenda (including those that separately

---

[3] Psaila connected his merchant account to Stripe via Shopify, an e-commerce platform.

bind you with Financial Services Providers) incorporated into this Agreement[.]" *Id.* at 11. Section 7 of the American Express Addendum provides, in relevant part:

> **Any and all disputes, claims or controversies arising out of or related to this American Express Addendum will be submitted for binding arbitration.** Unless you and [American Express] agree otherwise, any arbitration shall take place in the State of New York, New York County, and will be administered by, and pursuant to the rules of, the American Arbitration Association ("AAA").
>
> **Disputes will be arbitrated on an individual basis.** . . . The arbitrator's authority to resolve disputes and to make awards is limited to disputes between you and [American Express] alone. Furthermore, disputes brought by either you or [American Express] against the other may not be joined or consolidated in arbitration with disputes brought by or against any third party, unless agreed to in writing by both parties.

*Id.* at 28 (emphasis added).

### B. Psaila's Allegations

Despite having agreed to binding arbitration, Psaila filed the instant action pleading only arbitrable claims. In the Complaint, Psaila alleges that American Express and Grimm conspired with Erika Girardi to aid and abet a malicious prosecution action against him. Compl. ¶¶ 137–169. The crux of Psaila's claims against American Express and Grimm is that American Express refunded Ms. Girardi $787,117.88 for transactions she claimed were fraudulently charged to her Card by Marco Marco between January 26, 2015 and November 30, 2016—transactions that the federal government was actively investigating as potential fraud at the time. *Id.* ¶¶ 5, 70. Psaila further alleges (without factual support) that by issuing Girardi's refund (while a federal government's investigation was pending) American Express acted "inconsistent with and contrary to" its own policies and practices for "investigating, evaluating and resolving claims of unauthorized transactions." *Id.* ¶ 144.

### III. ARGUMENT

#### A. The FAA Mandates That Psaila Arbitrate His Claims Against The American Express Defendants On An Individual Basis

The FAA governs here. The FAA applies to all written agreements to arbitrate disputes evidencing a transaction "involving interstate commerce." *Southland Corp. v Keating*, 465 U.S. 1 (1984). Neither the parties' agreement nor underlying transaction need be "in" interstate commerce; only the economic activity of the parties involved has to have some nexus to interstate commerce. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003). Here, there is no question that Psaila's merchant agreements with Priority and Stripe have a nexus to interstate commerce.[4] Indeed, Priority's Program Guide directly states: "Section 2.7 is made pursuant to a transaction involving interstate commerce and **is governed by the Federal Arbitration Act[.]** Ex. B at 31 (emphasis added).

The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). *Concepcion* held that a court should enforce arbitration agreements according to their terms and that the FAA preempts state law regarding barriers to enforcement, such as the unconscionability of class arbitration waivers in consumer contracts. *Id.* at 340, 344. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344. The FAA provides that a party may seek an order

---

[4] To the extent Psaila attempts to argue that he never signed a merchant agreement with Priority or Stripe in his personal capacity and that he only signed on behalf of his business Marco Marco, and therefore is not personally bound by the agreements, such an argument will be unavailing. "[C]ourt[s] may uphold arbitration agreements against parties where the interests of such parties are directly related to, if not congruent with, those of a signatory." *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1241 (D. Haw. 1999) ("Defendant, as an agent, employee, and representative of ComputerTime, can be compelled to arbitrate any disputes arising under or relating to the Agreement he signed as President of ComputerTime."). Moreover, Psaila's claims directly relate to consequences of his business relationships with American Express, and the transactions at issue are subject to the terms of the agreements that contain the binding arbitration clauses.

- 7 -
DEFENDANTS AMERICAN EXPRESS COMPANY AND PETER GRIMM'S MOTION TO COMPEL ARBITRATION

compelling arbitration. *See* 9 U.S.C. §§ 1, 4. Section 4 mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Court should compel Psaila to arbitrate his claims against the American Express Defendants on an individual basis, as the terms of his merchant agreements require.[5] As was the case in *Concepcion*, the arbitration agreements between American Express and Psaila contain a waiver of class actions, as well as an additional waiver of the ability to bring a claim joined with the claims of other parties, and a limitation on the arbitrator's authority to make awards between American Express and Psaila alone. *See* Exs. B and D. Thus, the arbitration provision prohibits Psaila from bringing his action against both the American Express Defendants and the co-defendants in a simultaneous action. These provisions must also be construed under the principals of contract interpretation, just as the class action waiver principle was construed and enforced in *Concepcion*.

