BARRETT S. LITT, SBN 45527
Email:  blitt@mbllegal.com
DAVID S. McLANE, SBN 124952
Email: dmclane@mbllegal.com
MARILYN E. BEDNARSKI, SBN 105322
Email: mbednarski@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

STANLEY I. GREENBERG, SBN 53649
11845 W. Olympic Blvd., Ste. 1000
Los Angeles, CA 90064
Tel: (424) 248-6600
Fax: (424) 248-6601
Email:  Stanmanlaw@aol.com

BRUCE BERNARD BEALKE
(pro hac vice)
(Illinois SBN 6200543)
77 West Wacker Drive, Ste. 45001
Chicago, IL 60601
Tel: (312) 216-7177
Fax: (312) 741-1010
Email: bealkelaw@protonmail.com

*Attorneys for Plaintiff* CHRISTOPHER PSAILA

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, and DOES 1 TO 10, Inclusive,<br><br>Defendants. | Case no.: 2:23-cv-07120-MWF (SKx)<br><br>**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.) BY DEFENDANTS ERIKA GIRARDI, LAIA RIBATALLADA, AND MICHAEL MINDEN**<br><br>[Filed concurrently with Declarations of Marilyn E. Bednarski, Stanley Greenberg, Christopher Psaila, Marco Morante]<br><br>**Hrg. Date: 12/18/2023<br>Time: 10:00 a.m.<br>Crtrm: 5A** |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................... 2

    A.    Defendant Girardi Approaches Marco Marco to Design Costumes for Her Entertainment Career ................................................................ 2

    B.    Defendant Girardi Begins to Question Marco Marco's Prices and Approaches Defendant Savage. ...................................................... 5

    C.    Subsequent Secret Service Activity and the Grand Jury Indictment .......... 8

    D.    Post-Indictment Time ......................................................................... 9

III.   ANTI-SLAPP PROCEDURES IN FEDERAL COURT ................................... 10

IV.   PLAINTIFF PSAILA'S EVIDENCE SUFFICIENTLY REBUTS THE DEFENDANTS' BURDEN ON PRONG 1 OF THE ANTI-SLAPP ANALYSIS AND SATISFIES THE LOW BAR OF ESTABLISHING THE ELEMENTS OF MALICIOUS PROSECUTION ................................................................ 11

    A.    Defendant Girardi's petitioning activity was illegal as a matter of law and therefore not protected by the anti-SLAPP statute ...................... 12

    B.    Even if the Girardi Defendants "speech" activity is protected, Plaintiff's Evidence Makes a Prima Facie Showing of Facts Required to Show a Probability of Prevailing ................................................................ 13

        1.    Plaintiff's evidence shows a favorable termination of the criminal case against him. ....................................................... 14

        2.    Plaintiff's evidence shows that Defendants initiated the criminal prosecution with malice. ...................................................... 15

        3.    The Girardi Defendants lacked probable cause to approach the Secret Service because they knew of no facts that suggested a crime had been committed. ................................................... 16

            a)  The Defendants lacked probable cause because they fabricated the entire predicate for their claim. ....................... 17

            b)  No ordinary inference of probable cause from the grand jury indictment exists here as the indictment was based on Defendant Girardi's false claims and a contaminated investigation. .......... 19

c) The evidence presented by Plaintiff establishes that there was no independent basis to establish probable cause. .............20

V.    PLAINTIFF'S COMPLAINT SATISFIES RULE 12(b)(6) STANDARDS......22

VI.    CONCLUSION ...................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................22

*Awabdy v. City of Adelanto*,
  368 F.3d 1062 (9th Cir. 2004) .....................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................22

*Cuevas-Martinez v. Sun Salt Sand, Inc.*,
  35 Cal.App.5th 1109 (2019) .........................................................15

*Daniels v. Robbins*,
  182 Cal.App.4th 204 (2010) .........................................................15

*Ecker v. Raging Waters Groups, Inc.*,
  87 Cal.App.4th 1320 (2001) .........................................................16

*Flatley v. Mauro*,
  39 Cal.4th 299 (2006) .....................................................................12

*Greene v. Bank of America*,
  216 Cal.App.4th 454 (2013) .........................................................15

*Hale v. Henkel*,
  201 U.S. 43 (1906)...........................................................................19

*Herring Network, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021) .......................................................10

*Hudis v. Crawford*,
  125 Cal.App.4th 1586 (2005) .......................................................14

*Jackson v. Beckham*,
  217 Cal.App.2d 264 (1963) ...........................................................14

*Jaffe v. Stone*,
  18 Cal.2d 146 (1941) .......................................................................14

*Kenne v. Stennis*,
  230 Cal.App.4th 953 (2014) .........................................................11

*Manufactured Home Communities, Inc. v. City of San Diego*,
  665 F.3d 1171 (9th Cir. 2011) .....................................................11

*Mendoza v. ADP Screening & Selection Services, Inc.*,
    182 Cal.App.4th 1644 (2010) ................................................................. 12

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    890 F.3d 828 (9th Cir. 2018) ................................................................. 10

*Roberts v. McAfee, Inc.*,
    660 F.3d 1156 (2011) ............................................................................ 11

*Sierra Club Foundation v. Graham*,
    72 Cal.App.4th 1135 (1999) .................................................................. 14

*United States v. Mandujano*,
    425 U.S. 564 (1976) .............................................................................. 18

*Verdier v. Verdier*,
    152 Cal.App.2d 348 (1957) ................................................................... 15

*Villa v. Cole*,
    4 Cal.App.4th 1327 (1992) .................................................................... 14

*Williams v. Hartford Ins. Co.*,
    147 Cal.App.3d 893 (1983) ................................................................... 19

*Wilson v. Cable News Network, Inc.*,
    7 Cal.5th 871 (2019) ............................................................................. 11

*Zucchet v. Galardi*,
    229 Cal.App.4th 1466 (2014) ......................................................... 13, 22

**Statutes**

C.C.P. § 425.16 ........................................................................................... 1
California Penal Code Section 148.5 ......................................................... 13
Title 18 U.S.C. § 1001(a)(2) ..................................................................... 13

**Rules**

F.R.C.P. 12(b)(6) ...................................................................................... 10
F.R.C.P. 56 ................................................................................................ 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Girardi Defendants'[1] motion to strike Plaintiff Psaila's complaint under California's anti-SLAPP statute should be denied. Plaintiff's complaint is both sufficiently pleaded and supported by a prima facie showing of a probability of prevailing under the anti-SLAPP statute.

