BARRETT S. LITT, SBN 45527
Email: blitt@mbllegal.com
DAVID S. McLANE, SBN 124952
Email: dmclane@mbllegal.com
MARILYN E. BEDNARSKI, SBN 105322
Email: mbednarski@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

BRUCE BERNARD BEALKE
(pro hac vice)
(Illinois SBN 6200543)
77 West Wacker Drive, Ste. 45001
Chicago, IL 60601
Tel: (312) 216-7177
Fax: (312) 741-1010
Email: bealkelaw@protonmail.com

STANLEY I. GREENBERG, SBN 53649
11845 W. Olympic Blvd., Ste. 1000
Los Angeles, CA 90064
Tel: (424) 248-6600
Fax: (424) 248-6601
Email: Stanmanlaw@aol.com

*Attorneys for Plaintiff* CHRISTOPHER PSAILA

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, and DOES 1 TO 10, Inclusive,<br><br>Defendants. | Case no.: 2:23-cv-07120-MWF (SKx)<br><br>**DECLARATION OF STANLEY I. GREENBERG IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE GIRARDI DEFENDANTS' ANTI-SLAPP MOTION**<br><br>Hrg. Date: December 18, 2023<br>Time: 10:00 a.m.<br>Crtrm: 5A |

# DECLARATION OF STANLEY GREENBERG

I, Stanley Greenberg, hereby declare the following:

1. I am an attorney licensed to practice in the State of California. I am a solo practitioner and along with the firm McLane, Bednarski & Litt, LLP and Bruce Bernard Bealke, I am one of the attorneys of record for Plaintiff in this action. This declaration is submitted in support of Plaintiff's Opposition to Girardi Defendants anti-SLAPP motion. The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. If called upon, I could and would testify competently thereto.

2. In the summer of 2021, Plaintiff Psaila retained me as his criminal counsel to represent him in *U.S. v. Psaila*, CR 17-00257-FMO. I substituted into the case on July 6, 2021, replacing his former criminal counsel who had represented him since the beginning of the case approximately four years before. The file stamp on the indictment in the case reflects that it was filed April 28, 2017. When I took over the case it appeared that very little work had been done on the defense and that the case had been continued for trial many times.

3. I commenced reviewing the evidence and preparing for the trial which was set to commence December 7, 2021. I have personal knowledge of a number of things I did to prepare for trial and have recently reviewed my file including certain email correspondence referred to below related to my requests for information and or discovery in this case. That correspondence reflects amongst other things that:

4. On August 4, 2021, I emailed Defendant Grimm, seeking the name on the American Express credit card which Ms. Girardi used to pay for goods and services purchased from my client's company, stating that I had conflicting information, Specifically, I asked him "1. What was the name on the Amex card? I have been told conflicting information: that it is the name of her husband [Tom Girardi] and I've also

1  been told it was the name of her husband's law firm. I think the firm name changed
2  from time to time but in that time period, I understand it would have been Girardi &
3  Keese (or something close to that). Actually, it doesn't matter, I just need the name on
4  the card, whatever it was."

5       5.     Defendant Grimm did not respond to me. He emailed an answer to the
6  Assistant United States Attorney assigned to the case, who later produced it to me in
7  discovery. In Grimm's response, he stated that the name on the card was "Erika
8  Girardi."

9       6.     While technically correct, Grimm's answer was misleading, as he failed to
10 disclose that the account holder was Tom Girardi, that Erika Girardi was just an
11 authorized user, and that Tom Girardi was the victim who would have suffered the loss
12 if there had been any losses on the card.

13      7.     I also asked Defendant Grimm in the email the following questions:
14 "How the amount of the reimbursement was arrived at? Was that the total amount on
15 the card charged by my client's business? Or was that the amount that she claimed was
16 'unauthorized?'"

17      8.     Defendant Grimm did not answer me directly, and instead emailed the
18 trial Assistant United States Attorney ("AUSA") who later produced it to me in
19 discovery, "Not sure what this question is asking, but the fraud amount claimed by
20 Erika Girardi was $787,117.88."

21      9.     I recently reviewed a report written by Secret Service Agent Henderson
22 and dated 4/20/17 which was provided to me in discovery, in which he wrote that he
23 had interviewed Peter Grimm, the bank investigator from American Express, who told
24 him that American Express has reimbursed the "victim E.G." a total reimbursement of
25 $787,117.88 with a combination of statement credits and a check.

