EVAN C. BORGES, State Bar No. 128706
 *EBorges@GGTrialLaw.com*
HEEJIN H. HWANG, State Bar No. 349455
 *HHwang@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

Attorneys for Defendants Erika Girardi,
Laia Ribatallada, and Michael Minden

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>              Plaintiff,<br><br>      v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE,  KENNETH HENDERSON, STEVE  SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, and DOES 1 TO 10, Inclusive,<br><br>              Defendants. | Case No. 2:23-cv-07120-MWF (SKx)<br><br>**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.) BY DEFENDANTS ERIKA GIRARDI, LAIA RIBATALLADA, AND MICHAEL MINDEN**<br><br>[Evidentiary Objections and Declaration of Heejin H. Hwang Filed Concurrently Herewith]<br><br>**Hearing:**<br><br>Date:     December 18, 2023<br>Time:    10:00 a.m.<br>Crtrm.: 5A<br><br>Complaint Filed:  August 29, 2023<br>Trial Date:  Not Assigned |

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................... 6

II.   EVIDENTIARY OBJECTIONS TO EXHIBITS 1A, 1B, AND 1C .............. 7

    A.   Exhibits 1A, 1B, and 1C Are Inadmissible under FRE 1006. ............... 8

III.  ARGUMENT ............................................................................. 12

    A.   The EG Defendants Prevail on the First Prong of the Anti-SLAPP Analysis Because Plaintiff's Suit Arises from Protected Activity .......................................................................... 13

    B.   Plaintiff Has Failed to Meet His Burden on the Second Prong of the Anti-SLAPP Analysis of Showing, By Admissible Evidence, That His Malicious Prosecution Claim Has Merit. .............................. 14

        1.   Undisputed Evidence Shows that the EG Defendants Had Probable Cause.  Because Plaintiff Cannot Prevail on This Element, the Anti-SLAPP Motion Should Be Granted. ............. 14

            (a)   Plaintiff Acknowledged Mistakes on September 19, 2016 and December 1, 2016 and Promised to Issue Refunds on Both Occasions. ............................. 15

            (b)   Plaintiff Acknowledged on December 8, 2016 that He Was "Clearly Seeing Mistakes." ................... 17

            (c)   Plaintiff Admitted to Approximately $100,000 in "Overcharges" on December 14, 2016 and Blamed the Bookkeeper. ...................................... 18

            (d)   Plaintiff Never Provided the EG Defendants with an Alternate Explanation for the Billing Mistakes or $100,000 in Overcharges ................................ 19

            (e)   Plaintiff Admits that His Invoices, Which the EG Defendants Reviewed on December 14, 2016, Were Incomplete, Contained Errors, and Were "General.".......20

            (f)   The EG Defendants Conducted a Second Review of Documents Prior to Plaintiff's Indictment. .................... 21

        2.   Plaintiff Has Not His Burden to Show a Favorable Termination on the Merits. ......................................... 21

        3.   Plaintiff's Evidence Fails to Establish Malice ........................... 22

    C.   Because Plaintiff Cannot Prevail on His Malicious Prosecution Claim, the Court Must Strike the Conspiracy Claim Against the EG Defendants. ........................................................... 23

Case No. 2:23-cv-07120-MWF (SKx)

1

IV.    CONCLUSION .................................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-
SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Montebello v. Vasquez,*
   1 Cal. 5th 409 (2016) .......................................................................... 13

*Dickens v. Provident Life & Accidents Ins. Co.,*
   117 Cal. App. 4th 705 (2004) ............................................................. 13

*Jaffe v. Stone,*
   18 Cal. 2d 146 (1941) ........................................................................ 22

*New Show Studios LLC v. Needle,*
   2014 WL 12495650 (C.D. Cal. Dec. 29, 2014) .................................... 8

*Paddack v. Dave Christensen, Inc.,*
   745 F.2d 1254 (9th Cir. 1984) ................................................... 8, 9, 12

*Roberts v. McAfee, Inc.,*
   660 F.3d 1156 (9th Cir. 2011) ...................................................*passim*

*Sangster v. Paetkau,*
   68 Cal. App. 4th 151 (1998) ....................................................7, 15, 18

*Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.,*
   6 Cal. 5th 931 (2019) ....................................................................8, 12

*United States v. Johnson,*
   594 F.2d 1253 (1979) ........................................................................ 12

*United States v. Miller,*
   771 F.2d 1219 (9th Cir. 1985) ............................................................. 9

*Wilson v. Cable News Network, Inc.,*
   7 Cal. 5th 871 (2019) ........................................................................ 13

*Wyles v. Sussman,*
   2020 WL 4354233 (C.D. Cal. Mar. 19, 2020) .................................... 13

*Zucchet v. Galardi,*
   229 Cal. App. 4th 1466 (2014) ..................................................... 13, 14

**Statutes**

Code Civ. Proc. § 425.16 ................................................................ 6, 23

**Other Authorities**

Fed. R. Evid. 56 ............................................................................. 13

Fed. R. Evid. 401 ........................................................................... 11

Fed. R. Evid. 803 ....................................................................... 11, 12

