1
2
3
4
5
6
7

HARVINDER S. ANAND (SBN 243913)
ANAND LAW GROUP, P.C.
301 N. Lake Avenue, Suite 600
Pasadena, California 91101
Phone: (626) 239-7250
Fax: (626) 239-7150
Email: harv@anandlawgroup.com

Attorneys for Defendant
LORENZO ROBERT SAVAGE III

8

## UNITED STATES DISTRICT COURT

9

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, and DOES 1 TO 10, Inclusive,<br><br>Defendants. | Case No. 2:23-cv-07120 MWF (SKx)<br><br>Honorable Michael W. Fitzgerald<br><br>**DEFENDANT ROBERT SAVAGE'S NOTICE OF AND MOTION TO DISMISS COMPLAINT**<br><br>**[REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]**<br><br>Complaint served: 9/12/2023<br><br>Hearing:<br>Date: April 8, 2024<br>Time: 10:00 a.m.<br>Courtroom: 5A |

-1-

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 8, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California, 90012, Courtroom 5A, Defendant Lorenzo Robert Savage III, sued herein as Robert Savage, will and hereby does respectfully move this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing Plaintiff Christopher Psaila's Complaint. This motion is made following the conference of counsel pursuant to L.R. 7-3 on February 2, 2024.

Mr. Savage respectfully requests that the Court dismiss the complaint because Plaintiff does not state a plausible *Bivens* claim against Mr. Savage, who was the Special Agent in Charge of the Secret Service's Los Angeles office at the time of Plaintiff's criminal investigation. Then-SAIC Savage played no role in Plaintiff's criminal matter, except to ask other agents to investigate Erika Girardi's report of credit card fraud. When Plaintiff's conclusions and naked assertions are stripped from the complaint, he has not stated a claim for relief. Mr. Savage enjoys qualified immunity in this matter and a *Bivens* claim does not exist under settled authorities.

Dated: February 9, 2024

Respectfully submitted,

ANAND LAW GROUP, P.C.

By: _/s/ Harvinder S. Anand_____
HARVINDER S. ANAND

Attorneys for Defendant
Lorenzo Robert Savage III

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

II.   RELEVANT FACTS ...................................................................................6

    A.    Summary of Plaintiff's Allegations against Mr. Savage .....................6

    B.    Plaintiff Does Not Cite Any Secret Service Report Showing
          SAIC Savage Ever Made a Single False Statement or Report in
          the Investigation or Even that SAIC Savage Was Involved in the
          Matter .................................................................................................7

    C.    Plaintiff's Allegations of Reckless Investigation ................................9

    D.    Plaintiff's Allegations of False Reports................................................9

    E.    Plaintiff's Allegations of Concealment of Purported Exculpatory
          and Impeachment Evidence ...............................................................11

III.  MOTION TO DISMISS LEGAL STANDARDS .......................................13

IV.   THE COURT SHOULD FIRST STRIP PLAINTIFF'S NAKED
    ASSERTIONS AND CONCLUSIONS FROM THE COMPLAINT .........13

    A.    Plaintiff Himself Tacitly Admits there Was No Bribery by
          Conceding that Mr. Girardi Provided Mr. Savage Legal Services
          and that the $7,500 Payment Was To Compensate for Damages.......14

    B.    Plaintiff Resorts To Grouping SIAC Savage with Others
          Because SIAC Savage Was Not Involved in the Investigation ..........16

V.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE FACTS
    SHOWING SAIC SAVAGE ENGAGED IN WRONGDOING;
    HE CANNOT BE HELD VICARIOUSLY LIABLE FOR THE
    ACTIONS OF OTHERS .............................................................................16

    A.    Plaintiff Must Plead Facts Showing SAIC Savage Personally
          and Intentionally Acted Unconstitutionally .......................................16

[CONTINUED NEXT PAGE]

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
**(continued)**

**Page(s)**

B.      Plaintiff's Conclusory Claims about SAIC Savage's Involvement in the Search Warrant Application Do Not State a Claim for Relief ........................................................................................ 18

C.      There Was No *Brady* Evidence and in any Event the Government Is Not Required To Present Exculpatory Information to the Grand Jury ........................................................ 19

VI.     A *BIVENS* CLAIM DOES NOT EXIST ............................................ 20

A.      Courts Refrain from Creating a *Bivens* Remedy in New Contexts .... 20

B.      This Case Presents a New Context Because SAIC Savage Was a Senior Official Who Played No Role in the Investigation, which Was Overseen by the United States Attorney's Office ...................... 20

       1.      Extending *Bivens* to the former leader of the Secret Service's Los Angeles Office is unwarranted because he did not violate Plaintiff's rights and he is not vicariously liable .......................................................................................... 21

       2.      Plaintiff's general and speculative claims against a high-ranking former official are far different from *Bivens* .............. 22

       3.      The legal mandates here are vastly different ............................ 22

       4.      Extending *Bivens* would intrude into the Executive Branch ................................................................................... 23

C.      Special Factors Preclude a *Bivens* Remedy in this Case ................... 23

VII.     CONCLUSION ............................................................................ 25

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ............................................................................. 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................*passim*

*Bailey v. Cox,* No. 122CV00757JLTSABPC,
  2023 WL 6930883 (E.D. Cal. Oct. 19, 2023),
  report and recommendation adopted, No. 122CV0757JLTSABPC,
  2023 WL 8789405 (E.D. Cal. Dec. 19, 2023).................................... 25

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................*passim*

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
  403 U.S. 388 (1971) ....................................................................*passim*

*Bush v. Lucas,*
  462 U.S. 367 (1983) ................................................................... 23, 24

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994)................................................. 13, 14, 16

*Daly-Murphy v. Winston,*
  837 F.2d 348 (9th Cir. 1987)..................................................... 13 n.4

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
  751 F.3d 990 (9th Cir. 2014)......................................................... 2, 15

*Egbert v. Boule,*
  596 U.S. 482 (2022) ....................................................................*passim*

*Farah v. Weyker,*
  926 F.3d 492 (8th Cir. 2019)..................................................... 23, 24

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1
2
3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

4   **Cases:**

5   *Ganek v. Leibowitz,*

6      874 F.3d 73 (2d Cir. 2017) ................................................................. 18

7   *Harlow v. Fitzgerald,*

8      457 U.S. 800 (1982) ........................................................................ 17

9   *Hernandez v. Mesa,*

10      140 S. Ct. 735 (2020) ........................................................... 20, 23, 24

11   *Hirsch v. Arthur Andersen & Co.,*

12      72 F.3d 1085 (2d Cir. 1995) ............................................................ 15

13   *Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM,

14      2024 WL 326598 (D. Or. Jan. 29, 2024)......................................... 17

15   *Jones v. U.S. Secret Serv.*, No. CV 22-0962 (TSC),

16      2023 WL 8634586 (D.D.C. Nov. 10, 2023)..................................... 22

17   *Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448,

18      2023 WL 5426738 (9th Cir. Aug. 23, 2023)............................... 21, 22

19   *McGurk v. Jusino*, No. 5:22-CV-00529-SB-JDE,

20      2022 WL 17080128 (C.D. Cal. Aug. 22, 2022)............................... 25

21   *Mitchell v. Forsyth,*

22      472 U.S. 511 (1985) ........................................................................ 17

23   *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.,*

24      No. 10-CV-1777 ADS AKT,

25      2011 WL 381612 (E.D.N.Y. Feb. 2, 2011) ...................................... 15

