BARRETT S. LITT, SBN 45527
Email: blitt@mbllegal.com
DAVID S. McLANE, SBN 124952
Email: dmclane@mbllegal.com
MARILYN E. BEDNARSKI, SBN 105322
Email: mbednarski@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

STANLEY I. GREENBERG, SBN 53649
11845 W. Olympic Blvd., Ste. 1000
Los Angeles, CA 90064
Tel: (424) 248-6600
Fax: (424) 248-6601
Email: Stanmanlaw@aol.com

BRUCE BERNARD BEALKE
(pro hac vice)
(Illinois SBN 6200543)
77 West Wacker Drive, Ste. 45001
Chicago, IL 60601
Tel: (312) 216-7177
Fax: (312) 741-1010
Email: bealkelaw@protonmail.com

*Attorneys for Plaintiff* CHRISTOPHER PSAILA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>                Plaintiff,<br><br>        v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, and DOES 1 TO 10, Inclusive,<br><br>                Defendants. | Case no.: 2:23-cv-07120-MWF (SKx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT ROBERT SAVAGE'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: April 8, 2024<br>Time:          10:00 a.m.<br>Ctrm:          5A<br><br>Complaint filed: 8/29/2023 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.  MOTION TO DISMISS STANDARD ......................................................2

III. ARGUMENT..................................................................................................2

    A.   Plaintiff's Complaint Contains Plausible Allegations Establishing
        Defendant's Liability ...........................................................................2

        1.   Plaintiff has alleged more than sufficient plausible facts to state a
             *Bivens* malicious prosecution claim..........................................3

        2.   Savage's claim that there is no evidence to support the allegations
             confuses the summary judgment standard with the notice pleading
             standards..............................................................................10

        3.   The facts establish there was a bribe and quid pro quo despite
             Savage's desperate attempts to characterize it as just legal
             representation. .....................................................................11

        4.   Savage repeatedly adds facts not in the complaint and facts
             contradicted by the allegations that this Court should not consider. ....12

        5.   Savage obscures his role in initiating the investigation and
             prosecution by claiming the Secret Service were "obligated" to
             investigate. ..........................................................................14

    B.   Defendant Savage is Not Entitled to Qualified Immunity .......................14

    C.   Bivens Claim .......................................................................................15

        1.   Plaintiff's *Bivens* claims arise within previously established
             contexts ...............................................................................16

        2.   Even if Plaintiff's claims involve a new *Bivens* context, no special
             factors counsel against recognizing a *Bivens* damages remedy..........18

IV.  CONCLUSION ...........................................................................................22

# **TABLE OF AUTHORITIES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................2, 4, 10

*Bell Atlantic Co. v. Twombly,*
  550 U.S. 544 (2007)..................................................................2

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
  403 U.S. 388 (1971)..................................................................17

*Caltex Plastics, Inc. v. Lockheed Martin Corporation,*
  824 F.3d 1156 (9th Cir. 2016) ..................................................2

*Carlson v. Green,*
  446 U.S. 14 (1980)....................................................................21

*Davis v. Passman.,*
  442 U.S. 228 (1979)..........................................................17, 19, 20

*Devereaux v. Abbey,*
  263 F.3d 1070 (9th Cir. 2001) ..................................................15

*Egbert v. Boule,*
  596 U.S. 482 (2022)..............................................................16, 18

*Franks v. Delaware,*
  438 U.S. 154 (1978)..................................................................15

*Gibson v. United States,*
  781 F.2d 1334 (9th Cir. 1986) ..................................................4

*Groh v. Ramirez,*
  540 U.S. 551 (2004)..................................................................18

*Hartman v. Moore,*
  547 U.S.  250 (2006)............................................................15, 16

*In re Tracht Gut, LLC,*
  836 F.3d 1146 (9th Cir. 2016) ..................................................7

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005) ..................................................2

*KRL v. Moore,*
  384 F.3d 1105 (9th Cir. 2004) ..................................................7

*Kyles v. Whitley,*
  514 U.S. 419 (1995)..................................................................15

*Massaquoi v. Fed. Bureau of Investigation*,
  2023 WL 5426738 (9th Cir. Aug. 23, 2023) ................................................19

*Napue v. People of State of*,
  360 U.S. 264 (1959) ........................................................................................15

*Pettibone v. Russell*,
  59 F.4th 449 (9th Cir. 2023) ..............................................................18, 19, 21

*Purebeck v. Coffin*,
  2024 WL 342092 (D. Idaho, Jan. 29. 2024) ..................................................19

*Pyle v. State of Kansas*,
  317 U.S. 213 (1942) ........................................................................................15

*Scheurer v. Rhodes*,
  416 U.S. 232 (1974) ..........................................................................................2

*Van Strum v. Lawn*,
  940 F.2d 406 (9th Cir. 1991) .............................................................................3

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ..................................................................................16, 20

**Statutes**

18 U.S.C. § 201 ..................................................................................................12
18 U.S.C. § 3056 ................................................................................................21
28 U.S.C. § 540c(b) ...........................................................................................21
42 U.S.C. § 1983 ................................................................................................15

**Rules**

F.R.C.P. 8(a)(2) ............................................................................................2, 10

**Other Authorities**

9th Cir Jury Instructions 9.3 ...............................................................................9

## I.     INTRODUCTION

Defendant Savage moves to dismiss Plaintiff's complaint[1] by arguing that: (1) Plaintiff hasn't sufficiently factually plead a *Bivens* claim against him; (2) that Plaintiff's claim is not legally viable; and (3) that Savage is entitled to qualified immunity. Savage is wrong on all arguments.

