Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, California 90071-2953
Tel:  213.236.0600   Fax:  213.236.2700

Attorneys for Defendants
KENNETH HENDERSON and STEVE SCARINCE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, and DOES 1 TO 10, Inclusive,<br><br>　　　　Defendants. | Case No. 2:23-cv-07120-MWF-SK<br><br>**DEFENDANTS KENNETH HENDERSON AND STEVE SCARINCE'S REPLY TO PLAINTIFF'S OPPOSITION [DKT 78] TO THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>[Fed. R. Civ. P. 12(b)(6), 12(b)(1)]<br><br>Date:  April 1, 2024<br>Time:  10:00 a.m.<br>Ctrm:  5A<br><br>Judge:  Hon. Michael W. Fitzgerald |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4886-5593-0286 v1　　　　　　1　　　　　Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

## I. INTRODUCTION

Defendants Henderson and Scarince reply herein to Plaintiff Psaila's opposition brief (Dkt. 78). Plaintiff emphasizes that discovery will reveal additional information and that he no longer has access to the criminal discovery materials. (*See* Opp'n at 2, n.2, and McLane Decl. ¶2.) This is true in any case at the initial pleading stage, that discovery will yield additional facts. However, it does not change the fact that the allegations themselves must state a cognizable claim. Nor does it change that *Bivens* does not apply the claims Plaintiff seeks to assert.

Plaintiff concedes that Defendants Henderson and Scarince may not be sued in their official capacity or under the Fourteenth Amendment. (*See* Opp'n at 1, n.1, and McLane Decl. ¶2.) But he contends that Defendants' motion misunderstands federal pleading standards by "pointing to Plaintiff's failure to provide evidence to support his claim." (Opp'n at 1.) This misinterprets the argument. The defect of Plaintiff's Complaint is not so much a lack of evidence, but instead a lack of factual allegations connecting the dots between Plaintiff's claims against Defendant Savage – the head of the Los Angeles Secret Service Unit – and his subordinate investigators Henderson and Scarince, who did not have *any* personal connection with Tom Girardi – nor are there any factual allegations that they were even aware of their supervisor's alleged connections to him.

## II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff argues that Agents Henderson and Scarince are not entitled to qualified immunity because they violated the law, simultaneously arguing that there does not need to be a case on point to show they were on notice it was illegal. (Opp'n at 9.) But citing to *Brady* obligations of law enforcement to state that Defendants Henderson and Scarince violated it by failing to disclose the relationship between Savage and Girardi is unavailing, given that Plaintiff does not plead in the Complaint that Defendants Henderson and Scarince *actually knew* of any special relationship and/or arrangements between Tom Girardi and Savage.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4886-5593-0286 v1

1

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

Further, although Plaintiff notes that a case does not need to be directly on point for a right to be clearly established (*see* Opp'n at 9), the inquiry must be undertaken in light of the ***specific context*** of the case, not as a broad general proposition. *Saucier*, 533 U.S. 194, 201 (2001); *Richardson v. Oldham*, 12 F.3d 1373, 1381 (5th Cir. 1994) (the plaintiff must demonstrate "the illegality of the challenged conduct was clearly established in factual circumstances closely analogous to those of [the] case [at bar]").  The Supreme Court has

> …repeatedly told courts—and the Ninth Circuit in particular, not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal citations omitted); *see also White v. Pauly*, 137 S.Ct. 548, 552 (2017) (emphasizing that defining the law at a high level of generality would allow plaintiffs "to convert the rule of qualified immunity into a rule of virtually unqualified liability" (internal quotation marks omitted)). Qualified immunity applies unless "'existing precedent squarely governs the specifics facts at issue.'" *City of Escondido v. Emmons*, 139 S.Ct. 500, 503 (2019) (per curiam) (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (per curiam); *Sharp v. County of Orange*, 871 F.3d 901, 910-11 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful…") (emphasis in original).

Plaintiff responds by asserting that it was clearly established at the time of his prosecution that law enforcement's failure to turn over exculpatory evidence would violate *Brady*. (*See* Opp'n at 10.) Defendants agree with this broad recitation of the law – but it is overly broad. There is no caselaw indicating that Defendants Henderson and Scarince – or other agents in their positions – were required to turn over evidence of which they were <u>unaware</u>.  And no facts indicate they knew.