**B.    California Law Mandates That Psaila Arbitrate His Claims Against The American Express Defendants On An Individual Basis**

While the FAA governs the enforceability of arbitration agreements according to its terms, state law governs the determination of whether a valid agreement to arbitrate exists, and whether the arbitration agreement encompasses the claims at issue. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "In determining whether parties have agreed to arbitrate a dispute, [courts]

---

[5] Priority Program Guide's Agreement for American Express Card Acceptance, Section 2.7(d) states: "All parties to the arbitration must be individually named. There is no right or authority for any Claims to be . . . joined or consolidated with claims of other parties." Ex. B at 30. Likewise, Stripe Services Agreement, Section 7(b) states: "Disputes will be arbitrated on an individual basis. . . . The arbitrator's authority to resolve disputes and to make awards is limited to disputes between you and [American Express] alone." Ex. D at 28.

- 8 -

apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Nezri v. PayPal, Inc.*, 606 F. Supp. 3d 985, 991 (C.D. Cal. 2022) (internal citation omitted); *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 686 (2000) ("any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration"). The "party resisting arbitration" "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, valid arbitration agreements exist under California law and encompass the claims at issue.

### 1.   The Arbitration Agreements Are Valid Contracts

Under California law, a contract "need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference . . ." *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 639 (1986); *see also Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) ("Under California law, parties may validly incorporate by reference into their contract the terms of another document."). A "secondary document becomes part of a contract as though recited verbatim when it is incorporated into the contract by reference provided that the terms of the incorporated document are readily available to the other party." *King v. Larsen Realty, Inc.*, 121 Cal. App. 3d 349, 357 (1981). Moreover, a document need not specify it incorporates a document containing an arbitration clause in order to make the incorporation valid—all that is required is the incorporation be clear and unequivocal and the incorporated document be easily located and accessible to the plaintiff. *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 791 (2003); *see also Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 999 (N.D. Cal. 2012) (holding a document incorporated by reference where the terms of the document were easily available to plaintiff); *Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc.*, 2011 WL 1086035, at *4 (N.D.

1  Cal. Mar. 24, 2011) (holding where the General Terms and Conditions were
2  explicitly mentioned in the agreement they were effectively incorporated and the
3  fact plaintiff "was not aware of the arbitration clause does not prevent its
4  enforceability so long as the General Terms and Conditions were easily available to
5  it.").

6  Here, both merchant agreements clearly and unequivocally identify Psaila's
7  obligation to arbitrate any and all claims against American Express as a condition
8  of accepting Card payment at Psaila's place of business.  The Priority Agreement
9  explicitly states, directly above Psaila's signature on page 4, that "[b]y accepting
10 the American Express Card for the purchase of goods and/or services . . . the entity
11 agrees to be bound by the Agreement."  Ex. A at 4.  It further states that Psaila's
12 application signature "also serves as a signature [] to … the American Express Card
13 Acceptance Agreement appearing in the Third Party Section of the Program
14 Guide," Ex. A at 4, and that the signatory "acknowledges that it has received . . . the
15 complete Program Guide . . . [and] further acknowledges reading and agreeing to
16 all terms in the Program Guide, *id.* at 5.  The arbitration clause found in the
17 American Express Card Acceptance Agreement, *see* Ex. B at 30–31, is thus
18 enforceable under California law because Priority's Agreement "specifically
19 identifies the document incorporated as the policy, lists the form which is
20 contemplated and tells the recipient where they can find the policy." *Wolschlager*,
21 111 Cal. App. 4th at 791.

22 Likewise, the arbitration provision in the American Express Addendum to
23 the Stripe Services Agreement is binding on Plaintiff under California law.  The
24 American Express Addendum is contained within the Stripe Services Agreement,
25 and Psaila was required to "agree to the terms and conditions of . . . the Stripe
26 Terms of Service" prior to using Stripe's services.  Ex. C at 1.  The Stripe Connect
27 Platform Agreement further instructed Psaila to "read [the Stripe Terms of Service]
28 carefully, as both [his] use of the Stripe Service and [his] treatment of Connected

1  Accounts are subject to [his] acceptance of these terms and conditions." *Id.* The
2  Stripe Connect Platform Agreement therefore "specifically identifies" the Stripe
3  Services Agreement—and the "readily available" American Express Addendum
4  contained therein—and properly incorporates the arbitration provision by reference.
5  *See King*, 121 Cal. App. 3d at 357.