First, Defendants cannot satisfy their burden under the first prong of anti-SLAPP analysis because the Girardi Defendants actions constituted criminal false statements, illegal as a matter of law, and are therefore unprotected. Additionally, Plaintiff's evidence establishes a prima facie showing of a probability of prevailing on his malicious prosecution claim. The showing of facts and reasonable inferences therefrom easily surpass the standard defeating the motion.  First, Plaintiff's evidence shows a favorable termination of the criminal case against him. Second, Plaintiff's evidence shows that Defendants acted with malice because they initiated and continued initiated the criminal action with the intent to obtain an unwarranted refund from American Express, rather than seeking justice for a crime. Malice can be inferred from the lack of probable cause as shown by Plaintiff's evidence in this Opposition and by Defendant Girardi's admission seven weeks before trial that she was "still willing to testify to "f__k Chris."

The Girardi Defendants lacked probable cause to approach the Secret Service because they knew of no facts that suggested a crime had been committed by Plaintiff Psaila for three reasons. Plaintiff's evidence demonstrates that Defendants fabricated the entire predicate for their claim, making it impossible to have probable cause to suspect a crime had occurred. Second, Plaintiff's evidence rebuts any ordinary inference of probable cause created by a grand jury indictment where that indictment is

---

[1]    The three defendants who brought this motion are collectively referred to in this brief as  the "Girardi Defendants."

based on the Girardi Defendants' false claims and Secret Service's infected and inadequate investigation. Finally, the prima facie evidence provided by Plaintiff establishes that there were no independent facts giving rise to probable cause.

Because Defendants are unable to satisfy their burden as a matter of law and because Plaintiff's prima facie evidence surpasses a showing of a low probability of success required by the anti-SLAPP statute, this Court should deny the Defendants motion.

## II.    STATEMENT OF FACTS

Plaintiff Psaila is the managing partner of Marcosquared, LLC ("Marco Marco"), a Hollywood, California-based celebrity costume design firm catering to the entertainment industry. Marco Marco was founded by Plaintiff and his business partner, Marco Morante in 2003. Psaila Decl. ¶ 4. Plaintiff and Mr. Morante each own a 49% interest in Marco Marco. Psaila Decl. ¶ 2; Morante Decl. ¶2.

Marco Marco caters to top acts in the industry, including Britney Spears, Jennifer Lopez, Shakira, Kesha and Katy Perry, among others. Compl. ¶ 28; Psaila Decl. ¶ 4; Morante Decl. ¶ 4. Marco Marco had been working with these stars before working with Erika Girardi. Psaila Decl. ¶ 4; Morante Decl. ¶ 4. Marco Marco has also designed for numerous prestigious American entertainment institutions such as the Ringling Brothers & Barnum & Bailey, the San Francisco Ballet, and the Houston Ballet. Compl. ¶ 28; Morante Decl. ¶ 4. For over twenty years, Marco Marco has maintained a reputation for delivering high value costumes for entertainers, recently being recognized with an Emmy Award for costume design in 2022. Psaila Decl. ¶ 4; Morante Decl. ¶ 4.

    **A.    Defendant Girardi Approaches Marco Marco to Design Costumes for Her Entertainment Career.**

Having learned of Marco Marco's reputation for delivering high quality costumes,[2] Defendant Girardi approached Marco Marco in 2014 to commission outfits for her nascent singing career and other projects, including appearances on her television show, The Real Housewives of Beverly Hills. Compl. ¶ 29. Defendant Girardi previously utilized a costume shop named Sylvia's, a shop that constructed existing costume designs, for her costuming needs. Psaila Decl. ¶ 12; Morante Decl. ¶ 11. However, Defendant Minden communicated to Mr. Morante that Defendant Girardi sought to wear only custom, one-of-a-kind designs for her performances, a feat Sylvia's could not achieve. Psaila Decl. ¶¶ 12-13; Morante Decl. ¶ 12. Additionally, Defendant Minden told Mr. Morante that he no longer wanted to use Defendant Girardi's stylist as he was able to provide Defendant Girardi's day-to-day clothing needs. Psaila Decl. ¶ 13; Morante Decl. ¶ 12.

Between 2015 and 2016, and over the course of 132 transactions, Defendant Girardi purchased approximately $934,000 worth of goods (costumes and clothing items for herself and for members of her performing entourage) and services. Compl. ¶ 30, 35; Psaila Decl. ¶¶ 20, 21. The costumes were worn for stage performances, as documented at times in The Real Housewives show and on social media. Compl. ¶ 30; Psaila Decl. ¶ 14. Additionally, Marco Marco frequently catered to Defendant Girardi's extravagant and often last-minute requests. Psaila Decl. ¶ 26; Morante Decl. ¶ 23. For example, Defendant Ribatallada told Plaintiff that a costume Marco Marco was working on for Defendant Girardi did not look "rich" enough, and that they needed to make it look "richer." Psaila Decl. ¶ 26 (make them spectacular and over the top" with premium crystals); Morante Decl. ¶ 19 (several times her assistant and

---

[2] The Girardi Defendants knew from several sources that Marco Marco produced quality work including from the styling duo "The Kidz," their mutual publicist, Jack Ketsoyan, and Mr. Morante's relationship with Defendant Minden who had used Marco Marco to make for custom performance clothing for some of his other clients. Psaila Decl. ¶¶ 10-11, 13; Morante Decl. ¶¶ 8-9, 12.

creative director told him to make her costumes look rich or richer; they never questioned cost or her team's vision for her expensive persona).

Defendant Girardi made purchases with Marco Marco using an American Express ("AMEX") card imprinted with her name. Compl. ¶ 31. When Defendant Girardi arrived at Marco Marco for the first time, she provided her AMEX payment information and authorized Plaintiff Psaila to charge the card as needed for invoices for costumes and services. *Id.*; Psaila Decl. ¶ 15. Additionally, at this initial meeting Plaintiff attempted to present Defendant Girardi with an invoice for her first purchase but she physically waved the invoice away. Compl. ¶32; Psaila Decl. ¶17; Morante Decl. ¶14. Defendant Girardi told Plaintiff it "would not be necessary" and that she did not want to be given the invoices, despite it being a normal business practice for Plaintiff to provide customers with their invoices. Compl. ¶32; Psaila Decl. ¶17.