DECLARATION OF STANLEY GREENBERG ISO OPPOSITION TO THE GIRARDI
DEFENDANTS ANTI-SLAPP MOTION
2

10. Neither Defendant Grimm nor the trial assistant answered my question as to how American Express and he determined the reimbursement amount, or provided me the specifics or evidence on how the $787,117.88 reimbursement figure was determined.

11. I sent a letter to the trial AUSA dated July 21, 2021, asking her to provide all *Brady* and *Henthorn* material to me. A *Brady* request seeks information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), all exculpatory evidence that would point to innocence, which would also include impeachment evidence reflecting on the credibility of government witnesses. Impeachment evidence is exculpatory evidence pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). A *Henthorn* request requires the government to turn over to the defense anything affecting the credibility of a federal law enforcement officer. *Henthorn v. United States*, 931 F.2d 29 (9th Cir. 1991).

12. The trial AUSA told me on or about August 30, 2021, that she was aware of the government's discovery obligations but never identified any impeachment information or exculpatory information to the defense, other than what may have already been produced. She did not identify any specific *Brady* or *Henthorn* material in the discovery. The government and Defendants Savage, Scarince and Henderson did not turn over any impeachment information concerning Defendants Savage, Scarince and Henderson, or any impeachment information concerning Defendants Erika Girardi, or Tom Girardi. The prosecutor and Defendants Savage, Scarince and Henderson did not turn over any information concerning:

- ■the prior personal, business or financial relationship between Defendant Savage and Defendant Erika Girardi and Tom Girardi
- ■Tom Girardi's legal representation of Defendant Savage in the Volkswagen case during this investigation

DECLARATION OF STANLEY GREENBERG ISO OPPOSITION TO THE GIRARDI DEFENDANTS ANTI-SLAPP MOTION

3

- ■Tom Girardi's promise to personally pay $100,000 to Savage in the Volkswagen case during this investigation
- ■Tom Girardi's actual payment of $7,500 to Savage during this investigation
- ■any evidence concerning reimbursements Savage got for fake presidential advance trips by him or any other evidence of dishonesty that related to his separation from the Secret Service.

13.  I learned about the existence of this exculpatory information after the dismissal of the case over a year later when I read the article published in the Los Angeles Times on February 9, 2023, investigated and reported by journalists Matt Hamilton and Harriet Ryan, "The Girardis, The Secret Service And Wire Fraud Claims That Nearly Ruined A Hollywood Designer," L.A. TIMES (Feb. 9, 2023). See, https://www.latimes.com/california/story/2023-02-09/tom-erika-girardi-secret-service-hollywood-designer-wire-fraud-claims#:~:text=The%20Girardis%2C%20the%20Secret%20Service,business%20and%20devastated%20him%20personally.

14.  The article exposed that significant *Brady* and *Henthorn* information existed which due process would have required be disclosed to me prior to trial. That included that Defendant Savage's nearly decade long personal and financial relationship with Tom Girardi (including attending the annual Girardi Superbowl Party and other events). It also revealed that during the pendency of the Psaila investigation in December 2016 Savage was represented by Tom Girardi in the Volkswagen case, and that in relation to that case, Tom Girardi promised to pay Savage $100,000 in connection with that Volkswagen case, and that Tom Girardi actually paid Savage $7,500 in December, 2016. Furthermore the article revealed that Savage had been separated from the Secret Service after discovery of reimbursements Savage received for fake presidential advance trips by him.

15. This information could have been used as evidence supporting an improper motive to investigate Psaila, and to retrieve money from him, and to show a lack of independence and conflict of interest in the inadequate investigation undertaken by the Secret Service. During these events Savage was the head of the Secret Service Los Angeles field office, which was conducting the investigation of Psaila. He was the ultimate and it appears, the "actual" supervisor of the case agents on the investigation.

16. It was my opinion that the discovery reflected that Secret Service conducted very little investigation. In part I draw this conclusion from the absence of any report of interview of several persons I would deem to have significant material information about the claimed fraud. For instance there was no report of interview supporting a failure to interview the following witnesses:

17. No interview of Mr. Psaila's 50/50 business partner Marco Morante who told me that he designed the costumes, fitted defendant Girardi for the costumes, was present at the initial business meeting when she gave authority to use the credit card for the goods and services, and he was very involved in working with the client Ms. Girardi, her assistant, and her creative director in the logistics of ordering, designing, and providing the costumes and clothing they billed to Ms. Girardi.