Fed. R. Evid. 1006 ..................................................................... 7, 8, 12

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-
SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

# I.    __INTRODUCTION__

Plaintiff Christopher Psaila ("Plaintiff") deluges the Court with hundreds of pages of montages of inadmissible and confusing "evidence" in a last-ditch effort to salvage his malicious prosecution claims against defendants Erika Girardi, Laia Ribatallada, and Michael Minden (collectively, "the EG Defendants").[1] (*See* Plaintiff's Opposition to Special Motion to Strike Complaint Pursuant to California Anti-SLAPP Statute (C.C.P. § 425.16) ("Opposition"). Plaintiff's attempt to distract the Court does not, however, change the legal conclusion under binding anti-SLAPP case law that, based on undisputed facts, Plaintiff's malicious prosecution and conspiracy claims against the EG Defendants are without merit and must be dismissed.

As elaborated below, the EG Defendants have met their burden of showing that Plaintiff's claims against them arise from protected "petitioning activity." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011). By contrast, Plaintiff has failed to meet his burden of demonstrating, by admissible evidence, a probability of prevailing on his claims. *Id.* Plaintiff's evidence, even when credited, does not modify or change undisputed facts establishing that the EG Defendants had sufficient probable cause for reporting Plaintiff to federal law enforcement. Therefore, Plaintiff cannot meet his burden to establish the absence of probable cause and the EG Defendants' Anti-SLAPP Motion must be granted.

Specifically, the undisputed facts include: (1) Mr. Psaila's admission at the December 14, 2016 meeting of excess charges or overcharges (i.e., unauthorized charges) on Ms. Girardi's Amex card of "just over $100,000," combined with his promise to repay the funds; (2) Mr. Psaila's prior admissions to billing "mistakes" and unauthorized charges in his written communications to the EG Defendants on

---

[1] Plaintiff has withdrawn and no longer pursues his prior requests for voluminous discovery, demonstrating that the requests were without merit.

December 1, 2016 and December 8, 2016; and (3) Mr. Psaila's failure after two efforts in December 2016, or at any time thereafter, to provide the EG Defendants with invoices or documents supporting hundreds of thousands of dollars in charges to Ms. Girardi's Amex card in 2015 and 2016. These facts compel a legal conclusion that the EG Defendants had probable cause for reporting their concerns to federal law enforcement. Therefore, other disputed facts are "immaterial," *Sangster v. Paetkau*, 68 Cal. App. 4th 151, 167 (1998), and Plaintiff cannot meet his burden to show the absence of probable cause. Accordingly, the Anti-SLAPP Motion must be granted as to the malicious prosecution claim, as well as the derivative conspiracy claim.

Although the Court need not reach these issues, Plaintiff's evidence also fails to demonstrate that he will prevail on the other elements of his malicious prosecution claims. The admissible evidence that Plaintiff proffers supports a showing that the dismissal of his criminal indictment was on procedural, not substantive grounds, and therefore not a favorable termination on the merits. Likewise, Plaintiff's evidence fails to raise a reasonable inference that the EG Defendants acted with malice.

Accordingly, Plaintiff has failed to meet his burden of showing, by admissible evidence, that he has a probability of prevailing on his malicious prosecution claims against the EG Defendants. As a result, the Court must grant the Anti-SLAPP Motion and dismiss the Complaint against the EG Defendants.

## II.    EVIDENTIARY OBJECTIONS TO EXHIBITS 1A, 1B, AND 1C

Plaintiff improperly relies on inadmissible evidence to oppose the Anti-SLAPP Motion. Specifically, the EG Defendants object to the exhibits attached to Plaintiff's declaration, which fail to comply with Federal Rule of Evidence 1006 and thus cannot support his evidentiary burden on the Anti-SLAPP Motion.[2]

_____

[2] Because the EG Defendants have concurrently filed comprehensive objections to

-7-    Case No. 2:23-cv-07120-MWF (SKx)

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

Plaintiff must proffer "competent admissible evidence" to show a probability of prevailing on the merits of his claims. *Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 6 Cal. 5th 931, 40 (2019) (internal citation omitted)); *New Show Studios LLC v. Needle*, 2014 WL 12495650, at *11 (C.D. Cal. Dec. 29, 2014) (a plaintiff's evidentiary burden to oppose an anti-SLAPP motion requires a showing of "admissible evidence that, if credited, would be sufficient to sustain a favorable judgment"). "'[A]dmissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule." *Id.* (quoting *Fashion 21 v. Coalition for Humane Immigrant Rights of L.A.*, 117 Cal. App. 4th 1138, 1147 (2004)). Inadmissible evidence includes "hearsay" or evidence that "is speculative, not based on personal knowledge or consists of impermissible opinion testimony." *Id.*

## A.    Exhibits 1A, 1B, and 1C Are Inadmissible under FRE 1006.

Plaintiff's montages or "charts," which purportedly summarize the evidence in support of his malicious prosecution claims, do not meet the requirements of Federal Rule of Evidence 1006. (*See* Psaila Decl., Exs. 1A–1C). Under Rule 1006, the proponent of a chart or summary of evidence must (1) "make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place," FED. R. EVID. 1006, and (2) "establish a foundation that [ ] the underlying materials upon which the summary is based are admissible in evidence." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984). Plaintiff has not met either requirement.