26   *O'Neal v. Eu,*

27      866 F.2d 314 (9th Cir. 1989) ..................................................... 17, 18

28

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1

**TABLE OF AUTHORITIES**
**(continued)**

2

3

**Page(s)**

4

**Cases:**

5   *Orellana v. Mayorkas*,

6      6 F.4th 1034 (9th Cir. 2021)............................................................ 2, 15

7   *OSU Student All. v. Ray*,

8      699 F.3d 1053 (9th Cir. 2012)............................................................ 17

9   *Pettibone v. Russell*,

10     59 F.4th 449 (9th Cir. 2023).......................................................*passim*

11  *Purbeck v. Coffin*, No. 1:21-CV-00047-BLW,

12     2024 WL 342092 (D. Idaho Jan. 29, 2024)......................................... 22

13  *Robertson v. Sichel*,

14     127 U.S. 507 (1888) ........................................................................... 17

15  *Shwarz v. United States*,

16     234 F.3d 428 (9th Cir. 2000)....................................................... 19 n.5

17  *Sprewell v. Golden State Warriors*,

18     266 F.3d 979 (9th Cir. 2001).............................................. 13, 14, 16

19  *United States v. Al Mudarris*,

20     695 F.2d 1182 (9th Cir. 1995)............................................................ 19

21  *United States v. Alvarez*,

22     358 F.3d 1194 (9th Cir. 2004)............................................................ 19

23  *United States v. Perkins*,

24     850 F.3d 1109 (9th Cir. 2017)..................................................... 18 n.5

25  *United States v. Santiago*,

26     46 F.3d 885 (9th Cir. 1995)............................................................... 19

27

28

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases:**

*United States v. Williams*,

   504 U.S. 36 (1992) ............................................................................ 19

*Wood v. Moss*,

   572 U.S. 744 (2014) ...................................................................... 3, 17

*Ziglar v. Abbasi*,

   137 S. Ct. 1843 (2017) ...............................................................*passim*

**Rules:**

Federal Rule of Criminal Procedure 16(a) ............................................... 7

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    Introduction and Summary of Argument.

3        Unable to muster any facts against Lorenzo Robert Savage III, sued herein

4 as Robert Savage, Plaintiff resorts to lumping Mr. Savage together with other

5 defendants and pleading irrelevant legal labels and conclusions in his highly

6 repetitive 70-page complaint.  Nothing can change the truth: Mr. Savage played *no*

7 role in this matter other than to direct Agents Kenneth Henderson and Steve

8 Scarince to investigate Erika Girardi's credit card fraud complaint, as Plaintiff

9 admits.  And that irrefutable truism is why Plaintiff is unable to plead any facts

10 against Mr. Savage—there is simply nothing to allege against him.  Plaintiff's

11 *Bivens*[1] claim against Mr. Savage is as devoid of factual merit as it is legally

12 untenable.  Mr. Savage respectfully requests that the Court dismiss the complaint.

13       The Court should "begin [its analysis] by identifying pleadings that, because

14 they are no more than conclusions, are not entitled to the assumption of truth."

15 *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  This is especially important here.

16 Stripped of Plaintiff's conclusions, the complaint does not state a claim for relief.

17       Plaintiff's theory of liability is that Tom Girardi "bribed" Mr. Savage to

18 illegally charge Plaintiff with crimes, that Mr. Savage and the other defendants

19 knew or should have known Plaintiff was completely innocent, and that Mr.

20 Savage conspired with seven other named defendants to file criminal charges

21 against Plaintiff.  None of that is true.  Mr. Savage knows the Court is unable to

22 decide facts now, but a close examination of the complaint's few factual

23 allegations as to Mr. Savage and application of settled legal principles establish

24 that the complaint does not plead a plausible claim for relief.

25       Plaintiff's most salacious and scandalous allegation, and apparently the

26 underpinning for his entire claim, is that Mr. Girardi on "information and belief"

27 _____

28 [1]      *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S.
388 (1971).

-1-

1   "bribed" then-Special Agent in Charge ("SAIC") Savage.  (Dkt. No. 1, at 5:25-26
2   [Complaint ("Compl.")].)  But Plaintiff himself admits numerous facts tacitly
3   conceding that assertion is untrue.  Plaintiff states that Mr. Girardi provided Mr.
4   Savage legal services by "represent[ing] [him] in a lawsuit against Volkswagen
5   where Savage was a plaintiff" (*id.* at 5:26-27), that Mr. Savage received a $7,500
6   settlement offer through prior counsel before he engaged Mr. Girardi (*id.* at 20:12-
7   16), and that Mr. Girardi paid Mr. Savage that exact same sum of money "to
8   compensate Mr. Savage for his *damages* in the Volkswagen suit" (*id.* at 6:3-4
9   (emphasis added); *see also id.* at 52:22-26).  Because those facts themselves prove
10  that Mr. Girardi paid Mr. Savage for a valid legal reason, it was not a bribe and
11  Plaintiff's allegation is a legal label the Court should ignore.  *E.g., Orellana v.*
12  *Mayorkas*, 6 F.4th 1034, 1043 (9th Cir. 2021) (explaining "the complaint itself
13  undermines [the plaintiff's] theory of the case," which "renders it implausible");
14  (*see also infra*, Section IV.A.).

15       Moreover, Plaintiff admits Mr. Girardi informed the federal judge in the
16  Volkswagen case that he would pay Mr. Savage money because the court was
17  unhappy with Mr. Girardi entering the case at the eleventh hour, after the matter
18  had been settled.  (Compl., at 21:3-13.)  Plaintiff quotes Mr. Girardi as informing
19  the judge: "If the Court thinks I intentionally did something wrong or tried to do
20  anything inappropriate, that doesn't work with me, so I personally would pay him
21  $100,000."  (*Id.* at 21:7-11.)  Plaintiff admits Mr. Girardi "[e]ventually" paid
22  $7,500, the settlement amount that had been reached before Mr. Girardi got
23  involved.  (*Id.* at 52:22-26; *see also id.* at 5:26-27, 20:12-16, 6:3-4.)

24       The Court can determine based on its "judicial experience and common
25  sense" that no person would announce to a court and the world that he would pay
26  another person money if it actually was a bribe.  *E.g., Eclectic Props. E., LLC v.*
27  *Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014) (rejecting complaint
28  allegation because pleaded facts "do[] not tend to exclude a plausible and

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1    innocuous alternative explanation").  At bottom, Plaintiff attempts to leverage the

2    troubling accusations against Mr. Girardi with a fabricated "bribery" allegation.

3    That is especially ironic here given Plaintiff's complaint allegations.

4         Plaintiff's remaining allegations are equally long on hyperbole and

5    conclusory labels but devoid of facts as to Mr. Savage.  Plaintiff's 70-page

6    complaint is filled with *ad nauseam* accusations such as: Mr. Savage "actively and

7    instrumentally [was] involved in instigating and causing a baseless criminal arrest

8    . . . [and] the return of a grand jury indictment" (Compl., at 50:1-3) and he "caused

9    fabricated statements to be in the Search Warrant application and the Indictment

10   which if not made would have shown there was no probable cause for the Search

11   Warrant and Indictment" (*id.* at 51:26-52:3).  But nowhere does Plaintiff allege any

12   fact showing that Mr. Savage took a single action in this matter other than to

13   "direct[] Defendants Scarince and Henderson to assist with the *investigation*" of

14   credit card fraud Ms. Girardi "reported" "to the Secret Service . . . through [then-

15   SAIC] Savage." (*Id.* at 18:13-16, 20:20-21 (emphasis added)).  Plaintiff would

16   have alleged additional facts against Mr. Savage if he had them because Plaintiff

17   received more than 3,500 pages of discovery from the government in his criminal

18   case.  (Req. Jud. Not. ("RJN"), Exh. 2 at 3:8-11 [Dkt. No. 38 (Stip. To Continue

19   Trial Date)].)  SAIC Savage's non-involvement in this matter was for good reason.

20   He was running the nation's third largest Secret Service office and his primary

21   responsibility was to protect the President of the United States and other high-

22   ranking government officials.  It is settled that "[i]ndividual government officials

23   cannot be held liable in a *Bivens* suit unless they themselves acted

24   unconstitutionally."  *Wood v. Moss*, 572 U.S. 744, 763 (2014) (cleaned up).  Mr.