First, the pleading standard requiring plausible factual allegations has been satisfied and no more is required. Plaintiff's complaint contains plausible facts establishing that Savage was directly and actively involved in every aspect of the criminal investigation against Plaintiff, and does not rely on conclusory allegations. Further, the Complaint plausibly alleges that but for Savage's friendship with the Girardis and the quid pro quo/bribe with the Tom Girardi, Plaintiff never would have been criminally investigated or indicted. Defendant's arguments otherwise are better suited for summary judgment after resolution of any disputed facts.

Additionally, because the gravamen of Plaintiff's complaint is that Savage maliciously prosecuted Plaintiff without probable cause and in reckless disregard of his constitutional rights, Plaintiff's *Bivens* claim is not a new context and is the type of conduct by law enforcement officers that *Bivens* is intended to remedy. Finally, Savage is not entitled to qualified immunity because the law was clearly established at the time that law enforcement officers cannot fabricate evidence, maliciously prosecute defendants, or conceal *Brady* evidence. Accordingly, this Court should deny Defendant Savage's motion to dismiss.

/ / /

/ / /

---

[1] Defendant Savage's memorandum of points and authorities is 8,811 words, exceeding the local rule limitation by 1,811 words. *See* L.R. 11-6.1, "no memorandum of points and authorities … my exceed 7,000 words . . . ." and fails to have the required attestation. L.R. 11-6.2.

## II.    MOTION TO DISMISS STANDARD

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint may be dismissed for failure to state a claim only when (1) it fails to state a cognizable legal theory or (2) fails to allege sufficient factual support for its legal theories. *Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156, 1159 (9th Cir. 2016). Additionally, when reviewing a motion to dismiss, the court accepts as true all factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See id.* at 679; *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III.    ARGUMENT

### A.    Plaintiff's Complaint Contains Plausible Allegations Establishing Defendant's Liability

Savage contends that he "played no role in this matter other than to direct Agents Kenneth Henderson and Steve Scarince to investigate Erika Girardi's credit card complaint," "there is simply nothing to allege against him," and that the claim against Savage is "devoid of factual merit."  Mtn., Dkt. 72, p. 1.

The facts alleged against Savage are the opposite: without Savage's involvement, this case would never have been prosecuted against Plaintiff. It was only because of Savage's personal, financial, and legal relationship with the Girardis that this case was commenced and prosecuted against Mr. Psaila. The essential facts, which discovery will corroborate and prove, are that Savage was responsible for the Secret Service investigation, and that without his actions, Plaintiff never would have been investigated or indicted without probable cause.[2] Additionally, Savage never revealed to the prosecutor or the defense his relationship with the Girardis, the quid pro quo, or receipt of a bribe to maliciously prosecute Plaintiff. To claim that there was no involvement by Savage, or that he was somehow on the sidelines when this investigation resulted in a $787,117.88 refund to his friends, in exchange for a $100,000 payment, defies logic and the natural inferences to be drawn from the complaint.

**1. Plaintiff has alleged more than sufficient plausible facts to state a *Bivens* malicious prosecution claim**

At this stage of the case, Plaintiff is not required to have all the evidence to prove Savage's involvement. All that is required are plausible facts showing Savage's personal involvement in the investigation and that his actions violated Plaintiff's rights—a burden Plaintiff has easily met. "Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). Accordingly, a plaintiff must plead that (1) the defendants acting under color of federal

---

[2] The allegations against Savage are alleged in the following paragraphs, and more than sufficient to suffice for notice pleading and stating a claim against Savage: ¶¶ 4, 6- 9, 11, 12, 21, 41-50, 53, 55,57, 58, 60, 62, 69, 73, 74, 76, 77, 85, 86, 89, 91, 92, 113, 115, 117-127, 143 and 162.

law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. *See Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

Plaintiff's Complaint does just that. Rather than containing "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 648, Plaintiff's 70-page complaint paints a detailed picture of the specific actions (or lack thereof) taken by Defendant Savage and others to deprive Plaintiff of his Fourth and Fifth Amendment rights by maliciously prosecuting him.

First, despite Defendant Savage's assertion that Plaintiff attempts to hold him vicariously liable for the actions of his subordinates, *see e.g.* Mot., p. 16:20-28, Plaintiff's complaint alleges **direct** conduct by Defendant Savage that caused violations of Plaintiff's constitutional rights. The criminal case against Plaintiff would not have occurred but for Savage's involvement.

As alleged in the Complaint, the Girardis were in a desperate financial condition at the time, Compl. ¶ 38, and thus concocted this scheme to obtain money from AMEX by claiming that Psaila made fraudulent charges against Defendant Girardi's AMEX for costumes and services he did not provide. Compl. ¶ 44. Defendant Savage agreed to investigate Plaintiff on behalf of the Girardis as part of a quid pro quo agreement with Tom Girardi. Compl. ¶ 50. Specifically, Tom Girardi agreed to represent Defendant Savage in a lawsuit against Volkswagen in exchange for Defendant Savage assisting Defendant Girardi with seeking reimbursement for the AMEX credit card charges. Compl. ¶¶ 47-48. Tom's representation resulted in a promise by Tom, in open court, to pay Savage $100,000. Compl. ¶ 49.