/ / /

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4886-5593-0286 v1

2

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

The Complaint contains no factual allegations to support the claim that Defendants *knew of* exculpatory evidence, such as the alleged improper relationship between Tom Girardi and Defendant Savage. Plaintiff never connects his allegations against Savage to his subordinates, Henderson or Scarince. Plaintiff contends "the Girardis solicited and bribed Secret Service Special Agent in Charge (SAIC) Robert Savage to cause his agents, Defendants Scarince and Henderson, to criminally investigate Chris Psaila for federal crimes." (Compl., ¶ 4.) Plaintiff's factual contentions fail to take the next step, *ie*. that Scarince and Henderson *knew* of any improper dealings between the Girardis and Savage. The Complaint alleges that Girardi influenced and/or bribed Savage to initiate an investigation, but there are no facts suggesting that Henderson and Scarince *knew* of any influence or bribes - or any motivation to initiate an investigation other than a customer who said she was defrauded of $800,000+ of unauthorized expenditures.

Plaintiff contends that the Secret Service Defendants tried to conceal the relationship between Tom Girardi and Savage by identifying [Erika] Girardi as the victim in the Indictment, instead of Tom Girardi, who was the owner of the AMEX and the actual victim.[1] (Opp'n at 10.) But if Erika - and not Tom - Girardi was identified as the victim in the Indictment, it does not stand to reason this was intentionally done to conceal the relationship between Tom Girardi and Savage. Instead, it was more likely due to the fact that Erika Girardi was the person who dealt with Psaila at Marco & Marco, ordered and wore the costumes, provided input into their designs, and indeed had the entire business-client relationship. Erika Girardi presumably would also be the person testifying before the grand jury and at trial. In sum, no facts are alleged to show that Scarince or Henderson <u>knew</u> of any improper relationship between the Girardis and Savage.

---

[1] This ignores that their finances were community property and that Erika Girardi was an authorized user on the AMEX account. Arguably, both of the Girardis were victims.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4886-5593-0286 v1

3

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

1  Plaintiff responds that "[t]o the extent that Defendants argue that Plaintiff has
2  not provided 'specific facts' to support his allegations that Defendants Scarince and
3  Henderson knew about Defendant Savage's relationship with Tom Girardi, the facts
4  lead to a **reasonable inference** that Scarince, as a supervisor working directly under
5  Defendant Savage was aware of the relationship. Defendant Girardi stated that she
6  approached Defendant Savage directly about Plaintiff, an objectively odd
7  proposition absent a personal relationship. [] It is **reasonable to assume** that
8  Scarince and Henderson **would have inquired further about the referral**, or it
9  would be documented." (*See* Opp'n at 11, n.7, emphasis added.) Again, Plaintiff
10 makes a leap of logic that is not equivalent to actually stating in the Complaint that
11 Defendants *knew of an improper relationship* and unlawfully concealed it in
12 violation of *Brady*. While Plaintiff argues that Scarince and Henderson might have
13 inquired further about how Girardi came to Savage initially, this claim of them
14 being on inquiry notice does not mean (a) they would have been told of any undue
15 influence or bribery in response to a query; or (b) that they actually did inquire.

    Plaintiff offers insufficient allegations, and certainly no evidence, that any
actions or omissions of the Defendants were objectively unreasonable in reference
to clearly established law. Plaintiff repeatedly asserts that the Defendants did not
adequately investigate and recklessly ignored information that would have helped
him. (*See generally*, Compl., and Opp'n at 11.) But once probable cause is
established, officers **do not have a duty to investigate further** for exculpatory
evidence. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012). The
probable cause inquiry turns not on whether there was a violation in fact, but on
whether a reasonable officer would conclude that there was a fair probability of a
violation. *Hart v. Parks,* 450 F.3d 10, 1066-1067 (9th Cir. 2006) (no personal
knowledge required for probable cause that the items "were actually stolen").