### 2. The Arbitration Agreements Encompass The Claims At Issue

To determine what claims are subject to arbitration, courts look to the contract in light of the presumption of arbitrability. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("it is the language of the contract that defines the scope of disputes subject to arbitration"); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (courts defer to arbitration and "[d]oubts should be resolved in favor of coverage"). This is particularly true where the contractual arbitration clause at issue is broad. *Bono v. David*, 147 Cal. App. 4th 1055, 1067 (2007) (noting that whether an arbitration clause covers any given dispute depends on whether the clause is "broad" or "narrow").

Both the Priority and Stripe Services Agreements include the broadest possible language and apply to each of Psaila's claims against American Express and Grimm, *see infra* III.C. There can be no dispute that Psaila's claims "arise out of or relate" to his merchant relationships with American Express and are therefore covered by the arbitration agreements. Indeed, Psaila agreed to arbitrate "**[a]ll Claims**," *see* Ex. B at 30 (emphasis added), as well as "**[a]ny and all disputes, claims, or controversies arising out of or related to this American Express Addendum**," *see* Ex. D at 28 (emphasis added). There are no exclusions listed in either Agreement. Both agreements contain the broadest possible language. *See Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 n.1 (2004) ("An arbitration clause that covers *any claim arising out of or relating to* the contract or

- 11 -
DEFENDANTS AMERICAN EXPRESS COMPANY AND PETER GRIMM'S MOTION TO COMPEL ARBITRATION

the breach thereof is very broad.") (internal citation omitted); *Bono*, 147 Cal. App. 4th at 1067 ("A 'broad' clause includes those using language such as '*any claim* arising from or *related to* this agreement.'"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-21 (9th Cir. 1999) (arbitration clause covering claims "arising in connection with" must be broadly and liberally interpreted in favor of coverage); *eFund Cap. Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007) (describing "any problem or dispute" contractual language as "both clear and plain" and "very broad").

Accordingly, all of Psaila's claims against American Express and Grimm (*see infra* III.C.) are subject to arbitration.

### C. The Arbitration Agreements Extend To Defendant Grimm

Under the FAA, "traditional state law principles" may be used by non-signatories to an arbitration agreement to enforce the arbitration agreement. *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 631 (2009). The Ninth Circuit has recognized that in California, "[a] nonsignatory to an agreement to arbitrate may . . . invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013). Specifically, "agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause (consistent with the language of the arbitration clause)." *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) (citing *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986) and *Britton v. Co-op Banking Grp.*, 4 F.3d 742 (9th Cir. 1993)); *see also Smith v. Mass. Mut. Life Ins. Co.*, 2010 WL 11545610, at *7, *10 (C.D. Cal. May 25, 2010) (citing *Amisil Holdings*, 622 F. Supp. 2d at 832, 835,

839). These criteria are met here. As Psaila's complaint demonstrates, Grimm is being sued for actions he took in his capacity as an employee of American Express. *See, e.g.*, Compl. ¶ 5 ("Erika Girardi and Tom Girardi not only enlisted the Secret Service, but also . . . AMEX employee Peter Grimm to execute their scheme to maliciously prosecute Chris Psaila"); *id.* ("Without any fair or reasonable investigation by . . . Peter Grimm, AMEX . . . refunded Erika Girardi and Tom Girardi $787,117.88[.]"). Furthermore, the claims asserted against Grimm clearly relate to the specific terms of the Priority and Stripe Agreements, which cover "all Claims" and "any and all disputes, claims, or controversies," with American Express respectively.

### D.  The Court Should Stay This Action As To The American Express Defendants Pending Arbitration

The FAA provides that a court, upon determination that an action before it is subject to an enforceable arbitration provision, "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. California law is in conformance. *See* Cal. Civ. Proc. Code § 1281.4 ("If a court of competent jurisdiction. . . has ordered arbitration of a controversy . . . the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had . . . ."). Accordingly, American Express requests that this Court stay the action as to the American Express Defendants pending completion of arbitration between the parties.

### IV.  CONCLUSION

For the foregoing reasons, this Court should grant the American Express Defendants' motion to compel Psaila to arbitrate his claims against them on an individual basis, and stay this case as to the American Express Defendants pending the completion of those proceedings.

| | | |
|---|---|---|
| 1 | Dated: November 7, 2023 | ORRICK, HERRINGTON & SUTCLIFFE LLP |

*/s/ Ben Au*
Ben Au

Attorneys for Defendants
American Express Company and Peter Grimm

## **L.R. 11-6.2 – CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants American Express Company and Peter Grimm, certifies that this brief contains 4,588 words, which complies with the word limit of L.R. 11-6.1