For three years, Defendants never asked to see any invoices for purchases made with Marco Marco nor disputed any charges made to Defendant Girardi's AMEX account despite consistently transacting for goods and services. Compl. ¶ 33; Psaila Decl. ¶ 17. Marco Marco's services included creating custom designs and costumes, fittings, repairs and maintenance on existing costumes, and alterations on Defendant Girardi's department store purchased clothing for herself or dancers. Compl. ¶ 33; Psaila Decl. ¶¶ 19, 20; Morante Decl. ¶ 17. Marco Marco provided all goods and services requested over 132 transactions without any dispute over the charges applied to Defendant Girardi's AMEX card. Compl. ¶¶ 33, 35, 37; Psaila Decl. ¶¶ 13, 17 ("He never knowingly made any unauthorized charges to Ms. Girardi's AMEX card, nor did he ever charge Ms. Girardi for goods and service not provided and received.")

Defendants' course of dealing was for Defendant Girardi and/or her agents, Defendants Ribatallada and Minden, to communicate purchase orders in a variety of ways, via telephone calls, e-mail, text massages, or in-person contact with Marco Marco employees, including Plaintiff Psaila. Compl. ¶ 34; Psaila Decl. ¶ 18; Morante

Decl. ¶ 16. Charges were made pursuant to the express standing authorization given by Defendant Girardi at the beginning of their business relationship in 2014. Compl. ¶ 34; Psaila Decl. ¶ 22[3]. Plaintiff Psaila regularly made at least two charges to Defendant Girardi's AMEX card when fulfilling her orders. Psaila Decl. ¶ 21. First, a deposit amount was charged, which covered the initial cost of materials for the order, then a second charge was made once the costume was completed, reflecting any additional cost of materials, time and labor. Psaila Decl. ¶ 20; Morante Decl. ¶¶ 15, 18. They also charged for repairs, alternations to prior outfits, design of outfits and accessories for dancers, change orders, rush fees and travel to fittings at her hotel or performance venues. *Id.* at ¶¶ 20, 64, 68.

Defendant Girardi, through her agents, purchased approximately $934,000 worth of goods and services over 132 transactions between 2015 and 2016, all of which were charged to her AMEX card. Compl. ¶ 35; Psaila Decl. ¶ 21. Every good or service transacted for was provided by Marco Marco, as evidenced by text messages, emails, sketches of costumes sent to Defendants, order invoices, proof of delivery emails, and internet photos showing Defendant Girardi wearing the outfits described in invoices. Compl. ¶ 36; Psaila Decl. ¶¶ 23, 24; Ex. 1B (summary chart).

## B.    Defendant Girardi Begins to Question Marco Marco's Prices and Approaches Defendant Savage.

None of the Defendants complained about charges made to Defendant Girardi's AMEX card during the nearly three years of their business relationship until September 2016. Psaila Decl. ¶¶ 23, 24, 26; Morante Decl. ¶21. On September 19, 2016, Defendant Minden called Plaintiff Psaila to inquire about a recent transaction

---

[3]    Defendant's standing authorization remained in effect for the entire course of her business relationship with Marco Marco, as evidenced by the fact that reauthorization was required and provided two times during the relevant time period. Compl. ¶ 34; Psaila Decl. ¶ 21-22.

charged to Defendant Girardi's AMEX card for a balance payment on two Swarovski embellished leotards. Psaila Decl. ¶¶ 27, 28. These were duplicates of leotards which she showed off on a Bravo TV feature, and wore while performing a routine filmed in Mykonos, Greece, called "Its Expensive to Be Me." Psaila Decl. ¶ 27. Defendant Minden said Defendant Girardi was surprised by the charge and thought the price was too high. *Id.* Plaintiff did not believe the price was too high but decided to refund the balance until Defendant Girardi could speak with Mr. Morante about the price. *Id.* ¶ 28.

Around December 1, 2016, Defendant Minden contacted Plaintiff Psaila once again to ask about the deposit amounts charged to Defendant Girardi's AMEX card, stating that Defendant Girardi thought they were too high. Psaila Decl. ¶ 33. Plaintiff Psaila was surprised at Defendant Minden's call because Mr. Morante had relayed to him a conversation he had just had with Defendant Minden where he ordered new designs for a rush order black bodysuit Ms. Girardi requested. Psaila Decl. ¶ 29 to 32. Plaintiff told Minden something was wrong, with the intent of keeping the customer happy, and never said that there was any intentional erroneous billing. Psaila Decl. ¶ 33. In a sign of good faith, Plaintiff  offered to refund the transaction and said they could discuss the price with Marco when Ms. Girardi came into the studio. Psaila Decl. ¶ 32. At the same time, Plaintiff Psaila began gathering invoices pertaining to Defendant Girardi's purchases so they could review all the charges made to her AMEX card. Psaila Decl. ¶ 35.

Unbeknownst to Plaintiff Psaila at the time, Defendant Girardi and her husband Thomas Girardi were in dire financial straits. Compl. ¶¶ 2, 7 n.4, 39; Bednarski Decl. ¶¶ 3, 4 (verifying publicly available court records supporting inference of financial distress). Defendant Girardi falsely reported to Defendant Secret Service Agent Savage ("Defendant Savage"), a personal friend of Thomas Girardi, that the charges to Defendant Girardi's AMEX card were not authorized and fraudulent with the intent to

obtain a reimbursement from AMEX for the entire value of the goods and services provided by Marco Marco. Compl. ¶¶ 39, 43, 44; *see also* Decl. Erika Girardi, Dkt. 25-1 ¶¶ 59, 64, 65 (admitting she directly contacted Robert Savage, special agent in charge).

Seeking to clear up any misunderstandings, Plaintiff Psaila scheduled a meeting with Defendant Girardi to review each invoice with her. Compl. ¶ 50; Psaila Decl. ¶¶ 41, 42, 46. Plaintiff Psaila knew all the charges to Defendant Girardi's AMEX were authorized and wanted to resolve any disagreements amicably, believing they were based on some minor accounting issues or a communication problem. Psaila Decl. ¶ 69.