18. No interview of Tom Girardi, the account holder, concerning his wife's use of the card and the years of charging on the card between 2014 and 2016 without incident or dispute.

19. No reported interview of Peter Grimm, the bank investigator, or other representative of AmEx on the topics of:

■ why he /AmEx failed to follow their written policy dispute procedures
■ failed to give Mr. Psaila an opportunity to dispute the Girardi claim of fraud
■ failed to charge back the charged 7 transactions or $787,117.88 total claimed transactions to Marco Marco

DECLARATION OF STANLEY GREENBERG ISO OPPOSITION TO THE GIRARDI DEFENDANTS ANTI-SLAPP MOTION

5

1 ■to explain the basis of the $787,117.88 given to Girardi.

2  20. On September 25, 2021, I wrote an email to the trial AUSA requesting a copy of the "$737+ check that was supposedly written to E.G. [Erika Girardi] by American Express." I was never given that check.

 21. Around this same time in September 2021, I caused a trial subpoena to be served on Defendant Grimm, the American Express investigator at American Express who was referenced in Secret Service Agent Henderson's report of interview provided in discovery and dated 4/20/17 which documented that Grimm had said that American Express had refunded that the "victim E.G." $787,117.88 in a combination of statement credits and checks. Attached hereto as **Exhibit 2** is a true and correct copy of a Memorandum of Interview regarding an interview with Peter Grimm dated April 20, 2017 from U.S. Secret Service Agent Kenneth Henderson, which was produced in discovery in the matter of *U.S. v. Psaila*, CR 17-00257-FMO.

 22. Also around this time, I communicated by phone and email with criminal defense counsel for Tom Girardi to accept a subpoena for Tom Girardi to testify at trial. Attached hereto as **Exhibit 3** is a true and correct copy of a Memorandum of Interview regarding an interview with Erika Girardi and Laia Ribatallada dated April 27, 2017 from U.S. Secret Service Agent Kenneth Henderson, which was produced in discovery in the matter of *U.S. v. Psaila*, CR 17-00257-FMO.

 23. I received a report in discovery written by Agent Henderson and dated October 16, 2017, which described that he had spoken with Defendant Girardi, and told her the trial was being delayed, and that Defendant Girardi told him that she was still willing to testify to "f____k Chris." Attached hereto as **Exhibit 4** is a true and correct copy of a Memorandum of Interview regarding an interview with Erika Girardi dated October 16, 2017 from U.S. Secret Service Agent Kenneth Henderson, which was produced in discovery in the matter of *U.S. v. Psaila*, CR 17-00257-FMO.

24. I had numerous conversation and emails with the trial AUSA to discuss what I perceived as weaknesses in the government's case. I told her that I was taking the case to trial, that I planned to call both Girardis and Peter Grimm as witnesses in the trial.

25. Subsequently, after notifying me by phone of her intention, on September 28, 2023, pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, the trial AUSA filed a motion to dismiss the indictment without prejudice, and requiring that all hearings and deadlines in the case be vacated, that bond be exonerated and that all terms and conditions of pretrial release be terminated. The motion itself did not provide a reason, merely asked the court to dismiss under Rule 48(a). See PACER, Mtn. to Dismiss, Dkt. 71, *U.S. v. Psaila*, CR 17-257-FMO. On September 28, 2021. On September 29, 2021, the Honorable Fernando M. Olguin issued an order dismissing the indictment without prejudice, vacating all further hearings and deadlines in the case, exonerating bond and terminating the terms and conditions of Psaila's pretrial release. See PACER Order, Dkt. 72 in *U.S. v. Psaila*, CR 17-257-FMO.

26. About 17 months after the dismissal, I read an LA Times news article written by Matt Hamilton which stated that a spokesperson for the U.S. Attorney's office in L.A. had issued a brief statement saying that evidence preservation issues undermined the prosecution and the interests of justice supported dismissal. That article is cited above at ¶13 of this declaration.

27. It is my opinion that the government dismissed the indictment in the face of my persistence questioning the evidence (and absence of evidence), demands for exculpatory evidence, and notice to the trial AUSA that I intended to go to trial. It would have been obvious to her from our conversations, that I would call as witnesses Tom Girardi and Erika Girardi, Erika's employees - Laia Ribatallada and Michael

DECLARATION OF STANLEY GREENBERG ISO OPPOSITION TO THE GIRARDI DEFENDANTS ANTI-SLAPP MOTION

7

Minden, as well as employees of the Secret Service and American Express including Peter Grimm.