---

the evidence submitted with the Opposition, they limit their arguments here to the exhibits attached to Plaintiff's declaration that are the most problematic. (*See* Evidentiary Objections to Plaintiff's Evidence in Support of Opposition to Special Motion to Strike Complaint Pursuant to California Anti-SLAPP Statute (C.C.P. § 425.16, *et seq.*) ("Evidentiary Objections")).

First, Plaintiff has failed to make any of the underlying records referenced in Exhibits 1A, 1B, or 1C available to the EG Defendants, such that their "reliability and accuracy" can be verified. *Paddack*, 745 F.2d at 1261; *United States v. Miller*, 771 F.2d 1219, 1238 (9th Cir. 1985) (summary exhibits inadmissible where the proponent "failed to provide appellants with a copy of the underlying documents prior to the introduction of the summary").

Second, the "charts" are replete with irrelevant and inadmissible evidence, including hearsay. Although the EG Defendants' Evidentiary Objections discuss the inadmissibility of Exhibits 1A, 1B, 1C in detail, four egregious examples of such "evidence" are previewed below:

**<u>Exhibit 1B, at 140–141, 144–146 (Transactions 48 and 50)</u>**: Plaintiff claims that he charged Ms. Girardi twice in November 2015 for ready-to-wear (non-customized) outfits loaned to her for "upcoming photoshoot[s]." (Psaila Decl., Ex. 1B, at 1B-140–1B-141, 1B-144–1B-145). Plaintiff includes images of Ms. Girardi purportedly wearing the clothes described in Transactions 48 and 50 during a photoshoot. (*Id.* at 1B-141, 1B-145). These images, however, were published in a **February 2012** issue of *Regard Magazine*—more than three years before the charges at issue:





(*Id.* at 1B-141; *id.* at 1B-145).

Case No. 2:23-cv-07120-MWF (SKx)

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25



26
27     Accordingly, the images embedded in pages 1B-140–141, 144–146 are
28

-10-    Case No. 2:23-cv-07120-MWF (SKx)

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

1    irrelevant to Transactions 48 and 50.  FED. R. EVID. 401.[3]

2    **Exhibit 1B, at 28–29 (Transaction 7)**:  Plaintiff represents that he charged

3    Ms. Girardi for two bodysuits on April 1, 2015.  (Psaila Decl., Ex. 1B, at 1B-28).

4    For support, Plaintiff includes a picture of Ms. Girardi purportedly wearing a Marco

5    Marco bodysuit.  (*Id.* at 1B-29).  This photo, however, predates Transaction 7, as it

6    was posted to Ms. Girardi's Instagram account on **December 31, 2014**.  Plaintiff

7    does not claim that Ms. Girardi originally ordered this outfit in 2014.  The photo on

8    page 29 of Exhibit 1B is, therefore, irrelevant to the charge at issue in Transaction 7.

9    It also falsely suggests that the outfit pictured in the image was one of the items

10    charged in the April 1, 2015 invoice.

11    **Exhibit 1B, at 57–62 (Transactions 19 and 20)**: Plaintiff declares that Ms.

12    Girardi "originally ordered" a bodysuit on May 4, 2015 (Transaction 19), and Marco

13    Marco conducted repairs or "touch-up[s]" to the same bodysuit on July 13, 2015

14    (Transaction 20).  (Psaila Decl., Ex. 1B, 1B-61).  Plaintiff includes images of Ms.

15    Girardi purportedly wearing the bodysuit at issue, including an image that he states

16    was posted to Ms. Girardi's Instagram account on "July 24, 2015."  (*Id.*)[4]  But Ms.

17    Girardi already owned the outfit in **2014**.  In fact, she first posted the image shown

18    on page 61 of Exhibit 1B to her Instagram account on November 5, 2014, six

19    months before Plaintiff claims that she had even ordered the outfit.  Thus, the

20    images on page 61 of Exhibit 1B are irrelevant and inadmissible.

21    **Invoices and Order Forms in Exhibits 1A, 1B, and 1C**:  The invoices and

22    order forms referenced throughout Exhibits 1A–1C are hearsay lacking the requisite

23    trustworthiness to be admissible as business records.  FED. R. EVID. 803(6)(E).

24    Plaintiff's evidence establishes that he did not prepare invoices and order forms in a

25    _____

26    [3] *Relevant Magazine* identifies the price of the outfits pictured on pages 141 and 145
     of Exhibit 1B as $3,200, $900, and $1,250, respectively.  By contrast, Plaintiff
27    charged Ms. Girardi $8,200 and $8,600, respectively, in Transactions 48 and 50.