25   Savage enjoys qualified immunity.  (*See infra*, Section V.)

26        Even as to the other defendants, Plaintiff makes numerous unsupported

27   allegations and his case fundamentally rests on faulty and untrue assumptions.

28   Plaintiff posits that Agents Henderson and Scarince knew or should have known

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

Ms. Girardi's credit card fraud allegations were untrue and that they thus proceeded to maliciously prosecute Plaintiff. But on December 14, 2016, Plaintiff "admit[ted] [in a recorded conversation] that he owe[d] [Ms. Girardi] . . . just over $100,000." (Dkt. No. 32-1, at 1:22-26 [Decl. of M. Bednarski].) Plaintiff omits that highly critical fact from his complaint. Instead, he claims that "Defendant Erika Girardi extorted Plaintiff Psaila into agreeing he might have mistakenly made some accounting errors." (Compl., at 21:24-26.) He further contends that "the Defendant Secret Service Agents [a term Plaintiff does not define but includes then-SAIC Savage] and Defendants Erika Girardi, Ribatallada and Minden saw this as an opportunity to bully and cow Plaintiff Psaila into agreeing he overcharged Erika Girardi." (*Id.* at 21:22-24.) Plaintiff's "extortion" and "bullying" accusations are also completely naked assertions unsupported by any facts. (*Id.* at 21:14-22:7.) And they are contrary to the recent straightforward concession by his attorney that Plaintiff "admit[ted]" owing Ms. Girardi "just over $100,000" on December 14, 2016, but which he still attempted to downplay as just "some money." (Dkt. No. 32-1, at 1:26.)

The complaint's omission of Plaintiff's December 14, 2016, recorded admission likely was strategic because Plaintiff's own words apparently framed why the investigation proceeded as it did and his statement alone significantly undermines Plaintiff's theory of the case. That is, Plaintiff's admission itself was a basis to investigate him and his admission refutes his current claim that everyone knew he was innocent. Agents Henderson and Scarince did not have to accept Plaintiff's admission that he had overcharged Ms. Girardi by "just over $100,000." They were free, if not obligated, to investigate fully. Twenty-six days after Plaintiff made his recorded admission, "[o]n January 9, 2017, Defendant Secret Service Agent Henderson applied for and received a Search Warrant to search Marco Marco's business premises, computers, and electronic devices, and seize all business records, computers, mobile devices and phones." (Compl., at 24:9-12.)

1   Given the foregoing record, that development hardly seems surprising.  Mr. Savage
2   emphasizes that he knew nothing about any of those events as they unfolded.  This
3   discussion is based entirely on facts in and inferences drawn from the record.

4          The involvement of numerous uninterested third parties also undermines
5   Plaintiff's allegations and makes the *Bivens* claim against Mr. Savage inapplicable.
6   The United States Attorney's Office (the "USAO" or "government") supervised
7   Agent Henderson.  The USAO not only approved his search warrant application,
8   but an Assistant United States Attorney ("AUSA") likely drafted Agent
9   Henderson's affidavit, which is what occurs in most cases.  AMEX—an
10  independent third party—issued the Girardi's a refund for $787,117.88 (Compl., at
11  32:21-22) and "told the Secret Service that Erika Girardi was the victim of Chris
12  Psaila's fraud" (*id.* at 5:13-14).  Plaintiff curiously does not say when those events
13  occurred, another omission that may have been strategic.  Plaintiff admits that
14  "most reasonable people would assume . . . a reimbursement of that size
15  [$787,117.88] would be persuasive evidence of wrongdoing" and "grand jurors
16  would naturally infer that [the] AMEX . . . refund would mean that Plaintiff did
17  defraud Erika Defendant Girardi, [otherwise] why else would such a reputable
18  company make such a refund?"  (*Id.* at 34:5-12.)  Plaintiff does not allege, nor
19  could he, that then-SAIC Savage ever spoke to or influenced AMEX or the
20  government.  Finally, Plaintiff also admits that Ms. Girardi and Ms. Ribatallada
21  represented to the USAO one day before the grand jury indicted Plaintiff that they
22  "could [not] find any emails, text messages, or invoices to support [seven
23  indictment] charges."  (*Id.* at 39:6-8.)  SAIC Savage was not involved in the
24  interview.
25         A *Bivens* claim "is a disfavored judicial remedy that courts must refrain
26  from creating" while conducting a two-step inquiry.  *Egbert v. Boule*, 596 U.S.
27  482, 491-92 (2022).  The Ninth Circuit recently rejected a *Bivens* claim against the
28  Director of the Federal Protective Service's Northwest Region because the

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

complaint arose in a new context and special factors counselled against fashioning a judicial remedy. *Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023). Most of the court's analysis applies and controls here. (*See infra*, Section VI.) The court should dismiss the complaint.

## II.   Relevant Facts.

### A.   Summary of Plaintiff's Allegations against Mr. Savage.

Plaintiff alleges a single *Bivens* claim against Mr. Savage. (Compl., at 49:17-58:5; *see also id.* at 8:1-3.) Plaintiff contends that Mr. Savage violated his Fourth Amendment right "to be free from unreasonable searches and seizures" and his Fifth Amendment "right to due process of law" (*id.* at 49:24-27) because Plaintiff "was wrongfully prosecuted by the Secret Service and the federal government." (*Id.* at 8:4-5.) According to Plaintiff, "[a]ll Defendants agreed and conspired to maliciously prosecute Chris Psaila for alleged wire fraud and identity theft." (*Id.* at 4:3-4.) But Plaintiff inconsistently contends that "Erika Girardi made and caused her assistants . . . to make" "false accusations" to the Secret Service against Plaintiff. (*Id.* 4:22-24.)

Plaintiff makes three main claims against Mr. Savage. *First*, "[t]he Secret Service . . . recklessly investigated this case and deliberately ignored the true facts which would have shown the absence of probable cause to indict Plaintiff Chris Psaila." (*Id.* at 8:5-7.) *Second*, "the Secret Service prepared reports that were false, ignoring true facts which would have shown their reports were false." (*Id.* at 8:8-9.) *Third*, "the Secret Service Defendants in this case concealed exculpatory and impeachment evidence that would have materially affected the outcome of the case and would have led to the absence of an indictment, a dismissal, or an acquittal at trial." (*Id.* at 8:9-12.) Plaintiff's complaint allegations purportedly supporting these three main claims against Mr. Savage are discussed below.