In furtherance of this goal and based solely on Defendant Girardi's unsubstantiated allegations, Defendant Savage, with a reckless disregard to Plaintiff's innocence, took the extraordinary step of directing Defendants Henderson and Scarince to immediately investigate. Compl. ¶ 48. Thus, the criminal investigation against

Plaintiff was initiated by Defendant Savage in exchange for an improper quid pro quo agreement.[3]

The timing of the investigation is not coincidental, and supports the allegation that Savage was bribed and improperly influenced to investigate Plaintiff. The day after Tom Girardi appeared in court representing Savage in his personal injury lawsuit and told the Court he would personally pay Savage $100,000, Compl. ¶ 49, "Savage, Scarince and Henderson, as part of the bribe and quid pro quo with Tom Girardi, sent Erika Girardi wearing a hidden recorder to meet with Plaintiff Psaila." Compl. ¶ 50. These facts support a conclusion that Savage was personally involved, not a hands-off remote supervisor. It is a fair inference that without the personal relationship and financial motives of the Girardis and Savage, this case would never have been accepted and investigated by Savage, Scarince and Henderson.  Further, it is reasonable to infer that, as alleged, Savage actively participated in key investigatory decisions, including directing Scarince and Henderson to send Defendant Girardi to secretly recording Plaintiff, swiftly applying for a search warrant without completing basic investigatory steps, and obtaining an indictment while disregarding exculpatory evidence seized and offering false and misleading statements to the grand jury, all on behalf of his friends.[4]

---

[3] Defendant's contention that Plaintiff's reliance on news reporting by the Los Angeles Times somehow diminishes the plausibility of Plaintiff's allegations contravenes the pleading standard applicable at the motion to dismiss stage. On the contrary, the Los Angeles Times article bolsters the plausibility of Plaintiff's allegations. The reporting, published in a reputable news periodical by a respected journalist, makes it more likely that Plaintiff's allegations occurred.

[4] Further, as alleged in the Indictment, Savage had a longstanding close relationship with the Girardis, as they had known each other for at least 10 years and they regularly socialized together. Compl. ¶ 43. Savage's wife's family knew the Girardis and the law firm from decades earlier as two of her relatives interned at the firm. *Id.*

For example, on December 14, 2016, the day of the secret recording, Defendant Savage emailed Defendant Grimm of AMEX (the AMEX investigator handling the Girardi claim) requesting a call to discuss the case. Compl. ¶ 55. In response to Savage calling Grimm, Grimm emailed Henderson on December 16, 2016, with bank account information showing money was sent to Psaila's business from Defendant Girardi's AMEX account. Compl. ¶ 56. Had Savage not been involved in the investigation, as he claims, this step would have been taken by Defendant Scarince and Henderson as the agents investigating Defendant Girardi's claim. Instead, Savage was personally involved in the investigation because it involved his friend Tom Girardi who promised to pay him $100,000. Even if he later only received $7,500 from Girardi, the die was cast: Savage had initiated the investigation and remained personally involved.

Next, it is a fair inference that Savage was personally involved with obtaining a search warrant for Plaintiff's businesses shortly after initiating the criminal investigation and before conducting other basic investigatory steps. At that point of the investigation, the agents had no credible evidence of fraud having been committed on Defendant Girardi, nor any Marco Marco customer, other than Defendant Girardi's allegations and a recording where Plaintiff made no admissions of wrongdoing, only speculation that there may have been some mistakes in billing. Compl. ¶ 57. Neither Henderson nor Scarince attempted to interview Plaintiff or his business partner, Marco Morante, to determine whether Defendant Girardi had given any authorization or if she received the goods and services she requested. *Id.* Despite knowing that the search warrant application contained false statements, including a false allegation that the business was permeated by fraud and that Plaintiff had initiated $801,013.63 in fraudulent AMEX transactions, Defendant Savage endorsed it in reckless disregard of Plaintiff's innocence. *Id.*

The terminology "permeated by fraud" has a specific meaning in 4th Amendment jurisprudence. Police investigators intentionally use this phrase to obtain

an all records warrant, rather than a more particularized warrant. *See KRL v. Moore*, 384 F.3d 1105, 1115 (9th Cir. 2004) ("[A] broad search is permitted under the Fourth Amendment where there is probable cause to believe the business is permeated with fraud"). An experienced investigator like Savage would have known this and would have directed Henderson to include it in the affidavit to justify obtaining all the business records. The use of the phrase evidences a reckless intentionality as it was designed to justify a broad fishing expedition through the business of Marco Marco in search of non-existent probable cause. As a result of Defendant Henderson's misrepresentations and reckless mistruths, which were endorsed and approved by Defendant Savage, a search warrant was issued despite the absence of probable cause. [5] *Id.*

        As a result of the Search Warrant's execution, the Secret Service obtained hundreds of documents substantiating all 132 transactions between Marco Marco and Defendant Girardi and that Plaintiff had not engaged in any criminal activity.  It is fair to infer that Savage, who was supervising Scarince and Henderson's review of the evidence, knew these records established Plaintiff's innocence but recklessly disregarded them and instead deliberately proceeded with the investigation and prosecution anyway. Their actions caused Plaintiff to be indicted, in reckless disregard

---

[5] Though Savage claims to have no knowledge about the search warrant or its execution, Mot. at p.5, that is a factual dispute to be resolved in discovery, not at the motion to dismiss stage. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff"). Here, it is reasonable to believe that Defendant Savage would have a continuing interest in overseeing the criminal investigation intended to benefit his friends. Additionally, he was in charge of the Los Angeles Secret Service office and had direct supervisorial authority over the investigation, and had a duty to supervise this investigation.

to the truth and took no action to correct their misrepresentations of the evidence. Compl. ¶¶ 57; 60-61; 64-65; 68-69; 77-78; 86; 89a-d.