    Plaintiff contends that Defendants knew that items in the Indictment were
false, such as stating that Plaintiff used an unauthorized access device and that the

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4886-5593-0286 v1

4

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

losses exceeded $700,000. (Opp'n at 12.) But these facts were reported by Erika Girardi, as acknowledged in the Complaint. As to Plaintiff's claim that Erika and not Tom Girardi was the real victim (*see id.*), this is addressed above. Plaintiff also claims that Counts 2-8 of the Indictment, alleging specific fraudulent transactions, were based solely on Erika Girardi and Ribatallada's representations, and that Defendants knew those charges were in fact legitimate because they also had Plaintiff's business records, texts and emails. (*See id.*) These claims assume that Defendants were required to thoroughly vet the accuracy of Erika Girardi's factual allegations after they had probable cause and before they were presented to the US Attorney's office and cited in the draft Indictment.[2]

Plaintiff also offers insufficient allegations, and certainly no evidence, that any actions or omissions of the Defendants were objectively unreasonable in reference to clearly established law. Plaintiff repeatedly asserts that the Defendants did not adequately investigate and recklessly ignored information that would have helped him. (*See generally*, Compl.) But once probable cause is established, officers **do not have a duty to investigate further** for exculpatory evidence. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012). The probable cause inquiry turns not on whether there was a violation in fact, but on whether a reasonable officer would conclude that there was a fair probability of a violation. *Hart v. Parks,* 450 F.3d 10, 1066-1067 (9th Cir. 2006) (noting that for probable cause, the detectives did not need personal knowledge that the items "were actually stolen").

### III. Plaintiff's *Bivens* Claim Against Henderson & Scarince is Not Viable

Plaintiff contends that he must have a *Bivens* claim because it was designed to hold law enforcement liable in lieu of section 1983, and otherwise federal law

---

[2] Indictments are drafted by the prosecutor and signed by the attorney for the government, the grand jury thereafter issues the Indictment. See DOJ Criminal Resource Manual CRM 1-499, section 214 at https://www.justice.gov/ archives/jm/criminal-resource-manual-214-drafting-indictments-and-informations

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4886-5593-0286 v1                5                Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

enforcement could commit constitutional violations with impunity. (*See* Opp'n at 13.) But, as noted by Defendants in their initial Motion, there are numerous alternative remedies and the availability thereof precludes expansion of *Bivens*.

### A.     Alternative Remedies Exist

The Supreme Court has made clear that an Executive Branch agency's internal grievance procedures and regulatory obligations to investigate complaints of officer misconduct are alone sufficient to preclude a *Bivens* remedy. *Egbert v. Boule*, 142 S. Ct. at 1793, 1806-07 (2022). So long as Plaintiff has other alternative "means to be heard" on his position, the existence of alternative remedies counsels against expansion of the *Bivens* claim in this case. *See Wilkie v. Robbins*, 551 U.S. 537, 552 (2007). Through three distinct processes—the Office of Inspector General, the Office for Civil Rights and Civil Liberties, and the Secret Service Office of Professional Responsibility, Inspection Division—Congress and the Executive Branch have put in place mechanisms for reporting and investigating misconduct (including constitutional violations) by Secret Service personnel. These schemes show "that absent a *Bivens* remedy," there are means of "deterrence to prevent" Secret Service "officers from violating the Constitution." Ziglar v. *Abbasi,* 137 S. Ct. at 1843, 1863 (2017).

And where, as here, Congress and the Executive Branch have created processes sufficient to "prevent constitutional violations from recurring" in the context at issue, "courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert,* 142 S. Ct. at 1806-07 (quotations omitted). What matters is only that "alternative methods of relief are available." *Abbasi*, 137 S. Ct. at 1863. If they are—and "regardless" of whether the alternatives are "adequate to provide all of the relief [a plaintiff] seeks," or "cover the full breadth of harm that a would-be *Bivens* plaintiff alleges"— there is no room for tacking on a new implied damages remedy. *Liff v. OIG*, 881 F.3d 915, 920-21 (D.C. Cir. 2018).