Plaintiff Psaila met with Defendants on December 14, 2016, with the intent to resolve what he believed was a minor business dispute. Compl. ¶ 50; Psaila Decl. ¶ 40-42, 46. Defendant Girardi, at the direction of the Secret Service, wore a wire to secretly record him. Compl. ¶ 50; Defs. Mot. at p.20. Defendants bombarded Plaintiff Psaila with accusations of wrongdoing, insisting errors had been made. Psaila Decl. ¶¶ 43, 45, 48. In an effort to placate Defendant Girardi without admitting fault, Plaintiff Psaila agreed that there may have been some mistakes and that he would do whatever it took to make things right, even if that meant taking out a loan. Psaila Decl. ¶ 44.

Defendant Girardi contended that Plaintiff Psaila had overcharged her over $800,000. Compl. ¶ 50; Psaila Decl. ¶ 45. Plaintiff was surprised by Defendant Girardi's assertion, as it was inconceivable to him how she could have been overcharged by such a large amount. Psaila Decl. ¶¶ 45, 46. Later accounting would establish that the amount stated by Defendant Girardi represented the overall value of all goods and services provided by Marco Marco. Compl. ¶ 51; Psaila Decl. ¶ 46, 57 to 74; *see also* Ex. 1B (chart of 132 transactions).

/ / /

/ / /

### C.    Subsequent Secret Service Activity and the Grand Jury Indictment

On January 9, 2017, Defendant Secret Service Agent Henderson ("Defendant Henderson") obtained a search warrant to search Marco Marco's business premises, computers, and electronic devices, and seize all business records, computers, mobile devices, and phones. Compl. ¶ 57; Psaila Decl. ¶¶ 48, 53, 54, 60. The devices seized by in the search contained text messages, emails, invoices, order forms and designs pertaining to Defendant Girardi's orders. Psaila Decl. ¶ 60. Plaintiff Psaila willingly gave the passwords to his computers and QuickBooks accounting software so the agents could verify that no crimes or fraud occurred. Compl. ¶ 60; Psaila Decl. ¶¶ 50, 53 to 55.

Despite possessing these business records which corroborated the legitimacy of all 132 charges made to Defendant Girardi's AMEX card (Psaila Decl. ¶¶ 57-74, Ex 1B), the Secret Service Defendants pursued a criminal indictment three months later. On April 20, 2017, Defendant Henderson interviewed Defendant Grimm, a bank investigator for AMEX. Compl. ¶ 75; Compl. Ex. 2; Greenberg Decl. ¶¶ 9, 21; Ex. 2. During this conversation, Defendant Grimm stated that AMEX had reimbursed "victim" Defendant Girardi for a total sum of $787,117.88. Compl. ¶ 75; Compl. Ex. 2; Greenberg Decl. ¶¶ 9, 21, Ex. 2.

On April 26, 2017, two days before the case was presented to the grand jury, Defendant Henderson and the assigned AUSA spoke with Defendant Girardi to go over the grand jury process and outlined seven transactions that would eventually be presented to the grand jury as fraudulent. Compl. ¶ 80; Defs. Mot. at p.21. Defendants were asked to review the seven transactions and look for any supporting documentation that would establish the transactions were legitimate. Compl. ¶ 80; Defs. Mot. at p.21-22; Greenberg Decl. ¶ 22, Ex. 3. Defendant Girardi told Defendant Henderson and AUSA Pence that she and her assistants could find no evidence to

support the seven transactions. Compl. ¶ 80; Compl. Ex. 3; Greenberg Decl. ¶ 22, Ex. 3.

Plaintiff Psaila was indicted on April 28, 2017, on seven counts of wire fraud, one count of unauthorized access of a credit card with intent to defraud, and one count of aggravated identity theft. Compl. ¶ 86, 87; Ex. 5 (Indictment)[4].

### D.    Post-Indictment Time

After the case had lingered for four years, in July 2021, Plaintiff Psaila retained new counsel, Stanley Greenberg, to represent him. Compl. ¶ 99; Greenberg Decl. ¶ 2. Mr. Greenberg actively prepared the case, diligently pursuing information. *Id*. ¶ 3. With respect to the AMEX refund to Defendant Girardi, he asked about: the name on the card (*Id*. ¶¶ 5, 6); how the amount of refund was arrived at (*Id.* ¶¶ 7 to 10); he asked the trial AUSA for a copy of the refund check issued to Defendant Girardi (*Id*. ¶ 20); and, subpoenaed Defendant Grimm to testify in the trial (*Id.* ¶ 21). He had numerous conversations and emails with the trial Assistant United States Attorney ("AUSA") to discuss what he perceived as weaknesses in the government's case. Greenberg Decl. ¶ 23. Mr. Greenberg also asked the AUSA for all *Brady* and *Henthorn* materials. Compl. ¶¶ 100-06, 107; Greenberg Decl. ¶¶ 11-12. In response to these requests, the AUSA indicated that she had not identified any exculpatory or impeachment information that needed to be produced, other than what had already been previously provided.[5] Compl. ¶ 107. Greenberg Decl.¶ 12.

---

[4] Exhibits 5, 6 and 7, all true and correct copies of records in the underlying criminal case, are the subject of the undersigned's concurrently filed request for judicial notice.
[5] There was no disclosure of Defendant Savage's personal or financial relationship with Thomas Girardi. Greenberg Decl. ¶¶ 12-14. That information supports the existence of improper motive to investigate Psaila, a lack of independence and conflict of interest in the investigation and explanation for the inadequate investigation undertaken by the Secret Service. Greenberg Decl. ¶ 15.

About two months before trial, on September 29, 2021, the AUSA moved to dismiss the indictment. Compl. ¶ 110. The motion itself did not provide a reason and merely asked the court to dismiss under Rule 48(a). Mtn. to Dismiss, Dkt. 71, Order, Dkt. 72 *U.S. v. Psaila*, 17-cr-257-FMO; Greenberg Decl. ¶ 24; Exhibits 6 (Motion) & 7 (Order) to this Opposition. A spokesperson in the U.S. Attorney's Office said evidence preservation issues undermined their ability to prosecute the case. Greenberg Decl. ¶ 26. Mr. Greenberg assessed that the USA office dismissed because they would not be able to succeed at trial. *Id*. ¶28.