28. It was my assessment of the case that the USA office would not be able to succeed at trial. Furthermore, it was my opinion that the Secret Service had conducted very little investigation and that what they did was lazy, incomplete, extremely unprofessional, and well below the standards I had learned to expect over my career from federal law enforcement agencies.

I declare under penalty of perjury that the foregoing is true and correct and was executed November 20, 2023, at Pasadena, California.

                    ___*/s/ by Stanley I. Greenberg*_____
                    Stanley I. Greenberg

**EXHIBIT 2**



U.S. Department of Homeland Security
# UNITED STATES SECRET SERVICE

## MEMORANDUM OF INTERVIEW

| | |
|---|---|
| PERSON INTERVIEWED | : Peter Grimm |
| DATE OF INTERVIEW | : 4/20/2017 |
| PLACE OF INTERVIEW | : Los Angeles Field Office<br>725 S. Figueroa ST Los Angeles CA 90017 |
| CASE NUMBER | : 403-771-176436 |
| INTERVIEWED BY | : SA Kenneth Henderson (USSS) |

On 4/20/2017, Peter Grimm, Bank Investigator for American Express, was interviewed at the Los Angeles Field Office.

Mr. Grimm stated to me that American Express has reimbursed the victim E.G., with a combination of statement credits and a check. The total reimbursement was $787,117.88.

Mr. Grimm also stated that American Express has multiple server locations that handle credit card transactions. All transactions made in the western half of the United States are sent to servers located in Phoenix, Arizona.

-END OF INTERVIEW-

SA Kenneth Henderson                                          4/21/2017
United States Secret Service                                    Date



# **EXHIBIT 3**



U.S. Department of Homeland Security
# UNITED STATES SECRET SERVICE

## MEMORANDUM OF INTERVIEW

| | |
|---|---|
| PERSON INTERVIEWED | : Erika Girardi |
| | Laia Ribatallada |
| DATE OF INTERVIEW | : 4/27/2017 |
| PLACE OF INTERVIEW | : Telephonically |
| CASE NUMBER | : 403-771-176436 |
| INTERVIEWED BY | : SA Kenneth Henderson (USSS), |
| | AUSA George Pence (USAO) |

On 4/27/2017, AUSA George Pence and I spoke with Erika Girardi and Laia Ribatallada via 3-way phone conference discussing the case.

Both Mrs. Girardi and Ms. Ribatallada reviewed the 7 unauthorized charges AUSA Pence identified via email. Neither Mrs. Girardi nor Ms. Ribatallada could find any emails, text messages, or invoices to support the charges.

AUSA Pence also reiterated that he would only be handling the case through grand jury indictment. Another AUSA would be assigned the case and may be contacting her in the future.

-END OF INTERVIEW-

SA Kenneth Henderson                                          4/27/2017

United States Secret Service                                  Date

**EXHIBIT 4**



**U.S. Department of Homeland Security**
## UNITED STATES SECRET SERVICE

### MEMORANDUM OF INTERVIEW

| | |
|---|---|
| PERSON INTERVIEWED | : Erika Girardi |
| DATE OF INTERVIEW | : 10/16/2017 |
| PLACE OF INTERVIEW | : Telephonically |
| CASE NUMBER | : 403-771-176436 |
| INTERVIEWED BY | : SA Kenneth Henderson (USSS), |

On 10/16/2017, I spoke with Erika Girardi to discuss a possible delay in the case and her schedule in March.

Mrs. Girardi told me she had nothing scheduled in March and is still willing to testify to "fuck Chris" (the defendant, Christopher Psaila). She asked how long the trial would take. I informed her that trials start on Tuesday and usually take about a week.

She also inquired about why Psaila hadn't pled guilty in the case. I told Mrs. Girardi that Psaila was facing multiple years of jail time for his actions which may be why he hasn't pled guilty yet.

I informed her that I would be in contact if the trial did face a delay and when the new trial date would be.

-END OF INTERVIEW-

| | |
|---|---|
| SA Kenneth Henderson | 10/17/2017 |
| United States Secret Service | Date |

PSAILA_00002478

Ex. 4