28    [4] The date on one image is covered, and the remaining two images are undated.

uniform manner:  Plaintiff declares that he usually charged Ms. Girardi twice for an outfit—once as a "deposit" and again for the "balance" when "the order was complete" (Psaila Decl., ¶ 20); however, he inexplicably abandoned this procedure on December 1, 2016 (Transaction 132).  (*See id.*, Ex. 1C, at 1B-397 (charging for a costume order "deposit" on November 30, 2016); *but see id.* at 1B-399 (charging for the "balance" of the same costume on December 1, 2016, even though it was "in-progress," i.e., incomplete); Psaila Decl., ¶ 31 (same)).[5]  Plaintiff's proof also shows he modified invoices—without evidence that this was a regular business practice. (*Id.*, Ex. 1C, at 1B-397 (list identifying the charged amount, corresponding invoice, and "Last Modified Date" for the November 30 and December 1, 2016 charges).  As such, the method and circumstances of preparation of the invoices and order forms do not meet the requirements of Rule 803(6)(E).  *Paddack*, 745 F.2d at 1259 n.7 (finding "substantial evidence" of untrustworthiness, including testimony that "revealed inaccuracies" in the underlying audit documents).

Accordingly, because Plaintiff's montages and charts consist of irrelevant and inadmissible hearsay evidence, the Court should not consider Exhibits 1A, 1B, and 1C in connection with the Anti-SLAPP Motion.  *Sweetwater Union High Sch. Dist.*, 6 Cal. 5th at 947; *Johnson*, 594 F.2d at 1255 ("[C]ounsel could [not] abrogate other restrictions on admissibility like the hearsay rule by the use of summaries; we cannot read Rule 1006 as preempting the other Rules.").

## III.   ARGUMENT

The Court should grant the Anti-SLAPP Motion because the EG Defendants' evidence "defeats the [P]laintiff's attempt to establish evidentiary support" for all three elements of Plaintiff's malicious prosecution claim as a matter of law.

---

[5] Plaintiff represented to a third party that the November 30, 2016 and December 1, 2016 charges were "for a deposit and then the balance upon completion."  (Psaila Decl., Ex. 1C, at 1B-402).

1    *Roberts*, 660 F.3d 1156, 1163 (9th Cir. 2011).

2    **A.**    **The EG Defendants Prevail on the First Prong of the Anti-SLAPP**

3    **Analysis Because Plaintiff's Suit Arises from Protected Activity.**

4    The EG Defendants have established that Plaintiff's claims arise from

5    protected activity, as required by prong one of the anti-SLAPP analysis.  First,

6    Plaintiff does not dispute that his claims against the EG Defendants arise from their

7    communications with law enforcement and participation in a criminal investigation

8    of Plaintiff, which led to a grand jury indictment.  These activities are

9    constitutionally protected petitioning activity.  *See Dickens v. Provident Life &*

10    *Accidents Ins. Co.*, 117 Cal. App. 4th 705, 714 (2004).

11    Second, Plaintiff has failed to meet his burden of showing that the EG

12    Defendants acted illegally as a matter of law.  To overcome a "presum[ption]" of a

13    validly exercised constitutional right, Plaintiff had to establish that the underlying

14    conduct was "illegal as a matter of law," meaning that "[t]he defendant must

15    concede the point, or the evidence conclusively demonstrate it."  *City of Montebello*

16    *v. Vasquez*, 1 Cal. 5th 409, 424 (2016).  The EG Defendants have never conceded to

17    making false reports to federal authorities (Dkt. Nos. 25-1, 25-6, 25-19 (declarations

18    of the EG Defendants in support of the Anti-SLAPP Motion)), and there is no

19    evidence to the contrary.  This fact alone establishes that the EG Defendants have

20    "made out a prima facie case that [their actions are] statutorily protected."  *Wilson v.*

21    *Cable News Network, Inc.*, 7 Cal. 5th 871, 888 (2019).

22    Nor has Plaintiff shown that undisputed evidence supports his sweeping

23    accusations of criminal conduct.  *Zucchet v. Galardi*, 229 Cal. App. 4th 1466, 1478

24    (2014) (illegality must be "undisputed").  Plaintiff's allegations are "insufficient."

25    *Wyles v. Sussman*, 2020 WL 4354233, at *3 (C.D. Cal. Mar. 19, 2020) (analogizing

26    to Rule 56 and noting that "[a]llegations in a pleading, of course, are insufficient to

27    demonstrate the existence of a genuine issue of material fact" in the anti-SLAPP

28    analysis).  While Plaintiff claims that the "standing authorization" he received to

-13-

charge Ms. Girardi's Amex credit card proves that the EG Defendants made false reports, the record shows otherwise.  (Opp'n at 12; Psaila Decl., ¶ 14).  The undisputed evidence shows that Ms. Girardi in fact never authorized overpriced or mistaken charges.  (Psaila Decl., ¶¶ 28, 32–34, 43–45).  Further, it is undisputed that before the EG Defendants communicated with the Secret Service or the USAO, Plaintiff had acknowledged billing "mistakes" and overcharges, refunded some charges, and given no other reason for the overcharges prior to filing this lawsuit.  Therefore, "there is no basis for [Plaintiff's] contention that he has conclusively established the falsity of [the EG Defendants'] statements" to federal law enforcement authorities.  *Zucchet*, 229 Cal. App. 4th at 1480.  Because Plaintiff has not established illegality as a matter of law, he has failed to rebut the EG Defendants' showing of protected activity.