It is important to note at the outset, however, that Plaintiff does not support his claims about SAIC Savage's purported involvement in his criminal

-6-

investigation with a single document from the more than 3,500 pages of discovery he received from the government.  (*See infra*, Section II.B.)  As Plaintiff admits, "at all relevant times" Mr. Savage was the SAIC "of the Los Angeles Field Office of the United States Secret Service."  (Compl., at 12:4-6.)  Agent Henderson "was in charge of the Psaila investigation."  (*Id.* at 12:16.)  Although SAIC Savage supervised Agent Henderson (*id.* at 12:17), that was only indirectly and SAIC Savage supervised over 150 special agents and support personnel in the Los Angeles office.  Steve Scarince, a first-level supervisor whose title was Assistant to the SAIC (*id.*), was responsible for directly supervising Agent Henderson.

B.     Plaintiff Does Not Cite Any Secret Service Report Showing SAIC Savage Ever Made a Single False Statement or Report in the Investigation or Even that SAIC Savage Was Involved in the Matter.

A grand jury returned a nine-count indictment against Plaintiff on April 28, 2017.  (Compl., at 10:2.)  The district court issued a Case Management Order on May 25, 2017, requiring the government to disclose *inter alia* "all materials set forth in" Federal Rule of Criminal Procedure 16(a) and "any search warrants and supporting affidavits" in Plaintiff's case.  (RJN, Exh. 1, at 2:10-12, 2:18-20 [Dkt. No. 24].)  The government produced "over 3,500 pages of discovery" to Plaintiff by June 5, 2018.  (RJN, Exh. 2, at 3:8-11 [Dkt. No. 38 (Stip. To Continue Trial Date)].)  The government's discovery would have included all Secret Service reports regarding Plaintiff's criminal case and the search warrant affidavit.  The government also produced "interview notes."  (*Id.* at 3:10.)

Despite repeatedly claiming the "Secret Service" prepared "false" reports (*e.g.*, Compl. at 8:8; *see also id.* at 7:16 ("fabrication of Secret Service reports")), Plaintiff does not attach or cite in his 70-page complaint any report showing Mr. Savage made any false statement or prepared any report, much less a false report. Nor does Plaintiff contend that SAIC Savage played any role in preparing, reviewing, or approving any Secret Service report.  (*See* Compl.)  Rather, Plaintiff

-7-

attaches only two Secret Service reports, *i.e.*, Memoranda of Interviews, prepared by Agent Henderson.  (Dkt. Nos. 1-2 & 1-3.)  Each report states the person interviewed, the date and place of interview, and who conducted the interview.  (*Id.*)  The reports also summarize the witness's statements and include Bates numbers apparently stamped by the government.  (*Id.*)  Those reports are discussed below.  SAIC Savage was not present for or involved in either interview.  (*Id.*)

Plaintiff also did not attach the search warrant affidavit to his complaint.  (Compl.)  Other than a single bald assertion on "information and belief" that SAIC Savage "endorsed and approved" the search warrant application (*id.* at 24:25-26), Plaintiff does not contend that SAIC Savage played any role in drafting, reviewing, or approving the search warrant affidavit.  (*Id.*)  Nor does Plaintiff attribute to SAIC Savage a single false statement in the search warrant affidavit; instead, he repeatedly complains about investigative steps the agents did not perform and about purported omissions from the affidavit.  (*See infra*, Section II.D.)  Plaintiff, however, did not move in his criminal case to suppress any evidence seized under the search warrant or claim that he was entitled to a *Franks* hearing for purported false statements in or material omissions from the search warrant affidavit.  (RJN, Exh. 3 [Docket].)

Plaintiff appears to complain that his criminal case was dismissed "almost five years after the investigation . . . commenced."  (Compl., at 6:12-14.)  But he stipulated to ten continuances of his criminal trial date before the Coronavirus pandemic started and three more continuances after March 2020.[2]  In each stipulation, Plaintiff's defense counsel "represent[ed] that he needs additional time to prepare for, or try, this case on the . . . trial date."  (*E.g.*, RJN, Exh. 4 [Dkt. No 56 (Stipulation dated Jan. 6, 2020)].)

---

[2]    Plaintiff filed the ten stipulations between May 24, 2017, and January 6, 2020.  (RJN, Exh. 3 [Docket].)  He filed three more on May 15, 2020, October 1, 2020, and April 6, 2021.  (*Id.*)

C.    Plaintiff's Allegations of Reckless Investigation.

Plaintiff avers that "[t]he Secret Service, and Defendants Savage, Scarince and Henderson, failed to do any due diligence to solicit evidentiary proof from either AMEX or Erika and Tom Girardi to substantiate whether any of the actual invoices and credit card charges were false and/or unauthorized." (Compl., at 5:19-22.)  But Plaintiff does not allege anywhere in his 70-page complaint that Mr. Savage played any role in his investigation or prosecution.  (*See* Compl.)

Rather, relying solely on a newspaper article, Plaintiff speculates purportedly "[o]n information and belief" "the Girardis [*i.e.*, Erika and Tom Girardi] solicited and bribed" Mr. Savage "to cause his agents, Defendants Scarince and Henderson, to criminally investigate Chris Psaila for federal crimes, instead of treating the disputed transactions as an ordinary business dispute." (*Id.* at 5:2-5; *id.* at 19 n.6 ("Information about the relationship between the Girardis and Savage was obtained from a news article . . . in the Los Angeles Times, dated February 9, 2023."); *see also id.* at 20 n.7.)  According to Plaintiff, the bribe was "an agreement for Tom Girardi to represent Savage in a lawsuit against Volkswagen where Savage was a plaintiff." (*Id.* at 5:26-27.)

Plaintiff, however, admits that Tom Girardi "eventually personally paid Mr. Savage $7,500 to compensate Mr. Savage for his damages in the Volkswagen suit." (*Id.* at 6:3-4.)  Plaintiff also admits that Mr. Savage had already received the very same settlement offer of $7,500 before Mr. Girardi began to represent Mr. Savage in the Volkswagen lawsuit.  (*Id.* at 20:12-16.)

D.    Plaintiff's Allegations of False Reports.

As noted above, Plaintiff attaches only two reports to his complaint. The first report states that Agent Henderson interviewed Peter Grimm, Bank Investigator for American Express, on April 20, 2017.  (Dkt. No. 1-2, at 2.)  The second report states that Agent Henderson and AUSA George Pence interviewed

Ms. Girardi and Laia Ribatallada on April 27, 2017.  (Dkt. No. 1-3, at 2.)  Mr. Savage was not involved in either interview or in preparing either report.  (Dkt. Nos. 1-2, 1-3.)

Plaintiff admits the first report "accurate[ly]" reports that AMEX "reimbursed" Ms. Girardi and her husband, but he contends the report was false because AMEX should not have reimbursed them.  (Compl., at 35:10-15.)  Plaintiff does not allege any fact showing that Mr. Savage knew about his current claim that AMEX should not have reimbursed the Girardi's.  (*See* Compl.)

Plaintiff admits the second report accurately documents Ms. Girardi's and Ms. Ribatallada's representations to the USAO one day before the grand jury indicted Plaintiff, namely, that the witnesses "could [not] find any emails, text messages, or invoices to support [seven indictment] charges."  (Compl., at 39:6-8.)  Plaintiff contends Ms. Girardi and Ms. Ribatallada "just lied" to the USAO (*id.* at 39:20) and that their "reports to the Secret Service constituted false reports to a law enforcement agency" (*id.* at 39:24-25).  Plaintiff further claims that the "false reports were intentionally ratified by" SAIC Savage (*id.* at 40:1-2), but here again, Plaintiff does not allege any fact showing that SAIC Savage was involved in any way with the witnesses' interactions with the USAO or that he had any knowledge of Plaintiff's current claims.  (*See* Compl.)