At any point in time, Savage could have ended the investigation as the person in charge of the case, but he deliberately chose not to. Moreover, when the case was in the final stages before presentation of the indictment, the strategy by Savage and the Girardis was to leverage the negligent investigation to obtain a refund from AMEX. Compl. ¶ 70. Further, "[t]he AMEX Defendants' refund caused the prosecution and indictment – the Secret Service Defendants investigation, indictment and prosecution caused the refund – the actions together created a self-fulling malicious prosecution of Plaintiff." Compl. ¶ 74.

When it came to the Indictment, Savage who controlled the investigation, failed to ensure a thorough review of the business records in the Secret Service's possession which contradicted Defendant Girardi's claims the charges were unauthorized and illegitimate. Compl. ¶¶ 76-77.  When the seven charges that formed the basis for the indictment were reviewed, Savage, Scarince and Henderson had records in their possession that proved that the costumes and services underlying those charges were legitimate. Compl. ¶¶ 80-89.  The evidence presented to the grand jury on those seven charges was directly false as well as false by omission.

First, Defendant Girardi was identified to the grand jury as the victim, even though it was Tom Girardi's AMEX card. Defendant Savage knew it was critical to keep Tom Girardi out of the case, so he ensured Defendant Girardi was identified as the victim. Compl. ¶ 89b. Additionally, the allegation that AMEX suffered a loss of over $700,000 was false—they suffered no loss, and Savage possessed the business records to prove it. Compl. ¶ 89c. Defendant Savage acted with knowledge of these falsehoods or with reckless disregard to the truth. Compl. ¶ 89a.

Finally, at every step of the way, Savage failed to reveal material *Brady* information he possessed, which would have resulted in termination of the case.

Specifically, Savage never revealed to the U.S. Attorney's office or Plaintiff's defense counsel that he had a personal relationship with the Girardis or that he had received legal representation and a personal payment of $7,500 from Tom Girardi. Compl. ¶¶ 6; 69; 120(b). Additionally, Savage failed to disclose abuses of his position—that he billed fake advance Presidential location scouting trips—which would negatively affect the credibility of the Secret Service's investigation. Compl. ¶ 42.

The fair inference from these facts is that Defendant Savage instigated and controlled the investigation to ensure AMEX reimbursed the Girardis, and that he acted with reckless disregard to the facts and the truth. From the initial decision to take the case, to directing Scarince and Henderson to secretly record Plaintiff, proffering a search warrant affidavit with false statements, failing to review the business records seized, presenting a misleading case to the grand jury, and concealing material *Brady* information, Defendant Savage was actively involved at every stage of the investigation. Further, it is reasonable to conclude that without Savage's relationship with Girardi and the quid pro quo/bribe, this investigation would never have been conducted by the Secret Service. Savage's involvement was essential for the Girardis' scheme to work. Savage had multiple potential "stops" before the train crashed, but he deliberately chose not to protect Psaila from the malicious prosecution.

Under the Ninth Circuit Jury Instructions 9.33 (fabrication of evidence) and 9.33A, (*Brady* suppression of evidence), Plaintiff has more than met the standard of presenting plausible allegations that place Defendant Savage on notice of his alleged misconduct. But for Savage's deliberate indifference for Plaintiff's innocence, the affirmative misrepresentations of the facts in which he participated, and his suppression of exculpatory evidence, Plaintiff would not have been indicted and deprived of his Fourth and Fifth Amendment rights. *See* Compl. ¶ 86. Accordingly, despite Defendant's repeated assertions that the complaint does not allege any facts

establishing his liability, the complaint presents non-conclusory allegations giving rise to Plaintiff's constitutional claims.

### 2. Savage's claim that there is no evidence to support the allegations confuses the summary judgment standard with the notice pleading standards.

Savage's motion appears to misunderstand federal pleading standards by consistently pointing to Plaintiff's failure to provide evidence to support his claim. Plaintiff is not required to provide "evidence" at this stage of the proceedings.  Plaintiff only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). Further, the Supreme Court has stated that a complaint is only required to allege "plausible" allegations, rather than establish a prima facie case at such early stages in the litigation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's complaint easily meets this minimum standard.

Defendant's argument that the allegations are somehow insufficient since they are alleged on information and belief, and despite that "Plaintiff has 3,500 pages of discovery" is misplaced. Mot. at 15; 18. Contrary to Savage's assertion and assumptions, Plaintiff is not in possession of the discovery produced in the criminal case except for a small number of documents, and certainly is not in possession of the over 3500 pages of discovery previously produced to criminal defense counsel as asserted in Defendant's Request for Judicial Notice. *See* Dkt. 73-1; *see also* 78-1, McLane Decl., ¶ 3, Opp. to Scarince, Henderson motion to dismiss.  Plaintiff has not had the opportunity to conduct discovery in this case which Plaintiff submits will produce additional evidence supporting the allegations. (McLane Decl., ¶ 3).