The Federal Tort Claims Act offers another alternative remedial scheme

4886-5593-0286 v1

6

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

available to individuals in Plaintiff's position. See 28 U.S.C. §§ 2679, 1346; *see also* 28 U.S.C. § 2680(h) (waiving sovereign immunity for certain intentional torts, including assault, battery, and false arrest, where committed by "investigative or law enforcement officers of the United States"). The presence of this "alternative, existing process" created by Congress, *Abbasi,* 137 S. Ct. at 1858 (quotations omitted), should foreclose a *Bivens* remedy here. See *Oliva v. Nivar,* 973 F.3d 438, 444 (5th Cir. 2020) (holding that FTCA constituted a special factor precluding a *Bivens* claim).The "relevant question" is not "whether the court should provide for a wrong that would otherwise go underdressed." *Egbert,* 142 S. Ct. at 1804 (quotation omitted). "Nor does it matter" whether this statutory scheme would "provide complete relief." *Id.* (quotation omitted); see also *Wilson v. Libby*, 535 F.3d 697, 709 (D.C. Cir. 2008) (explaining that where Congress has provided a scheme of protections for the interests allegedly at stake, it is immaterial whether that scheme provides plaintiff "no remedy whatsoever"). The important fact is that a remedy exists for Plaintiff to pursue in another forum.

## B. *Bivens* Should Not Be Expanded

Plaintiff contends that his claim arises within previous contexts of *Bivens.* (See Opp'n at 13-14.) He states that a claim for malicious prosecution may be brought under *Bivens,* citing *Hartman v. Moore*, 547 U.S. 250 (2006). However, that case was brought under the First Amendment. Moore filed a *Bivens* claim against the federal prosecutor and postal inspectors, arguing they had engineered his prosecution in retaliation for his lobbying efforts. The Supreme Court held that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. It also held that a plaintiff in a retaliatory prosecution case must plead and show the absence of probable cause for pressing the underlying criminal charges. More importantly for this case, *Hartman* did not rely on the Fifth Amendment due process clause, nor did it authorize *Bivens* claims under that provision of the constitution.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4886-5593-0286 v1

7

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

Plaintiff next contends that Fourth Amendment violations may be brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), which involved a warrantless search. Defendants recognize that *Bivens* allows claims under the Fourth Amendment involving warrantless searches. But Plaintiff's claim seeks to expand *Bivens* to a new context, in arguing there was insufficient probable cause to seek a search warrant or an indictment (though both were issued). To allow *Bivens* claims to apply to circumstances where a judge signs a search warrant, or a grand jury issues an indictment, would create new causes of action that would inundate the court system and be in direct contradiction of the modern trend to restrict the application of *Bivens* as set forth in *Abbasi*. Indeed, in two recent *Bivens* decisions, the Supreme Court declined to extend an implied damages remedy to claims against line-level officers alleged to have committed Fourth Amendment violations. See *Egbert,* 142 S. Ct. at 1804; *Hernández*, 140 S. Ct. at 743. Here too, "once we look beyond the constitutional provision[] invoked … it is glaringly obvious" that Plaintiff's Fourth Amendment claims arise in a new context, "one that is meaningfully different" from *Bivens*. *Id.*

Unlike the narcotics agents in *Bivens*, who were charged with enforcing federal drug laws, Defendants operate under a distinct statutory mandate altogether, as part of the Treasury Department, to investigate financial crimes. *See* 18 U.S.C. § 3056(b); see also *Abbasi*, 137 S. Ct. at 1860 (recognizing "the statutory or other legal mandate under which the officer was operating" among list of meaningful differences giving rise to "new context"); accord *Loumiet,* 948 F.3d at 382. Compared to *Bivens*, Plaintiff's claims "involve[] different conduct by different officers from a different agency" operating under a distinct statutory mandate. *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). These differences are enough to meet the "modest" bar required to make the context new. *Abbasi,* 137 S. Ct. at 1864; see *Loumiet*, 948 F.3d at 382 (finding new class of defendant and statutory mandate were "each" independent reasons that claim presented new context).