## III.    ANTI-SLAPP PROCEDURES IN FEDERAL COURT

While the 9th Circuit has held that California's anti-SLAPP statute does not directly conflict with the Federal Rules of Civil Procedure, it has required specific procedures to avoid a collision. *See Herring Network, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021). A federal court considering a motion to strike under California's anti-SLAPP statute must first consider whether the defendant's motion to strike asserts legal or factual challenges to the plaintiff's complaint. *See Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir. 2018). If an anti-SLAPP motion challenges only the legal sufficiency of a claim, a district court applies the F.R.C.P. 12(b)(6) standard and considers whether a claim is properly stated in the plaintiff's complaint. *Id.* Accordingly, the court is bound to the four corners of the plaintiff's complaint when deciding the motion. *See Herring Network*, 8 F.4th at 1156 (concluding that, consistent with Rule 12(b)(6) standards, plaintiffs defending against a legal sufficiency challenge may not rely on evidence outside of the complaint).When a defendant's anti-SLAPP motion challenges the factual sufficiency of a claim, the court will apply the F.R.C.P. 56 (Motion for Summary Judgment) standard and consider evidence outside of the complaint. *Planned Parenthood*, 890 F.3d at 834.

## IV. PLAINTIFF PSAILA'S EVIDENCE SUFFICIENTLY REBUTS THE DEFENDANTS' BURDEN ON PRONG 1 OF THE ANTI-SLAPP ANALYSIS AND SATISFIES THE LOW BAR OF ESTABLISHING THE ELEMENTS OF MALICIOUS PROSECUTION

While it is not clear whether Defendants' motion raises any legal sufficiency challenges to Plaintiff's claim,[6] the evidence provided by Plaintiff Psaila rebuts the Defendants' conclusion that Defendant Girardi's activities were protected under the anti-SLAPP statute and meets the low bar of establishing his claim has minimal merit.[7]

A court evaluates an anti-SLAPP motion in two steps. First, the defendant bears the burden of establishing that the challenged claims arise from the defendants' protected activity. *Wilson v. Cable News Network, Inc.*, 7 Cal.5th 871, 884 (2019). If the defendant meets their burden under the first prong of analysis, the burden shifts to the plaintiff to demonstrate that its claims have at least "minimal merit." *Id.* The Plaintiff must show a probability of prevailing on the challenged claims, but the Ninth Circuit has described this requirement as a "low bar." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (2011). The court should consider whether the plaintiff's complaint is

---

[6] In describing Plaintiff Psaila's statements as "admissions," Defendants state that Defendants had "as a matter of law, probable cause to suspect that Erika was the victim of significant unauthorized charges." Defs. Mot. at p. 20. However, in concluding their argument on Prong 2, Defendants state that "[i]n sum, because Plaintiff cannot establish, *by evidence*, a probability of prevailing on key elements of his malicious prosecution claim . . .the Motion should be granted." Defs. Mot. at p. 29 (emphasis added). Thus, it is unclear whether Defendants believe the complaint is legally insufficient or cannot be supported by factual evidence. Under either argument they lose, the Complaint is sufficiently plead and the declarations in support of this Opposition provide the factual showing required.

[7] Plaintiff does not disagree with Defendants' argument that his civil conspiracy claim cannot survive without his malicious prosecution claim. *See Kenne v. Stennis*, 230 Cal.App.4th 953, 968 (2014) (civil conspiracy does not result in tort liability unless an actual tort is committed). Plaintiff asserts, and Defendants do not challenge, that the complaint sufficiently pleads the elements of civil conspiracy.

supported by a sufficient prima facie showing of facts to sustain a favorable judgment. *Id.* (citing to *Manufactured Home Communities, Inc. v. City of San Diego*, 665 F.3d 1171, 1176-77 (9th Cir. 2011)). Here, Plaintiff's evidence establishes that Defendant Girardi's petitioning activity was illegal as a matter of law, and the prima facie showing of facts presented establish the "minimal merit" of his claim, thereby satisfying the "low bar" of the second prong of anti-SLAPP analysis.

A.    **Defendant Girardi's petitioning activity was illegal as a matter of law and therefore not protected by the anti-SLAPP statute.**

The facts alleged in Plaintiff's complaint and supported by Plaintiff's evidence establish that Defendant Girardi's activities were illegal as a matter of law because they were based on criminally false statements made to law enforcement officers. While California courts have recognized that the anti-SLAPP statute generally protects communications to law enforcement, the California Supreme Court has expressly held that such communications are not protected when "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." *Flatley v. Mauro*, 39 Cal.4th 299, 320 (2006). An activity is "illegal as a matter of law" when the defendant's conduct violates a criminal statute. *See Mendoza v. ADP Screening & Selection Services, Inc.*, 182 Cal.App.4th 1644, 1654 (2010) ("Our reading of Flatley leads us to conclude that the Supreme Court's use of the phrase "illegal" was intended to mean criminal, and not merely violative of a statute.").

Here, the Girardi Defendants activities were illegal in two ways. First, they falsely reported to the Secret Service that Plaintiff Psaila had made unauthorized and fraudulent charges to her AMEX card despite knowing that Defendant Girardi had given him standing authorization to charge all orders she placed. Compl. ¶¶ 32, 39, 44; Psaila Decl. ¶ 14. Second, the complaint alleges that the Girardi Defendants falsely told Defendant Henderson and AUSA Pence that they could not find any supporting

evidence for the invoices underlying Counts 2-8 of the indictment despite their integral participation in the orders and possession of written communications that corroborate all seven charges. Compl. ¶ 83-84; Compl. Ex. 3; Greenberg Decl. ¶ 22, Ex. 3.

Because the Girardi Defendants willfully made these statements to an agency of the executive branch knowing they were false, both of these statements violated Title 18 U.S.C. § 1001(a)(2), making it a criminal violation to "knowingly and willfully...make[] any materially false, fictitious, or fraudulent statement or representation" to a federal official. They also violated California Penal Code Section 148.5 which criminalizes the making of a false police report. Because the complaint adequately alleges these false reports, it is sufficient to rebut the Defendants' burden under the first prong of the anti-SLAPP statute and this Court should deny the Defendants' motion.

**B.    Even if the Girardi Defendants "speech" activity is protected, Plaintiff's Evidence Makes a Prima Facie Showing of Facts Required to Show a Probability of Prevailing**

Even if this Court were to rule that the Girardi Defendants' speech activities were protected as a matter of law, Plaintiff's evidence, and reasonable inferences therefrom, are sufficient to support a probability of prevailing on his malicious prosecution claim. Under the second prong of anti-SLAPP analysis, the plaintiff must show his claims have *minimal* merit. *Wilson*, 7 Cal.5th at 884. To prevail on his malicious prosecution claim, Plaintiff must establish (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice. *Zucchet v. Galardi*, 229 Cal.App.4th 1466, 1481 (2014). Given the low bar of the probability standard, Plaintiff's evidence and reasonable inferences therefrom, establish that his claim has the minimal merit required to satisfy his.