> **B.      Plaintiff Has Failed to Meet His Burden on the Second Prong of the Anti-SLAPP Analysis of Showing, By Admissible Evidence, That His Malicious Prosecution Claim Has Merit.**

Despite filing over 400 pages of summary evidence and two declarations, Plaintiff has failed to show a probability of prevailing on any element of his malicious prosecution claims.  Critically, Plaintiff cannot show the EG Defendants lacked probable cause to reasonably suspect him of wrongdoing.  This failure alone ends the analysis.  To the extent that the Court proceeds to consider the remaining elements, the EG Defendants' evidence "defeats the [P]laintiff's attempt to establish evidentiary support for [his] claim." *Roberts*, 660 F.3d at 1163.  Therefore, the Court should grant the Anti-SLAPP Motion as a matter of law and strike the malicious prosecution cause of action.

> **1.      Undisputed Evidence Shows that the EG Defendants Had Probable Cause.  Because Plaintiff Cannot Prevail on This Element, the Anti-SLAPP Motion Should Be Granted.**

Plaintiff's burden of proof to show an absence of probable cause on an anti-

Case No. 2:23-cv-07120-MWF (SKx)
REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

SLAPP motion is straightforward.  He must show that the EG Defendants knew "of *no* facts that could provide reason to suspect the plaintiff of wrongdoing." *Roberts*, 660 F.3d at 1164.  But if "undisputed facts in the record do establish an objectively reasonable basis for bringing the underlying action," then the EG Defendants must prevail. *Sangster v. Paetkau*, 68 Cal. App. 4th 151, 168 (1998).  "[T]he existence of other, allegedly disputed facts is ***immaterial***" and does not alter this conclusion. *Id.*

This is the case here:  Key facts raised in the Anti-SLAPP Motion not only remain undisputed but also support a finding of probable cause as a matter of law.  Under these undisputed facts, particularly Plaintiff's undisputed admissions of billing "mistakes" and overcharges, Plaintiff cannot demonstrate that the EG Defendants knew of no facts to reasonably suspect Plaintiff of wrongdoing.  The existence of any other disputed fact is immaterial.

### (a)    Plaintiff Acknowledged Mistakes on September 19, 2016 and December 1, 2016 and Promised to Issue Refunds on Both Occasions.

It is undisputed that before the EG Defendants approached the Secret Service, Plaintiff had told the EG Defendants that Ms. Girardi's Amex credit card had been mistakenly charged or overcharged twice and issued refunds of those charges.  As such, any "standing authorization" that Ms. Girardi had given Plaintiff to charge her Amex card was rendered meaningless when Plaintiff admitted to mistaken charges.

Plaintiff does not dispute that he had spoken with Mr. Minden on September 19, 2016 about a charge to Ms. Girardi's Amex credit card or had issued a refund for the charge.  (*Compare* Anti-SLAPP Mot. at 15; *with* Psaila Decl., ¶ 28 ("During Mr. Minden's phone call to me on September 19, 2016, he said Ms. Girardi was 'surprised by the charge' and that she thought the price was too high for the remake of the leotards. . . . I decided to refund the transaction[.]")).  Plaintiff further does not dispute that the EG Defendants did not subsequently raise this charge with him. (*Compare* Anti-SLAPP Mot. at 15 (noting that the EG Defendants gave Plaintiff the

-15-

benefit of the doubt); *with* Psaila Decl., ¶ 28 (declaring that the EG Defendants did not follow up on this transaction)).  This evidence supports the EG Defendants' position that Ms. Girardi had noticed an unusual charge from Marco Marco in September 2016.

Plaintiff next does not dispute that he exchanged text messages with Mr. Minden on December 1, 2016 and had stated that "something was 'wrong.'" (*Compare* Anti-SLAPP Mot. at 15–16 (quoting Plaintiff's text message stating, "Ok that is very wrong.  Wtf is going on!?  I'm sorry.  I'm calling them [Amex] now. . . . I had this same issue with another client a week ago.  My apologies.  Time for a new bookkeeper"; *with* Psaila Decl., ¶ 33 ("I continued to text with Mr. Minden about the issue.  I told him something was 'wrong[.]'"); Opp'n at 21 n.9 (quoting Plaintiff's text message)).  Plaintiff does not contest that he told Mr. Minden he had returned "both" the November 30, 2016 and December 1, 2016 charges to Ms. Girardi's credit card but only refunded the December charge.  (Dkt. No. 25-19, Ex. 1; Psaila Decl., ¶ 32).  The tone of Plaintiff's texts to Mr. Minden convey alarm (which Plaintiff concedes), not a neutral statement merely intended "to keep the situation from escalating."[6]  (Psaila Decl., ¶ 33).  It is further undisputed that the EG Defendants were aware that as of December 1, 2016, Plaintiff had not reversed the November 30, 2016 charge.  (Dkt. No. 25-6, ¶¶ 24–26, 29).  Although Plaintiff declares that he did not mean what he said, his subjective intent and after-the-fact