Although Plaintiff contends that the search warrant affidavit was false, he does not attach it and he does not make any factual allegation that SAIC Savage played any role in obtaining the warrant.  (*See* Compl.)  Indeed, Plaintiff admits that Agent Henderson signed the affidavit and complains about investigative steps Agent Henderson did not perform and omissions from his affidavit.

"On January 9, 2017, Defendant Secret Service Agent Henderson applied for and received a Search Warrant to search Marco Marco's business premises, computers, and electronic devices, and seize all business records, computers, mobile devices and phones."  (*Id.* at 24:9-12.)  "[T]he Search Warrant was issued

1  based on reckless mistruths by Defendant Henderson" and "based on lies and

2  without probable cause."³  (*Id.* at 24:24-25:1.)  Plaintiff complains about

3  investigative steps that Secret Service agents—almost exclusively Agent

4  Henderson—did not perform.   (*Id.* at 25:6-7 ("failed to interview" plaintiff and his

5  business partner); *id.* at 25:16-17 ("failed to interview any Marco Marco

6  customers"); *id.* at 26:16 ("Defendant Henderson did not research the Marco

7  Marco business."); *id.* at 26:21-23 ("Defendant Henderson failed to review any

8  business documents . . . [and] failed to review Plaintiff's AMEX history of

9  transactions.").)  Plaintiff also complains about omissions from the warrant

10 affidavit, stating "the entire search warrant affidavit for every single transaction

11 was based on incomplete and unreliable information." (*Id.* at 26:11-13.)  Plaintiff

12 concludes that Agent Henderson should not have alleged that his business was

13 "permeated by fraud." (*Id.* at 26:14-15.)

14      Plaintiff contends "on information and belief" that Mr. Savage "endorsed

15 and approved" the search warrant application (*id.* at 24:25-26), but he does not

16 state a single fact to support that purported belief (*id.* at 24:9-27:2).  And Plaintiff

17 does not contend that Mr. Savage was involved in executing the warrant, stating

18 instead that Plaintiff "was subjected to extensive interrogation and public

19 humiliation by Defendants Scarince and Henderson."  (*Id.* at 27:15-16.)

20      E.    Plaintiff's Allegations of Concealment of Purported Exculpatory and

21            Impeachment Evidence.

22      Plaintiff claims that "[n]either the personal connections between the Girardis

23 and Savage, nor the bribe, were disclosed to Chris Psaila, his counsel or the grand

24 jury during the criminal investigation, indictment, and prosecution of" Plaintiff.

25 (*Id.* at 6:5-8.)  Plaintiff also claims that Mr. Savage "had a history of falsely billing

---

26 ³    Plaintiff elsewhere contends that "the Secret Service Defendants [*i.e.*,

27 including SAIC Savage] . . . averred in the Search Warrant affidavit that
   [Plaintiff's] business was 'permeated with fraud'" (Compl. at 31:26-32:1), but that

28 claim is refuted by Plaintiff's admissions that Agent Henderson applied for the
   search warrant (*id.* at 24:9-12).

for advance Presidential location scouting trips" that was not disclosed.  (*Id.* at 6:8-9.)  Plaintiff contends that the "Indictment was procured by fraud and lacked probable cause" based on Plaintiff's three main claims, namely, the Secret Service recklessly investigated the case and deliberately ignored the true facts, the Secret Service prepared false and "fabricated" reports, and the Secret Service's "concealment of exculpatory and impeachment evidence not presented to the grand jury or [Plaintiff's] defense."  (*Id.* at 7:10-19.)

According to Plaintiff, the "Defendants knew" before Plaintiff's indictment that all of Marco Marco's credit charges "were authorized [and] legitimate."  (*Id.* at 16:21-27.)  But Plaintiff does not allege a single fact anywhere in his 70-page complaint purporting to show that Mr. Savage played any role in the USAO's independent decision to seek an indictment, or that Mr. Savage knew any of the things Plaintiff now claims are true.  (*See* Compl.)

Plaintiff likewise claims without a single supporting fact (*see id.*) that Mr. Savage "secur[ed] the eventual reimbursement of $787,117.88 for his friends, the Girardis" (*id.* at 32:12-13).  As just one example, Plaintiff does not even contend—despite possessing more than 3,500 pages of discovery from the government—that Mr. Savage ever spoke to or communicated with anyone at AMEX regarding this matter.  (*Id.*)  Indeed, Plaintiff blames "AMEX [for] violat[ing] its merchant agreement with Chris Psaila and its own guidelines by failing to conduct due diligence and determine whether Erika Girardi [sic] fraud claims were true or not."  (*Id.* at 33:5-7.)  Plaintiff admits that "most reasonable people would assume . . . a reimbursement of that size [$787,117.88] would be persuasive evidence of wrongdoing" and "grand jurors would naturally infer that [the] AMEX . . . refund would mean that Plaintiff did defraud Erika Defendant Girardi, [otherwise] why else would such a reputable company make such a refund?"  (*Id.* at 34:5-12.)

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1   **III.   Motion To Dismiss Legal Standards.**

2       To survive dismissal, factual allegations in a complaint "must be enough to

3   raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550

4   U.S. 544, 555 (2007), and must "state a claim to relief that is plausible on its face,"

5   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when

6   the plaintiff pleads factual content that allows the court to draw the reasonable

7   inference that the defendant is liable for the misconduct alleged."  *Id.*  A "pleading

8   must contain something more than a statement of facts that merely creates a

9   suspicion of a legally cognizable right of action."  *Twombly*, 550 U.S. at 555.

10   A "complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further

11   factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

12   557).  The Court is not "required to accept as true allegations that are merely

13   conclusory, unwarranted deductions of fact, or unreasonable inferences."

14   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

15   **IV.   The Court Should First Strip Plaintiff's Naked Assertions and**

16         **Conclusions from the Complaint.**

17       Mr. Savage respectfully requests that the Court "begin [its analysis] by

18   identifying pleadings that, because they are no more than conclusions, are not

19   entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679; *see also Clegg v. Cult

20   Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (explaining a court "is

21   not required to accept legal conclusions cast in the form of factual allegations if

22   those conclusions cannot reasonably be drawn from the facts alleged").  Plaintiff

23   has not stated a basis to impose liability on Mr. Savage once Plaintiff's improper

24   allegations are removed from the complaint.[4]

25

26

27   _____

   [4]    The complaint appears to name Mr. Savage as a defendant in his individual

28   capacity.  If he is sued in his former official capacity, the *Bivens* claim is barred.
   *E.g., Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).

A.   <u>Plaintiff Himself Tacitly Admits there Was No Bribery by Conceding that Mr. Girardi Provided Mr. Savage Legal Services and that the $7,500 Payment Was To Compensate for Damages.</u>

Plaintiff seeks to create the specter of impropriety by invoking an unrelated matter involving attorney Tom Girardi.  Relying solely on information in a newspaper article, Plaintiff speculates that Mr. Girardi "bribed" SAIC Savage to undertake this investigation.  But Plaintiff implicitly admits that his own claim is untrue by conceding that Mr. Girardi provided Mr. Savage legal services while "represent[ing] [him] in a lawsuit against Volkswagen where Savage was a plaintiff" (Compl., at 5:26-27), that Mr. Savage received a $7,500 settlement offer through prior counsel before he engaged Mr. Girardi (*id.* at 20:12-16), and that Mr. Girardi paid Mr. Savage that exact same sum of money "to compensate Mr. Savage for his damages in the Volkswagen suit" (*id.* at 6:3-4).