Second, the allegations that Savage initiated, conducted, and actively supervised the investigation, had a relationship with the Girardis, was bribed by the Girardis in exchange for conducting this investigation, and failed to disclose his fake presidential trips or disclose his relationship with the Girardis, are factual allegations. As detailed

fully above, these allegations are supported by plausible assertions of fact establishing the basis of Savage's liability, rather than mere conclusory statements.

Finally, the allegations support the fair inference that Savage would have a continuing interest in directing Scarince and Henderson's investigatory activity, since the case involved his personal friends. Likewise, Savage's repeated assertion that Plaintiff's claim fails for failure to attach criminal case discovery, the vast majority of which Plaintiff does not have, is unpersuasive as it is not required. In sum, Plaintiff's complaint fulfills the pleading requirements through plausible allegations of Savage's direct involvement in violating Plaintiff's constitutional rights.

### 3. The facts establish there was a bribe and quid pro quo despite Savage's desperate attempts to characterize it as just legal representation.

Savage spends an inordinate amount of time in his brief contesting whether he received a bribe or quid pro quo. Mot., p. 1:25-26, p. 2-3:1-3, p. 9:9-23, p. 11:22-25, p.p. 13-14, p. 19:8-23. But the complaint allegations suggest the opposition: there was a quid pro quo/bribe between Savage and the Girardis. They had a transactional relationship—the Girardis were going broke and needed Savage's help to legitimize their claim that Psaila defrauded them. Likewise, Savage needed a favor—legal representation, payment in his lawsuit, and to curry favor with his powerful friend.

A fair and plausible inference from the facts alleged is that this arrangement constituted a bribe. At this stage in the proceedings, the Court is required to draw that inference. If the bribe had been disclosed, there never would have been an investigation or prosecution. Inexplicably, Savage claims the arrangement cannot be a bribe because the Defendant argues, it was not hidden, that Tom Girardi told a Judge on the record that he would pay Savage a $100,000. Compl. ¶ 48; Mot. at p. 2. But did Tom Girardi or Savage tell the Judge it was being done so that Savage would investigate Plaintiff; or did Girardi or Savage tell the Judge Savage was investigating a

massive fraud claim for the Girardis. The agreement constituting a bribe was not the payment of the settlement amount—it was the exchange of free legal services and money for an otherwise unwarranted criminal investigation to induce an unjustified refund from AMEX. That Mr. Girardi announced in court that he would pay Defendant Savage is therefore not dispositive of the issue. That those facts were concealed from the prosecutor and criminal defense counsel also supports the inference of the corrupt nature of the exchange of favors.

Offering a gratuity or thing of value to influence an official's performance of a duty (or non-performance) or receiving such a gratuity in return for being influenced in the performance or non-performance of a duty constitutes criminal bribes. *See,* Title 18 U.S.C. § 201. The allegations more than support the inference that the Girardis bribed Savage to criminally investigate Psaila to support their claim for reimbursement by AMEX of the $787,118. Thus, this quid pro quo/bribery was significant *Brady* and *Giglio* material that Savage suppressed.

## 4. Savage repeatedly adds facts not in the complaint and facts contradicted by the allegations that this Court should not consider.

In addition to attempting to draw inferences in Savage's favor (which the Court is not permitted to do at this stage in the proceedings), Savage submits "facts" outside the four corners of the complaint and "facts" contradicted by the allegations in the complaint. First, he claims that he was not involved in the investigation, other than directing Scarince and Hendeson to investigate the claims against Psaila. Mot. p. 1:6-12. However, the facts indicate he was involved in the investigation, that he initiated and directed it. It was no coincidence the day after Girardi represented him in Court and promised to pay Savage $100,000, that the secret recording occurred. Compl. ¶ 55. He states that he was "running the nation's third largest Secret Service office and his primary responsibility was to protect the President . . . ." Mot. p, 3:19-25. But that is not an allegation in the complaint, and the inference Savage seeks, that he was too

busy to bother himself with this case, is belied by the facts. Additionally, Savage states he is not responsible for the investigation since it was supervised by the United States Attorney's Office, and their involvement makes the "*Bivens* claim against Mr. Savage inapplicable." Mot. p. 5. Again, the allegations are that Savage supervised and participated in the investigation, and the fact that the AUSA prosecuted the case are not mutually exclusive: both things can be true at once.

Savage also claims that Plaintiff does not "allege, nor could he, that then -SAIC Savage ever spoke to or influenced AMEX or the government." Mot. p. 5:18-20. Plaintiff alleges the opposite: on December 14, 2016, the day of the secret recording, "Savage emailed Defendant Grimm of AMEX requesting a call to discuss the case." Compl. ¶ 55. Thereafter, Grimm emailed Henderson with Psaila's bank accounts showing money was sent from Defendant Girardi's AMEX account. Compl. ¶ 56. Thus, the complaint's allegations establish that Savage discussed the case with AMEX's Grimm and that Savage's involvement prompted a swift response by Grimm sending Agent Henderson the financial records.

Further, in order to distance himself, Savage claims the United States Attorney [not Savage] supervised Henderson. Mot., p. 4. But the complaint alleges the contrary, that Savage supervised Henderson directly in the case and was personally involved. Savage attempts to distance himself from the false statements in the search warrant application by claiming that the affidavit was "likely drafted" by the AUSA. Mot., p. 5:7-9. Again, Defendant Savage relies on facts outside the complaint for this argument. Besides that, even if an AUSA were involved in the drafting, it is widely known that affidavits submitted in support of a warrant are signed and sworn to by an agent who states it is based on his/her personal knowledge. That Savage claims he knew nothing about the events as they unfolded in the case Mot. p. 5:1-3, is belied by the allegations of the complaint and should not be considered. We are not at the summary judgment

stage, and statements that are contradicted by the allegations or are additional "facts" outside the complaint should not be considered in deciding this motion.