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4886-5593-0286 v1

8

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

      Courts are very cautious to expand the *Bivens* remedy into a new context due to the potential separation-of-powers conflicts that may emerge, as courts must consider whether they can properly "weigh the costs and benefits" without any authority by Congress for the expansion, and consider "the risk of interfering with the authority of the other branches." *See Abbasi*, 137 S. Ct. at 1857. Therefore, when a plaintiff requests a court to expand *Bivens* into a new context, the court must ask whether "any special factors" would go against the expansion. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). To determine whether a case arises in a "new context" courts determine whether the case differs "in a meaningful way" from prior Supreme Court *Bivens* cases, with expansion being viewed as "a disfavored judicial activity." *See Abbasi*, 147 S. Ct. at 1857-59.

      Further, Plaintiff seeks to bring portions of his *Bivens* claim under the Fifth Amendment due process clause, citing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963)[3]. But this is an expansion of *Bivens* unauthorized by the courts. The only Fifth Amendment due process claim that has been permitted by the Supreme Court is for gender discrimination. *See Davis v. Passman*, 442 U.S. 228 (1979); *Abbasi*, 137 S. Ct. at 1184-85 (discussing *Davis*).

      In *Black Lives Matter D.C. v. Trump*, Civ. A. No. 20-1469 (DLF), 2021 WL 2530722 (D.D.C. June 21, 2021), the Court analyzed whether *Bivens* claims could be maintained by protesters cleared from Lafayette Square by Secret Service and other federal agents. There, the Court found that the plaintiff's Fourth Amendment and Fifth Amendment constitutional claims arose in a new context that was "meaningfully different" from *Bivens*, as it involved a protest in Lafayette Square outside the White House and not execution of a warrant at the wrong apartment. *See*

---

[3] Many of these *Brady/Henthorn* and related obligations are triggered at the <u>time of trial</u>. No trial occurred here. Further, there is no indication that Henderson and Scarince failed to turn over all of the exculpatory and impeachment information *they were aware of* to the prosecuting AUSA.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4886-5593-0286 v1

9

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS

1 *Black Lives Matter*, 2021 WL 2530722, at *12. Therefore, the Court agreed that the
2 *Bivens* claims must be dismissed because an extension of the Bivens remedy to this
3 "new context" is unwarranted, citing *Abbassi*. *Id.* at *4. Similar to the plaintiffs'
4 argument in *Black Lives Matter*, Plaintiff in this case alleges that he has a right to a
5 damage claim arising out of a purported Fifth Amendment due process claim and a
6 Fourth Amendment claim based on a search pursuant to a warrant. As the Court in
7 *Black Lives Matter* held, such protections must be rejected because, "as the Supreme
8 Court has instructed, what matters is whether the claims in this case arise in a
9 similar context to *Bivens* or *Davis*." *Id*. at 5. As discussed above, the context of
10 Plaintiff's case here is "meaningfully different" from the three major Supreme Court
11 decisions that came before. See *Loumiet v. United States*, 948 F.3d 376, 383 (D.C.
12 Cir. 2020). Plaintiff contends his case is more similar to *Bivens* (warrantless search)
13 because probable cause was lacking, and *Davis* (gender discrimination) because it
14 involves a due process violation. (*See* Opp'n at 17.) But if this were so, and the
15 judiciary was in fact well suited to consider these new damages actions, then the
16 courts would be awash with all types of Fourth and Fifth Amendment claims.

## IV. CONCLUSION

For the reasons set forth above, Defendants Henderson and Scarince should be dismissed. There are insufficient facts alleged against them to state a cognizable claim under *Bivens*. Further, *Bivens* should not be expanded to the Fourth and Fifth Amendment claims alleged here. Defendants are also entitled to qualified immunity.

Dated:  March 18, 2024         BURKE, WILLIAMS & SORENSEN, LLP

By:    /s/ *Susan E. Coleman*
         Susan E. Coleman
     Attorneys for Defendants
     K. HENDERSON and S. SCARINCE

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4886-5593-0286 v1

10

Case No. 2:23-cv-07120-MWF-SK
DEFTS. HENDERSON AND SCARINCE'S
REPLY ISO MOTION TO DISMISS