1.    **Plaintiff's evidence shows a favorable termination of the
criminal case against him.**

Plaintiff Psaila's evidence indicates a favorable termination on the merits occurred. To establish a malicious prosecution claim, the plaintiff must establish a favorable termination of the prior action that tends "to indicate the innocence of the accused." *Jaffe v. Stone*, 18 Cal.2d 146, 150 (1941). The determination of the reasons underlying the dismissal is a question of fact that cannot be decided until the disputed facts concerning the reasons for termination are resolved. *See Sierra Club Foundation v. Graham*, 72 Cal.App.4th 1135, 1149 (1999) (noting that the element of favorable termination is for the court to decide after disputed facts are resolved).

The California courts have noted that if "the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination." *Jaffe*, 18 Cal.2d at 150. Examples of dismissals that would not support a favorable termination include dismissal due to jurisdictional deficiencies and dismissal through negotiation or settlement. *See e.g., Hudis v. Crawford*, 125 Cal.App.4th 1586, 1592 (2005) (dismissal due to lack of standing jurisdictional); *Villa v. Cole*, 4 Cal.App.4th 1327, 1335-36 (1992) (dismissal because of settlement did not qualify). On the other hand, dismissal of a criminal complaint due to lack of evidence is considered favorable termination on the merits. *See Jackson v. Beckham*, 217 Cal.App.2d 264, 271 (1963) ("The dismissal in the instant case, on its face, shows lack of sufficient evidence and in the interests of justice the complaint was dismissed . . . and accordingly there was a termination favorable to defendant in the criminal action.").

Here, the AUSA's voluntary dismissal supports the inference that the AUSA could not prove the case against Plaintiff Psaila. The AUSA moved pursuant to Rule 48(a) to dismiss the indictment, which was granted by the court. *See* PACER, Dkt. 71 (motion) and 72 (order of dismissal) in *U.S. v. Psaila*, CR 17-257-FMO. Additionally,

as Defendant's point out, a spokesperson for the U.S. Attorney's Office told a reporter for the Los Angeles Times that the Indictment was dismissed due to "law enforcement evidence preservation issues." Def. Mot. at p.8. The dismissal motion was made after months of diligent pressure by defense counsel probing the weakness of the prosecution case. His assessment was that the prosecution could not succeed at trial. The reasonable inference therefrom is that the prosecutor could not successfully prove the case, a circumstance sufficient to establish favorable termination.

### 2.    Plaintiff's evidence shows that Defendants initiated the criminal prosecution with malice.

The facts alleged in the Complaint and Plaintiff's evidence support the conclusion that the Defendants acted with malice when initiating and continuing the criminal prosecution. In a malicious prosecution claim, the plaintiff must prove actual ill will or some improper ulterior motive. *Daniels v. Robbins*, 182 Cal.App.4th 204, 224 (2010). "If the defendant had no substantial grounds for believing in the plaintiff's guilt, but, nevertheless, instigated proceedings against the plaintiff, it is logical to infer that the defendant's motive was improper." *Greene v. Bank of America*, 216 Cal.App.4th 454, 464-65 (2013). Here, the Complaint alleges that Defendant Girardi knew her allegations against Plaintiff Psaila were false and were intended to solicit a refund from AMEX for the entire value of the goods and services provided by Marco Marco in 2015 and 2016. Compl. ¶¶ 39, 44. These allegations are supported by Plaintiff's evidence, which establishes that Defendant Girardi was charged for all goods and services she ordered and received, making her solicitation for a refund from AMEX improper. Psaila Decl. ¶¶ 57 to 74, Ex. 1B (chart of 132 transactions). She got a $787,118 refund.

Aside from this evidence of financial motive, malice may be inferred from a plaintiff's showing that the defendant lacked probable cause for initiating or continuing the prior action. *Verdier v. Verdier*, 152 Cal.App.2d 348, 354 (1957)(initiating); *see*

*also Cuevas-Martinez v. Sun Salt Sand, Inc.*, 35 Cal.App.5th 1109, 1122 (2019) ("Malice can be inferred when a party continues to prosecute an action after becoming aware that the action lacks probable cause.") (internal citations omitted). Because the complaint sufficiently alleges an improper motive of the Defendants, and, as discussed below, Plaintiff's evidence shows Defendants lacked probable cause, Plaintiff has met his burden of establishing the probability of prevailing on the malice.

> ### 3.    The Girardi Defendants lacked probable cause to approach the Secret Service because they knew of no facts that suggested a crime had been committed.

Plaintiff's Complaint, supported by a prima facie showing of evidence, establishes that the Girardi Defendants lacked probable cause to approach the Secret Service because they knew of no facts that suggested a crime had been committed. When a claim of malicious prosecution is based on initiation of a criminal prosecution, the question of probable cause is "whether it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime." *Ecker v. Raging Waters Groups, Inc.*, 87 Cal.App.4th 1320, 1331 (2001). "Whether probable cause existed on the facts known to the defendant is a question of law for the court," but "[w]hat facts the defendant knew is an issue of fact for the jury, but only to the extent the scope of the defendant's knowledge is disputed." *Roberts*, 660 F.3d at 1164 (internal citations omitted). Here, the facts known to Defendant Girardi are in dispute. Here Plaintiffs proof shows the lack of probable cause in two ways: first that the Girardi Defendants fabricated the entire predicate for their claim, second, that the Girardi Defendants own evidence shows that there could be no objective reasonable belief that Psaila committed a crime.

a)   **The Defendants lacked probable cause because they fabricated the entire predicate for their claim.**

The Defendants could not have had probable cause to initiate criminal proceedings against Plaintiff Psaila because they fabricated their claim that he had defrauded Defendant Girardi out of $787,118, and had defrauded her in seven individual transactions charged. Ex. 5, indictment. The Ninth Circuit has explained that probable cause does not exist if the defendant "fabricated the entire predicate of [her] claim...because, in such a case, the defendant would know of *no* facts that could provide reason to suspect the plaintiff of wrongdoing." *Id.* at 1165. Here, Plaintiff's evidence and statements by Defendants, suggest that the Girardi Defendants fabricated the claim that Plaintiff Psaila defrauded Defendant Girardi by initiating unauthorized charges to her AMEX card.