_____

[6] Plaintiff claims in the Opposition that his text message to Mr. Minden "clearly establishes" that he "had no knowledge of the charges" from November 30, 2016 and December 1, 2016, when Mr. Minden had raised the issue with him.  (Opp'n at 20 n.9).  Plaintiff's own evidence contradicts this contention.  According to Exhibit 1C of his declaration, Plaintiff charged Ms. Girardi's credit card on December 1, 2016 at 7:23 a.m.  (Psaila Decl., Ex. 1C, at 1B-397).  He also modified the invoice created on November 30, 2016 at the same time.  (*Id.*)  Mr. Minden texted Plaintiff at 7:28 a.m. on December 1, 2016, or five minutes after Plaintiff had charged Ms. Girardi's credit card.  (Dkt. No. 25-19, Ex. 1).

1   spinning are wholly irrelevant.  *Roberts,* 660 F.3d at 1164 (probable cause is based
2   "on the facts known to the defendant").[7]

3        In addition, Plaintiff submits further evidence to support probable cause:  He
4   declares that he spoke with Ms. Girardi directly on December 1, 2016 about the
5   Marco Marco charges from November 30, 2016 and December 1, 2016.  (Psaila
6   Decl., ¶ 34).  According to Plaintiff, he did not tell Ms. Girardi that there were no
7   mistakes; he simply confirmed that "there were no **other** mistakes."  (*Id.*)

8        Taken together, these undisputed facts establish that the EG Defendants had
9   probable cause when they contacted the Secret Service about Plaintiff.

10              **(b)    Plaintiff Acknowledged on December 8, 2016 that He**
11                      **Was "Clearly Seeing Mistakes."**

12        Plaintiff in the Opposition does not address at all his December 8, 2016 email
13   to Ms. Girardi, in which he stated that he **"ha[d] been going through orders and**
14   **credit card statements over and over and [was] clearly seeing mistakes."**  (Anti-
15   SLAPP Mot. at 19; Dkt. No. 25-1, Ex. 2).  Nonetheless, because he has not
16   submitted evidence contradicting this communication, this fact is undisputed.  This
17   undisputed fact shows that after the EG Defendants' initial contact with the Secret
18   Service, Plaintiff had told them at least three (or four) times that Marco Marco had
19   made mistaken (*i.e.*, unauthorized) charges on Ms. Girardi's AMEX card.

20

21

22

23

24   ───────────────
25   [7] Plaintiff accuses the EG Defendants of "go[ing] too far" by interpreting Plaintiff's
     words, like "mistake," to convey an admission of error.  (Opp'n at 22).  Plaintiff
26   contends that his statements about a "mistake" meant "he viewed the situation as a
     business dispute that could be resolved by working together with his client."  (*Id.* at
27   20–21).  Plaintiff, not the EG Defendants, contorts commonly used words beyond
     their ordinary meaning.
28

-17-                                    Case No. 2:23-cv-07120-MWF (SKx)

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-
SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

**(c)    Plaintiff Admitted to Approximately $100,000 in
"Overcharges" on December 14, 2016 and Blamed the
Bookkeeper.**

It is undisputed that Plaintiff met with the EG Defendants on December 14, 2016 about Marco Marco's charges and told them that he "would do whatever it took to make things right, even if that meant taking out a loan to pay for any mistakes that may have been made." (Psaila Decl., ¶¶ 43–44). As with his December 8, 2016 email, however, Plaintiff in the Opposition is silent about his admission to over $100,000 in "overcharges" on December 14, 2016, despite his counsel acknowledging Mr. Psaila's admission in a declaration. (Dkt. No. 32-1, ¶ 4 ("In the transcript [of the December 14, 2016 meeting], **I can see that [Mr. Psaila] admits that he owes [Ms. Girardi] some money, just over $100,000[.]**")). This admission of a $100,000 overcharge supports probable cause, whether on its own or combined with Plaintiff's prior statements. Any reasonable person who heard Plaintiff's statement that he "owe[d]" over $100,000 would suspect Plaintiff of unauthorized credit card charges and potential wrongdoing. *See Sangster,* 68 Cal. App. 4th at 168 (affirming grant of summary judgment to defendant on malicious prosecution claim and holding that "[r]egardless of the state of [defendant's] knowledge," undisputed evidence of "repeated" admissions "clearly established probable cause" for the defendant's underlying litigation).

Plaintiff does not contest the EG Defendants' evidence showing that he had blamed the bookkeeper during the December 14, 2016 meeting, so it is undisputed. This fact shows that by December 14, 2016, Plaintiff had twice told the EG Defendants that his bookkeeper was to blame. However, Plaintiff states in the Opposition that he "handle[d] all of the business aspects of Marco Marco," including "creating invoices." (Psaila Decl., ¶ 7). There is no evidence that Plaintiff retracted his statements about the bookkeeper. Nevertheless, Plaintiff's words blaming the bookkeeper further demonstrate that it was reasonable for the EG

-18-

1  Defendants to believe that improper charges had been made on Ms. Girardi's Amex

2  credit card.