The payment took place after "[t]he Court was displeased and angry with Girardi's last-minute intervention in a case where a settlement had already been reached and expressed that to Mr. Girardi."  (*Id.* at 21:6-7.)  Plaintiff admits that "[i]n response [*i.e.*, to rectify his disruption of the existing settlement], Tom Girardi told the Court": "If the Court thinks I intentionally did something wrong or tried to do anything inappropriate, that doesn't work with me, so I personally would pay him $100,000."  (*Id.* at 21:7-11 (quoting Tom Girardi's statement to the court).)  "The next day, December 14, 2016, Tom Girardi filed papers dismissing Defendant Savage's claims against Volkswagen."  (*Id.* at 21:11-13.)

Plaintiff's own factual allegations contradict his bribery claim, a legal conclusion the Court should ignore.  *Clegg*, 18 F.3d at 754-55.  The undisputed facts—that Mr. Girardi paid the exact same preexisting settlement amount to which Mr. Savage was entitled, and which Mr. Girardi spontaneously offered to pay apparently to mollify the court—do not support Plaintiff's bribery claim.  *E.g.,* *Sprewell*, 266 F.3d at 988 (explaining a court is not "required to accept as true

allegations that are merely . . . unwarranted deductions of fact, or unreasonable inferences").

The Court also is not required to accept Plaintiff's bribery label because, by admitting contrary, irreconcilable facts, Plaintiff undermines his theory of the case, which is that there was a *quid pro quo* here. *Orellana*, 6 F.4th at 1043 (explaining "the complaint itself undermines [the plaintiff's] theory of the case," which "renders it implausible"); *Eclectic Props. E., LLC.*, 751 F.3d at 999 & n.8 (holding that where allegations in the complaint were internally inconsistent, the allegations supported "at best—a 'possible' basis to believe [plaintiffs' theory], not a 'plausible' one") (cited in *Orellana*, 6 F.4th at 1043); *accord Hirsch v. Arthur Andersen Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (upholding dismissal where "attenuated allegations" were "contradicted both by more specific allegations in the Complaint"); *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777 ADS AKT, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011) ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (internal quotations omitted).  Plaintiff only alleges bribery because he knows his claim is devoid of factual support.

Finally, the Court is permitted to rely on its "judicial experience and common sense," *Eclectic Properties E.*, LLC, 751 F.3d at 998 (quoting *Iqbal*, 556 U.S. at 679), to conclude that no person would announce to a court and the world that he would pay another person money if it actually was a bribe.  Plaintiff's unadorned bribery claim is implausible because his own admission of the above facts, at minimum, "do[] not tend to exclude a plausible and innocuous alternative explanation." *Eclectic Properties E.*, LLC, 751 F.3d at 998; *see also Iqbal*, 556 U.S. at 682 (explaining that the plaintiff's request that court infer "purposeful, invidious discrimination" was not a "plausible conclusion" given "obvious alternative explanation" for arrests).

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1  B.  <u>Plaintiff Resorts To Grouping SAIC Savage with Others Because</u>

2  <u>SAIC Savage Was Not Involved in the Investigation</u>.

3  The rest of Plaintiff's 70-page complaint is equally long on hyperbole and

4  conclusory labels but devoid of facts as to SAIC Savage.  Plaintiff repeatedly

5  lumps SAIC Savage together with Agents Henderson and Scarince because he

6  simply does not have any facts to plead against SAIC Savage.  (*See supra*, Sections

7  II.A.-D.)  In short, Plaintiff does not allege that SAIC Savage personally took any

8  investigative action in this matter even though he has more than 3,500 pages of

9  discovery from his criminal case.  (RJN, Exh. 2.)  If Plaintiff had any facts against

10  SAIC Savage, he would have pleaded them.

11  Indeed, Plaintiff admits that SAIC Savage "directed Defendants Scarince

12  and Henderson to assist with the investigation" (Compl., at 20:20-21) after Ms.

13  Girardi "reported credit card fraud" "to the Secret Service . . . through [SAIC]

14  Savage" (*id.* at 18:13-16).  But Plaintiff does not allege any facts showing that

15  SAIC Savage was personally involved in—or even that he knew about any aspect

16  of—the Secret Service's investigation after Ms. Girardi's initial report.  (Compl.)

17  The Court thus should disregard Plaintiff's numerous, repetitive unsupported

18  conclusions regarding Mr. Savage's alleged involvement in this matter.  *Clegg*, 18

19  F.3d at 754-55; *Sprewell*, 266 F.3d at 988.

20  **V.  <u>The Complaint Does Not Plausibly Allege Facts Showing SAIC Savage</u>**

21  **<u>Engaged in Wrongdoing; He Cannot Be Held Vicariously Liable for the</u>**

22  **<u>Actions of Others</u>.**

23  A.  <u>Plaintiff Must Plead Facts Showing SAIC Savage Personally and</u>

24  <u>Intentionally Acted Unconstitutionally</u>.

25  "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff

26  must plead that each Government-official defendant, through the official's own

27  individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

28  "[I]ndividual government officials 'cannot be held liable' in a *Bivens* suit 'unless

-16-

they themselves acted [unconstitutionally].'" *Wood*, 572 U.S. at 763 (quoting *Iqbal*, 556 U.S. at 683; alteration in original).  This rule applies to "[t]he head of a department, or other superior functionary." *Robertson v. Sichel*, 127 U.S. 507, 515 (1888).  "A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances or negligences or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties." *Id.* at 515-16.  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (same).

Qualified immunity protects government officials from personal liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "It is a heavy burden to prove a clearly established right for the purposes of qualified immunity." *Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM, 2024 WL 326598, at *3 (D. Or. Jan. 29, 2024) (citing cases).  As long as there is a "legitimate question" about the constitutionality of particular conduct, "it cannot be said that [such conduct] violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985).

Qualified immunity "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Iqbal*, 556 U.S. at 672; *id.* at 685 ("avoidance of disruptive discovery").  To determine "whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability . . . for an official charged with violations arising from his or her superintendent responsibilities." *Iqbal*, 556 U.S. at 677; *see also O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1989)

("A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*.").

      B.   <u>Plaintiff's Conclusory Claims about SAIC Savage's Involvement in the Search Warrant Application Do Not State a Claim for Relief</u>.

Plaintiff contends that the search warrant affidavit was false but he did not attach it to his complaint and he does not make any factual allegation that SAIC Savage played any role in obtaining the warrant.  (*See* Compl.)  Plaintiff does aver that Agent Henderson signed the search warrant affidavit (*id.* at 24:9-12), complains about investigative steps Agent Henderson did not perform (*id.* at 25:6-7, 25:16-17, 26:16, 26:21-23), and complains about Agent Henderson's omissions from the affidavit (*id.* at 26:11-13 ("the entire search warrant affidavit for every single transaction was based on incomplete and unreliable information").