### 5. Savage obscures his role in initiating the investigation and prosecution by claiming the Secret Service were "obligated" to investigate.

Finally, Savage claims that that the Secret Service was "free, if not obligated to investigate fully" the case. Mot. p. 4:23-24, because of the secret recording. First, Savage is improperly relying on the evidence presented in the Anti-Slapp motion, not the complaint,. Second, the allegation in the complaint is that Plaintiff mistakenly made accounting errors, not an admission of criminal conduct. Compl. ¶ 50. Third, as Plaintiff presented and argued in the Anti-Slapp litigation, there was no admission of criminal conduct. Finally, it is alleged that Savage pursued the charges as a quid pro quo/bribe from the Girardis. These facts contradict Savage's assertion that he was obligated to pursue the case. When the Complaint is reviewed for what Plaintiff alleges, and no more, there is more than plausible grounds for *Bivens* relief.

### B. Defendant Savage is Not Entitled to Qualified Immunity

In order not to duplicate arguments made against Defendants Scarince and Defendants Savage in their qualified immunity arguments, Plaintiff incorporates by reference the argument in the opposition to Scarince and Henderson's motion to dismiss. Dkt. 78, on pages 9:6-28 – p. 12:1-26. Instead, Plaintiff focuses on the additional arguments made in Savage's opposition p. 16:23-28 – p. 18:1-2.

First, it is not clear from Savage's motion on what basis he believes he is entitled to qualified immunity. It is clear from the Complaint's allegations that Savage is not entitled to qualified immunity because his conduct was proscribed by clearly established law at the time of the criminal investigation against Plaintiff, based on *Brady* violations. It was clearly established at the time of Plaintiff's criminal prosecution that *Brady* obligations extend beyond the prosecutor and obligate law

enforcement officers to turn over exculpatory evidence as well. *See Kyles v. Whitley*, 514 U.S. 419, 438-49 (1995) (extending a prosecutor's *Brady* obligations to information known only by law enforcement investigators).

Additionally, the complaint alleges that defendants fabricated evidence that was used to prosecute Plaintiff and continued to investigate with a deliberate indifference to Plaintiff's innocence. *See* 9th Cir. Model Civil Jury Instruc., 9.33 (Deliberate Fabrication of Evidence). It was clearly established at the time that the presentation of false evidence by the police violates the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154 (1978) (recognizing that the Fourth Amendment may be violated if a search warrant affidavit's probable cause is based on a false statement made knowingly or with reckless disregard for the truth); *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001); *see also Napue v. People of State of Il.*, 360 U.S. 264 (1959); *Pyle v. State of Kansas*, 317 U.S. 213 (1942).

Finally, as set forth in *Hartman v. Moore,* 547 U.S. 250 (2006), a cause of action for malicious prosecution may be maintained under *Bivens*, and was clearly established by either 1992, *Kyles v. Whitley,* supra, for *Brady* violations, or 1942, *Pyle v. State of Kansas, supra*, for fabrication of evidence claims. Here, Savage maliciously prosecuted Plaintiff in deliberate indifference to his innocence. *See* 9th Cir. Model Civ. Instruc. 9.33, (Due Process, Deliberate fabrication of evidence; "the defendant continued his investigation of the plaintiff despite the fact that he knew that the Plaintiff was innocent, or was deliberately indifferent to the plaintiff's innocence").

Thus, Savage violated Plaintiff's clearly established rights and is not entitled to qualified immunity.

## C. *Bivens* Claim

*Bivens* was meant to address the fact that there is no civil rights remedy akin to 42 U.S.C. § 1983, applicable to state and local officials, against federal officials. The

gravamen of the claims against Savage is that he maliciously prosecuted Plaintiff in violation of his Fourth and Fifth Amendment rights.

Plaintiff incorporates, in an effort not to be repetitive, arguments made in the opposition to Scarince and Henderson's motion to dismiss concerning the viability of a *Bivens* cause of action. *See* Opp., Dkt, 78, pp. 13-21. As set forth in that argument, this case does not present a new *Bivens* context because it is not "meaningfully different" from the Supreme Court's precedents, *see Egbert v. Boule*, 596 U.S. 482, 491-92 (2022), and even if this Court were to conclude that Plaintiff's claims arise in a new context, there are no special factors counseling against recognition of a new *Bivens* context, *See Egbert.* at 492; *Ziglar v. Abbasi*, 582 U.S. 120, 134-36 (2017).