First, the legitimacy of all 132 transactions is corroborated by a combination of invoices, order forms, text messages, emails, proof of delivery receipts and social media posts and photographs. Psaila Decl. ¶¶ 57 to 74, Ex. 1B. The text message, email evidence and social media posts and photographs were already available to Defendants at the time they made the claim against Plaintiff Psaila, and Plaintiff Psaila communicated that he was gathering every invoice related to Defendant Girardi's purchases. Psaila Decl. ¶¶ 34 to 37. Additionally, Defendants knew that they received all goods and services requested from Marco Marco as evidenced by the text messages, emails, video and photographic evidence showing Defendant Girardi and her backup dancers wearing said purchases. Psaila Decl. ¶¶ 57 to 74, Ex. 1B.

Plaintiff's evidence demonstrates that Defendants had access to evidence that would corroborate every charge made to Defendant Girardi's AMEX card. If Defendant Girardi willfully ignored or recklessly disregarded the evidence and claimed to the Secret Service that a crime had been committed, she could not have had an

"objectively reasonable" belief that a crime had occurred, since she did not adequately review evidence available to her at the time.

Alternatively, if the Girardi Defendants' evidence is credited, that evidence does not support a finding of objective reasonable cause to believe that a crime was committed. Erika Girardi declares that she did not know what was ordered, and did not know what was billed. Girardi Decl. Dkt. 25-1 ¶¶ 3-4, 8, 23 to 28 establishing that during the billing period from the start through September 2016 she had no knowledge of the AMEX charges). Her assistants (Defendants Ribatallada and Minden) would order the goods and services and communicate with Messrs. Morante and Psaila about the costume orders and logistics. Girardi Decl. Dkt 25-1 ¶¶ 17-20. When Plaintiff Psaila attempted to present Defendant Girardi with the invoice for her first order, she waived the invoice away without reviewing it and stated she did not want to be given the invoices. Psaila Decl. ¶ 14; Morande Decl. ¶ 14. Further, by Defendant's own admissions, she did not have access to her and her husband's finances and was therefore unaware of why he would complain about her spending too much on her AMEX card. Girardi Decl. ¶¶ 22-28. A reasonable person with no access to what was ordered or billed, having provided the authorization multiple times, and waived off invoices saying she did not need them, can have no objective probable cause to believe a fraud was committed.

Plaintiff's evidence also demonstrates that Defendants wholly fabricated the claims that Psaila made unauthorized transactions, as Plaintiff Psaila, and Marco Marco, had standing authorization, reaffirmed twice by updating the card information on file, to charge Defendant Girardi's AMEX card for every order. Psaila Decl. ¶ 15; 22; Morante Decl. ¶ 14. Defendant does not dispute granting standing authorization to bill her AMEX card as needed or providing reauthorization. *See* Dkt. 25-1, Girardi Decl. Because Defendant Girardi's standing authorization was not revoked and was actually reaffirmed on two occasions, any claim that unauthorized charges were made

to her AMEX account were necessarily false. This evidence shows that the claims of fraud and identity theft were entirely fabricated by Defendant Girardi, making them devoid of probable cause..

       **b)**    **No ordinary inference of probable cause from the grand jury indictment exists here as the indictment was based on Defendant Girardi's false claims and a contaminated investigation.**

Ordinarily, grand juries "function as a barrier to reckless or unfounded charges," *United States v. Mandujano*, 425 U.S. 564, 571 (1976), by standing "between the prosecutor and the accused…to determine whether a charge is founded on credible testimony or was dictated by malice or personal ill will." *Hale v. Henkel*, 201 U.S. 43, 59 (1906). However, this essential function cannot be performed by a grand jury if it is provided with false evidence. Thus, while a criminal indictment ordinarily gives rise to a prima facie case of probable cause, that prima facie case can be rebutted by proof the indictment was based on false or fraudulent testimony. "Among the ways that a plaintiff can rebut a prima facie finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004); s*ee also, Williams v. Hartford Ins. Co.*, 147 Cal.App.3d 893, 900 (1983).

The inference that the grand jury presentation was based in material part on the Girardi Defendants' false statements is further supported by the statements the Girardi Defendants made within a days of the grand jury date. Two days before the case was presented to the grand jury, Defendant Henderson and AUSA George Pence spoke with Defendant Girardi about seven transactions they intended to present to the grand jury as fraudulent. Compl. ¶ 80; Defs. Mot. at p.21; Girardi Decl. ¶¶ 100 to 103. Defendant Girardi was asked to verify if she had any evidence to support those seven

charges and she confirmed that she had no evidence to support any of the transactions. Compl. ¶ 80; Defs. Mot. at p.21-22; Girardi Decl. Ex. 4.

Defendant Girardi's representation that she had no evidence to support any of the transactions is contradicted by the documentation of text and email messages, invoices and order forms, and posts and photographs on Defendant Girardi's and her dancers social media accounts. *See* Compl. Ex. 3. Greenberg Decl. ¶22,  Ex. 3. All the evidence needed to corroborate the seven transactions identified by the Secret Service and the AUSA was readily available to Defendant Girardi and the Secret Service. Psaila at ¶¶54, 57 to 74, Ex. 1A, Ex 1B. Thus, it appears that either the Secret Service did not review the evidence it had or failed to correct Defendant Girardi's statements despite having the evidence to do so and instead materially relied on the Girardi Defendants statements when presenting the case to the grand jury.

### c)     The evidence presented by Plaintiff establishes that there was no independent basis to establish probable cause.

Defendants' motion argues that Plaintiff admitted to making unauthorized charges, creating an independent basis establishing probable cause, *see* Defs. Mot. at p. 25-26, but Plaintiff never admitted to making any unauthorized charges or admitted to committing any crime. *See* Psaila Decl. ¶¶ 27, 33, 44. The issue is not whether there was cause to believe there may have been a billing mistake(s) or inadvertent error(s), but whether there was probable cause to believe a crime was committed

First, Defendants characterize Plaintiff Psaila's statements regarding the September 2016[8] and December 2016[9] charges as admissions that three transactions

---

[8] In response to Defendant Minden's assertion that Defendant Girardi was concerned about the price of an order, Plaintiff Psaila decided to refund the transaction until they could have a conversation with Mr. Morante about the price. Psaila Decl. ¶ 28. Thus, Plaintiff's actions reflected a prudent businessman attempting to keep his customer happy, not an admission that the charge was unauthorized.