### (d)    Plaintiff Never Provided the EG Defendants with an Alternate Explanation for the Billing Mistakes or $100,000 in Overcharges.

6        Plaintiff offers lengthy descriptions of Marco Marco's billing practices,

7  including with respect to the charges on Ms. Girardi's Amex credit card, cost

8  breakdowns, and invoices.  (Psaila Decl., Exs. 1A–1C).  As with his subjective

9  interpretation of the words "mistake" or "wrong," however, this evidence is

10 irrelevant unless Plaintiff had conveyed this information to the EG Defendants.

11 *Roberts,* 660 F.3d at 1164.

12       Here, the EG Defendants submitted evidence that Plaintiff had never provided

13 such explanations to them.  (Dkt. No. 25-6, ¶ 49 (declaring that Plaintiff "did not

14 give any other explanation for the Marco Marco transactions" during the December

15 14, 2016 meeting); Dkt. No. 25-19, ¶ 36 (same)).  Plaintiff's declaration makes clear

16 that he did not provide reasons for the mistaken charges, other than the bookkeeper,

17 when confronted by the EG Defendants and chose not to follow up with the EG

18 Defendants.  (Psaila Decl., ¶ 28 (stating that Plaintiff told Mr. Minden that he and

19 Ms. Girardi could discuss the September 2016 charge at an upcoming fitting, but

20 that the issue "was not brought up again" and that "I decided to refund the

21 transaction"); *id.* at ¶¶ 40–43 (stating that, aside from sending some invoices,

22 Plaintiff did not explain any charges to the EG Defendants between December 1,

23 2016 and December 14, 2016); *id.* at ¶ 47 (stating that Plaintiff never explained the

24 billing issues during the December 14, 2016 and that he "never spoke again" to Ms.

25 Girardi since that day)).  Accordingly, even if the Court credits Plaintiff's evidence

26 that he created multiple invoices for the same outfit or combined multiple

27 transactions in one invoice, this evidence fails to eliminate probable cause.

28

1         **(e)**      **Plaintiff Admits that His Invoices, Which the EG**

2                     **Defendants Reviewed on December 14, 2016, Were**

3                     **Incomplete, Contained Errors, and Were "General."**

4       Although Plaintiff argues that his invoices constitute critical evidence for his

5   claim (*see generally* Compl.), his evidence shows that it was reasonable for the EG

6   Defendants to believe that they did not have supporting documentation.

7       It is undisputed that Plaintiff provided some invoices from 2015 and 2016 in

8   piecemeal fashion, but not all of the relevant invoices.  (Psaila Decl., ¶¶ 35–41, 47;

9   *see id.*, Exs. 1B–1C (noting that some, but not all, invoices had been given to the EG

10  Defendants)).  In fact, Plaintiff had not found all invoices as of December 14, 2016,

11  in part because they were "difficult" even for him to gather.  (Psaila Decl., ¶¶ 35–41,

12  47).  Plaintiff concedes that he did not give the EG Defendants any supplemental

13  documentation, including invoices, after December 14, 2016.  (*Id.* at ¶ 47).  Thus,

14  when Ms. Girardi and Ms. Ribatallada conducted a detailed analysis of the charges

15  after the December 14, 2016 meeting (which is undisputed), including of Plaintiff's

16  invoices, they correctly believed that the invoices were insufficient to support all

17  132 charges by Marco Marco to Ms. Girardi's Amex card.

18      Furthermore, Plaintiff admits that he himself had difficulty tracking down

19  invoices and matching charges to specific orders placed by the EG Defendants.

20  (Psaila Decl., ¶¶ 35–36, 39–40).  He also admits that there are errors in the invoices

21  he created for the charges to Ms. Girardi's Amex credit card.  (Psaila Decl., Ex. 1C,

22  at 1B-199 ("These two bodysuits were inadvertently omitted from Invoice #2368.");

23  *id.* at 1B-224 ("This invoice is incorrectly labeled as a music video in the BILL TO

24  section[.]";   Plaintiff further concedes that he kept the descriptions in the invoices

25  "somewhat general."  (*Id.* at 1B-190).  Under these circumstances, no reasonable

26  person could find that anyone could perfectly match every transaction on Ms.

27  Girardi's Amex credit card with the correct invoice.  Therefore, the undisputed facts

28  support a finding that the EG Defendants had probable cause based on the

1    information known to them.

2                  **(f)**      **The EG Defendants Conducted a Second Review of**

3                          **Documents Prior to Plaintiff's Indictment.**

4        It is undisputed that in addition to their review on December 14, 2016, the EG

5    Defendants again reviewed the information in their possession in April 2017, when

6    the USAO asked for documentation about Counts 2 through 7.  (Anti-SLAPP Mot.

7    at 21–22).  It is undisputed that even after finding a lack of supporting documents,

8    Ms. Girardi requested an opportunity to follow up with the USAO again "to make

9    SURE we're not missing anything."  (Dkt. No. 25-1, Ex. 4).  At this time, Plaintiff

10   had not provided the EG Defendants with additional documentation about Marco

11   Marco's 132 charges.  (Psaila Decl., ¶ 47).  The USAO only provided the EG

12   Defendants with a list of Counts 2 through 7, and no other documents.  (Dkt. No.

13   25-1, ¶ 103).  These facts raise a reasonable inference that the EG Defendants acted

14   cautiously and did their best to review the information they had, not the opposite.