But Plaintiff claims only on "information and belief" that SAIC Savage "endorsed and approved" the search warrant application.  (*Id.* at 24:25-26.)  Plaintiff does not state any fact to support that bald conclusion, which is insufficient to impose vicarious liability on SAIC Savage.  *E.g., Iqbal*, 556 U.S. at 676 (explaining "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Ganek v. Leibowitz*, 874 F.3d 73, 92 (2d Cir. 2017) (holing that a plaintiff has "to plead facts showing each supervisor defendant's personal involvement in the submission of an intentionally or recklessly false statement to the magistrate judge" in a search warrant application; plaintiff's claim "the search had been carefully considered at the highest levels" by the USAO was "not enough to admit an inference that supervisors knew or should have known that a statement in the warrant affidavit, attributed to [to the witness], was false").[5]

_____

[5]    Moreover, even for Agent Henderson, Plaintiff's failure to attach the affidavit does not permit the court to evaluate whether the search warrant was obtained illegally.  *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (explaining that to prove a *Franks* violation, the defendant must show "that the affiant officer intentionally or recklessly made false or misleading statements or

1

      C.     <u>There Was No *Brady* Evidence and in any Event the Government Is</u>

2

                   <u>Not Required To Present Exculpatory Information to the Grand Jury</u>.

3

        Plaintiff's claim that SAIC Savage "suppressed and concealed *Brady*

4

information from the Assistant United States Attorney, the Grand Jury, defense

5

counsel and Chris Psaila during the criminal prosecution, without which there was

6

no probable cause to proceed with the charges" (Compl., at 52:4-7) is both

7

factually untrue and legally insufficient to state a claim.

8

        As discussed above, Plaintiff's bribery claim is not supported by facts.

9

He has only pleaded at most a professional relationship between Messrs. Savage

10

and Girardi.  That is irrelevant because Mr. Savage was not a percipient witness, he

11

played no role in Plaintiff's investigation and prosecution, he would not have been

12

a witness at trial, and Plaintiff did not even have a trial.  Accordingly, there was no

13

*Brady* evidence and there was no *Brady* violation.  *United States v. Alvarez*, 358

14

F.3d 1194, 1211 (9th Cir. 2004) (explaining "[t]he test for materiality [for *Brady*

15

violation] is whether the requested evidence might affect the outcome of the trial");

16

*United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) ("Neither a general

17

description of the information sought nor conclusory allegations of materiality

18

suffice.").  The government is not required to present *Brady* evidence to a grand

19

jury.  *United States v. Williams*, 504 U.S. 36, 51–53 (1992); *United States v. Al*

20

*Mudarris*, 695 F.2d 1182, 1186 (9th Cir. 1995).  *Henthorn* only applies to

21

testifying witnesses and Mr. Savage had nothing to say about Plaintiff's case.

22

*Santiago*, 46 F.3d at 895.  In any event, Plaintiff stipulated to receiving the

23

government's "supplemental disclosure," which included *Henthorn* material, on

24

_____

25

omissions in support of the warrant and that the false or misleading statement or
omission was material, *i.e.*, necessary to finding probable cause") (cleaned up).

26

Without making that showing, there can be no Fourth Amendment violation on
which to premise *Bivens* liability.  *See Shwarz v. United States*, 234 F.3d 428, 435

27

(9th Cir. 2000) ("Because the issuing court's reliance on the falsehoods in the
[agent's supporting] declarations does not undermine its findings of probable

28

cause, the Orders for Entry were valid. Thus, the search and seizure were
constitutional, and Appellants' *Bivens* claim was rightly dismissed.").

---

1   October 22, 2021.  (RJN, Exh. 5, at 2:12-14 [Dkt. No. 64 (Stipulation dated Apr. 6,
2   2021)]; *id.*, Exh. 1, at 3:2-6 [Case Management Order].)  The disclosure was due
3   approximately one month after his case was dismissed.  (Compl., at 10:4-5.)

4   **VI.**   **A *Bivens* Claim Does Not Exist.**

5        A.   Courts Refrain from Creating a *Bivens* Remedy in New Contexts.

6        A "*Bivens* remedy [is] not . . . available if there are special factors
7   counselling hesitation in the absence of affirmative action by Congress."  *Abbasi*,
8   137 S. Ct. at 1857 (2017) (cleaned up).  A "cause of action under *Bivens* is a
9   disfavored judicial" remedy that "courts must refrain from creating" while
10  conducting a two-step inquiry.  *Egbert v. Boule*, 596 U.S. 482, 491-92 (2022)
11  (cleaned up).  In step one, a court "inquire[s] whether the request involves a claim
12  that arises in a 'new context' or involves a 'new category of defendants.'"
13  *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).  In step two, "if a claim arises in a
14  new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating
15  that the Judiciary is at least arguably less equipped than Congress to 'weigh the
16  costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 596 U.S. at
17  492 (quoting *Abbasi*, 137 S. Ct. at 1858).  "[T]hose [two] steps often resolve to a
18  single question: whether there is any reason to think that Congress might be better
19  equipped to create a damages remedy."  *Egbert*, 596 U.S. at 492.  If "there is *any*
20  reason to think [the answer is "yes"] [courts] must refrain from recognizing [a
21  damages remedy]."  *Pettibone*, 59 F.4th at 454 (quoting, *Egbert*, 142 S. Ct. at
22  1803; emphasis in *Pettibone*).

23       B.   This Case Presents a New Context Because SAIC Savage Was a
24            Senior Official Who Played No Role in the Investigation, which Was
25            Overseen by the United States Attorney's Office.

26       The complaint should be dismissed under the Supreme Court's two-step
27  inquiry.  Plaintiff's complaint allegations arise in a new context and Congress is
28  better equipped to create any damages remedy, especially given the few complaint

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

allegations against Mr. Savage here.  The Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants" and "[i]ndeed, the Court has refused to do so for the past [now more than 33] years." *Abbasi*, 137 S. Ct. at 1857 (internal quotations omitted).

The Ninth Circuit's analysis in recently rejecting a *Bivens* claim is similar to the issues in this matter and it controls here.  In assessing whether a context is "new," a court may consider only "the three cases in which the [Supreme] Court has implied a damages action." *Pettibone*, 59 F.4th at 455 (quoting *Egbert*, 142 S. Ct. at 1803).  "The [Supreme] Court has provided a non-exhaustive list of 'differences that are meaningful enough to make a given context a new one,' including 'the rank of the officers involved; the generality or specificity of the official action; the statutory or other legal mandate under which the officer was operating; and the risk of disruptive intrusion by the Judiciary into the functioning of other branches.'" *Pettibone*, 59 F.4th at 455 (quoting *Abbasi*, 137 S. Ct. at 1859–60).

"This case differs from *Bivens*—the only Supreme Court case recognizing an implied damages remedy for Fourth Amendment violations—along all of [the four] dimensions [enumerated above]." *Pettibone*, 59 F.4th at 455.

           1.   <u>Extending *Bivens* to the former leader of the Secret Service's Los Angeles Office is unwarranted because he did not violate Plaintiff's rights and he is not vicariously liable.</u>

SAIC Savage was the senior official in charge of the Secret Service's Los Angeles office, whereas the Federal Bureau of Narcotics agents in *Bivens* were "a different rank." *Id.* at 450, 455 (explaining claim was a new context because the defendant was "high-level supervisor" as "Director of the Federal Protective Service's Northwest Region"); *see also Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023) (unpublished) (affirming district court's ruling because claim involved "new category of

defendants," including "the FBI Director"); *Purbeck v. Coffin*, No. 1:21-CV-00047-BLW, 2024 WL 342092, at *4 (D. Idaho Jan. 29, 2024) (citing cases and explaining "several courts, applying *Egbert*," have found "claims against FBI agents present a new context").

          2.   <u>Plaintiff's general and speculative claims against a high-ranking former official are far different from *Bivens*</u>.