### 1. Plaintiff's *Bivens* claims arise within previously established contexts

*Bivens* actions may be brought for malicious prosecution, *see Hartman v. Moore*, 547 U.S. 250 (2006) (holding that a plaintiff is required to plead and prove the absence of probable cause supporting the prosecution to support his *Bivens* claim for malicious prosecution). The predicate claim for Plaintiff's entire complaint is that all Defendants conspired to maliciously prosecute him (based on Fourth and Fifth Amendment theories) for baseless accusations that he fraudulently charged Defendant Girardi nearly $800,000. Thus, Plaintiff's malicious prosecution claim arises within an existing *Bivens* context under *Hartman*.[6]

Additionally, Plaintiff's due process claims arise in a previously recognized *Bivens* context. The Supreme Court recognized a *Bivens* cause of action for due

---

[6] Though *Hartman* was premised on a retaliatory prosecution resulting from the plaintiff exercising First Amendment rights and *Egbert* rejected a *Bivens* remedy for First Amendment violations, the Supreme Court did not explicitly rule on the viability of a *Bivens* remedy for malicious prosecution claims. *See Egbert v. Boule*, 596 U.S. 482 (2022). Thus, until the Court holds otherwise, malicious prosecution continues to be a cognizable cause of action under *Bivens*.

process violations in *Davis v. Passman*. 442 U.S. 228, 243-44 (1979). There, the Court recognized that the plaintiff properly rested her claim on the Due Process Clause of the Fifth Amendment and that the judiciary was the only effective means to vindicate her rights. *Id.* at 243-44. While *Davis* was predicated on an equal protection violation, nowhere in the Court's opinion suggested that a claim for relief was limited to such circumstances. On the contrary, the Court repeatedly stated that the plaintiff had a cause of action under the Fifth Amendment without further specificity. *See id.* at 244; 248-49.

Here, Plaintiff's Complaint has alleged with sufficient detail that Defendant Savage violated his Fifth Amendment right to due process, that Savage acted with a deliberate indifference for Plaintiff's innocence when he initiated a baseless criminal investigation against Plaintiff, and that his continued acts and omissions resulted in an unwarranted indictment. Additionally, Savage committed *Brady* and *Henthorn* violations, as discussed above, to obscure the impropriety of the criminal investigation. *See*, *supra*, Part III.A.1. Thus, Defendant Savage's affirmative actions, individually and cumulatively, violated Plaintiff's Fifth Amendment right to due process. That Fifth amendment violation is not meaningfully different from *Davis* and it therefore falls squarely within an existing *Bivens* context.

Finally, *Bivens* itself recognized a cause of action for Fourth Amendment violations. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). In *Bivens*, the plaintiff was subjected to a warrantless search, leading to an arrest made without probable cause. *Id.* At 389. The Court recognized an implied cause of action for the plaintiff's Fourth Amendment violations. *Id.* At 395. Here, while defendants obtained a search warrant to search Marco Marco's business premises, eventually leading to Plaintiff's arrest and indictment, Plaintiff's Fourth Amendment claim rests on what amounts to an arrest effected by a search lacking probable cause. The warrant's lack of probable cause made it facially invalid, making

the search warrantless within the meaning of the Fourth Amendment. *See Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (recognizing that a search executed pursuant to a deficient warrant must be regarded as a warrantless search within the meaning of the Fourth Amendment).

As discussed above, Defendants Savage, Scarince and Henderson obtained a search warrant using false statements and evidence to create the appearance of probable cause in contravention of clearly established law. *See* Part III.A.1, *supra*. Thus, Plaintiffs *Bivens* claims do not arise in a new context.

## 2. Even if Plaintiff's claims involve a new *Bivens* context, no special factors counsel against recognizing a *Bivens* damages remedy.

As set forth in the Opposition to Scarince and Savages' motion to dismiss, even if this Court concludes that Plaintiff's *Bivens* claims arise in a new context, there are no special factors counseling against recognizing a new *Bivens* context. The Supreme Court has suggested that a new *Bivens* context should not be recognized if the case involves a new category of defendants or if an alternative remedial structure exists. *Egbert*, 596 U.S. at 492-93. Here, none of the factors identified by Defendant weigh against recognition of a new *Bivens* context, making the judiciary well-suited to consider Plaintiff's claims.

First, Savage relies on inapposite cases to assert that Plaintiff's claim arises in a different context and that special factors counsel against applying *Bivens* to this case. For example, Defendant claims that *Pettibone* is controlling since he, like the defendant in *Pettibone*, is a "high level supervisor." Mot., p.21:19-28; 22; 23:1-2. But Defendant's reliance on *Pettibone* is misplaced. There, the plaintiff sued the Director of the Federal Protective Service's Northwest Region for alleged constitutional violations under *Bivens*. *Pettibone v. Russell,* 59 F.4th 449, 450 (9th Cir. 2023). The court recognized that the defendant's conduct took place at a higher level of generality

when enforcing an executive order than the agents acting in *Bivens*, who personally seized Bivens and searched his apartment. *Id.* at 455.

*Pettibone* is distinct for two reasons. First, Plaintiff's complaint alleges direct conduct by Defendant Savage that resulted in violation of Plaintiff's constitutional rights. *See*, *supra*, Part III.A.1. Thus, Savage was not a high-level officer acting above the fray, allegedly "protecting" presidents in this case,[7] but was instead an integral part of the entire proceedings. Second, Defendant Savage was the special agent in charge of the Los Angeles branch, not the head of a regional office. Because Defendant Savage's rank and direct involvement in Plaintiff's criminal prosecution differs greatly than the defendant in *Pettibone*, it is not controlling in this case.

Likewise, Defendant's reliance on *Massaquoi* and *Purbeck* is misplaced. Both opinions are unpublished and do not involve a search warrant lacking proper probable cause. *See Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448, 2023 WL 5426738 at *2 (9th Cir. Aug. 23, 2023) ("Massaquoi's Fourth Amendment claim presents a new *Bivens* context because the agents had a search warrant"); *Purebeck v. Coffin*, No. 1:21-CV-00047-BLW, 2024 WL 342092 at *4 (D. Idaho, Jan. 29. 2024) ("Another reason Mr. Purbeck's claims present a new context is they arise from conduct that occurred during the execution of a search warrant"). Further, neither case addresses the arguments raised here arguing why Defendant is not different from previously recognized categories of *Bivens* Defendants.