[9] The text messages between Plaintiff Psaila and Defendant Minden regarding the December 1, 2016, charge clearly establishes that Plaintiff Psaila had no knowledge of

charged to Defendant Girardi's AMEX card were unauthorized. *See* Defs. Mot. at pp. 25-26. Plaintiff strongly disagrees with this characterization. Instead, Plaintiff Psaila's words and actions demonstrate that he viewed the situation as a business dispute that could be resolved by working together with his client. Plaintiff denies that any charges were made without authorization, and asserts that all of the goods and services transacted for were provided to the Girardi Defendants. Psaila Decl. ¶ 74; Morante Decl. ¶ 20.

In his texting with Minden in early December, Plaintiff Psaila states that he has seen mistakes. He does not then, or ever say that he did anything intentional or unauthorized. Psaila Decl. ¶ 33. He tells Minden that he wants to go through [the records] and come up with a plan to get this sorted." *Id.* In the call shortly after with Ms. Girardi, she asks him if there are other mistakes and he assures her there were none. *Id.* ¶ 34. These statements indicate that Plaintiff Psaila recognized some transactions that would need further investigation and that he actively solicited Defendant Girardi's assistance in making sense of the credit card statements. Accordingly, these statements demonstrate that Plaintiff Psaila wanted to ensure his client was receiving the goods and service she transacted for, the behavior of a prudent businessman.

Finally, contrary to Defendants' characterization of Plaintiff Psaila's statement as an admission in the recorded conversation on December 14, 2016, that he overcharged Defendant Girardi by $100,000 (*See* Defs. Mot. Dkt. 25, p. 20:15-21), Plaintiff never admitted to making unauthorized charges. He said there could potentially be some mistakes, referring to the Defendants' "haphazard" ordering

---

the charges, thereby making it impossible for him to admit to initiating unauthorized charges. Plaintiff stated "[w]tf is going on!? I'm sorry. I'm calling them now." Minden Decl. Dkt. 25-20, Ex. 1 p.3. Further, Plaintiff Psaila stated "I'll have Marco reach out later today with the actual price of the garment as both of those seemed too high." *Id.* (emphasis added).

process. Psaila Decl. at ¶ 44; Morante Decl. ¶ 16. He also reiterated that he wanted to review every transaction with Defendant Girardi and attempted to provide her with the invoices he gathered prior to the meeting. Psaila Decl. at ¶ 44. He offered to repay her $100,000 and get a loan if he needed to, to pay for any mistakes that may have been made. *Id.* Once again, Plaintiff Psaila's actions are the actions of a responsible businessman seeking to ensure his client has received everything she transacted for, not admissions of a crime.

To support its argument for "independent" probable cause, Defendants have to resort to making the word "mistake" into "intentional misconduct" and an "offer to repay for any mistakes" into an offer to recompense "unauthorized fraudulent conduct." In other words Defendants go too far. Furthermore Defendants' argument draw their unsupported inferences by ignoring the context including the voluminous communications in their possession that established that all goods and services were authorized and provided.

## V.    PLAINTIFF'S COMPLAINT SATISFIES RULE 12(b)(6) STANDARDS

To the extent that Defendants raise any legal sufficiency challenges, Plaintiff Psaila's complaint sufficiently pleads a plausible claim for malicious prosecution. See III. above. Under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To establish a claim of malicious prosecution, Plaintiff must plead (1) the prior action was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice. *Zucchet v. Galardi*, 229 Cal.App.4th at 1481. Here, Plaintiff Psaila's complaint alleges facts that show a plausible claim for malicious prosecution by the Girardi Defendants.

First, the complaint alleges that Defendant Girardi initiated the prior action, which resulted in a criminal Indictment against Plaintiff Psaila, by falsely reporting to Defendant Savage that Plaintiff Psaila had made unauthorized and fraudulent charges to her AMEX card. Compl. ¶ 39, 43, 44. The Girardi Defendants continued to the pursue these accusations, when they told Defendant Henderson and the AUSA assigned to the case that they could not find any evidence to support the seven transactions they intended to present as fraudulent, despite being in possession of such evidence. Compl. ¶¶ 80, 84. Finally, the complaint contains allegations establishing that the government moved to dismiss the Indictment before trial. Compl. ¶ 110. Thus, the first element of Plaintiff's claim is sufficiently pleaded.

Next, the complaint adequately alleges that the Defendants acted without probable cause. First, the complaint alleges that the Defendants knew that their allegations against Plaintiff Psaila were false because they had given him and Marco Marco express standing authorization to charge Defendant Girardi's AMEX card for all orders and because they received all goods and services they requested. Compl. ¶ 31, 37; Psaila Decl. ¶ 74; Morante Decl. ¶ 21. Additionally, the Complaint alleges facts that gives rise to the reasonable inference that Defendants lacked probable cause because they were not concerned with pricing or any charges made to Defendant Girardi's AMEX. Compl. ¶ 32 (physically waiving off receiving invoices). Over the course of 132 transactions over three years, Defendants never complained about the cost of any transaction until Defendant Girardi's husband began expressing concern about their financial situation. Compl. ¶¶ 32, 33, 38.

Finally, the Complaint contains plausible allegations that Defendants acted with malice. The complaint alleges that Defendant Girardi's allegations were intended to solicit an unwarranted refund from AMEX, rather than seeking justice for a crime committed against her. Compl. ¶¶ 39, 44. Additionally, because the complaint

adequately pleads facts establishing a lack of probable cause, as discussed above, that lack of probable cause also establishes malice.

## VI.    CONCLUSION

The prima facie evidence presented by Plaintiff Psaila demonstrates that Defendants cannot carry their burden under the anti-SLAPP statute as a matter of law and demonstrates a probability of prevailing on his malicious prosecution claim. Accordingly, this Court must deny the Defendant's Motion to Strike under California's anti-SLAPP statute.

DATED:    November 20, 2023              MCLANE, BEDNARSKI & LITT, LLP

By: */s/ Marilyn E. Bednarski*
David S. McLane
Barrett S. Litt
Marilyn E. Bednarski

Bruce Bealke (Pro Hac Vice)
Stanley Greenberg

Attorneys for Plaintiff
CHRISTOPHER PSAILA

## L.R. 11-6.2 – CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

DATED:    November 20, 2023         MCLANE, BEDNARSKI & LITT, LLP

By: */s/ Marilyn E. Bednarski*
Marilyn E. Bednarski