15        In sum, the undisputed facts conclusively establish that the EG Defendants

16   had objective evidence that constituted probable cause to suspect Plaintiff of

17   potential wrongdoing and to report the matter to law enforcement.  *See Roberts*, 660

18   F.3d at 1165; *see id.* (finding that evidence known to the defendant "at least gave

19   [the defendant] reason to suspect that [an individual] lacked the authority" to revise

20   grants).  Because Plaintiff cannot meet his burden under *Roberts*, he fails to

21   demonstrate a probability of prevailing on this element of his malicious prosecution

22   claim as a matter of law and, ultimately, on the cause of action itself.

23        Accordingly, the Court should grant the Anti-SLAPP Motion and strike the

24   Complaint against the EG Defendants.

25              **2.**       **Plaintiff Has Not His Burden to Show a Favorable**

26                    **Termination on the Merits.**

27        Even if, however, the Court proceeds to consider the remaining two elements,

28   Plaintiff is unsuccessful.  On the first element of his malicious prosecution claim,

Case No. 2:23-cv-07120-MWF (SKx)

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)

Plaintiff relies on only three facts that he claims support a favorable termination on the merits of his criminal prosecution:  (1) the federal government's dismissal without prejudice of the indictment against him; (2) a statement issued by the USAO that the dismissal was due to "law enforcement evidence preservation issues"; and (3) statements by Plaintiff's criminal defense counsel that the dismissal was due to his advocacy and thus on substantive grounds.  (Opp'n at 14–15).  This evidence fails to raise a reasonable inference that Plaintiff's indictment was dismissed for reasons related to a lack of guilt or responsibility.

The dismissal without prejudice of Plaintiff's indictment alone does not "tend[] to indicate [the accused's] innocence of or lack of responsibility for the alleged misconduct."  *Jaffe v. Stone*, 18 Cal. 2d 146, 150 (1941).  Indeed, the USAO's reason for the dismissal, which the parties do not dispute, was "evidence preservation issues," or a procedural reason.  As discussed in the Anti-SLAPP Motion, a dismissal "on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt" does "not constitute a favorable termination." *Jaffe*, 18 Cal. 2d at 150.  There was no mention of a lack of guilt or responsibility in the notice of dismissal or the USAO's statement.  Though Plaintiff's criminal defense counsel opines that the dismissal was for substantive reasons, his statements are speculative, lack personal knowledge, and constitute impermissible lay opinion that must be disregarded.  Therefore, Plaintiff has not shown that the dismissal of his criminal indictment was a favorable termination on the merits.

### 3.      Plaintiff's Evidence Fails to Establish Malice.

Plaintiff further fails to establish that he can prevail on showing malice, the third element of his malicious prosecution claim.

Plaintiff's claim of malice rests on a purported "financial motive" held by the EG Defendants.  (Opp'n at 15).  Yet, he offers little admissible evidence in support of his position.  Plaintiff points the same "evidence" relating to the 132 Marco Marco charges that, as discussed above, fails to show illegality or an absence of

-22-

probable cause.  Plaintiff next contends that Ms. Girardi received a reimbursement from Amex, but the statements on which he relies for this "fact" are inadmissible hearsay.  Plaintiff submits evidence describing lawsuits involving Ms. Girardi's ex-husband, including his bankruptcy proceedings from 2021—five years after the underlying events.  (Bednarski Decl., ¶¶ 3–4).  This evidence is irrelevant and thus inadmissible.

### C.  Because Plaintiff Cannot Prevail on His Malicious Prosecution Claim, the Court Must Strike the Conspiracy Claim Against the EG Defendants.

As Plaintiff concedes, "his civil conspiracy claim cannot survive without his malicious prosecution claim."  (Opp'n at 11 n.7.)  Plaintiff has failed to establish a probability of prevailing on his malicious prosecution claim.  Therefore, his conspiracy cause of action against the EG Defendants likewise should and must be dismissed.

## IV.  CONCLUSION

Based on the foregoing, the EG Defendants request that the Court:  (1) strike the malicious prosecution claim and the conspiracy claim as asserted against the EG Defendants; (2) dismiss the Complaint as to the EG Defendants; and (3) authorize the EG Defendants to move for attorneys' fees and costs pursuant to California Code of Civil Procedure § 425.16(c).

DATED:  December 4, 2023          Respectfully submitted,

GREENBERG GROSS LLP

By: _____
Evan C. Borges
Heejin H. Hwang
Attorneys for Defendants Erika Girardi,
Laia Ribatallada, and Michael Minden

## **L.R. 11-6.2 – CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the EG Defendants, certifies that this brief contains 5964 words, which complies with the word limit of L.R. 11-6.1.

DATED:  December 4, 2023

By: _____

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE (C.C.P. § 425.16, ET SEQ.)