SAIC Savage's "alleged actions, which consisted of ordering or acquiescing in unconstitutional conduct, took place at a higher level of generality than the actions of the agents in *Bivens*, who personally seized Bivens and searched his apartment." *Pettibone*, 59 F.4th at 455.  Plaintiff makes the exact same allegation here that the Ninth Circuit found in *Pettibone* to be a new context.  *Id.*

          3.   <u>The legal mandates here are vastly different</u>.

The legal mandate under which SAIC Savage allegedly acted in this case differs from *Bivens* because a magistrate court authorized a search warrant and the grand jury voted to indict Plaintiff, whereas in *Bivens* the agents searched the plaintiff's home without a warrant.  *E.g., Purbeck*, 2024 WL 342092, at *4 (collecting cases and explaining courts have found "the existence of a [search] warrant" to be a "key distinction" from *Bivens*); *Massaquoi*, 2023 WL 5426738, at *2 (finding existence of search warrant created a new context).

Moreover, SAIC Savage's primary duty and responsibility was to oversee the nation's third largest office charged with protecting the President of the United States and other high-ranking government officials, not to write or execute search warrants.  *Cf. Pettibone*, 59 F.4th at 455 (concluding different context existed because the Director of the Federal Protective Service's Northwest Region was "directing a multi-agency operation to protect federal property"); *cf. also Jones v. U.S. Secret Serv.*, No. CV 22-0962 (TSC), 2023 WL 8634586, at *3 (D.D.C. Nov. 10, 2023) (finding different context even for Secret Service field officers who

"operate under a statutory mandate to ensure the President and other high-ranking officials' protection") (appeal filed).

        4.    <u>Extending *Bivens* would intrude into the Executive Branch</u>.

Permitting this case to proceed against Mr. Savage based on purported actions he took as the former leader of the Secret Service's Los Angeles office "would carry a greater 'risk of disruptive intrusion by the Judiciary into the functioning of other branches' than was present in *Bivens*." *Cf. Pettibone*, 59 F.4th at 455 (making same finding because the defendant was "was carrying out an executive order"; quoting *Abbasi*, 137 S. Ct. at 1860); *see also Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) ("Probing the causal chain in cases like these would involve delving into the evidence before numerous decisionmakers, including federal investigators, prosecutors, and the grand jury.").

The above non-exhaustive differences "are more than sufficient to make this a new *Bivens* context." *Pettibone*, 59 F.4th at 455. The Supreme Court's "understanding of a new context is broad." *Mesa*, 140 S. Ct. at 743 (internal citations omitted). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.* The "new-context inquiry is easily satisfied" and "even a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1864-65.

C.    <u>Special Factors Preclude a *Bivens* Remedy in this Case</u>.

"If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Pettibone*, 59 F.4th at 456 (quoting *Egbert*, 142 S. Ct. at 1803). This court should decline to create a *Bivens* remedy in this new context based on the same "special factors" recognized in *Abbasi*, *Pettibone*, and other cases.

This inquiry focuses on "'who should decide' whether to provide for a damages remedy. . . . The answer most often will be Congress." *Abbasi*, 137 S. Ct. at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). When a new context

1    "involves a host of considerations that must be weighed and appraised, it should be

2    committed to those who write the laws rather than those who interpret them." *Id.*

3    (internal quotations omitted) (quoting *Bush*, 462 U.S. at 380).

4         The Court should consider: (1) "the risk of interfering with the authority of

5    the other branches"; (2) whether "'there are sound reasons to think Congress might

6    doubt the efficacy or necessity of a damages remedy'"; and (3) "'whether the

7    Judiciary is well suited . . . to consider and weigh the costs and benefits of allowing

8    a damages action to proceed.'" *Mesa*, 140 S. Ct. at 743 (quoting *Abbasi*, 137 S. Ct.

9    at 1857-58). The Supreme Court rejects any *Bivens* claim if consideration of these

10   factors gives it "reason to pause before applying *Bivens* in a new context." *Id.*

11        As discussed above, "the 'risk of disruptive intrusion by the Judiciary into

12   the functioning of other branches' counsels hesitation in this case." *Pettibone*, 59

13   F.4th at 456 (quoting *Abbasi*, 137 S. Ct. at 1860). Plaintiff makes no factual

14   assertion showing Mr. Savage undertook any investigative step, directed any

15   investigative step, or that he even knew about any aspect of the investigation

16   carried out by other agents. (*See supra*, Sections II.A.-D.) Indeed, Plaintiff admits

17   that SAIC Savage "directed Defendants Scarince and Henderson to assist with the

18   investigation" of Ms. Girardi's reported fraud. (Compl. at 20:20-21.) The agents

19   conducted the investigation under the supervision of the USAO, which approved

20   seeking a search warrant and indictment. This special factor is significant. *Farah*,

21   926 F.3d at 500 (finding "the risk of burdening and interfering with the executive

22   branch's investigative and prosecutorial functions . . . would invite a wide-ranging

23   inquiry into the evidence available to investigators, prosecutors, and the grand

24   jury"). The court should decline to extend *Bivens* under these circumstances.

25        "If there are alternative remedial structures in place, 'that alone,' like any

26   special factor, is reason enough to 'limit the power of the Judiciary to infer a new

27   *Bivens* cause of action.'" *Pettibone*, 59 F.4th at 456 (quoting *Egbert*, 142 S. Ct. at

28   1804). As in *Pettibone*, Plaintiff here "can report any alleged misconduct to the

-24-

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**

1  Inspector General of the Department of Homeland Security, who must either
2  investigate or refer the matter to the Officer for Civil Rights and Civil Liberties."
3  *Pettibone*, 59 F.4th at 456-57.  Secret Service agents are part of the Department of
4  Homeland Security.  "Here, Congress has afforded [Plaintiff] an alternative
5  remedy "that independently foreclose[s] a *Bivens* action." *Id.* (quoting *Egbert*, 142
6  S. Ct. at 1804).  Although not discussed in *Pettibone*, the Federal Tort Claims Act
7  (the "FTCA") "is another alternative remedial structure potentially available to
8  Plaintiff, which should preclude this court from 'fashioning a *Bivens* remedy.'"
9  *Bailey v. Cox*, No. 122CV00757JLTSABPC, 2023 WL 6930883, at *5 (E.D. Cal.
10  Oct. 19, 2023), report and recommendation adopted, No. 122CV0757JLTSABPC,
11  2023 WL 8789405 (E.D. Cal. Dec. 19, 2023) (quoting *Egbert*, 142 S. Ct. at 1804);
12  *McGurk v. Jusino*, No. 5:22-CV-00529-SB-JDE, 2022 WL 17080128, at *7 (C.D.
13  Cal. Aug. 22, 2022) (same).  Plaintiff asserts he will file a claim under the FTCA.
14  (Compl., at 10:9-10.)
15  　　　The Supreme Court has counseled courts not to create *Bivens* remedies on
16  their own without its express guidance.  *Abbasi*, 582 U.S. at 135.  The Court
17  should decline to do so for the foregoing reasons.
18  **VII.**　**Conclusion.**
19  　　　Mr. Savage respectfully requests that the Court dismiss the complaint.
20  Dated: February 9, 2024　　　　　　　Respectfully submitted,
21  　　　　　　　　　　　　　　　　　ANAND LAW GROUP, P.C.
22  　　　　　　　　　　　　　　　　　By:　/s/ Harvinder S. Anand
23  　　　　　　　　　　　　　　　　　HARVINDER S. ANAND
24  　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　Lorenzo Robert Savage III
25
26
27
28

**DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**