Second, contrary to Savage's argument, Mot. p. 21-22, Defendant Savage does not represent a "new" category of defendants not previously recognized in a *Bivens* context. In *Davis*, the Supreme Court recognized a *Bivens* cause of action against a

---

[7] Defendant Savage's self-aggrandizing assertion that he was protecting presidents, is corroded by the allegation in the complaint that he "falsely used his Secret Service credentials at luxury hotels and golf courses so he would receive free rooms, food, drinks and free golf for him and other Secret Service agents.  He was caught and forced to leave the Secret Service." Compl. ¶ 45.

United States Congressman who had violated the plaintiff's Fifth Amendment due process rights. *See Davis*, 442 U.S. at 230. A United States Congressman is the functional equivalent of a supervisor such as Defendant Savage: they both oversee employment decisions, direct and approve subordinates' actions, and make all final decisions for their office. Thus, similar to the Congressman's conduct in *Davis*, the entire predicate of Plaintiff's claim against Defendant Savage, that he initiated a sham investigation against him without probable cause and in violation of his due process rights, was the result of the actions of an office head. Accordingly, Defendant Savage cannot reasonably be viewed as a new category of defendant precluding recognition of a *Bivens* action.

Third, contrary to Savage's claim, Defendant's argument that Plaintiff's case arises in a new *Bivens* context because the Defendants here were operating under a different legal mandate than in *Bivens* is unavailing. Specifically, Defendant asserts that the difference between a search executed pursuant to a warrant, as was here, is a "vastly different" legal mandate than a search conducted without one. Mot. p. 22:12-17; 23:1-2. Defendant's assertion, however, overlooks the crux of Plaintiff's argument: that the warrant issued in this case was completely devoid of probable cause, rendering the search equivalent to a warrantless search. *See*, *supra*, Part III.C.1. As such, the Defendants acted under the same legal mandate when they searched Plaintiff's business.

Fourth, contrary to Savage's claim that recognizing Plaintiff's claim would "intrude into the Executive Branch", *see* Mot., p. 23:3-19;24:11-24, recognizing that Plaintiff's case falls within an existing *Bivens* context would not risk a "disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 137 S. Ct. at 1860. In *Pettibone*, for example, the court concluded that the Plaintiff's claims arose in a new *Bivens* context because, among other things, providing for a *Bivens* remedy would be a disruptive intrusion by the Judiciary into the Executive branch because the

defendant was carrying out an executive order. *Id*., 59 F.4th 449, 455 (9th Cir. 20203). Here, no such intrusion would occur if this Court permitted a *Bivens* remedy. The Secret Service investigates financial crimes via a statutory mandate, similarly to other investigatory agencies. *Compare* 18 U.S.C. § 3056 (Powers, authorities, and duties of the United States Secret Service); *with* 28 U.S.C. § 540c(b) (describing the duties and authority of FBI agents). Thus, there is no difference in legal mandate between the Secret Service and other federal investigatory agencies operating under a statutory mandate.

Fifth, contrary to Defendant's argument that this case was investigated under the supervision of the United States Attorney and that is a special factor, Mot. p. 24:1-24, the facts favor the opposite because Plaintiff alleges that the Secret Service defendants, including Savage, maliciously prosecuted Mr. Psaila.  Plaintiff does not allege the prosecutor did. Further, Savage hid evidence concerning the quid pro quo/bribe and his relationship with Girardis not just from the defense, but also the prosecutor. Moreover, it is alleged that it was Savage, Scarince, and Henderson, who possessed evidence proving Plaintiff's innocence, who continued the prosecution in disregard to that evidence. Thus, if anything, there was a lack of AUSA supervision due to the conduct of the Secret Service defendants in this case.

Finally, Savage has not identified an effective alternative remedial scheme. First, the Supreme Court has held that the Federal Torts Claims Act ("FTCA") is "not a sufficient protector of the citizens' constitutional rights" and could not be viewed as an exclusive alternative remedy to *Bivens* "without a clear constitutional mandate." *Carlson v. Green*, 446 U.S. 14, 23 (1980); Opp. at p. 20:23-27; p.21:1-6. Second, as discussed fully in Plaintiff's opposition to Scarince and Henderson's motion to dismiss, Plaintiff's ability to report misconduct to the Department of Homeland Security's Office for Civil Rights and Civil Liberties does not provide the adequate level of individual deterrence contemplated by *Egbert*. *See* Opp. p.20:3-19. Because

Defendants have failed to identify any special factors counseling against recognition of a new *Bivens* context, there is nothing preventing this Court from recognizing Plaintiff's *Bivens* claims.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny Defendant Savage's motion to dismiss.

Dated: March 8, 2024                    McLANE, BEDNARSKI & LITT, LLP


                                        By: */s/ David S. McLane*
                                            Barrett S. Litt
                                            Marilyn E. Bednarski
                                            David S. McLane
                                            Attorneys for Plaintiff Christopher Psaila


## **L.R. 11-6.2 – CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,813 words, which complies with the word limit of L.R. 11-6.1.


DATED: March 8, 2024            McLANE, BEDNARSKI & LITT, LLP

                                By: */s/ David S. McLane*
                                    David S. McLane
                                    Counsel for Plaintiff Christopher Psaila