BARRETT S. LITT, SBN 45527
Email: blitt@mbllegal.com
DAVID S. McLANE, SBN 124952
Email: dmclane@mbllegal.com
MARILYN E. BEDNARSKI, SBN 105322
Email: mbednarski@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

BRUCE BERNARD BEALKE
(pro hac vice)
(Illinois SBN 6200543)
77 West Wacker Drive, Ste. 45001
Chicago, IL 60601
Tel: (312) 216-7177
Fax: (312) 741-1010
Email: bealkelaw@protonmail.com

STANLEY I. GREENBERG, SBN 53649
11845 W. Olympic Blvd., Ste. 1000
Los Angeles, CA 90064
Tel: (424) 248-6600
Fax: (424) 248-6601
Email: Stanmanlaw@aol.com

*Attorneys for Plaintiff* CHRISTOPHER PSAILA

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>              Plaintiff,<br><br>     v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, UNITED STATES OF AMERICA, and DOES 1 TO 10, Inclusive,<br><br>              Defendants. | Case No.  2:23-cv-07120-MWF (SKx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br><br>**(1)** ***BIVENS* CLAIM - VIOLATION OF CONSTITUTIONAL RIGHTS, (DEFENDANTS SAVAGE, HENDERSON, SCARINCE);**<br>**(2)** ***BIVENS* CLAIM – VIOLATION OF CONSTITUTIONAL RIGHTS, SUPERVISORIAL LIABILITY (DEFENDANTS SAVAGE, SCARINCE)** |

(3) **MALICIOUS PROSECUTION, (DEFENDANTS GIRARDI, RIBATALLADA, MINDEN);**
(4) **AIDING AND ABETTING MALICIOUS PROSECUTION, (DEFENDANTS AMEX, GRIMM)**
(5) **CONSPIRACY TO COMMIT MALICIOUS PROSECUTION, (DEFENDANTS GIRARDI, RIBATALLADA, MINDEN, AMEX, GRIMM)**
(6) **FEDERAL TORT CLAIMS ACT ("FTCA") CLAIM – MALICIOUS PROSECUTION (California Common Law) AGAINST THE UNITED STATES of AMERICA;**
(7) **FTCA CLAIM – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (California Common Law) AGAINST THE UNITED STATES of AMERICA;**
(8) **FTCA CLAIM – NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (California Common Law) AGAINST THE UNITED STATES of AMERICA;**
(9) **FTCA CLAIM – NEGLIGENT TRAINING, SUPERVISION AND DISCIPLINE (California Common Law) AGAINST THE UNITED STATES of AMERICA.**

**JURY TRIAL DEMANDED**

## I.      INTRODUCTION

1.      This is a civil action brought by Plaintiff Christopher Psaila (hereinafter referred to as "Chris Psaila" or "Psaila" or "Plaintiff") alleging a *Bivens* claim under the Fourth and Fifth Amendments against Secret Service Defendants Robert Savage (hereinafter referred to as "Savage"), Steve Scarince (hereinafter referred to as "Scarince") and Kenneth Henderson (hereinafter referred to as "Henderson"); claims of malicious prosecution, negligence (including general negligence, negligent supervision, and negligent infliction of emotional distress) and intentional infliction of emotional distress under the Federal Torts Claim Act ("FTCA") against the United States of America (the "United States"); a malicious prosecution claim against Defendants Erika Girardi ("hereinafter referred to as "Erika Girardi" or "Ms. Girardi"), Laia Ribatallada, (hereinafter referred to as "Ribatallada"), and Michael Minden (hereinafter referred to as "Minden"); an aiding and abetting malicious prosecution claim against American Express Company (hereinafter referred to as "AMEX") and AMEX employee and bank investigator Peter Grimm (hereinafter referred to as "Grimm"); and a conspiracy to commit malicious prosecution against Defendants Erika Girardi, Minden, Ribatallada, AMEX and Grimm.

2.      This case reflects the corruption of the federal judicial system by Secret Service agents who conspired with Defendant Erika Girardi, a well-known television personality and theatrical performer,[1] her assistants and employees, Defendant Laia Ribatallada and Defendant Michael Minden, Defendant AMEX, and its employee,

---

[1] Erika Girardi, or as she now calls herself Erika Jayne, appears on the Bravo Network's show The Real Housewives of Beverly Hills, and is in residency in Las Vegas, Nevada, performing her show, "Bet it All on Blonde." The residency takes place at the House of Blues Las Vegas and commenced on August 25, 2023, for a run of 11 dates over five weekends through December 2, 2023. https://variety.com/2023/shopping/news/erika-jayne-las-vegas-residency-how-to-buy-tickets-online-1235592336/ .

Defendant Peter Grimm.  Defendant Erika Girardi is married and is currently in divorce proceedings with the now disgraced and disbarred attorney Thomas V. Girardi. Mr. Girardi is now under federal indictment in the United States Central District of California, and the United States Northern District of Illinois for defrauding clients and misappropriating clients' settlement funds.[2]

3.      All Defendants agreed and conspired to maliciously prosecute Chris Psaila for alleged wire fraud and identity theft claiming Chris Psaila defrauded Erika Girardi by charging her AMEX card with false charges for goods and services under his business Marcosquared LLC, formerly Marco Marco LLC (hereinafter referred to as "Marco Marco").  Psaila and Marco Morante are the founding partners of Marco Marco, where each are 49% owners, with Psaila running the business operations and Mr. Morante, designing, creating, and providing costume services to high-end entertainers.  Erika Girardi gave Chris Psaila and Marco Marco permission to charge her credit card for costumes and services Marco Marco designed, created, made, and provided for her performances from the commencement of their business dealings in 2014.  The credit card holder for her credit card was Thomas V. Girardi (hereinafter "Tom Girardi"), and she was issued a credit card with separate card number as an authorized user on his account.  Tom Girardi, however, was solely financially responsible for paying her credit card charges. Erika Girardi falsely claimed that all of a sudden, after doing legitimate business since 2014, that Chris Psaila, on his own, decided to defraud her in the sum of approximately $800,000 to $900,000 in unauthorized credit card charges from 2015 through 2016.  In reality, Chris Psaila provided Erika Girardi every piece of clothing and services charged under her credit card from the beginning to the end of their business relationship.

---

[2] *United States v. Thomas Vincent Girardi, et al.,* 2:23-cr-00047-JFW; *United States v. Thomas Vincent Girardi, et al.,* 1:23-cr-00054-RAG.

4.     As a result of the false accusations Erika Girardi made and caused her assistants, Defendant Laia Ribatallada and Defendant Michael Minden, to make as her agents, she and her husband, uncharged co-conspirator Tom Girardi, weaponized the Secret Service to maliciously prosecute Chris Psaila.  Tom Girardi personally knew the head of the Secret Service in Los Angeles, Defendant Robert Savage.  On information and belief, the Girardis solicited and bribed Secret Service agent Robert Savage to cause his agents, Defendants Scarince and Henderson, to criminally investigate Chris Psaila for federal crimes, instead of treating the disputed transactions as an ordinary business dispute.

5.     Erika Girardi and Tom Girardi not only enlisted the Secret Service, but also AMEX and AMEX employee Peter Grimm to execute their scheme to maliciously prosecute Chris Psaila.  Without any fair or reasonable investigation by AMEX and Peter Grimm, AMEX accepted Erika Girardi's false statements of unauthorized charges and refunded Erika Girardi and Tom Girardi $787,117.88, depriving Chris Psaila of the opportunity to dispute her claims.  AMEX failed to allow Chris Psaila to dispute the refund according to AMEX's own guidelines, failed to investigate Ms. Girardi's false claims, and told the Secret Service that Erika Girardi was the victim of Christ Psaila's fraud.  AMEX and Grimm only charged back Chris Psaila or Marco Marco one time in the amount of $4,500 (nowhere near the claimed fraud of $787,117.88 for 132 transactions, and in and of itself was a legitimate charge) for the alleged fraud and continue to do business with Chris Psaila and Marco Marco to this day without penalty, suspension, or termination of their merchant privileges.

6.     The United States, acting through the Secret Service, and Defendants Savage, Scarince and Henderson, failed to do any due diligence to solicit evidentiary proof from either AMEX or Erika and Tom Girardi to substantiate whether any of the actual invoices and credit card charges were false and/or unauthorized.  On information and belief, at the time the Girardis first made their false allegations,

Defendant Robert Savage was the head of the Los Angeles office of the Secret Service, and Tom Girardi's friend. At the same time, he became directly and personally involved in the investigation of the Girardis' claims.  Savage agreed to investigate the Girardis' claims against Chris Psaila.  Savage was bribed by Tom Girardi with an agreement for Tom Girardi to represent Savage in a lawsuit against Volkswagen where Savage was a plaintiff.  Tom Girardi, who substituted into the case to represent Mr. Savage, promised to pay Savage $100,000 at the time the Secret Service commenced the investigation into Chris Psaila.  He eventually made personal payment in cash to Savage in an unknown amount in an effort to get Savage to investigate Psaila, and the Girardis more than made up for any amounts paid to Savage when Tom Girardi got the $787, 117.88 reimbursement from AMEX. This bribe and quid pro quo occurred while Savage, Scarince and Henderson were investigating Chris Psaila.  Neither the personal connections between the Girardis and Savage, nor the bribe, were disclosed to Chris Psaila, his counsel or the grand jury during the criminal investigation, indictment, and prosecution of Chris Psaila. Further, Savage had a history of falsely billing for advance Presidential location scouting trips planning forcing his eventual involuntary separation from the Secret Service.  This was also not disclosed to Chris Psaila, his counsel or the grand jury during Chris Psaila's criminal investigation, indictment, and prosecution. Ultimately, the indictment was dismissed against Chris Psaila on September 29, 2021, almost five years after the investigation against Chris Psaila commenced.

7.      Erika Girardi, Laia Ribatallada and Michael Minden knew Chris Psaila had provided Ms. Girardi with all the costumes and services reflected in the invoices charged to her AMEX credit card in 2015 and 2016. AMEX, Peter Grimm, and Secret Service Defendants Savage, Henderson and Scarince acted with reckless disregard to the fact that all the charges were authorized by Erika Girardi or were caused to be authorized through Ribatallada and Minden, and all the goods and services were

provided by Chris Psaila and Marco Marco.  Erika Girardi, Minden and Ribatallada falsely claimed the costumes and services invoiced by Marco Marco were not provided to them, and that they did not authorize the charges for those costumes and services on the AMEX charge account.  The United States, acting through the Secret Service, and AMEX Defendants conspired, and aided and abetted Girardi's, Minden's and Ribatallada's scheme to maliciously prosecute and defraud Chris Psaila so Erika/Tom Girardi would be reimbursed for all Marco Marco charges for 2015-2016 on the Girardis' AMEX account.  At the time, Tom Girardi was going bankrupt, and used client settlement funds from his law firm, Girardi Keese, to pay for his and Erika Girardi's extravagant lifestyle and personal bills.[3]  Thus, both Erika Girardi and Tom Girardi had a compelling reason to illegally claim that Chris Psaila and Marco Marco had defrauded them.  In order to execute the scheme, AMEX, Peter Grimm, the Secret Service Defendants Robert Savage, Kenneth Henderson and Steve Scarince, and the United States, conspired with Erika Girardi, Laia Ribatallada and Michael Minden to maliciously prosecute Chris Psaila.  The refund to the Girardis justified the prosecution - the prosecution justified the refund.  The refund and prosecution were inextricably intertwined and necessary to effectuate the scheme.

8.     The Indictment was procured by fraud and lacked probable cause because false evidence was presented to the grand jury based on Defendants Girardi's,

---

[3] Mr. Girardi was forced into bankruptcy involuntarily in late December of 2021.  He was formally placed into chapter 7 bankruptcy on January 13, 2021.  The bankruptcy trustee in court filings in August 2021 claimed that the firm owed more than $101 million to creditors but only had $4 million in assets.  Mr. Girardi has now been indicted in two separate cases, *United States v. Thomas Vincent Girardi, et al.,* 2:23-cr-00047-JFW; *United States v. Thomas Vincent Girardi, et al.,* 1:23-cr-00054-RAG, where he is accused of misappropriating settlement funds for clients.  He has been disbarred.  He is only named as an uncharged co-conspirator due to his bankruptcy, and due to allegations in his criminal cases that he is suffering from Alzheimer's and is incompetent to stand trial.  The government disputes that he is incompetent to stand trial, and the Court has ruled he is competent to stand trial.

Ribatallada's and Minden's false reports to the Secret Service; the United States and Secret Service Defendants Savage, Henderson and Scarince reckless adoption of these reports with deliberate indifference to Chris Psaila's innocence, their concealment of exculpatory and impeachment evidence not presented to the grand jury or the defense, their reckless investigation and fabrication of Secret Service reports resulted in an Indictment lacking in probable cause and continuing the investigation and prosecution in the face of evidence establishing Plaintiff's innocence; and Defendants AMEX and Grimm's aiding and abetting, and conspiring with Defendants Girardi, Ribatallada and Minden to maliciously prosecute Chris Psaila.

9.      Defendants Savage, Henderson and Scarince are named as defendants for violating the constitutional rights of Chris Psaila pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) ("*Bivens*") concerning the malicious prosecution of Chris Psaila, who was wrongfully prosecuted by the Secret Service and the federal government.  The Secret Service in this case recklessly investigated this case and deliberately ignored the true facts which would have shown the absence of probable cause to indict Plaintiff Chris Psaila.  Moreover, the Secret Service prepared reports that were false, ignoring true facts which would have shown their reports were false.  Finally, the Secret Service Defendants in this case concealed exculpatory and impeachment evidence that would have materially affected the outcome of the case and would have led to the absence of an indictment, a dismissal, or an acquittal at trial.  This *Bivens* remedy allows for the redress of wrongs via damages of intentional and/or reckless behaviors under color of Federal law when Federal law enforcement officers violate the civil rights protection guaranteed under the Fourth and Fifth Amendments to the United States Constitution.

10.     In criminal cases, the prosecution must turn over exculpatory evidence, including impeachment evidence to the defense.  *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S, 150 (1972).  In the United States Supreme

Court case, *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court held that not only prosecutors, but police, have *Brady* obligations to turn over exculpatory evidence to the prosecution and the defense.  The Ninth Circuit, in *Devereux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), reaffirmed the principle that police cannot fabricate evidence, or act deliberately indifferent to a person's innocence, and in *Tennison v. City and County of San Francisco*, 573 F.3d 1078 (9th Cir. 2009), held that police are not entitled to summary judgment based on qualified or absolute immunity on claims of malicious prosecution.  With respect to a *Bivens* claim against federal law enforcement, the Supreme Court in *Hartman v. Moore*, 547 U.S. 250, 261-66 (2006), recognized that a *Bivens* remedy is available for malicious prosecution.  The Ninth Circuit in *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018), recognized that a *Brady* claim could be a basis for a *Bivens* remedy.  Thus, the claims alleged against the Secret Service Defendants in this case, premised on malicious prosecution, the suppression of exculpatory evidence, and fabricated evidence, all can be a basis for a *Bivens* action against the Secret Service Defendants.

11.   The *Bivens* claims against the three Secret Service Defendants sued in their personal capacity arise out of their violations of Plaintiff's Fourth and Fifth Amendment rights during their unwarranted investigation and resulting prosecution of the Plaintiff for meritless claims of wire fraud and identity theft asserted by Defendant Erika Girardi, Tom Girardi, Defendant Ribatallada and Defendant Minden. The Girardi's personal and financial relationships with Defendant Savage should have automatically caused his recusal from the investigation, if not the entire Los Angeles Secret Service Field Office working under him including, Defendants Scarince and Henderson, due to their actual conflicts of interest.

12.   Erika Girardi used the Secret Service and AMEX to enact an illicit private collection scheme to extort money from Plaintiff Chris Psaila and his company Marco Marco.  Ms. Girardi knew that Chris Psaila did not owe her any money.  The United

States, acting through the Secret Service, Defendants Savage, Henderson and Scarince, along with Defendants AMEX and Grimm, acted on the Girardis' behalf, specifically on Erika Girardi's behalf, with deliberate and reckless indifference to the truth that Chris Psaila and/or Marco Marco did not owe Ms. Girardi any money.  Their actions violated Chris Psaila's constitutional rights under *Bivens*: their actions constituted malicious prosecution under state law because the criminal charges lacked probable cause as the charges were authorized and legitimate; they violated his rights by fabricating reports and evidence intentionally or with reckless disregard to their falsity; and they violated his rights by concealing exculpatory and impeachment evidence. As a result of Defendants' reckless actions, Chris Psaila was indicted on false credit card and wire fraud charges which were filed on April 28, 2017, and maliciously prosecuted on those charges in *United States v. Christopher Psaila*, 2:17-cr-00257-FMO.  Chris Psaila always stated he was innocent.  The charges were ultimately dismissed against him four and one-half years later on September 29, 2021.  Chris Psaila suffered extreme emotional distress, financial harm to his business, Marco Marco, and extreme emotional, psychological, and physical injuries as a result of the four and one-half years battle against these illicit charges.

13.     Plaintiff filed an administrative claim under the Federal Tort Claims Act ("FTCA") against the United States Secret Service and the United States of America, based on the same allegations on August 29, 2023.  The United States Secret Service rejected Plaintiff's administrative claim on February 9, 2024 on the ground that it did not establish a claim that the United States, if it was a private person, would be liable to the claimant for damages.  Pursuant to 28 U.S.C. § 2401(b), Plaintiff has six months from the date of denial of his claims, and June 10, 2024, the date of this filing, has timely brought his FTCA claims in federal court within six months of the agency's denial.  This Court in its order dated May 14, 2024, gave leave to amend to add an FTCA claim. (Dkt. 106.)

## II.   JURISDICTION AND VENUE

14.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

15.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16.   Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) as all of the events or omissions giving rise to the claim occurred in the City of Los Angeles, which is located in Los Angeles County, within the Central District of California.

## III.   PARTIES

17.   Plaintiff, Christopher Psaila, (hereinafter referred to as "Chris Psaila" or "Psaila" or "Plaintiff"), is the managing member/executive officer of Marcosquared LLC, the successor in interest to Marco Marco LLC, both incorporated in California with principal place of business in Los Angeles, California (collectively referred to herein as "Marco Marco"). Plaintiff Psaila is and at all times relevant was a resident of Los Angeles County, California. Plaintiff is suing the Defendants in his personal capacity, and not on behalf of Marcosquared. He has no AMEX card, and has no personal agreement to arbitrate any claims with AMEX. This Court has denied AMEX's claim to arbitrate the personal disputes with Plaintiff, which AMEX has appealed. The basis of Plaintiff's claims against Grimm and AMEX is that they maliciously prosecuted Plaintiff, along with the Secret Service and Girardi defendants. There is no claim by Plaintiff against AMEX for any breach of contract claim on behalf of Marcosquared, and the damages claimed are based on Plaintiff's personal damages as a result of the malicious prosecution.

18.     Throughout all relevant times in this Complaint, Chris Psaila was co-owner with Marco Morante of Marco Marco, who was intimately involved with the operations of Marco Marco and was the creative director of Marco Marco.  Both Chris Psaila and Marco Morante own 49 percent each of Marco Marco.  Marco Morante and Marcosquared are not named as Plaintiffs even though Mr. Morante's and Marcosquared's economic interests were damaged by Defendants because they were not maliciously prosecuted by Defendants.  Chris Psaila sues for the damage in his personal capacity and not as owner of Marcosquared, for damages done to him personally.  Defendants Erika Girardi, Ribatallada, and Minden attempted to recruit and align Marco Morante against Chris Psaila, but Mr. Morante refused because he knows that Marco Marco, Mr. Morante and Chris Psaila provided all the goods and services invoiced to Defendant Erika Girardi and that Chris Psaila was innocent of the criminal charges. To this day, Marco Morante and Chris Psaila are full partners in Marcosquared.

19.     Defendant Erika Girardi aka Erika Jayne (hereinafter referred to as "Erika Girardi" or "Ms. Girardi") is an individual residing in Los Angeles County, California, and a former client of Marco Marco.

20.     Defendant American Express Company (hereinafter referred to as "AMEX") is a corporation that acts through its agents and employees and a global provider of financial services, incorporated in the State of New York, with offices worldwide, including Los Angeles, California.

21.     Defendant Robert Savage (hereinafter referred to as "Savage") is an individual residing in Los Angeles County, California.  At all relevant times herein, he was the former Special Agent in Charge (SAIC) of the Los Angeles Field Office of the United States Secret Service.  He is sued in his personal capacity.  He was acting within the scope of his employment when engaged in the actions set forth herein, and thus the United States is legally responsible for such illegal acts under the Federal Tort

Claims Act.  The acts alleged herein, including violations of his constitutional duties under *Bivens* by maliciously prosecuting Plaintiff in the underlying criminal action, violating his constitutional duties, violating federal and state law and violating Secret Service guidelines, by violating Plaintiff's Fourth and Fifth Amendment rights, concealing exculpatory information from the grand jury, maliciously prosecuting Plaintiff under *Bivens*, and violating state law by maliciously prosecuting Plaintiff, intentionally inflicting emotional distress, and committing negligent acts in negligently failing in his mandatory duties, negligently inflicting emotion distress, and negligently supervising Scarince and Savage in his personal involvement in this case, violated his mandatory duties as a Secret Service agent acting as a law enforcement agent, violated his duties in investigating, charging, searching, and obtaining a grand jury indictment without probable cause and through the presentation of false evidence and continuing the investigation of Plaintiff without probable cause and in reckless disregard of the evidence establishing Plaintiff's innocence.

22.     Defendant Steve Scarince (hereinafter referred to as "Scarince") is an individual residing in Los Angeles County, California.  At all relevant times herein, he was the former Assistant to the Special Agent in Charge of the Los Angeles Field Office of the United States Secret Service.  He was Defendant Savage's number one assistant. He is sued in his personal capacity.  He was acting within the scope of his employment when engaged in the actions set forth herein, and thus the United States is legally responsible for such illegal acts under the Federal Tort Claims Act.  The acts alleged herein, including violations of his constitutional duties under Bivens by maliciously prosecuting Plaintiff in the underlying criminal action, violating his constitutional duties, violating federal and state law and violating Secret Service guidelines, by violating Plaintiff's Fourth and Fifth Amendment rights, concealing exculpatory information from the grand jury, maliciously prosecuting Plaintiff under *Bivens*, and violating state law by maliciously prosecuting Plaintiff, intentionally

inflicting emotional distress, and committing negligent acts in negligently failing in his mandatory duties, negligently inflicting emotion distress, and negligently supervising Henderson in his personal involvement in this case, violated his mandatory duties as a Secret Service agent acting as a law enforcement agent, violated his duties in investigating, charging, searching, and obtaining a grand jury indictment without probable cause and through the presentation of false evidence and continuing the investigation of Plaintiff without probable cause and in reckless disregard of the evidence establishing Plaintiff's innocence.

23.     Defendant Kenneth Henderson (hereinafter referred to as "Henderson") is an individual residing in the Washington, D.C., metropolitan area, and is a Special Agent of the United States Secret Service.  At all relevant times herein, he was formerly with the Los Angeles Field Office but now with the Washington, D.C., Office of the United State Secret Service.  He was in charge of the Psaila investigation and was supervised by Defendants Savage and Scarince on the Psaila investigation. He is sued in his personal capacity.  He was acting within the scope of his employment when engaged in the actions set forth herein, and thus the United States is legally responsible for such illegal acts under the Federal Tort Claims Act.  The acts alleged herein, including violations of his constitutional duties under *Bivens* by maliciously prosecuting Plaintiff in the underlying criminal action, violating his constitutional duties, violating federal and state law and violating Secret Service guidelines, by violating Plaintiff's Fourth and Fifth Amendment rights, concealing exculpatory information from the grand jury, maliciously prosecuting Plaintiff under *Bivens*, and violating state law by maliciously prosecuting Plaintiff, intentionally inflicting emotional distress, and committing negligent acts in negligently failing in his mandatory duties, negligently inflicting emotion distress, and negligently supervising Scarince and Savage in his personal involvement in this case, violated his mandatory duties as a Secret Service agent acting as a law enforcement agent, violating his duties

in investigating, charging, searching, and obtaining a grand jury indictment without probable cause and through the presentation of false evidence and continuing the investigation of Plaintiff without probable cause and in reckless disregard of the evidence establishing Plaintiff's innocence.

24.    Defendant Peter Grimm, (hereinafter referred to as "Grimm"), at all relevant times herein, was a Bank Investigator employed by AMEX and charged with AMEX's handling of Erika Girardi's claim of fraud by Plaintiff Psaila.

25.    Defendant Laia Ribatallada, (hereinafter referred to as "Ribatallada"), at all relevant times herein, was employed by Erika Girardi and was her assistant, and a resident of Los Angeles County.  On behalf of Defendant Erika Girardi, she coordinated the provision of costumes and services by Marco Marco.

26.    Defendant Michael Minden, (hereinafter referred to as "Minden"), at all relevant times herein, was employed by Erika Girardi and was the Creative Director for her performances, and a resident of Los Angeles County.  He was Defendant Erika Girardi's creative director for her career, and on behalf of Defendant Erika Girardi, he coordinated the provision of costumes and services by Marco Marco.

27.    Defendant United States of America ("United States") is a governmental entity.  During the relevant time period, the United States, acting through the Secret Service, a federal agency, and defendants Savage, Scarince and Henderson, criminally investigated Psaila, leading to his criminal indictment, and continued the prosecution in reckless disregard to Plaintiff's innocence.  The United States committed the acts herein thought these individual Secret Service agents, and negligently and recklessly failed to supervise these Defendants so that they would not violate Plaintiff's federal and state law rights. The United States has waived its sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674.

28.     Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff believes and alleges that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages set for herein.

## IV.     STATEMENT OF FACTS

### A.     Plaintiff's Credit Card Charges to Defendant Erika Girardi's AMEX Credit Card Were All Authorized and Legitimate.

29.     At all relevant times, Plaintiff Chris Psaila was the managing partner of Marco Marco, a Hollywood, California-based celebrity costume design brand catering to the entertainment industries, including music, television, theater, and motion pictures. Clients of Marco Marco include famous personalities such as Britney Spears, Jennifer Lopez, and Katy Perry among many others. Chris Psaila and Mr. Morante started Marco Marco in 2003 and have been in business twenty years together, starting Marco Marco from the ground floor up. In addition, Marco Marco has designed for American institutions such as Ringling Bros. & Barnum & Bailey, the San Francisco Ballet, and the Houston Ballet.  Plaintiff Psaila and Mr. Morante built a successful business and reputation for delivering high value costumes for entertainers. In 2022, Marco Marco won an Emmy Award for costume design.

30.     Erika Girardi, having heard of the business success of Marco Marco, had commissioned Marco Marco to design various outfits for her nascent singing career and her appearance on the popular television show, The Real Housewives of Beverly Hills.

31.     Over the course of approximately 30 months, from 2014 to 2016, Erika Girardi purchased from Marco Marco numerous costumes and clothing items for herself and for members of her performing entourage.  These costumes were worn for

stage performances, as documented at times in the television show, The Real Housewives of Beverly Hills.

32.     As a customer of Marco Marco, Erika Girardi made purchases using an AMEX credit card imprinted with her name. Erika Girardi used the AMEX Card bearing her name as an authorized user associated with the account of her husband, Tom Girardi, the account holder solely financially responsible for the credit card charges.

33.     Purchases Defendant Erika Girardi, made from Marco Marco were authorized by Defendant Girardi, or her assistants, Defendants Ribatallada or Minden, whom Defendant Erika Girardi authorized to make purchases on her behalf.  When Defendant Erika Girardi met Plaintiff Psaila for the first time, she provided her credit card number, AMEX Account Number xxx-xxxxxx-63516, expiration date and security code, everything Plaintiff would need to submit a credit card charge to AMEX.  In a meeting between Defendants Erika Girardi, Ribatallada, and Minden, and Marco Morante and Plaintiff at the beginning of their business relationship in 2014, Defendant Erika Girardi specifically authorized Chris Psaila to charge her AMEX card for invoices for costumes and services.  At this meeting for a costume fitting, Plaintiff said he would send her the invoices, and handed Defendant Erika Girardi a hard copy of the first invoice.  She physically waved the invoice away and said it "would not be necessary." She did not want to be given the invoices, a practice not normal for Chris Psaila who customarily provided his customers with invoices.

34.     For three years, until the dispute arose in November 2016, Defendants Erika Girardi, Ribatallada and Minden never asked to see the invoices nor disputed any charge made by Chris Psaila to Defendant Erika Girardi's credit card account. Defendant Erika Girardi, her assistant Defendant Laia Ribatallada, her assistant Defendant Michael Minden, or her stylist Dani Michelle (on a few occasions for music videos), would order custom costumes as well as alterations and service repairs for

Defendant Erika Girardi and her dancers. Marco Marco would design and illustrate the costumes for approval, create, sew, and embellish the costumes, and would hold fittings with Ms. Girardi at the company's Hollywood studio. Marco Marco was consistently asked by Defendants Erika Girardi, Ribatallada and Minden for alterations on Ms. Girardi's department store purchased clothing, repairs and maintenance on performance costumes and materials kits for Ms. Girardi's tours. Marco Marco provided all deliverables to Defendants Erika Girardi, Ribatallada, and Minden who were authorized to act on her behalf. At no point prior to November 2016 did Defendant Erika Girardi, Defendant Ribatallada, or Defendant Minden ever dispute any of the charges.

35.     Pursuant to the course of dealing established between Marco Marco as merchant and Defendant Erika Girardi as customer, Defendant Erika Girardi and/or one or more her agents, Defendant Ribatallada and Defendant Minden, communicated orders for purchases and corresponding charges were made pursuant to the express standing authorization given at the beginning of their business relationship back in 2014. That authorization was never revoked during their course of dealings until the dispute arose in November 2016. All invoices and services were authorized through their course of conduct - via telephone calls, electronic mail, text messages, or in-person contact with personnel at the Marco Marco studio – and evidenced by the fact that the costumes were all supplied to Defendant Erika Girardi and members of her performance entourage worn in their performances. In fact, on two subsequent occasions after the initial authorization was given at the first meeting, Defendant Erika Girardi, through her agents, reauthorized the use of her AMEX card twice by Marco Marco, thus authorizing Marco Marco's use of her AMEX card for the costumes and services Marco Marco provided her throughout their course of doing business. On the first re-authorization, the AMEX card had expired, and Shirleen Fujimoto, Tom Girardi's executive assistant at Girardi Keese, on behalf of Defendant Erika Girardi,

sent updated credit card information by email to Marco Marco.  On the second re-authorization, Marco Marco had changed software necessitating updated credit card information.  Defendant Ribatallada, on behalf of Defendant Erika Girardi, provided updated credit card information to Marco Marco.  Ms. Girardi's AMEX card expired two times during their course of dealing, and Defendant Erika Girardi, through Defendant Ribatallada and her husband Tom Girardi and his assistant, caused them to reauthorize her card twice and provide updated credit card information.  By her conduct, Defendant Erika Girardi gave actual and implicit authorization for the charges to her credit card.

36.    As a customer of Marco Marco, Defendant Erika Girardi, through her agents, purchased, during 2015-2016, approximately $934,000 worth of goods and services pursuant to 132 separate transactions, all of which were charged to the AMEX card.

37.    Plaintiff Psaila, and Marco Morante, on behalf of Marco Marco, have evidentiary and documentary proof that they supplied all goods and services representing all 132 transactions with Defendant Erika Girardi, for the years 2015-2016, that were processed on the AMEX card.  The evidentiary proof, provided in response to Girardi's, Ribatallada's and Minden's Anti-SLAPP motion which was denied by this Court and has been appealed by Defendants, and  will be produced in discovery, is comprised of text messages, emails, sketches of costumes sent to Defendants, invoices, order invoices, proof of delivery emails, and googled internet photos showing Defendant Erika Girardi wearing the outfits corresponding to the AMEX charges.  The evidence in this case establishes beyond all dispute that all transactions that Defendants Erika Girardi, Ribatallada and Minden, conspiring with the AMEX Defendants and the Secret Service Defendants, claimed were fraudulent, were authorized, legitimate charges where the costumes and services were supplied. All the charges were authorized; none of them were fraudulent, and Defendants knew

it.  In Chris Psaila's Indictment, he was charged with 7 counts, counts 2-8, where he allegedly charged Defendant Erika Girardi's AMEX card but failed to supply the goods and services.  Attached as Exhibit 1 is the evidentiary proof that establishes beyond all doubt Plaintiff Psaila and Marco Marco supplied the costumes and services represented by those seven invoices for those seven counts.  Plaintiff has similar proof for all 132 AMEX transactions.

38.     Plaintiff Psaila, Marco Morante and Marco Marco, tracked and coordinated orders, fittings, and deadlines, and efficiently communicated all logistics for good and services produced for Defendant Erika Girardi, through one or more of her assistants, including Defendants Ribatallada and Minden, via text message, electronic mail, and proof of delivery text messages.  Defendants Erika Girardi, Ribatallada and Minden were in possession of the outfits, text messages, emails, sketches of the costumes sent to Defendants' emails, and proof of delivery text messages that establish the goods and services were provided, establishing Defendants knew they received the goods and services underlying the credit card charges.  More basically, Defendant Erika Girardi and her performance crew had the outfits exclusively provided by Plaintiff, Mr. Morante and Marco Marco.  There was never a time Marco Marco did not timely provide the costumes and services, and Defendants Erika Girardi, Ribatallada and Minden never complained that they did not receive the goods and services represented by the AMEX charges.  Until November 2016, Defendants Erika Girardi, Ribatallada and Minden never complained once about the AMEX charges.

39.     Unknown to Plaintiff Psaila, but known to Defendants, the credit card holder for Erika Girardi's credit card number XXXX-XXXXXX-63516 was Tom Girardi, who was the account holder on AMEX card number 4-68002.  Erika Girardi was only an authorized user on Tom Girardi's account.  While Erika Girardi could charge on Tom Girardi's account as an authorized user, under AMEX's terms of

service and contract with Tom Girardi, only he was financially responsible to AMEX for any losses on the card.  Thus, Tom Girardi would be the "victim" of any alleged fraud on Erika Girardi's 63516 card, and this explains why it was not until approximately November 2016, after Tom Girardi saw the AMEX charges and was in desperate financial straits at the time, that Defendants Erika Girardi, Ribatallada and Minden concocted their scheme to maliciously prosecute Plaintiff.

**B.      The Inception of Defendants Erika Girardi, Ribatallada and Minden's Uncharged Co-Conspirator Tom Girardi's Malicious Prosecution Scheme Was Enabled by the Girardis' Personal and Financial Relationship with Defendant Secret Service Agent Savage.**

40.      In or around November or December of 2016, at a time when her husband and his law firm were in dire financial straits, Defendant Erika Girardi falsely reported to the Secret Service, through her husband's client Defendant Savage, that charges and transactions made to the AMEX card by Plaintiff Psaila and Marco Marco were not authorized and were fraudulent.

41.      None of the transactions made on the AMEX card by Plaintiff Psaila and/or Marco Marco, for purchases made by Defendant Erika Girardi, were unauthorized or fraudulent, and Defendant Erika Girardi's contrary reports, aided and abetted by Defendants Ribatallada and Minden, to the Secret Service and AMEX were knowingly false.

42.      At all times relevant hereto, Defendant Savage was the Special Agent in Charge of the Los Angeles office of the United States Secret Service, Defendant Scarince was his Assistant Agent in Charge of the Los Angeles Office, and Defendant Henderson was a Special Agent working under Defendant Savage's and Scarince's direct supervision on the Erika Girardi fraud investigation.

43.      On information and belief, Defendant Savage had a history in his former employment with the Secret Service of billing fake advance Presidential location

scouting trips planning for which he was eventually involuntarily separated from the Secret Service during the investigation in this case.  As a Secret Service agent, one of his duties was to scout locations for presidential trips to ensure the President's safety and security.  On information and belief, Defendant Savage falsely used his Secret Service credentials at luxury hotels and golf courses so he would receive free rooms, food, drinks and free golf for him and other Secret Service agents.  He was caught and forced to leave the Secret Service, but this fact, which would negatively affect the credibility of the Secret Service investigation, was not disclosed to Plaintiff, his counsel or the grand jury during his criminal case.

44.    On information and belief, Tom Girardi and Defendant Savage knew each other for at least 10 years prior to 2016.  Defendant Savage's wife's family knew Girardi and his law firm from decades earlier.  Two of her relatives interned at Girardi Keese in the 1990's.  Tom Girardi and Savage socialized regularly, and Savage was an annual attendant at Girardis' Superbowl parties.

45.    On information and belief, the Girardis, with the assistance of Defendants Savage, Scarince, Henderson, Ribatallada, Minden, AMEX and Grimm, concocted a false claim of criminal fraud so that the Girardis would extract a significant reimbursement from AMEX.  Prior to the indictment of Psaila, Tom Girardi did in fact receive a reimbursement to which he was not entitled in the sum of $787,117.88. Defendant Erika Girardi received the goods and services from Plaintiff and Marco Marco, and on top of it, she and her husband received that money through a combination of credits to Girardi's AMEX account, and a check.

46.    In or about November or December 2016, [4] Tom Girardi, borrowing

---

[4] Information about the relationship between the Girardis and Savage was obtained from a news article by Matthew Hamilton and Harriet Ryan, in the Los Angeles Times, dated February 9, 2023, "The Girardis, the Secret Service and wire fraud claims that nearly ruined a Hollywood designer", Los Angeles Times (latimes.com):

heavily to fund his law firm, became upset about the AMEX bill and Erika Girardi's charges to his credit card. Defendant Erika Girardi contacted Defendant Savage, Tom Girardi's friend at the Secret Service, to assist with what she claimed were fraudulent charges by Marco Marco on her AMEX credit card.

47.     On information and belief, at about the same time, Tom Girardi paid Defendant Savage a bribe of an unknown amount in cash in order to ensure that the Girardis received a fraudulent account credit/refund from AMEX. It was a common practice by Tom Girardi to cover up illegal payments by calling them "associated counsel" payments, many of which came from the Girardi Keese client trust account. He bribed Defendant Savage through the guise of formally representing Defendant Savage in a lawsuit against Volkswagen.[5] The joining of these two claims: one by Defendant Girardi against Psaila to unjustly enrich herself and Thomas Girardi; and one by Tom Girardi representing Defendant Savage in Savage's Volkswagen's lawsuit, is no coincidence.

48.     Defendant Savage was a plaintiff in a lawsuit against Volkswagen concerning an alleged defective brake system in his Volkswagen Minivan. Defendant Savage was already represented by counsel. Tom Girardi intervened in the lawsuit on Savage's behalf. Girardi contended in Court the settlement offer to Savage of $7,500 was too small. Girardi accused Savages' Volkswagen counsel of deceit, and that the lawyers had "totally misled the Savage family during the litigation," which the lawyers denied, claiming an affidavit filed by Savage in the litigation was full of falsehoods.

49.     Defendant Savage agreed to assist Defendant Erika Girardi with seeking reimbursement for the AMEX credit card charges and directed Defendants Scarince

---

https://www.latimes.com/california/story/2023-02-09/tom-erika-girardi-secret-service-hollywood-designer-wire-fraud-claims.

[5] This was recently exposed for the first time in February 2023, after the charges against Psaila were dismissed, by the Los Angeles Times. See footnote six for citation to Los Angeles Times article.

and Henderson to assist with the investigation.  This occurred roughly at the same time Tom Girardi agreed to represent Savage in the Volkswagen litigation.  On December 7, 2016, Defendant Erika Girardi sent Defendant Scarince an email, with Defendant Hendeson copied on the email, that, on Scarince's advice, she had searched for additional AMEX charges by Marco Marco for the 2016 year using additional search terms that doubled the number of charges, and the charges she thought had got "reversed were not".

50.     On December 13, 2016, Tom Girardi appeared in court on behalf of Defendant Savage on the Volkswagen case.  A review of the transcript obtained by Plaintiff indicates the following:

> "The Court: . . . So, I put this on for further case management conference because this case appears to be careening off the rails, and I want to get it under control.
>
> And, really, my first question is for Mr. Girardi.  You appeared at the telephonic conference a few weeks ago, and I ordered the parties to have a discussion with the mediator, and at least Mr. Lurie [counsel for Plaintiffs except Savage and his wife who were now represented by Tom Girardi] is representing that that didn't happen."
>
> "Mr. Girardi:  . . . So, I apologize if I was supposed to talk to the mediator."
>
> "The Court:  I was completely clear about that."
>
> "Mr. Girardi:  Oh, okay.  I did the wrong thing. . . . I was trying to solve a - -  a problem due to misrepresentations that took place."
>
> P. 4, ll. 3-24, December 13, 2016, Valencia, et al., vs. Volkswagen, No. C. 15-00887-HSG, USDC, Northern Dis. of CA.
>
> "The Court:  I directed you to have that discussion with the mediator. You didn't do it."
>
> *Id.* P.5, ll. 16-18.

"The Court:  . . . . The second issue is I - - on the telephonic conference, I ordered the individual Plaintiffs to be present. All of them were except for the Savages.  . . . I had a proceeding at which I wanted to hear from the individual Plaintiffs.  The rest of them showed up, even though they don't really have a problem right now, and the Savages didn't.  So, it - -  it's odd to me to then read a complaint that they didn't have a chance to be heard when I set up a proceeding exactly for that purpose."

"Mr. Girardi: Well, I don't know anything about that.  I wasn't around."

"The Court:  Yes, you were.  You were on the call.  We discussed it, and I think - - you apologized for why they weren't on the call."

*Id.* P. 6, ll. 11- 25, p. 7, 1-2.

"The Court:  So, I'll - - I'll follow up as appropriate, but I have a really uneasy feeling about the way that this had gone down in terms of respecting and following my orders, and I can't tolerate that."

"Mr. Girardi:  Okay, your honor.  I'll do this.  I'll withdraw our objection.  I will pay these people what they have coming to them, and we'll withdraw the objection.  That's because if the Court thinks I intentionally did something wrong or tried to do anything inappropriate, that doesn't work with me.  So, I **personally** will pay them **$100,000**, which is what they are entitled to in this. We'll withdraw our objection."

"The Court:  Okay. Do you want to put that in writing?"

"Mr. Girardi: Well, I hope somebody's writing this down. . . . Like we'll withdraw our complaint.  We'll withdraw the fact that **we got defrauded**.  We'll withdraw all that. The case is over with as far as we're concerned, and I **personally**, in light of the fact the Court thought that I intentionally disobeyed an order, which isn't true, and in light of that fact, this is worth it to me, and I will pay them the **$100,000** they would be entitled to had they been properly

FIRST AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL
25

represented . . . .""

*Id.* P. 10, ll. 6-25, p. 11, 1-7. (Emphasis added).

"Mr. Lurie [counsel for Plaintiffs]:  Just for the record, his client never sought to mediate this case at any time after we had any disagreement, and part of the problem here, frankly, is we've never been able to talk to anybody to try to resolve this issue, not with Mr. Girardi, not with the Savages."

*Id.*, P. 11, ll. 20-24.

"Mr. Girardi:  So, therefore, the Savages are out of the case.  We'll give a dismissal - -  prepare a dismissal.  We'll sign it in a heartbeat, and then I personally will pay the Savages a fair settlement in the case, what it should have been . . . ."

*Id.*, P. 14, ll. 4-8.

51.    Through prior filings with the court, and this hearing, Tom Girardi, on behalf of Defendant Savage, attempted to persuade the court that the settlement was inadequate and that the Volkswagen lawyers had misled the Savages.  The court was displeased and angry with Girardi's last-minute intervention in a case where a settlement had already been reached and expressed that to Mr. Girardi. In response, Tom Girardi told the court that the Savages would dismiss the case and Girardi would pay the couple 10 times the value of their settlement:  "That's because if the Court thinks I intentionally did something wrong or tried to do anything inappropriate, that doesn't work with me.  So, I personally will pay them $100,000,'"  The next day, December 14, 2016, Tom Girardi filed papers dismissing Defendant Savage's claims against Volkswagen.

52.    On the very same day when Tom Girardi dismissed the Volkswagen suit, December 14, 2016, Defendants Savage, Scarince and Henderson, as part of the bribe and quid pro quo with Tom Girardi, sent Erika Girardi wearing a hidden recorder to meet with Plaintiff Psaila, to discuss the Marco Marco AMEX charges.  Plaintiff Psaila

went into the meeting to clear up any misunderstandings concerning the Marco Marco charges and review each invoice with Ms. Girardi one by one.  Since all the charges were authorized, he wanted to resolve any disagreement amicably; for him he thought this might be based on some minor accounting issues or a communication problem. He saw this as a business dispute; the Defendant Secret Service Agents and Defendants Erika Girardi, Ribatallada and Minden saw this as an opportunity to bully and cow Plaintiff Psaila into agreeing he overcharged Erika Girardi.  Defendant Erika Girardi extorted Plaintiff Psaila into agreeing he might have mistakenly made some accounting errors.  In an effort to placate her without admitting fault, he agreed that he would do what it takes to make things right, even if that meant taking out a loan.  But that was insufficient for Defendant Erika Girardi, who contended that he had overcharged her by $800,000 or $900,000 dollars, approximately the value of all the business they did in 2015 and 2016.  In essence, without any proof, Defendant Erika Girardi went into that meeting and falsely attempted to extort and accuse Chris Psaila and Marco Marco of not providing any goods and services, when in fact, the facts demonstrate Plaintiff provided Defendant Erika Girardi with all the goods and services he invoiced in 2015 and 2016.

53.    Defendant Erika Girardi, ignoring all the costumes, designs, alterations, and services provided by Marco Marco and Plaintiff Psaila in 2015 and 2016, as well as her performances and on-line images in their outfits, falsely accused Plaintiff in the meeting of providing her nothing and that he had taken from her and Tom Girardi "800,000":

"$800,000?" Plaintiff stated, and added, "I don't know how that would even be possible."

Defendant Girardi later in the conversation stated: "This is a million dollars, this is 800, 900,000, well whatever, of my husband's money that's gone," she told

Psaila. She went on to state, "You know, all he's (Tom Girardi) is being good to me.  And all you've done is taken my money . . . ."

After Defendants Girardi, Ribatallada and Minden left Plaintiff, they met with Secret Service agents, including Henderson, and they high-fived each other, claiming they got Plaintiff to admit $800,000 in false charges.  That was a lie, and Defendant Girardi referred to Plaintiff as a "cocksucker," with Ribatallada and Minden laughing, confirming their malice.

54.    The evidence that will be produced in discovery, that Plaintiff possesses concerning the 132 AMEX charges, establishes that when Defendant Erika Girardi, aided and abetted by Defendants Ribatallada and Minden, said $800,000-$900,000 was "gone," she lied, because Marco Marco and Chris Psaila have evidentiary backup in the form of invoices, text messages, emails as well as photos and videos of Erika Girardi and her dancers wearing said costumes, proving the charges were legitimate and authorized. Exhibit 1, reflecting the proof that Chris Psaila provided Defendants Erika Girardi, Ribatallada and Minden costumes and services comprising the value and amount of the counts charged in the Indictment, is representative of the proof he has for each and every AMEX charge.  Defendant Girardi recklessly made false accusations, clearly desperate about her and her husband's financial situation. Defendants Henderson, Scarince and Savage recklessly adopted that position throughout the investigation and prosecution despite having proof that the costumes and services were authorized, legitimate and supplied to Defendants Girardi, Ribatallada and Minden.

55.    On information and belief, Defendants Savage, Scarince and Henderson, without reasonable suspicion, let alone probable cause, outfitted Defendant Erika Girardi with a covert recording device in an attempt to entrap Chris Psaila into saying something incriminating.  In fact, a careful review of the recording reveals nothing more than an innocent merchant attempting to follow a well-known rule of retail

business: "the customer is always right."  The Defendants, despite being in possession of Chris Psaila's computer records, or the phones (later seized pursuant to a search warrant and therefore in the possession of the Secret Service), or Defendants Girardi, Ribatallada and Minden's text messages and, emails, on their phones and computers, corroborated that all the charges were legitimate.  The proof provided in Exhibit 1, and the evidence in Plaintiff's possession that will be produced in discovery, is the proof that Defendants Erika Girardi, Ribatallada, Minden, Savage, Scarince, Henderson, AMEX and Grimm, had possession and access to, made  false accusations against Plaintiff despite having proof that the goods and services were supplied.

56.     None of the transactions made on the AMEX card by Plaintiff Psaila and/or Marco Marco, for purchases made by Erika Girardi, were unauthorized or fraudulent, and Erika Girardi's contrary reports to the Secret Service were knowingly false.

**C.     Defendants AMEX and Grimm Aided, Abetted and Conspired with Defendants Erika Girardi, Ribatallada, Minden, and Secret Service Defendants Savage, Scarince and Henderson to Maliciously Prosecute Plaintiff without Probable Cause and in Reckless Disregard of the Evidence in Their Possession Establishing No Fraud Occurred and that Plaintiff Was Innocent.**

57.     On December 14, 2016, the day of the secret recording by the Secret Service Defendants and Defendants Erika Girardi, Ribatallada and Minden, Defendant Savage emailed Defendant Grimm of AMEX requesting a call to discuss the case.

58.     In response to Savage's email, on December 16, 2016, Defendant Grimm emailed Defendant Henderson with the bank accounts where monies were sent to Plaintiff Psaila's business from Defendant Erika Girardi's AMEX account.  Plaintiff is informed and believes that there is never any mention in any of the email

correspondence or Secret Service reports that the actual account holder was Tom Girardi.

59.     At a holiday party in 2016, Savage claims that Tom Girardi paid him a $7,500 check, in an email statement to the Los Angeles Times.  Plaintiff is informed and believes that statement he received $7,500 check from Girardi is false, as the bank records for the trust account and general account for the Girardi Keese firm, and the bank records for Tom Girardi's personal accounts, do not reflect a $7,500 check to Rob Savage or his wife, Michelle Savage.  However, Tom Girardi made substantial cash withdrawals from his trust, general and personal accounts during this time period, and Plaintiff is informed and believes payment would have been made in cash to Savage in an unknown amount.  Any payment in cash would be made in an effort to cover up the payment to the Savages, and to cover up the Girardis quid pro quo arrangement with Savage.

60.     On January 9, 2017, Defendant Secret Service Agent Henderson applied for and received a Search Warrant to search Marco Marco's business premises, computers, and electronic devices, and seize all business records, computers, mobile devices and phones.  The whole point behind a search warrant is to obtain documents, records and computer devices to review their contents to determine the veracity of the reports by Defendants Erika Girardi, Ribatallada and Minden.  That did not happen.  In the Search Warrant affidavit, Defendant Henderson stated that fraudulent charges on the AMEX totaled "$801,013.63."  He based this statement on Defendant Erika Girardi's review of the AMEX statement in 2015 and 2016 and report to him on the total of fraudulent charges, and based on Defendant Erika Girardi's statements to him that Marco Marco had been "making repeated and systematic unauthorized charges to E.G.'s AMEX account totaling hundreds of thousands of dollars."  Not only was Defendant Erika Girardi's reports false and without proof, but the charges were also authorized.  Defendant Henderson, in his affidavit signed under the penalty of perjury,

with incomplete and false information supplied by Erika Girardi, referred to Marco

Marco's business, and therefore Chris Psaila, as "permeated with fraud." As a result,

the Search Warrant was issued based on reckless mistruths by Defendant Henderson,

and on information and belief, endorsed and approved by Defendants Savage and

Scarince, based on lies and without probable cause. These allegations were made with

reckless disregard to the truth and were knowingly false, for many reasons, including

but not limited to:

a.  Erika Girardi authorized Chris Psaila and Marco Marco to retain her
AMEX card information and charge the credit card for all orders
provided to Ms. Girardi and her performance crew.

b.  The Secret Service Defendants failed to interview Psaila and Marco
Morante prior to obtaining the search warrant to determine if they
had provided the costumes and services. The Secret Service
interviewed Marco Marco's bookkeeper, but she did not have
personal knowledge of the work Marco Marco did for Defendant
Girardi, or the invoices or billing, or whether the invoices were
accurate.

c.  Not a single customer of Marco Marco offered any evidence of
sham business, dealings, or unauthorized or false credit card
charges, by Chris Psaila, or Marco Marco, and there was no such
evidence. The Secret Service Defendants failed to interview any
Marco Marco customers.

d.  By her own admission, Erika Girardi, and thereby her employees or
staff, never had access to the statements from AMEX and never read
any of them in the history associated with this account until at least
November 2016. She never once complained about their business
dealings or Marco Marco's charges for almost three years, depriving

Plaintiff an opportunity to address her concerns or if she wanted to review invoices or provide them to her.  She had specifically instructed him not to send her invoices for orders from Marco Marco the entire time of their business relationship, until demanding them in November/December 2016, a practice not normal for Chris Psaila who customarily provided his customers with invoices.

e.  Defendant Erika Girardi's assistants, Defendant Ribatallada and Defendant Minden, placed every Defendant Erika Girardi order with Marco Marco except for a few placed by Dani Michelle, for video performances.  Therefore, Erika Girardi never had any direct personal knowledge of the details of the specific orders of any goods or services ordered at Marco Marco, except for the clothes she and her performance crew wore which establishes that she received what they ordered, contrary to the Search Warrant affidavit that the transactions were unauthorized. Accordingly, the entire search warrant affidavit for every single transaction was based on incomplete and unreliable information.

f.  There was no basis to allege that the business was "permeated by fraud" based on the allegations of Defendant Erika Girardi. Defendant Henderson did not research the Marco Marco business, did not interview other Marco Marco customers who received their orders, did not interview Marco Morante or Plaintiff prior to applying for the search warrant, who would know if anyone would know, if the costumes and services were provided, or the charges were authorized.  Defendant Henderson failed to review any business documents to conclude the business was permeated by fraud.  He failed to review Plaintiff's AMEX history of transactions

which would have revealed out of the thousands of transactions Plaintiff had with AMEX, there had been only two charge backs which turned out to be legitimate charges.  If he conducted any reasonable investigation as required of a federal law enforcement agent, he would have reached the opposite conclusion.

g.  Three was no basis for the conclusion that fraudulent charges on the AMEX totaled "$801,013.63."   Plaintiff never admitted to any such amount and in fact stated such a number was "not possible."  Using such a number allowed for the conclusion that the business was permeated by fraud, which allowed the Secret Service to seize all business records of Marcosquared.

61.   No reasonable law enforcement officer, especially one with Defendant Henderson's experience and training not only as a special agent for the Secret Service but as a licensed attorney, would state under penalty of perjury a transaction was "unauthorized" without contacting the persons with actual personal knowledge of the charges in question. Pursuant to the criminal proceeding wrongfully initiated by Defendants Erika Girardi, Ribatallada and Minden, and pursued in a constitutionally unlawful manner with reckless disregard for the truth by Defendants Savage, Scarince and Henderson, on January 11, 2017, Plaintiff Psaila, his employees, and his places of business were subjected to a search warrant executed by law enforcement agents brandishing weapons. The search warrant was executed in a way that was invasive, abusive, disruptive, and publicly humiliating.  Plaintiff Psaila was detained and forced to sit on the public sidewalk in front of his business neighbors and colleagues for an extended period of time. Plaintiff Psaila was subjected to extensive interrogation and public humiliation by Defendants Scarince and Henderson.  This search and seizure activity of law enforcement pursuant to the wrongful criminal proceeding instigated by

Erika Girardi, despite its aggressive and invasive nature, yielded no evidence of any criminal activity on the part of Plaintiff Psaila.

62.    As a result of the baseless and improper criminal proceedings and investigation instigated by Defendant Girardi, business records, and all computers, and electronic devices necessary to conduct Marco Marco's legitimate business activities were confiscated by law enforcement agents, thereby rendering business operations for Marco Marco impossible. The computers held the designs and illustrations created by Marco Morante for all of Marco Marco's clients at the time. When Marco Marco could not deliver the items since they did not have the designs, customers left Marco Marco and went to other design firms.

63.    During execution of the Search Warrant, Chris Psaila willingly offered and gave the Secret Service Defendants the passwords to his computers and his QuickBooks accounting software so that agents Savage, Scarince and Henderson could verify that no crimes or fraud occurred.  This search took place approximately three months before the Indictment was filed.  Thus, prior to the Secret Service Defendants and the United States Attorney presenting this case for indictment in April 2017 to the grand jury, the Secret Service was in possession of all the information they needed to determine that Defendant Erika Girardi's claims were false. The records included time stamped invoices, emails, texts, sketches, material receipts used in the costumes, images, and video of the documents, represented by the documents in Exhibit 1, and which will be produced in discovery for all 132 transactions.  The records the Secret Service possessed showed the charges were authorized.  The only additional documents included in Exhibit 1 for the seven indictment charges, and which Plaintiff possesses for all the transactions, that were not in the computers and records seized by the Secret Service, were the social media searches Chris Psaila conducted of Erika Girardi's performances that showed she was wearing outfits that Marco Marco provided to her pursuant to their business arrangement.  The agents in

their experience are surely aware of the evidentiary value of social media searches which in this case would show Defendant Erika Girardi wearing Marco Marco outfits, but on information and belief, they conducted no such basic investigation techniques to confirm whether she received the outfits reflected in the invoices.

64.     The Secret Service would have also discovered an email from Defendant Ribatallada to Plaintiff, showing that Defendant Erika Girardi, through Ribatallada, gave her AMEX card number reauthorizing the credit card to be used by Chris Psaila to charge her for the clothing and services.  The Secret Service failed to do the basics of any criminal business fraud investigation, including a review of the documents seized, a forensic audit of the business records done by Secret Service investigators, accountants, auditors and experts, reviewing AMEX's transaction history with Plaintiff revealing no evidence of fraud, and a review of Erika Girardi's social media would have verified that Defendant Erika Girardi's allegations of $800,000 to $900,000 in fraudulent charges were false. Since the invoices added up to $934,000 for the years 2015 and 2016, Defendant Erika Girardi was essentially claiming that Marco Marco had not provided any goods and services.  Thus, Defendant Henderson's false claim in the affidavit that Marco Marco's business was "permeated with fraud" was not substantiated with any evidence.  Defendant Erika Girardi's allegations are so patently false on their face it is unfathomable how the Secret Service and United States could have proceeded to prosecute a case transparently lacking in probable cause.  The Secret Service and United States should have never presented the case to the grand jury for indictment, and never proceeded with the prosecution.

65.     After subsequently seizing all of the computers and software of Marco Marco, no evidence of fraud was found to corroborate Defendants Erika Girardi's, Ribatallada's and Minden's false claims. The evidence of Chris Psaila's innocence was in the possession of the Secret Service, Defendants Savage, Scarince and

Henderson; it was also in the possession of AMEX's records both the Secret Service and AMEX failed to check.

66.     After his computers were seized, Plaintiff Psaila was in ongoing email communication with Defendant Henderson for months before the grand jury returned the indictment, asking him on many occasions for the seized computers to be returned so he could continue Marco Marco's operations and do his best to repair the now broken client relationships. Plaintiff Psaila also discussed with Defendant Henderson a charge back from AMEX for $4,500, the only chargeback that Defendant Psaila received from AMEX for the entirety of Marco Marco's business relationship with Erika Girardi.

67.     On January 18, 2017, a week after the search, Plaintiff Psaila wrote Defendant Henderson the following email:

"Hello Ken,

I left you a voicemail earlier today but thought I would send an email as well.

I received a chargeback on my account today from American Express in the amount of 4500.00 for a charge made on 11/30/16.  This was a deposit on our final and most recent job with Erika which was drawn by Marco and approved. We then purchased materials and constructed the look.  No response was received after that from her.  This was actually the piece that I showed you when we met at our studio last Wednesday.

While I do plan to dispute this chargeback with Amex immediately with images of the products. **The computer with the illustrations, the phone with text message of approval of the garment and the backup receipts for the materials purchased were all taken in the seizure last week.**

A chargeback like this makes business operations very difficult so I would like to get the dispute info to Amex as soon as possible.

I wanted to get your opinion on how to proceed in regard to this.  Please let me know if you prefer an email correspondence or a phone call. Thanks, Chris." (Emphasis added).

68.    On January 18, 2017, Defendant Henderson responded, stating:, "Chris, Sorry I am in DC for the inauguration. Like I told you on the phone I will get you back the computers as soon as I can, but this process can take a while.  Feel free to let AMEX know we have seized the computer, and they can direct questions to me. Thanks, Ken Henderson."

69.    The computers were not returned to Plaintiff Psaila for several months, severely harming his business.  The significance of the email exchange is that Plaintiff Psaila informed Defendant Henderson that there was only one chargeback out of the $934,000 charges to Defendant Erika Girardi's AMEX account for $4,500. This put the Defendants on notice that the Marco Marco and Plaintiff's charges were legitimate, since only one charge was ever charged back by AMEX on the Girardi account. Additionally, this email put the Secret Service Defendants on notice of what documents to look for and where to look for the authorizations for the charges by Marco Marco and Chris Psaila:  "The computer with the illustrations, the phone with the text messages of approval of the garment and the backup receipts for the materials purchased were all taken in the seizure last week."  The Defendant Secret Service agents also had access to the invoices which all contained timestamps.  The invoice timestamps are significant because they show the invoices had not been altered or edited in any manner by Plaintiff Psaila or Marco Marco, again proving the charges were legitimate.  With reckless disregard for Chris Psaila's innocence, the Secret Service Defendants failed to review this evidence.

70.    In all of Chris Psaila's and Marco Marco's transactions since 2003 with AMEX, which numbered in the thousands, there were only two chargebacks: the $4,500 instance referenced above, and one in 2012 for $550 dollars. In both cases,

Chris Psaila and Marco Marco provided the costumes and services, and both charges were legitimate.  This evidence establishes Marco Marco and Chris Psaila's track record of honest and legitimate business practices as evidenced by the thousands of legitimate AMEX transactions.  The Secret Service and AMEX Defendants were reckless in jumping to the conclusion that with this one customer, Defendant Erika Girardi, Chris Psaila and Marco Marco decided to embark on a scheme to defraud her in the hundreds of thousands of dollars without checking AMEX's transaction history with Chris Psaila and Marco Marco.  His track record of legitimate business in general and with AMEX in particular was recklessly ignored by the Secret Service Defendants when they averred in the Search Warrant affidavit that his business was "permeated with fraud," and AMEX and Grimm when they recklessly made claims of fraud when they had records in their possession which contradicted those claims.

71.     Upon information and belief, Defendant Henderson, recklessly and with deliberate indifference to the rights of Chris Psaila, reported that the Erika Girardi transactions amounting to "$801,013.63" in the years 2015-16 were unauthorized, despite possessing evidence that established that all the transactions were legitimate and authorized.  No responsible or reasonable Secret Service agent in similar circumstances could reasonably conclude that any transaction was unauthorized when they had records in their possession establishing the charges were legitimate.

72.     Defendant Savage was biased and invested in securing the eventual reimbursement of $787,117.88 for his friends, the Girardis.  His bias and conflict of interest was concealed from Chris Psaila, his defense counsel, and the grand jury during the criminal prosecution, which was material exculpatory evidence that should have been disclosed to the defense.

73.     Defendant Erika Girardi presented her false claims to AMEX.  Defendant AMEX and Defendant Peter Grimm, who was the AMEX fraud investigator in charge of handling Defendant Erika Girardi's claim, recklessly concluded the charges were

unauthorized.  Defendant AMEX's and Defendant Grimm's conclusion that the charges were fraudulent, resulted in AMEX refunding to the Girardis the sum of $787,117.88.  Plaintiff is informed and believes AMEX sent Tom Girardi a check for $516,755.64, and reimbursed Tom Girardi's AMEX account $270,362.24.  AMEX claimed it would go after the wrongdoer, Plaintiff, but never did, instead participating in the criminal investigation and prosecution in order to obtain criminal restitution that could not be discharged by Plaintiff in bankruptcy.  AMEX waived any ability to arbitrate claims with Plaintiff as if pursued collection through the criminal process.  The false allegations by Defendants Erika Girardi, Ribatallada and Minden, combined with the reckless Secret Service investigation and the reckless determination of fraud and unauthorized charges by AMEX without any factual foundation or investigation, caused the refund by AMEX and subsequent malicious prosecution of Chris Psaila.

74.    Plaintiff Psaila and Marco Marco supplied the clothing and services that added up to the claimed amount of fraud by Defendants Erika Girardi, Ribatallada and Minden.  AMEX did nothing to verify the false claims made by Erika Girardi that Marco Marco and Chris Psaila did not supply costumes to her in the sum of $787,117.88.  AMEX violated its merchant agreement with Chris Psaila and its own guidelines by failing to conduct due diligence and determine whether Erika Girardi fraud claims were true or not.

75.    AMEX did not question Plaintiff Psaila before issuing the refund; if so, they would have received all the proof they needed that charges were legitimate.  They paid a refund with only one charge back of $4,500 to Plaintiff's account out of a refund of $787,1117.88, and continued to do business with Plaintiff and Marco Marco even after Plaintiff was indicted.  They did not question why a legitimate merchant such as Plaintiff and Marco Marco would commit fraud where they had a long track record of legitimate merchant business with AMEX since 2003.  All of a sudden, Plaintiff decided to defraud this one customer after doing legitimate business with her for over a

year.  All of a sudden, on January 1, 2015, after over ten years of legitimate AMEX business and thousands of AMEX transactions, Plaintiff decided to embark on a scheme where he did not provide any goods and services for almost every invoice for a two-year period.  A perfunctory and superficial investigation would have revealed immediately that the charges were legitimate.  AMEX specifically deprived Plaintiff of his merchant rights to dispute Defendant Erika Girardi's claims by not charging back his account beyond the one transaction for which Psaila provided the proof he provided the costume to Erika Girardi.  The failure to charge back the account alone establishes AMEX knew or acted with reckless disregard as to whether the charges were legitimate.  For the one transaction they did charge back, Psaila provided proof of the costume to both the Secret Service and AMEX that put them on notice to question and investigate the legitimacy of Defendant Erika Girardi's, Ribatallada's and Minden's claims.  In light of the factual circumstances at hand, it is inconceivable for any prudent and commercially minded corporation such as AMEX to issue a substantial refund of three quarters of a million dollars without substantial investigation and compelling evidentiary support.

76.   The AMEX refund resulted in the Secret Service Defendants obtaining an indictment because most reasonable people would assume such a reimbursement of that size would be persuasive evidence of wrongdoing.  The subsequent Indictment, obtained by Defendants Savage, Scarince and Henderson and sought after by Defendants Erika Girardi, Ribatallada and Minden, was inevitable once such a substantial refund was made by AMEX and Grimm.  The grand jurors would naturally infer that AMEX $787,117.88 refund would mean that Plaintiff did defraud Erika Defendant Girardi, why else would such a reputable company make such a refund?  They would assume that no reasonable for-profit company would part with that amount of money without reasonable grounds to do so.

77.     The AMEX Defendants' refund caused the prosecution and indictment — the Secret Service Defendants' investigation, indictment and prosecution caused the refund — the actions together created a self-fulfilling malicious prosecution of Plaintiff.  But due to the false statements of Defendants Erika Girardi, Ribatallada and Minden, motivated by their desire to unjustly enrich themselves at the expense of Plaintiff's reputation, livelihood and freedom, they played upon uncharged co-conspirator Tom Girardi's relationship with Defendant Savage, and manipulated the Secret Service Defendants and the AMEX Defendants to conspire with them and recklessly ignore the true facts in their possession that established that the invoices were legitimate and authorized.  This resulted in false evidence presented to the grand jury resulting in the Indictment, and resulted in an indictment utterly lacking in probable cause resulting in the malicious prosecution of Plaintiff.

**D.     The Defendants Obtained the Indictment Without Probable Cause and in Reckless Disregard to Plaintiff's Innocence.**

78.     On April 20, 2017, Defendant Grimm was interviewed in the Los Angeles Secret Services office by Defendant Henderson.  Defendant Grimm stated to Defendant Henderson that, "American Express has reimbursed the **victim** E.G., with a combination of statement credits and a check.  The total reimbursement was $787,117.88."  (Emphasis added).  A copy of this Memorandum of Interview is attached as Exhibit 2.  This reimbursement was critical for the Secret Service to seek a grand jury indictment against Plaintiff Psaila, just one week later, on April 28, 2017. The statement by Defendant Grimm, while accurate that AMEX reimbursed Defendant Erika Girardi and her husband, was false in at least four ways:  (1) it implies that AMEX determined that there was fraud committed by Marco Marco and Chris Psaila; (2) that the fraud was in the sum of $787,117.88; (3) that AMEX determined there was fraud based on a fair, complete and accurate investigation; and (4) that Defendant Erika Girardi was the purported victim.

79.    The facts establish that there was no complete, accurate or fair investigation conducted by Defendants Savage, Scarince and Henderson nor by AMEX and Grimm.  The facts establish that Defendant Erika Girardi suffered no loss, let alone $787,117.88.  The facts establish that Defendant Erika Girardi was not a victim. Any investigation at all, or review of the evidence in the Secret Service possession seized pursuant to the Search Warrant in January 2017, would have uncovered that Marco Marco and Chris Psaila had documented proof that all costumes and services had been supplied to Defendant Erika Girardi, that all the charges were authorized, and that no fraud occurred, thereby establishing that Defendant Erika Girardi was not a victim.

80.    Defendants Henderson, Scarince and Savage failed to review the proof that the Secret Service was in possession of when they executed a search warrant in January 2017, including emails, text messages and timestamped invoices documenting the transactions with Defendant Erika Girardi, which contradicted her claims of fraud. Henderson, at the direction of Savage and Scarince and Savage, applied for the search warrant, misleading the magistrate with false claims, and after the execution of the search warrant, was in possession of all the evidence he needed establishing that there was no probable cause of criminal activity.

81.    Defendant Henderson failed to ask either Chris Psaila or Marco Morante if they had proof of the transactions which they would have demonstrated existed in the seized records.  Chris Psaila fully cooperated in the Secret Service investigation, including giving the Secret Service the passwords to his computers and his QuickBooks at the time the computers were seized, so that any inspection would have shown no fraud had occurred.  Let there be no mistake, all 132 charges for the years 2015 and 2016 when the claimed fraud occurred, were in fact authorized by Defendants Erika Girardi, Ribatallada and/or Minden.  The detailed records showing

each and every authorization and legitimate invoice are similar to those attached to Exhibit 1 for the seven indictment counts.[6]

82.     The claim that Erika Girardi was the "victim" in the report, by both the Secret Service and AMEX, is false. The AMEX card holder for the charges was Tom Girardi, not Erika Girardi.  The credit card Erika Girardi used to charge the Marco Marco costumes and services were on Tom Girardi's AMEX card, where she was just an authorized user.  If there had been a "victim," that would have been Tom Girardi, the account holder, not Erika Girardi.  Consequently, all references to Erika Girardi by AMEX and the Secret Service in their respective investigations as the "victim", and in the grand jury proceedings and subsequent indictment, are without any factual basis.

83.     On April 26, 2017, two days before the case was presented to the Grand Jury, Defendant Henderson, who was the Secret Service agent in charge of the investigation,  and Assistant United States Attorney George Pence[7], who was the

[6] In an effort to keep the public deluded into thinking she was honest and should not be associated with her husband's crimes, Defendant Erika Girardi continued slanderous and libelous public statements about Chris Psaila. On February 9, 2023, Erika Girardi, with malice aforethought, told the Los Angeles Times:
"In no way did I pull a scam to get $760,000 to help anybody get this money." "The Girardis, the Secret Service and wire fraud claims that nearly ruined a Hollywood designer", Los Angeles Times (latimes.com):
https://www.latimes.com/california/story/2023-02-09/tom-erika-girardi-secret-service-hollywood-designer-wire-fraud-claims.
To easily understand the libelous nature of this statement made to the Los Angeles Times see Exhibit 1, the detail on the seven transactions that were Counts 2 through 8 in the Indictment.
[7] George Pence is not named as a defendant in the complaint as prosecutors are absolutely immune from liability for being civilly sued for misconduct in their roles as prosecutors under the Supreme Court case *Imbler v. Pachtman*, 424 U.S. 409 (1976). In *Imbler*, the Supreme Court held that, "The question presented in this case is whether a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is amenable to suit under 42 U.S.C. § 1983 for alleged deprivations of the defendant's constitutional rights. The Court of Appeals for the Ninth Circuit held that he is not. 500 F.2d 1301. We affirm."  If it turns out that Mr.

Assistant United States attorney responsible for presenting the case to the federal grand jury, spoke to Erika Girardi in a three-way conversation by telephone. Pence described the process of the case from presentation to the grand jury, to arrest or surrender, bond hearings, trial and plea agreements, and sentencing. Pence described Defendant Erika Girardi's obligations if Plaintiff Psaila was indicted, and she understood that the defense may ask for information through subpoenas of her. She said she and her assistants were willing to testify at trial. Pence discussed with Defendant Erika Girardi the possible charges in the case and the sentences the charges would carry. He also stated he would be sending to Defendants Erika Girardi and Henderson the seven charges that would be in the charging document. These were the seven AMEX Marco Marco charges he would present to the grand jury as fraudulent. He asked Defendant Erika Girardi to review the charges and look for any supporting documentation including emails, texts, or invoices that would support the charges as legitimate charges. Thus, Pence requested Defendant Erika Girardi to provide any documentation she had that the Marco charges for these seven charges were legitimate, giving her one last chance to back out of her claims of fraud, knowing the severe consequences for Chris Psaila if she continued to claim the charges were illegitimate and had no documentation to support the charges.

84. On April 26, 2017, Assistant United States Attorney George Pence sent Defendant Henderson, Defendant Erika Girardi and Defendant Ribatallada via email the seven AMEX Marco Marco charges that he planned to present to the grand jury as unauthorized and fraudulent.

85. On April 27, 2017, the day before the case was presented to the Grand Jury for indictment, Defendant Henderson and Assistant United States Attorney

_____

Pence acted as an investigator on the case, Plaintiff will seek leave to amend to name him as a defendant.

George Pence spoke via telephone with Defendant Erika Girardi and Defendant Ribatallada concerning the seven charges that Pence planned to present as fraudulent and unauthorized charges to the grand jury.

86.     Upon information and belief, and with malice aforethought, Defendant Henderson conducted a charade interview on April 27, 2017, with George Pence, just before the Indictment was returned on April 28, 2017, designed to intentionally mislead the grand jury by asking Erika Girardi and Laia Ribatallada if they could find any texts, emails or invoices to support the seven charges. Defendant Henderson acted with deliberate indifference to Chris Psaila's innocence since he already possessed the evidence obtained from his search warrant that confirmed all the transactions were authorized and legitimate.  The documentation Henderson possessed specifically confirmed the seven transactions for which Pence was seeking corroboration were legitimate.  Based on the false evidence presented by Defendants Erika Girardi and Ribatallada that there was no supporting evidence for the invoices underlying Counts 2-8 of the Indictment, facilitated by the reckless investigation by Defendants Savage, Scarince, Henderson, AMEX and Grimm supporting the false reports that the invoices were fraudulent and unauthorized, the Defendants presented false evidence to the grand jury resulting in an Indictment being returned that lacked probable cause.

87.     Attached as Exhibit 1 is evidence that shows these seven charges, counts two through eight of the Indictment, were authorized and legitimate. Defendants Erika Girardi and Ribatallada claimed that they could not "find" any emails, text messages or invoices to support the charges.  A true and correct copy of this April 27, 2017, Secret Service Memorandum report is attached hereto as Exhibit 3.  This was a false statement by Defendants Erika Girardi and Ribatallada.  First, they refer to the charges as unauthorized.  Defendants Girardi and Ribatallada, knew the charges were authorized.   Defendants Erika Girardi, Ribatallada and Minden had the texts and emails to substantiate the seven AMEX charges, and equally important, they had the

costumes commissioned from Marco Marco.  Second, they failed to explain to Defendant Henderson and Pence that they would not possess invoices since Defendant Erika Girardi told Chris Psaila and Marco Morante not to send invoices, and that they never asked for them prior to November 2016 when the dispute arose.  Third, as set forth in Exhibit 1, relating to the seven charges, and the documents Plaintiff possesses for all 132 transactions, there were texts, sketches, photos, and invoices that supported the charges.  Defendants Erika Girardi and Ribatallada just lied.  For count 8 of the Indictment, a charge on August 10, 2016, there is a video of Defendant Erika Girardi actually trying on the costume at Marco Marco's business that was filmed for a promotional segment for Bravotv.com.[8]

88.    Defendant Erika Girardi, Ribatallada and Minden's reports to the Secret Service constituted false reports to a law enforcement agency that Plaintiff Psaila had committed crimes requiring law enforcement intervention. These false reports were intentionally ratified by Defendants Savage, Scarince and Henderson, who recklessly failed to investigate the allegations in violation of Plaintiff's rights.

89.    Based on information falsely and maliciously reported to law enforcement and prosecutorial authorities by Defendants Erika Girardi, Ribatallada and Minden, Defendants Savage, Scarince and Henderson along with Assistant United States Attorney George Pence, presented the case to a grand jury just one day after Defendants Erika Girardi and Ribatallada reported that the seven charges were fraudulent, unauthorized and that they had no documentation to support the charges. Plaintiff is informed and believes Defendant Henderson testified before the grand jury, submitting the false facts to the grand jury.  By conducting reckless investigations with disregard for reliable and quality investigation safeguards and standards, and by ignoring the true facts, Defendants Savage, Scarince, Henderson, AMEX and Grimm

---

[8] https://www.bravotv.com/the-real-housewives-of-beverly-hills/blogs/erika-jayne-shows-off-her-latest-itsy-bitsy-costume

conspired, counseled and aided and abetted the deception and fraud on Chris Psaila, the grand jury and the federal court. Plaintiff is informed and believes that the grand jury, based on the false evidence, returned an indictment without probable cause.[9] If the true evidence in the possession of the Defendants had been presented to the grand jury, no grand jury would have returned an indictment because no probable cause existed because there was no fraud.   The Indictment against Plaintiff Psaila was filed on April 28, 2017, (*United States v. Psaila*, 2:17-cr-00257-FMO, C.D. Cal).

90.     Among the allegations contained in the Indictment that were false are: Count One – use of an unauthorized access device: the credit card use was unauthorized and done with the intent to defraud by Chris Psaila; Counts Two though Eight:  - wire fraud: Chris Psaila with the intent to defraud devised a scheme to defraud Defendant Erika Girardi, that he did it with false pretenses, representations and promises and the concealment of materials facts, and that  as result of Plaintiff Psaila's unauthorized use of Defendant Erika Girardi's AMEX card, AMEX "suffered losses in excess of $700,000;" Count Nine – aggravated identity theft:  Chris Psaila used Defendant Girardi's credit card without "lawful authority" to commit the offense in Count One. (Quoting the indictment.)

91.     The Indictment charged Chris Psaila with the following counts: Count One - using an unauthorized access device, the AMEX credit card, with the intent to defraud, in violation of 18 U.S.C. § 1029(a)(2), facing ten years imprisonment; Counts Two through Eight, a scheme to defraud (wire fraud) "victim" "E.G." by means of material false and fraudulent pretenses, representations, and promises, and concealing material facts, and as a result of the scheme, AMEX suffered losses in excess of

---

[9] Plaintiff and his criminal defense counsel never received a copy of the grand jury transcript because the Indictment was dismissed prior to production of the transcript the government would have been obligated to produce if the case had gone to trial. Plaintiff will be moving the Court to issue an order to produce the transcript.

$700,000, in violation of 18 U.S.C. § 1343, facing twenty years on each count; and Count Nine – "using the name and American Express account number of victim E.G," without lawful authority, in violation of 18 U.S.C. § 1028(a)(2), carrying a **mandatory consecutive** two year prison sentence. Therefore, Plaintiff Psaila was facing a maximum of **152 years** in prison for a crime of which he was innocent.  This caused Chris Psaila tremendous stress, psychological and physical damages, but he would not plead guilty to a crime he did not commit.

92.     The Indictment returned contained many falsehoods, based on the false reports by Defendants Girardi, Ribatallada, Grimm, Savage, Scarince, Henderson, AMEX and Grimm, including but not limited to the following:

a.     In all the counts, the Indictment alleges that Plaintiff Psaila used an unauthorized access device, Defendant Erika Girardi's credit card number.  Defendants Erika Girardi, Ribatallada and Minden knew this allegation was false, and with reckless disregard to the obvious facts Defendants Savage, Scarince, Henderson, AMEX and Grimm knew this was false.  Defendants Erika Girardi, Ribatallada, and Minden knew it was false because they did not provide AMEX or the Secret Service with one false invoice; Defendant Erika Girardi received all the costumes and services she commissioned, justifying the charges, and any perfunctory review of the facts would demonstrate that there was no fraud.  The access device use was authorized because Defendant Erika Girardi authorized Plaintiff to use her card to charge for the goods and services he provided which he did.

b.     The Indictment alleges that the "victim" was Defendant Erika Girardi, "E.G.," when the indictment itself alleges the loss was suffered by AMEX. On information and belief, the statement that

Defendant Girardi was the victim is false because the credit card belonged to Tom Girardi, not Defendant Erika Girardi.  If there was a victim it would be Tom Girardi, not Erika Girardi, since he was the credit card holder, not Erika Girardi, and he was liable to AMEX for the credit card charges.  Omission of the fact he was the true owner was to conceal his involvement with Defendant Erika Girardi in instigating the malicious prosecution of Plaintiff Psaila by the defendants, to conceal his desperate financial situation, and to conceal his financial and personal relationship with Defendant Savage, which would affect the credibility of the allegations and provide a motive for making false claims.

c.   The Indictment alleges that the losses were in excess of $700,000, which was false and without any factual basis for the allegation. The Secret Service Defendants had evidence of this falsity, including text messages, sketched drawings of costume designs, timestamped invoices and emails; Defendants Erika Girardi, Ribatallada and Minden had evidence of this falsity, including social media with photos of performances in Marco Marco costumes, texts, sketch drawings of costume designs, and emails. AMEX failed to investigate in any legitimate manner before authorizing the refund that resulted in the Indictment.

d.   The Indictment alleges in Counts Two through Eight specific transactions that the Defendants contend were fraudulent. These were the transactions on which Defendants Girardi and Ribatallada were questioned on April 26 and 27, 2017, to ensure that there was no evidence supporting the legitimacy of the charges.  As set forth in Exhibit 1, the charges were legitimate, and backed up by

evidence in the possession of Defendants Erika Girardi, Ribatallada and Minden, as well as in the possession of Defendants Savage, Scarince and Henderson who recklessly ignored the evidence in their possession that proved the charges were legitimate.  In Count 8, there is actually a video showing Defendant Erika Girardi, where she was filmed at Marco Marco's studios, for Bravotv.com, wearing the costume she had ordered.

93.    It is inconceivable that Defendants could claim these charges were unauthorized and fraudulent. Without the false evidence, there is no probable cause to support the Indictment and pursue charges against Plaintiff Psaila.

94.    Defendants Erika Girardi, Ribatallada, Savage, Scarince and Henderson, aided and abetted by AMEX and Grimm, maintained and continued their false, malicious, and unreasonable assertions to prosecutorial authorities regarding transactions on the AMEX card while the criminal case against Plaintiff Psaila was pending, for an additional four and one-half years after the return of the Indictment, while knowing there was no foundation for the criminal proceeding and that it was baseless and malicious from the outset and during its entire pendency.

95.    Plaintiff is informed and believes, prior to the refund made to the Girardis by Defendants AMEX and Grimm, neither AMEX nor Grimm conducted any investigation that complied with AMEX standards for determining whether fraud occurred in a credit card transaction.  They did not interview Plaintiff Psaila or any employees of Marco Marco, including co-owner Marco Morante who designed and supplied the costumes.  They did not review their own history with Marco Marco and Chris Psaila that would have revealed a track record of thousands of legitimate transactions and only two chargebacks in all that time.  They did not request any documentation from Plaintiff Psaila to dispute the charges of fraud by Defendants Girardi, Ribatallada and Minden.  They did not tell Plaintiff Psaila that they were

going to refund the Tom Girardi credit card $787,117.88.  They did not attempt to collect that money from Chris Psaila, or chargeback his merchant's account, and Plaintiff is informed and believes that they failed to inform Defendants Savage, Scarince and Henderson that they were not seeking the money from Chris Psaila.

96.     After the refund was made by Defendants AMEX and Grimm, they did not terminate the merchant relationship with Plaintiff Psaila or Marco Marco.  Plaintiff Psaila is a member in good standing with AMEX, and to this day has merchant privileges.

**E.     Post-Indictment the Defendants Continued to Conspire to Maliciously Prosecute Plaintiff Without Probable Cause Resulting in Substantial Damages to Plaintiff.**

97.     Post-Indictment the Defendants Continued to Conspire to Maliciously Prosecute Plaintiff Without Probable Cause Resulting in Substantial Damages to Plaintiff.  The government could have summoned Chris Psaila into court on the Indictment.  When Plaintiff Psaila was arrested following the Indictment on April 28, 2017, the government moved for detention pre-trial.  If the government had won the motion, Chris Psaila would have been locked up in jail awaiting his trial. He was ordered released on bail.

98.     In a telephonic interview on October 16, 2017, Defendant Henderson spoke with Defendant Erika Girardi, and told her the trial was being delayed.  She told Defendant Henderson that she was still willing to testify to "f____k Chris."  This statement is included to demonstrate her malicious state of mind, and there are more statements of this kind in possession of Plaintiff.

99.     During the pendency of the prosecution and legal proceedings, Marco Morante's and Plaintiff Psaila's business, Marco Marco, and Plaintiff Psaila's personal life, were destroyed.  They were barely surviving economically, and lost numerous

clients and business opportunities.  They had recently launched a men's underwear brand, produced under the label "Marco Marco." The brand swiftly gained popularity and recognition, leading to its availability in retail stores across 14 countries. The underwear line was destroyed by the Indictment.  When the Indictment arrived, no retailers wanted to sell their underwear line, and they lost future profits.  Further, many of their clients walked away, and they had to lay off almost every employee.  The damages to their business, including the lost underwear line, goodwill and lost profits are in the tens of millions.

100.   Additionally, Plaintiff Psaila and his husband had consulted with a local adoption agency and were planning to adopt an infant.  When the Indictment arrived, the adoption agency informed them they could not adopt a child since Plaintiff Psaila was charged with a crime.

101.   Plaintiff Psaila also lost his younger brother who tragically drowned in August 2017, and his father, who passed away due to pancreatic cancer in 2020.  The charges interfered with Plaintiff's ability to support his father while he was dealing with pancreatic cancer.  They both died while the charges were pending, dying with the belief that their son and brother was charged in a federal indictment.  Chris Psaila lives with the fact they died knowing their son and brother was charged with a serious federal crime accusing him of fraud.

102.   In the summer of 2021, Plaintiff Psaila retained new criminal counsel to represent him in the case, Stanley Greenberg.  Mr. Greenberg substituted into the case on July 6, 2021.

103.   On August 4, 2021, Mr. Greenberg emailed Defendant Grimm, seeking the name on the AMEX card, stating that he had conflicting information:

"1. What was the name on the Amex card?  I have been told conflicting information:  that it is the name of her husband [Tom Girardi] and I've also been told it was the name of her husband's law firm.  I think the firm name

changed from time to time but in that time period, I understand it would have been Girardi & Keese (or something close to that).  Actually, it doesn't matter, I just need the name on the card, whatever it was."

104.   Defendant Grimm emailed an answer to the Assistant United States Attorney assigned to the case, who produced it to Mr. Greenberg in discovery.  In Grimm's response, he stated that the name on the card was "Erika Girardi."

105.   While technically correct, the answer was misleading, and demonstrated AMEX and Grimm's willingness to cover up the true facts in this case.  The Defendant Secret Service agents, Defendants AMEX and Grimm failed to disclose that the account holder was Tom Girardi, that Erika Girardi was just an authorized user, and that Tom Girardi was the victim who would have suffered the loss if there had been any losses on the card.

106.   Mr. Greenberg also asked Defendant Grimm in the email the following questions,

"How the amount of the reimbursement was arrived at? Was that the total amount on the card charged by my client's business?  Or was that the amount that she claimed was 'unauthorized?'"

107.   Defendant Grimm did not answer Mr. Greenberg directly, and instead emailed the Assistant United States Attorney, "Not sure what this question is asking, but the fraud amount claimed by Erika Girardi was $787,117.88."  AMEX and Grimm covered up how they determined the amount of reimbursement, because there was no legitimate basis for any reimbursement because Plaintiff provided all goods and services invoiced.

108.   Defendant Grimm's answer was produced to Mr. Greenberg in discovery, but did not answer the simple question of how AMEX and he determined the reimbursement amount. Defendant Grimm could not answer the question because Defendant AMEX and Grimm did not do a diligent fraud investigation as required by

its merchant guidelines.  To this day, Defendants have never provided Plaintiff Psaila any information or evidence on how the $787,117.88 figure was determined.

109.   On August 20, 2021, Defendant Grimm sent the Assistant United States Attorney and Special Agent Quinn Lumpkin of the Secret Service an email.  Special Agent Quinn Lumpkin was now assigned to the investigation at least as of that date, and no explanation was provided to Mr. Greenberg why Defendant Henderson was no longer in charge of the investigation.  In this email, produced by the Assistant United States Attorney to Mr. Greenberg, are Defendant Grimm's answers listed above to Mr. Greenberg's questions.  Defendant Grimm states that he will "resend the statements reflecting the claimed fraudulent transactions," and that he will attach a spreadsheet showing the same.

110.   Mr. Greenberg has previously asked on July 21, 2021, in a letter to the prosecutor, to provide all *Brady* and *Henthorn* material to him so he could defend Plaintiff on the charges.  A *Brady* request seeks information pursuant to the case, *Brady v. Maryland,* 373 U.S. 83 (1963), all exculpatory evidence that would point to innocence, which would also include impeachment evidence reflecting on the credibility of government witnesses, Impeachment evidence is exculpatory evidence pursuant to *Giglio v. United States*, 405 U.S. 150 (1972).  A *Henthorn* request requires the government to turn over to the defense from federal law enforcement officers' personnel files anything affecting the credibility of a federal law enforcement officer. *Henthorn v. United States*, 931 F.2d 29 (9th Cir. 1991). The Assistant United States Attorney assigned to the case indicated on or about August 30, 2021, that she was aware of the government's discovery obligations but never identified any impeachment information or exculpatory information to the defense, other than what may have already been produced. She did not identify any specific *Brady* or *Henthorn* material in the discovery. The government and Defendants Savage, Scarince and Henderson did not turn over any impeachment information concerning Defendants Savage, Scarince

and Henderson, or any impeachment information concerning Defendants Erika Girardi or Tom Girardi.  The prosecutor and Defendants Savage, Scarince and Henderson did not turn over any information concerning the prior personal and/or business relationship between Defendant Savage and Defendant Erika Girardi and Tom Girardi, Tom Girardi's representation of Defendant Savage, or Tom Girardi's bribe of Savage, that occurred at the start of the investigation.  The government and Defendant Savage also did not turn over any evidence concerning reimbursements for fake presidential advance trips by Defendant Savage that caused his separation from the Secret Service.  Defendants Savage, Scarince and Henderson all know they had an obligation to turn over this impeachment and exculpatory information to the prosecutor to turn over to the defense, but they did not turn over any information, and they did this with reckless disregard to Plaintiff Psaila's innocence.

111.   On September 25, 2021, Mr. Greenberg wrote an email to the Assistant United States Attorney requesting a copy of the "$737+ check that was written to E.G. by American Express," but the case was dismissed prior to Mr. Greenberg receiving the check.

112.   Around this time, in order to prepare for trial, Mr. Greenberg also served a trial subpoena on Defendant Grimm, and had correspondence with counsel for Tom Girardi to accept a subpoena for Tom Girardi to testify at trial, and informed the Assistant United States Attorney that he planned to call Defendant Grimm, Tom Girardi and Defendant Erika Girardi at trial.

113.   Subsequently, the government moved to dismiss the indictment on September 28, 2021, and the indictment was dismissed on September 29, 2021, by the Honorable Fernando M. Olguin, who was the United States District Judge assigned to this case.

114.   As a result of the malicious prosecution by Defendants Erika Girardi, Ribatallada, Minden, Savage, Scarince, Henderson, AMEX and Grimm, not only did

they violate Plaintiff Psaila's rights, but they also committed a fraud on the United States District Court.

115.   Psaila has exhausted his tort claims against the United States under the FTCA.  He submitted an Administrative Claim to the United States Secret Service and to the Department of Homeland Security on August 29, 2023, within two years of dismissal of his case, and the harm accruing to him on September 29, 2021.  His claims did not accrue until he received the favorable termination of his case on that date.  Thus, the claim was filed within two years of the earliest date of accrual—September 29, 2021, the date the indictment against Plaintiff was dismissed.  The claim was denied by the United States Secret Service on February 9, 2024, with leave to file a complaint in the United States federal court within six months.  This First Amended Complaint ("FAC") alleging FTCA claims is timely filed within six months on June 10, 2024.

## V.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### *BIVENS* CAUSE OF ACTION AGAINST DEFENDANTS ROBERT SAVAGE, STEVE SCARINCE AND KENNETH HENDERSON

116.   Plaintiff realleges and reincorporates all foregoing and subsequent paragraphs as if fully set forth herein.

117.   At all relevant times, Defendants Savage, Scarince and Henderson were acting under the color of federal authority.

118.   Plaintiff has a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.  Plaintiff also has a right to due process of law under the Fifth Amendment to the United States Constitution.

119.   Defendants Savage, Scarince and Henderson were actively and instrumentally involved in instigating and causing a baseless criminal arrest (he was

arrested based on the Indictment), the return of a grand jury indictment, and prosecution of Plaintiff Psaila, and they were actively and instrumentally involved in causing the continuation of that criminal proceeding based on the unsupported and false allegations of Defendant Erika Girardi. They violated Chris Psaila's rights by maliciously prosecuting him, fabricating evidence and reports against him, and concealing exculpatory and impeachment information from him that resulted in his indictment without probable cause, and maliciously continuing his prosecution until the baseless charges were dismissed. They prosecuted him without probable cause, and did it with the specific purpose and reckless disregard to his constitutional rights to due process of law.

120.   They acted deliberately indifferent to Chris Psaila's innocence, with reckless disregard for the truth, and without probable cause. They conspired with Defendants Erika Girardi, Ribatallada and Minden, as well as uncharged co-conspirator Tom Girardi, based on their personal and financial relationships with Tom Girardi, as well as with Defendants AMEX and Grimm, to deprive Chris Psaila of his constitutional rights. They deprived Plaintiff Psaila of his rights through their malicious and baseless prosecution of Chris Psaila, their continuance of the prosecution deliberately indifferent to Chris Psaila's innocence and without probable cause and without any reasonable basis to continue a criminal prosecution despite the facts establishing Chris Psaila's innocence. Additionally, they suppressed *Brady* and impeachment evidence that was material to Chris Psaila's defense. As a result, a false Indictment without probable cause was issued. These defendants acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not.

121.   Defendant Savage, as head of the Los Angeles Secret Service office and Defendant Scarince, Defendant Henderson's supervisors in the office and this case, had a duty to supervise Defendant Henderson to prevent the violation of Chris Psaila's

rights.  Defendant Savage's and Scarince's reckless supervision of Defendant Henderson, along with Henderson's actions, were a proximate cause of the damages to Chris Psaila.

122.   As set forth in Section IV Statement of Facts in detail, Defendants Savage, Scarince and Henderson had the information in their possession that proved beyond any shadow of a doubt Plaintiff's innocence prior to seeking an Indictment and after the Indictment was returned, but they recklessly ignored the evidence they seized that established the charges were authorized and legitimate.  They possessed the information represented in Exhibit 1 (seven transactions and Counts 2-8 of the Indictment, and representative of the evidence Plaintiff possesses for all 132 transactions, and seized by Defendants prior to Indictment) showing all the charges were authorized in the years 2015 and 2016.  Whether or not they reviewed the seized evidence in their possession as a result of the search warrant and  used the most basic of investigation techniques, such as reviewing Marco Marco computer information and documents seized as a result of the search warrant, interviewing witnesses and searching Defendant Erika Girardi's social media accounts, and reviewing Plaintiff's and Marco Marco's transaction history with AMEX, they recklessly ignored the evidence that  established Defendants Erika Girardi, Ribatallada and Minden were lying, and that Defendant Erika Girardi received the costumes and services she ordered and paid for with the AMEX card.  Further, the evidence they possessed established that the AMEX charges were authorized, and that there was no probable cause for the Indictment, before or after obtaining the Indictment.

123.   As set forth in Section IV Statement of Facts, Savage, Scarince and Henderson caused fabricated statements to be in the Search Warrant application and the Indictment which if not made would have shown there was no probable cause for the Search Warrant and Indictment and that they were maliciously prosecuting Plaintiff.

124.   Defendants Savage, aided and abetted by Scarince and Henderson, suppressed and concealed *Brady* information from the Assistant United States Attorney, the Grand Jury, defense counsel and Chris Psaila during the criminal prosecution, without which there was no probable cause to proceed with the charges:

a.   Unbeknownst to Chris Psaila, and concealed by Defendants Savage, Scarince and Henderson, Defendant Savage had a longstanding personal and professional relationship with the Girardis. He was represented by Tom Girardi in litigation at the same time Defendant Savage was investigating Plaintiff.

b.   Defendant Savage, Defendants Scarince's and Henderson's supervisor on the criminal prosecution of Chris Psaila and directly responsible for all Secret Service investigations out of the Los Angeles office, had a conflict of interest that biased the investigation of Chris Psaila.  At the very time Chris Psaila was being investigated, Tom Girardi was representing Defendant Savage in a personal injury lawsuit, and bribed Defendant Savage by offering to pay him $100,000 out of his personal funds to settle Savage's personal injury lawsuit at the same time Savage, Scarince and Henderson instigated the investigation of Plaintiff.  Eventually, after the criminal investigation commenced, Tom Girardi paid Defendant Savage an unknow amount out of his personal funds to compensate him for the damages Defendant Savage claimed in his personal lawsuit.  This *Brady* information was never disclosed to the defense. Plaintiff is informed and believes that Defendants Scarince and Henderson had reason to believe that their boss, Defendant Savage, was represented by Tom Girardi in Savage's personal lawsuit, and was paid a settlement by Girardi out of his

personal funds.  If this personal relationship, conflict of interest and quid pro quo bribe had been disclosed, the Secret Service would have never taken this case, and presented the case to the grand jury for indictment, and Plaintiff would have never been charged.

c.    One of the duties of Secret Service agents is to perform advance scout work of locations that a President or person with Secret Service protection would visit to ensure the visit would be safe.  Upon information and belief, the Secret Service had investigated Defendant Savage prior to the investigation in this case.  The Secret Service determined Defendant Savage faked advance Presidential location scouts for which he was eventually involuntarily separated from the Secret Service during the investigation in this case.  On information and belief, Defendant Savage would falsely use his Secret Service credentials at luxury hotels and golf courses so he would receive free rooms, food, drinks and free golf for him and other Secret Service agents.  He was caught and forced to leave the Secret Service.  These facts, which would negatively affect the credibility of the Secret Service investigation, were not disclosed to Plaintiff during his criminal case.

125.   Upon information and belief, Defendants Scarince and Henderson, who conducted the investigation supervised by Defendant Savage, were deliberately indifferent to acts pointing to Plaintiff's innocence, but continued the criminal investigation prosecution, which include, but are not limited to the following facts:

a.    On information and belief, Defendants Savage, Scarince and Henderson recklessly ignored the exculpatory evidence obtained through the documents seized pursuant to the Search Warrant in January 2017, prior to the presentation of evidence to the grand jury

in April 2017, which resulted in Plaintiff Psaila's criminal indictment. The seized evidence demonstrated that the disputed transactions were authorized, and the Marco Marco invoices to Erika Girardi were legitimate. When they executed the search warrant of Psaila's business in or about January 9, 2017, they obtained Chris Psaila's computer with the evidence that the Erika Girardi's invoices were legitimate. When the search warrant was executed, Chris Psaila gave Agent Henderson the password to the computer, and his QuickBooks password. In email correspondence, Plaintiff told Henderson where to look on the computer for evidence that the transactions were legitimate, and the costumes and services had been provided. Despite the fact that evidence of innocence was in the possession of Defendants Savage, Scarince, and Henderson and the Secret Service for three months prior to the grand jury proceedings in April 2017, they presented a false case to the grand jury.

b. After the return of the indictment, despite becoming aware the Marco Marco transactions and invoices were legitimate, Defendants Savage, Scarince and Henderson continued to criminally prosecute Chris Psaila.

c. On information and belief, Defendants Savage, Scarince and Henderson specifically failed to inventory the clothing Erika Girardi possessed that came from Marco Marco, and failed to interview all of Defendant Girardi's performance crew who would have confirmed that they wore clothing provided by Marco Marco during the years 2015 and 2016.

d.      On information and belief, Defendants Savage, Scarince and
Henderson deliberately failed to contact and interview Marco
Morante and inquire about allegedly unauthorized transactions.
This basic step would have likely ended any chance of AMEX
refunding Tom Girardi or the criminal prosecution proceeding
against Plaintiff.  Instead, Defendant Henderson interviewed Marco
Marco's bookkeeper who had no knowledge of the clothing or
invoices provided by Marco Marco to Erika Girardi, and instead set
forth facts in the search warrant that had nothing to do with whether
the charges were authorized or not.

e.      Prior to securing the indictment, in April 2017, Defendant
Henderson in the presence of Assistant United States Attorney
George Pence spoke to Defendants Erika Girardi and Ribatallada,
by telephone, and they informed Defendant Henderson that they
could not find any emails, text messages and invoices to support the
seven "unauthorized "charges set forth in the criminal indictment.
The computer evidence seized in January 2017, three months prior,
and text messages sent to Defendants Erika Girardi, Ribatallada and
Minden, established every Marco Marco transaction was legitimate
and authorized.  Defendants Savage, Scarince and Henderson failed
to confirm these allegations by checking Defendants Erika Girardi,
Ribatallada and Minden's text messages, and by ignoring the
evidence on the computers they had seized back in January 2017.
They failed to present to the Grand Jury the evidence in their
possession establishing the charges were authorized and legitimate.

f.      On information and belief, Defendants Savage, Scarince and
Henderson presented to the grand jury that AMEX reimbursed the

FIRST AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL
62

Girardi's $787,117.88. On information and belief, the Defendants failed to present to the grand jury that Chris Psaila, although supposedly guilty of fraud, was never charged back or sued by AMEX for the supposedly $700,000 plus stolen funds.  Further, Chris Psaila and Marco Marco are merchants in good standing with AMEX.  If the grand jury had those facts, they would have more likely than not influenced the grand jury's decision to return an indictment. Defendants Savage, Scarince and Henderson ignored these facts in pursuing the investigation and prosecution of Chris Psaila.

g.   Defendants Savage, Scarince and Henderson failed to investigate AMEX, and why AMEX would reimburse the Girardis without seeking payment from Marco and Marco and Chris Psaila, and why they would continue to do business with Chris Psaila and Marco Marco.

h.   Defendants Savage, Scarince and Henderson failed to produce the documents to the defense during the criminal prosecution concerning who endorsed the back of the Girardis' check reimbursement, and the statements reflecting credits to the Girardis' AMEX account.  This was critical evidence as to who received payment from AMEX, which would bear on Defendant Erika Girardi's motivations in falsely making criminal charges against Chris Psaila.  When counsel for Chris Psaila requested discovery concerning the endorsement of the check and who received the statement credits, the government moved to dismiss the Indictment.

i.   Defendants Savage, Scarince and Henderson concealed involvement by Tom Girardi in the malicious prosecution of

Plaintiff that affected the credibility of the investigation and resulted in the return of the Indictment without probable cause. Due to Tom Girardi's financial situation, this information would have provided a motive, if revealed to the defense, which would show a motive to fabricate the charges. They also concealed, along with AMEX, that the true identity of the supposed "victim" was Tom Girardi, not Erika Girardi, since it was his account that suffered any supposed loss.

126.   The baseless criminal proceeding instigated and caused by Defendants Savage, Scarince and Henderson terminated in Plaintiff Psaila's favor on September 29, 2021, when prosecuting authorities voluntarily moved to dismiss the Indictment, and the Court dismissed the Indictment, thereby releasing Plaintiff Psaila from any further response to the baseless criminal proceeding. These Defendants acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not.

127.   As a proximate result of Defendants Savage's, Scarince's and Henderson's actions, Plaintiff Psaila has been damaged by the loss of property, and interruption/destruction of his business and business reputation resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000, one-half of the business losses to Marco Marco from the inception of the investigation to the present. As a further proximate result of Defendant Savage's, Scarince's and Henderson's actions, Plaintiff Psaila has been damaged by loss of past and future earnings in an amount to be proven at trial.

128.   As a further proximate result of Defendant Savage's, Scarince's and Henderson's actions, Plaintiff Psaila was required to spend more than $180,000 in attorney fees and other expenses defending himself in the baseless criminal proceeding.

129.   As a further proximate result of Defendants Savage's, Scarince's and Henderson's actions, Plaintiff Psaila has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial.

130.   As a further proximate result of Defendants Savage's, Scarince's and Hendersons' actions, Plaintiff Psaila has suffered and will continue to suffer emotional distress, pain, and suffering, physical injuries, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

131.   Defendant Savage, Scarince and Hendersons' actions were willful, malicious, outrageous and done with reckless disregard for Plaintiff Psaila's rights and interests and therefore warrant punitive damages.

## SECOND CLAIM FOR RELIEF

## *BIVENS* CAUSE OF ACTION (SUPERVISORIAL LIABILITY FOR FAILURE TO SUPERVISE, TRAIN, DISCIPLINE AND TAKE CORRECTIVE MEASURES CAUSING CONSTITUTIONAL VIOLATIONS AGAINST DEFENDANTS ROBERT SAVAGE, STEVE SCARINCE

132.   Plaintiff realleges and reincorporates all foregoing and subsequent paragraphs as if fully set forth herein.

133.   Defendants Savage and Scarince and Does 1-10 acted under color of law with respect to the facts enumerated herein.  Defendant Savage was Scarince's and Henderson's supervisor, and Defendant Scarince was Henderson's supervisor with respect to the Psaila investigation and prosecution.  Plaintiff specifically incorporates by reference all allegations against Savage, Scarince and Henderson in the Statement of Facts and the First *Bivens* cause of action.

134.   Defendants Savage and Scarince personally participated and were integrally involved in the investigation and prosecution of Psaila.  They had an affirmative duty to ensure that Defendant Henderson did not violate Plaintiff's

constitutional rights, and that evidence was not fabricated against Psaila, that false evidence was not presented to the judge issuing the search warrant, that false evidence was not presented to the grand jury, and that Plaintiff was not maliciously prosecuted without probable cause by the Secret Service and Defendants Girardi, Ribatallada, Minden, AMEX and Grimm.  They had an affirmative duty to ensure that Henderson was properly trained to investigate fraud, to analyze evidence, to review evidence seized pursuant to a search warrant, and that that evidence supported, and did not contradict allegations of fraud.  They failed to supervise, train and discipline Henderson for his reckless disregard of the evidence in the Secret Service's possession establishing Plaintiff's innocence.

135.   Due to Savage's personal relationship with the Girardis, and Scarince's knowledge of that personal, biased and conflicted relationship, they failed in their duty to ensure that Henderson conducted a fair investigation, instead, in their desire to ensure Girardi's recouped money they did not deserve, they failed in their duties to supervise Henderson that resulted in the malicious prosecution of Plaintiff.

136.   Defendants Savage and Scarince carried out their duties in a manner that amounted to invidious neglect, deliberate indifference and reckless to their duties. As a result, Plaintiff was maliciously prosecuted without probable cause.  Scarince and Savage integrally participated in the investigation and prosecution by initiating and continuing the prosecution and supervising Henderson's investigation of Plaintiff as set forth above.  Defendant Savage and Scarince failed to ensure that the evidence seized by the search warrant was properly evaluate by Henderson, and their possession of the evidence showing Plaintiff's innocence, demonstrates their failure to supervise Henderson and their reckless and deliberate disregard of the evidence establishing Plaintiff's innocence.

137.   By their utter failure to supervise Henderson, they ratified his false presentation of evidence to the grand jury that returned the indictment without

probable cause and allowed the continuance of the prosecution against Plaintiff for four and one-half years.

138.   The baseless criminal proceeding instigated and caused by Defendants Savage, Scarince and Henderson terminated in Plaintiff Psaila's favor on September 29, 2021, when prosecuting authorities voluntarily moved to dismiss the Indictment, and the court dismissed the Indictment, thereby releasing Plaintiff Psaila from any further response to the baseless criminal proceeding.  These Defendants acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not.

139.   As a proximate result of Defendants Savage's and Scarince's actions, Plaintiff Psaila has been damaged by the loss of property, and interruption/destruction of his business and business reputation resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000, one-half of the business losses to Marco Marco from the inception of the investigation to the present. As a further proximate result of Defendant Savage's, Scarince's and Henderson's actions, Plaintiff Psaila has been damaged by loss of past and future earnings in an amount to be proven at trial.

140.   As a further proximate result of Defendant Savage's and Scarince's actions, Plaintiff Psaila was required to spend more than $180,000 in attorney fees and other expenses defending himself in the baseless criminal proceeding.

141.   As a further proximate result of Defendants Savage's and Scarince's actions, Plaintiff Psaila has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial.

142.   As a further proximate result of Defendants Savage's and Scarince's actions, Plaintiff Psaila has suffered and will continue to suffer emotional distress, pain, and suffering, physical injuries, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

143.   Defendant Savage and Scarince's actions were willful, malicious, outrageous and done with reckless disregard for Plaintiff Psaila's rights and interests and therefore warrant punitive damages.

### THIRD CLAIM FOR RELIEF
### MALICIOUS PROSECUTION AGAINST DEFENDANTS ERIKA GIRARDI, LAIA RIBATALLADA AND MICHAEL MINDEN

144.   Plaintiff realleges and reincorporates all foregoing and subsequent paragraphs as if fully set forth herein.

145.   Defendants Erika Girardi, Ribatallada and Minden were actively and instrumentally involved in instigating and causing a baseless criminal arrest, indictment and prosecution of Plaintiff Psaila, and were actively and instrumentally involved in causing the continuation of that criminal proceeding.  They fabricated evidence and reports that if presented to the Grand Jury would have demonstrated there was no probable cause to return an indictment.  These Defendants acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not, and acted in order to obtain money they did not deserve. Defendants Erika Girardi, Ribatallada and Minden knew the statements they made to Defendants Savage, Scarince and Henderson, and prosecutorial authorities, upon which the resulting arrest and prosecution were predicated, were untrue because they knew all the charges were authorized and that they received the costumes and services as reflected in Exhibit 1 representative of all 132 transactions.

146.   Defendants Erika Girardi, Ribatallada and Minden actively and instrumentally instigated and caused the continuation of the baseless criminal proceeding against Plaintiff Chris Psaila without probable cause and without any reasonable basis to suspect Plaintiff Chris Psaila had committed a crime.  They specifically presented false evidence knowing it would be presented to the grand jury

that the transactions were fraudulent and not authorized. It was reasonably foreseeable to all three defendants that their false reports would cause the return of the Indictment and result in the malicious prosecution of Plaintiff.

147.   The baseless criminal proceeding instigated and caused by Defendants Erika Girardi, Ribatallada and Minden terminated in Plaintiff Psaila's favor on September 29, 2021, when prosecuting authorities voluntarily moved to dismiss the indictment, and the indictment was dismissed by the Court, thereby releasing Plaintiff Psaila from any further response to the baseless criminal proceeding.

148.   As a proximate result of Defendants Erika Girardi, Ribatallada and Minden's actions, Plaintiff Psaila has been damaged by the loss of property, and interruption/destruction of his business resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000.  As a further proximate result of Defendants Erika Girardi, Ribatallada and Minden's actions, Plaintiff Psaila has been damaged by loss of past and future earnings in an amount to be proven at trial.

149.   As a further proximate result of Defendants Erika Girardi's, Ribatallada's and Minden's actions Plaintiff Psaila was required to expend more than $180,000 in attorney fees and other expenses defending himself in the baseless criminal proceeding.

150.   As a further proximate result of Defendants Erika Girardi's, Ribatallada's and Minden's actions, Plaintiff Psaila has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial.

151.   As a further proximate result of Defendants Erika Girardi's, Ribatallada's and Minden's actions, Plaintiff Psaila has suffered and will continue to suffer emotional distress, pain and suffering, and physical damages, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

152.   Defendants Erika Girardi's, Ribatallada's and Minden's actions were willful, malicious, outrageous, and done with reckless disregard for Plaintiff Psaila's rights and interests and therefore warrant punitive damages.

## FOURTH CLAIM FOR RELIEF
## AIDING AND ABETTING MALICIOUS PROSECUTION
## AGAINST DEFENDANTS AMEX AND PETER GRIMM

153.   Plaintiff realleges and reincorporates all foregoing and subsequent paragraphs as if fully set forth herein.

154.   Defendants AMEX and Grimm, with knowledge or with reckless disregard for the truth, that Defendant Erika Girardi's claims relating to unauthorized transactions on the AMEX Card were false and malicious, aided and abetted Defendants Erika Girardi, Ribatallada and Minden in making these false and malicious claims, and knowingly aided and abetted her malicious prosecution of Plaintiff Psaila. Defendants AMEX and Grimm's actions resulted in the return of the Indictment utterly lacking in probable cause.  It was reasonably foreseeable their actions would result in the return of the Indictment without probable cause and result in the malicious prosecution of Plaintiff.  Defendants AMEX and Grimm acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not, and were motivated to assist the Girardis instead of determining whether the allegations were true or not.  By their actions, they actively assisted and brought about the malicious prosecution against Plaintiff.

155.   Defendants AMEX and Grimm refunded to Defendant Erika Girardi and Tom Girardi $787,117.88 for transactions based on Defendant Erika Girardi's, Ribatallada's and Minden's false and malicious claims that Plaintiff had without authorization and with fraudulent intent processed charges on Defendant Erika Girardi's AMEX card without providing the corresponding costumes and services.

Defendants AMEX and Grimm authorized this refund without informing Plaintiff that this enormous refund of these transactions processed through the Marco Marco merchant account had been classified by AMEX as eligible for full refund to Defendant Erika Girardi.

156.   Defendants AMEX and Grimm refunded to Defendant Erika Girardi $787,117.88 despite the fact that the internet, media reports and Erika Girardi's social media accounts were replete with photos and videos of Erika Girardi in possession of, wearing, and displaying items she had purchased on the AMEX card pursuant to the allegedly unauthorized transactions, and publicly crediting Chris Psaila's business with producing the items she displayed.  AMEX's own transaction history with Plaintiff warranted a diligent investigation they failed to conduct, and which would have revealed there were no illegitimate or unauthorized transactions.  AMEX's and Grimm's determination that there was $787,117.88 in unauthorized transactions caused the Secret Service to come to the same conclusion.  The Secret Service's reckless investigation caused AMEX and Grimm to reach the same conclusion as they reinforced each other's false conclusions based on their reckless investigations without regard to Plaintiff's innocence. The facts demonstrate that Defendants AMEX and Grimm knew or should have known, or with normal and reasonable investigative practices would have known, that Erika Girardi's claims regarding unauthorized transactions were false and malicious.  Defendants AMEX and Grimm acted recklessly and without proof, other than the false statements of Defendants Erika Girardi, Ribatallada and Grimm, that the transactions were unauthorized and fraudulent. Further, this evidence demonstrates that Defendants AMEX and Grimm actions in refunding such enormous sums to Erika Girardi were wrongful and inconsistent with any legitimate purpose.

157.   In refunding $787,117.88 to Erika Girardi based on Defendant Girardi's, Ribatallada's and Minden's false and malicious claims, Defendants AMEX and Grimm

acted in concert with the Girardi Defendants and knowingly facilitated, accommodated and encouraged the commission of Defendant Erika Girardi's, Ribatallada's and Minden's malicious prosecution of Plaintiff.

158.    In refunding $787,117.88 to Erika Girardi based on her false and malicious claims, Defendants AMEX and Grimm gave Defendant Erika Girardi's false and malicious claims unwarranted credibility and an unwarranted aura of legitimacy that allowed her scheme to flourish, and thereby facilitated her tortious and illegal activity and her malicious prosecution of Chris Psaila.

159.    In refunding $787,117.88 to Defendant Erika Girardi and Tom Girardi, and in furtherance and facilitation of malicious prosecution of Plaintiff, Defendants AMEX and Grimm created a fictitious "loss" and a fictitious "victim" that Defendant Erika Girardi incorporated into in her false and malicious statements to federal law enforcement agents claiming Plaintiff had illegally made unauthorized and/or fraudulent transactions on the AMEX card.  Additionally, defendants AMEX and Grimm facilitated the concealment of the true card holder and alleged "victim" was Tom Girardi.  Defendants AMEX and Grimm conspired with Defendants Savage, Scarince, Henderson, Erika Girardi, Ribatallada and Minden to keep Tom Girardi's role in the fraudulent scheme secret and portray falsely that Defendant Erika Girardi was the true victim, where they knew that she did not suffer any losses, only the card holder, Tom Girardi allegedly did.

160.    Defendants AMEX and Grimm made this refund of $787,117.88 to Defendant Erika Girardi and Tom Girardi, and thereby facilitated and assisted Defendant Girardi in her malicious prosecution of Chris Psaila, and AMEX concealed its actions by using atypical, irregular, unorthodox, arbitrary, capricious, unreasonable, deceptive and wholly inadequate methods of investigation, evaluation and resolution of Erika Girardi's claims of unauthorized transactions on the AMEX Card, and these methods were inconsistent with and contrary to AMEX's normal and pre-established

policies and practices for investigating, evaluating and resolving claims of unauthorized transactions on credit card and merchant accounts,.

161.    Defendants AMEX and Grimm failed or refused to contact its merchant, Chris Psaila, even once to inquire about the disputed transactions and thereby concealed its actions and deprived Chris Psaila of the opportunity to respond to Erika Girardi's false and malicious claims that the transactions were unauthorized, that the amount of the unauthorized transactions were $787,117.88, and how AMEX and Defendants Erika Girardi, Ribatallada, and Minden determined that was the amount of the fraud.  Their actions, which by design and/or effect actively advanced, facilitated and assisted Erika Girardi's tortuous and illegal conduct, and precluded Plaintiff from any opportunity to prevent Defendant Girardi's malicious prosecution of Plaintiff.

162.    Defendants AMEX and Grimm concealed its actions in that it failed or refused to issue a chargeback against Chris Psaila's merchant account, which would have triggered an automatic opportunity for Plaintiff to respond to the disputed transactions and thereby demonstrate to all concerned that the claims of Erika Girardi regarding the disputed transactions were demonstrably false.  Defendant AMEX and Grimm thereby actively advanced, facilitated and assisted Defendants Erika Girardi, Ribatallada and Minden in their tortuous activity and their malicious prosecution of Chris Psaila, and actively deprived Plaintiff of any opportunity to curtail and their tortuous conduct.   Defendants AMEX and Grimm made no effort to recoup the reimbursement to Tom Girardi from Plaintiff, thereby evidencing that they knew there was no facts supporting the reimbursement.  Instead of making an effort to invoke its agreement with Marcosquared to arbitrate any dispute over the Girardi transactions, they waived any contractual rights by instead participating in the prosecution of Plaintiff in order to obtain mandatory restitution if Plaintiff had pled guilty or was convicted at trial.

163.   Defendants AMEX and Grimm excluded Plaintiff from participating in its evaluation and determination of whether Defendant Erika Girardi's, Ribatallada's and Minden's false and malicious claims regarding such an inordinately large quantity and dollar value of disputed transactions were authorized and legitimate, but instead concealed its actions and collaborated with Defendants Erika Girardi, Ribatallada and Minden by actively advancing, facilitating, and assisting their tortious and illegal conduct by transferring to Defendant Erika Girardi $787,117.88.

164.   Defendants AMEX and Grimm never revoked Plaintiff's or Marco Marco's merchant charging privileges even after paying Defendant Erika Girardi and Tom Girardi $787,117.88 for allegedly unauthorized transactions.  This failure to revoke Plaintiff's and Marco Marco's merchant charging privileges was atypical and inconsistent with AMEX's normal and pre-existing policies and procedures, allowing AMEX and Grimm to mask and conceal its actions from Plaintiff, and exclude him from participating in AMEX's investigation and resolution of the allegedly unauthorized transactions.

165.   The encouragement, assistance and participation in the criminal investigation and prosecution of t Plaintiff  by Defendants AMEX and Grimm, was a substantial factor in causing the resulting malicious prosecution perpetrated by Defendants Erika Girardi, Ribatallada and Minden by giving their false and malicious claims an unwarranted veneer of legitimacy and truthfulness.  As such, AMEX and Grimm as cotortfeasors, are fully responsible for the consequences of Defendants Erika Girardi's, Ribatallada's and Minden's tortious and illegal actions in perpetrating the malicious prosecution against Plaintiff.

166.   Defendants AMEX and Grimm had a duty not to subject Chris Psaila to malicious prosecution, and AMEX and Grimm had a duty not to aid and abet Defendants Erika Girardi's, Ribatallada's and Minden's tortious activity and malicious prosecution of Plaintiff.

167.   Defendants AMEX and Grimm breached their duty by aiding and abetting Defendants Erika Girardi's, Ribatallada's and Minden's scheme to perpetrate a malicious prosecution of Plaintiff.

168.   Defendants AMEX and Grimm acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not, and acted in order to obtain money they did not deserve.  The baseless criminal proceeding instigated and caused by Defendants Erika Girardi, Ribatallada and Minden, (along with the Secret Service defendants), aided and abetted by AMEX and Grimm, terminated in Plaintiff Psaila's favor on September 29, 2021, when prosecuting authorities voluntarily moved to dismiss the indictment, and the indictment was dismissed by the Court, thereby releasing Plaintiff Psaila from any further response to the baseless criminal proceeding.

169.   As a proximate result of Defendants AMEX's and Grimm's actions in aiding and abetting Defendants Erika Girardi's, Ribatallada's and Minden's malicious prosecution of Plaintiff, Plaintiff has been damaged by the loss of property, and interruption/destruction of his business resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000.  As a proximate result of Defendants AMEX's and Grimm's actions in aiding and abetting Defendants Erika Girardi's, Ribatallada's and Minden's malicious prosecution of Plaintiff, Plaintiff has been damaged by loss of past and future earnings in an amount to be proven at trial.

170.   As a proximate result of Defendants AMEX's and Grimm's actions in aiding and abetting Defendants Erika Girardi's, Ribatallada's and Minden's malicious prosecution of Plaintiff, Plaintiff was required to expend more than $180,000 in attorney fees and other expenses in defending himself in the baseless criminal proceeding instigated and continued by the Defendants Erika Girardi, Ribatallada and Minden.

171.   As a proximate result of Defendants AMEX's and Grimm's actions in aiding and abetting Defendants Erika Girardi's, Ribatallada's and Minden's malicious prosecution of Plaintiff, Plaintiff has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial.

172.   As a proximate result of Defendants AMEX's and Grimm's actions in aiding and abetting Defendants Erika Girardi's, Ribatallada's and Minden's malicious prosecution of Plaintiff, Plaintiff has suffered and will continue to suffer emotional distress, pain and suffering, and physical damages, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

173.   Defendants AMEX's and Grimm's actions in aiding and abetting of Defendants Erika Girardi's, Ribatallada's and Minden's malicious prosecution of Plaintiff were willful, malicious, outrageous, and done with reckless disregard for Plaintiff rights and interests and therefore warrant punitive damages.

**FIFTH CLAIM FOR RELIEF**

**CONSPIRACY TO COMMIT MALICIOUS PROSECUTION AGAINST DEFENDANTS ERIKA GIRARDI, LAIA RIBATALLADA, MICHAEL MINDEN, AMEX, AND PETER GRIMM**

174.   Plaintiff realleges and reincorporates all foregoing and subsequent paragraphs as if fully set forth herein.

175.   Defendants AMEX and Grimm agreed and conspired with Defendants Erika Girardi, Ribatallada and Minden,[10] in their wrongful and malicious scheme to commit the tort of malicious prosecution against Plaintiff Psaila.

---

[10] For purposes of this conspiracy count, Defendants AMEX, Grimm, Girardi and Ribatallada also conspired with Defendants Savage, Scarince and Henderson, but they are uncharged in this claim since government agents cannot be charged personally in a state cause of action for malicious prosecution.  The United States, however, can be

176.   Defendants AMEX and Grimm were aware that Defendants Erika Girardi, Ribatallada and Minden planned to and did initiate and continue a malicious criminal prosecution against Plaintiff by making false and malicious claims of unauthorized transactions on the AMEX Card.   Defendants AMEX and Grimm acted recklessly with the knowledge that their actions would proximately cause the return of the Indictment against Chris Psaila without probable cause.  The Defendants Erika Girardi, Ribatallada and Minden, in addition to being unjustly enriched by the refund, needed the refund as purported "proof" that AMEX and Grimm had indeed determined a fraud occurred and that the invoices were unauthorized and fraudulent. These false facts presented to the Grand Jury resulted in an Indictment being returned without probable cause.  These defendants acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not.

177.   As set forth in Section IV Statement of Facts, the Third Claim for Relief, their concert of actions and implied in fact agreement, Defendants AMEX and Grimm agreed with Erika Girardi, Ribatallada and Minden that the malicious prosecution be committed and perpetrated by Defendants Erika Girardi, Ribatallada and Minden against Plaintiff, and intended that the malicious prosecution of Chris Psaila occur as evidenced by their actions.  The actions of Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm proximately caused the return of the grand jury Indictment without probable cause, and the malicious prosecution of Plaintiff.  It was reasonably foreseeable their actions would result in the return of the Indictment without probable cause and result in the malicious prosecution of Plaintiff.

178.   Defendants AMEX and Grimm furthered the conspiracy by and through its actions in refunding and transferring $787,117.88 to Defendant Erika Girardi and

---

charged under the FTCA for Savage's, Scarince's and Henderson's acts, as the United States has waived sovereign immunity for malicious prosecution under State law.

concealing its actions in furtherance of the conspiracy from Plaintiff pursuant to atypical, irregular, unorthodox, arbitrary, capricious, unreasonable, deceptive, and wholly inadequate methods of investigating, evaluating and resolving disputed transactions.  They furthered the conspiracy by directly and actively participating in the investigation and prosecution of Plaintiff.  They ignored their own internal guidelines and procedures to investigate and determine if the charges were legitimate or not, and their maliciousness is evidenced by their failure to attempt to chargeback or collect the reimbursement, and instead used the criminal process to seek reimbursement.  They recklessly ignored evidence of Plaintiff's innocence.  By their actions, Defendants AMEX and Grimm thereby facilitated and assisted Defendants Erika Girardi, Ribatallada and Minden in their malicious prosecution of Plaintiff by giving Defendants Erika Girardi, Ribatallada and Minden false and malicious claims an unwarranted aura and veneer of credibility and legitimacy which actively facilitated and assisted Defendants Erika Girardi, Ribatallada and Minden in making their false and malicious claims against Plaintiff.

179.   Defendants AMEX and Grimm actively cooperated with Defendants Erika Girardi, Ribatallada and Minden (and the Secret Service and criminal investigation and prosecution) and acted in concert with them to commit their wrongful actions in instigating, pursuing, and maintaining a malicious criminal prosecution against Plaintiff.  It was more important to AMEX and Grimm to satisfy Defendants Erika Girardi, Ribatallada, Minden, and Secret Service Defendants Savage, Scarince and Henderson in their zeal to maliciously prosecute Plaintiff and give the Girardis an unjustified refund, then to conduct a fair and diligent investigation that would have revealed that there was no fraud.  By their actions, Defendants AMEX and Grimm acted in concert with Defendants Erika Girardi, Ribatallada and Minden, resulting in the malicious prosecution of Plaintiff.

180.   By their participation in the civil conspiracy with Defendants Erika Girardi, Ribatallada and Minden, Defendants AMEX and Grimm are responsible and liable for the wrongful and tortious actions of Defendants Erika Girardi, Ribatallada and Minden in instigating, pursuing, and maintaining a malicious criminal prosecution against Plaintiff.

181.   Defendants AMEX and Grimm acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not, and acted in order to obtain money they did not deserve.  The baseless criminal proceeding instigated and caused by Defendants Erika Girardi, Ribatallada and Minden, (along with the Secret Service defendants), aided and abetted by AMEX and Grimm,  terminated in Plaintiff Psaila's favor on September 29, 2021, when prosecuting authorities voluntarily moved to dismiss the indictment, and the indictment was dismissed by the Court, thereby releasing Plaintiff Psaila from any further response to the baseless criminal proceeding.

182.   As a proximate result of the civil conspiracy perpetrated by Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm, Plaintiff has been damaged by the loss of property, and interruption/destruction of his business resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000.  As a proximate result of the civil conspiracy perpetrated by Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm, Plaintiff has been damaged by loss of past and future earnings in an amount to be proven at trial.

183.   As a proximate result of the civil conspiracy perpetrated by Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm, Plaintiff was required to expend more than $180,000 in attorney fees and other expenses in defending himself in the baseless criminal proceeding instigated and continued by Defendants Erika Girardi, Ribatallada and Minden.

184.   As a proximate result of the civil conspiracy perpetrated by Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm, Plaintiff has suffered a loss of reputation in the community, damages relating to which will be proven at trial.

185.   As a proximate result of the civil conspiracy perpetrated by Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm, Plaintiff has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial.

186.   As a proximate result of the civil conspiracy perpetrated by Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm, Plaintiff has suffered and will continue to suffer emotional distress, pain and suffering, and physical damages, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

187.   The conspiracy of action by Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm against Plaintiff Chris Psaila was willful, malicious, outrageous, and done with reckless disregard for Plaintiff Chris Psaila's rights and interests and therefore warrants punitive damages against AMEX, Grimm, Erika Girardi, Ribatallada and Minden.

## SIXTH CLAIM FOR RELIEF

### FEDERAL TORT CLAIMS ACT – MALICIOUS PROSECUTION (CALIFORNIA COMMON LAW) AGAINST THE UNITED STATES OF AMERICA

188.   Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein.

189.   Defendant United States of America (hereinafter "United States"), acting through the Secret Service and Defendants Savage, Scarince, and Henderson, was actively and instrumentally involved in instigating and causing the issuance of a search warrant lacking probable cause, a baseless criminal arrest, subsequent baseless grand

jury indictment lacking probable cause against Plaintiff Psaila.  Defendants were actively involved in causing the continuation of the prosecution despite a lack factual or evidentiary support for the charges against Plaintiff—a fact recognized by the AUSA assigned to the case, as the charges against Plaintiff Psaila were dropped on September 29, 2021.  No reasonable person in their position would have believed that there were grounds for causing Plaintiff Psaila to be arrested and prosecuted given the lack of factual or evidentiary support for the charges.

190.   Defendant United States, through Defendants Savage, Scarince and Henderson, acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not.  The baseless criminal proceeding instigated and caused by Defendant United States, through Savage, Scarince, Henderson, along with Defendants Erika Girardi, Ribatallada, Minden, AMEX and Grimm, terminated in Plaintiff Psaila's favor on September 29, 2021, when prosecuting authorities voluntarily moved to dismiss the indictment, and the indictment was dismissed by the Court, thereby releasing Plaintiff Psaila from any further response to the baseless criminal proceeding.

191.   Additionally, the United States, acting through Defendants Savage, Scarince, and Henderson, acted with the primary purpose of assisting Defendant Girardi obtain an unwarranted refund from AMEX.  Plaintiff was harmed as a proximate result of Defendants' actions.

192.   Among other acts and omissions that violated Plaintiff's rights, as set forth in the Statement of Facts and the *Bivens* claim for relief, the United States, acting through Defendants Savage, Scarince, and Henderson, conspired with Defendants Girardi, Ribatallada, Minden, AMEX, and Grimm, to deprive Plaintiff Psaila of his rights through their malicious and baseless prosecution and continuing to criminally prosecute him despite possessing facts establishing his innocence. Specifically, Defendant Henderson, with the approval and endorsement of Defendants Savage and

Scarince, provided false and misleading statements in his search warrant affidavit, resulting in the issuance of a search warrant lacking proper probable cause and subsequent unwarranted, humiliating, and extremely disruptive search of Plaintiff's business.  Additionally, despite seizing evidence establishing Plaintiff's innocence, Defendants Savage, Scarince, and Henderson proceeded with the baseless criminal prosecution by offering false and misleading evidence and statements to the grand jury, resulting in Plaintiff's indictment utterly lacking in probable cause.  Finally, throughout the entire criminal investigation—from its inception to the dismissal of the indictment—Defendants Savage, Scarince, and Henderson suppressed *Brady* evidence that was material to Plaintiff Psaila's defense and would have resulted in termination of the criminal case against him, had it been disclosed.  They acted with reckless disregard to Plaintiff's innocence despite knowing the evidence in their possession established Plaintiff's innocence.

193.   Defendants Savage, Scarince, and Henderson were employed by Defendant United States and were acting within the scope of their employment when they engaged in these actions, and thus the United States is legally responsible for such illegal acts under the FTCA.  Defendants Savage, Scarince and Henderson in investigating and prosecuting Plaintiff, had a mandatory duty not to violate the Constitution, to comply with federal law, and Secret Service policies to not suppress exculpatory evidence, to not present false evidence to the judge approving the search warrant and the grand jury returning the indictment, and to not continue the prosecution of Plaintiff in reckless disregard to his innocence.

194.   Defendant United States, through Defendants Savage, Scarince and Henderson, acted with malice, primarily for a purpose other than that of bringing an offender to justice, because they acted with reckless disregard as to whether Plaintiff was innocent or not, and acted in order to assist the Girardis in obtaining money they did not deserve.  The baseless criminal proceeding instigated and caused by

Defendants United States, through Savage, Scarince and Henderson, along with Erika Girardi, Ribatallada and Minden, AMEX and Grimm, terminated in Plaintiff Psaila's favor on September 29, 2021, when prosecuting authorities voluntarily moved to dismiss the indictment, and the indictment was dismissed by the Court, thereby releasing Plaintiff Psaila from any further response to the baseless criminal proceeding.

195.   As a proximate result of Defendant's actions, Plaintiff Psaila has been damaged by the loss of property, interruption/destruction of his business and business reputation resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000—one-half of the business losses to Marco Marco from the inception of the investigation to the present.  As a further proximate result of Defendant Savage's, Scarince's, and Henderson's actions, Plaintiff Psaila has been damaged by loss of past and future earnings in an amount of at least $18,000,000. Therefore, Plaintiff has suffered a combined property and economic damages amount of at least $35,000,000.

196.   As a further proximate result of Defendant Savage's, Scarince's, and Henderson's actions, Plaintiff's personal injuries from the economic harm to his business, Marco Marco, based on his one-half share of the business for past economic losses is at least $18,000,000.  In addition, as a further proximate result of Defendant Savage's, Scarince's, and Henderson's actions, Plaintiff Psaila has been damaged by the loss of future earnings in an amount of at least $18,000,000. Therefore, Plaintiff has suffered personal injuries of at least $35,000,000.

197.   As a further proximate result of Defendant Savage's, Scarince's and Henderson's actions, Plaintiff Psaila was required to spend more than $180,000 in attorney fees and other expenses defending himself in the baseless criminal proceeding.

198.   As a further proximate result of Defendants Savage's, Science's and Henderson's actions, Plaintiff Psaila has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial.

199.   As a further proximate result of Defendants Savage's, Scarince's and Hendersons' actions, Plaintiff Psaila has suffered and will continue to suffer emotional distress, pain, and suffering, physical injuries, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**

**FEDERAL TORT CLAIMS ACT—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CALIFORNIA COMMON LAW) AGAINST THE UNITED STATES OF AMERICA**

200.   Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein.

201.   Defendant United States, acting through Defendants Savage, Scarince, and Henderson acted outrageously when it criminally investigated and prosecuted Plaintiff without probable cause for over four years, and acting with reckless disregard to Plaintiff's innocence.  Defendants' actions were intended to cause emotional distress and the Defendants acted with a reckless disregard of the probability that Plaintiff would suffer emotional distress.  As a proximate cause of Defendants' intentional acts, Plaintiff suffered severe emotional distress and has suffered significant damages to his business, reputation, and personal well-being.

202.   Defendants Savage, Scarince, and Henderson were employed by Defendant United States and were acting within the scope of their employment when they engaged in these actions, and thus the United States is legally responsible for such illegal acts under the FTCA.  Defendants Savage, Scarince and Henderson in investigating and prosecuting Plaintiff, had a mandatory duty not to violate the

Constitution, to comply with federal law, and Secret Service policies to not suppress exculpatory evidence, to not present false evidence to the judge approving the search warrant and the grand jury returning the indictment, and to not continue the prosecution of Plaintiff in reckless disregard to his innocence.

203.   Specifically, Defendant United States, acting through Defendants Savage, Scarince, and Henderson acted with a deliberate indifference to Plaintiff Psaila's innocence, as alleged in the Statement of Facts, the *Bivens* cause of action, and the FTCA malicious prosecution claim. They initiated and continued a criminal investigation based on unsubstantiated allegations from Defendant Girardi.  Without conducting basic investigatory steps, such as interviewing Plaintiff, his business partner, or any other Marco Marco clients, Defendants Savage, Scarince, and Henderson sent Defendant Girardi to secretly record Plaintiff in an attempt to bully him into making incriminating statements.

204.   Based on Defendant Girardi's unsubstantiated claims, an interview with Plaintiff's bookkeeper, who did have any personal knowledge of Marco Marco's work for Defendant Girardi, and a secret recording lacking any admissions of wrongdoing, Defendants Henderson, with the endorsement and approval of Defendant Savage and Scarince, prepared a search warrant application rife with false statements and misrepresentations of the evidence.  As a result of their reckless and untrue statements, they received a search warrant to search Plaintiff's business and seize business records and electronic devices integral for the day-to-day operation of the business despite knowing that there was no basis for their actions.

205.   Additionally, after seizing all of Plaintiff's business devices and having exclusive control over evidence that established Plaintiff's innocence, Defendants Savage, Scarince, and Henderson recklessly disregarded such evidence and continued to pursue a criminal indictment against Plaintiff.  On information and belief, Defendants Savage, Scarince, and Henderson presented to the grand jury that AMEX

had reimbursed the Girardis $787,117.88 while intentionally omitting the fact that AMEX made no attempt to collect that amount from Plaintiff.  They also presented Defendant Girardi as the victim to the grand jury, even though Tom Girardi was the actual "victim" of Plaintiff's alleged acts in an attempt to hide his involvement in the case.  Plaintiff was indicted as a result of their intentional acts and omissions despite possessing evidence establishing his innocence. The indictment alleges that Erica Girardi was the victim, when she was not, Tom Girardi was the "victim."  The indictment alleges that American Express suffered losses in excess of $700,000 when it had not.  The indictment alleges identity theft against Plaintiff when he had not stolen anyone's identity as he was an authorized user of the AMEX card, and had explicit permission from Erica Girardi to charge her card.  The Indictment falsely alleges that Plaintiff made fabricated charges to the AMEX card when all charges were legitimate. The false allegations were presented to the grand jury and resulted in an Indictment permeated with fraud and without probable cause.  Defendant's Savage, Scarince and Henderson recklessly continued the indictment in obtaining the search warrant, ignoring the exculpatory evidence showing the charges were authorized and legitimate, causing a false presentation of evidence to the grand jury ensuring Plaintiff's indictment, and continuing the prosecuting of Plaintiff in reckless disregard to his innocence.

206.   Defendants Savage, Scarince, Henderson, and the United States, in initiating, conducting and pursuing this criminal indictment, owed a duty of care to Plaintiff to ensure they did not violate their constitutional obligations, statutory obligations, and Secret Service policies to ensure they did not pursue a baseless criminal indictment without probable cause, and with reckless disregard as to whether Plaintiff was innocent or not.

207.   Defendants United States, Savage, Scarince and Henderson, breached their obligations under the Constitution, federal law, and Secret Service policies in

pursuing  baseless criminal indictment in reckless disregard to whether Plaintiff was innocent or not. was intended to cause Plaintiff severe emotional distress.  They did so with a reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that their actions would cause severe emotional, reputational, and financial harm to Plaintiff. They acted outrageously, with utter disregard to the extreme emotional distress Plaintiff suffered as a result of their actions. As a result of their intentional and reckless acts, Plaintiff suffered severe emotional distress by causing him to live under indictment for nearly five years.

208.   As a proximate result of Defendant's actions, Plaintiff has been damaged by the loss of property, interruption/destruction of his business and business reputation resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000—one-half of the business losses to Marco Marco from the inception of the investigation to the present.  As a further proximate result of Defendant Savage's, Scarince's, and Henderson's actions, Plaintiff Psaila has been damaged by loss of past and future earnings in an amount of at least $18,000,000. Therefore, Plaintiff has suffered a combined property and economic damages amount of at least $35,000,000.

209.   As a further proximate result of Defendants Savage, Scarince, and Henderson's actions, Plaintiff's personal injuries from the economic harm to his business, Marco Marco, based on his one-half share of the business for past economic losses is at least $18,000,000. In addition, as a further proximate result of Defendants Savage's, Scarince's, and Henderson's actions, Plaintiff Psaila has been damaged by the loss of future earnings in an amount of at least $18,000,000. Therefore, Plaintiff has suffered personal injuries of at least $35,000,000.

210.   As a further proximate result of Defendants Savage, Scarince and Henderson's actions, Plaintiff Psaila was required to spend more than $180,000 in

attorney fees and other expenses defending himself in the baseless criminal proceeding.

211.   As a further proximate result of Defendants Savage, Scarince and Henderson's actions, Plaintiff Psaila has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial.

212.   As a further proximate result of Defendants Savage, Scarince and Hendersons' actions, Plaintiff Psaila has suffered and will continue to suffer emotional distress, pain, and suffering, physical injuries, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

## FEDERAL TORT CLAIMS ACT—NEGLIGENCE (General Negligence, Negligent infliction of Emotional Distress) (CALIFORNIA COMMON LAW) AGAINST THE UNITED STATES OF AMERICA

213.   Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein.

214.   Defendant United States acting through Defendants Savage, Scarince, and Henderson acted outrageously when it criminally investigated and prosecuted Plaintiff without probable cause for over four years, and acting with reckless disregard to Plaintiff's innocence.  Defendants' actions were intended to cause emotional distress and the Defendants acted with a reckless disregard of the probability that Plaintiff would suffer emotional distress.  As a proximate cause of Defendants' intentional acts, Plaintiff suffered severe emotional distress and has suffered significant damages to his business, reputation, and personal well-being.

215.   Defendants Savage, Scarince, and Henderson were employed by Defendant United States and were acting within the scope of their employment when they engaged in these actions, and thus the United States is legally responsible for such

illegal acts under the FTCA.  Defendants Savage, Scarince and Henderson in investigating and prosecuting Plaintiff, had a mandatory duty not to violate the Constitution, to comply with federal law, and Secret Service policies to not suppress exculpatory evidence, to not present false evidence to the judge approving the search warrant and the grand jury returning the indictment, and to not continue the prosecution of Plaintiff in reckless disregard to his innocence.

216.   Defendant United States, acting through Defendants Savage, Scarince, and Henderson based on their mandatory obligations, once they initiated and continued the investigation of Plaintiff, owed a duty of care to Plaintiff and violated that duty of care when they acted with a deliberate indifference to Plaintiff Psaila's innocence. They initiated a criminal investigation based on unsubstantiated allegations from Defendant Girardi.  Without conducting basic investigatory steps, such as interviewing Plaintiff, his business partner, or any other Marco Marco clients, Defendants Savage, Scarince, and Henderson sent Defendant Girardi to secretly record Plaintiff in an attempt to bully him into making incriminating statements.

217.   Based on Defendant Girardi's unsubstantiated claims, an interview with Plaintiff's bookkeeper, who did have any personal knowledge of Marco Marco's work for Defendant Girardi, and a secret recording lacking any admissions of wrongdoing, Defendants Henderson, with the endorsement and approval of Defendant Savage and Scarince, prepared a search warrant application rife with false statements and misrepresentations of the evidence.  As a result of their reckless and untrue statements, they received a search warrant to search Plaintiff's business and seize business records and electronic devices integral for the day-to-day operation of the business despite knowing that there was no basis for their actions.

218.   Additionally, after seizing all of Plaintiff's business devices and having exclusive control over evidence that established Plaintiff's innocence, Defendants Savage, Scarince, and Henderson recklessly disregarded such evidence and continued

to pursue a criminal indictment against Plaintiff.  On information and belief, Defendants Savage, Scarince, and Henderson presented to the grand jury that AMEX had reimbursed the Girardis $787,117.88 while intentionally omitting the fact that AMEX made no attempt to collect that amount from Plaintiff.  They also presented Defendant Girardi as the victim to the grand jury, even though Tom Girardi was the actual "victim" of Plaintiff's alleged acts in an attempt to hide his involvement in the case.  Plaintiff was indicted as a result of their intentional acts and omissions despite possessing evidence establishing his innocence. The indictment alleges that Erica Girardi was the victim, when she was not, Tom Girardi was the "victim."  The indictment alleges that American Express suffered losses in excess of $700,000 when it had not.  The indictment alleges identity theft against Plaintiff when he had not stolen anyone's identity as he was an authorized user of the AMEX card, and had explicit permission from Erica Girardi to charge her card.  The Indictment falsely alleges that Plaintiff made fabricated charges to the AMEX card when all charges were legitimate. The false allegations were presented to the grand jury and resulted in an Indictment permeated with fraud and without probable cause.  Defendants Savage, Scarince and Henderson recklessly continued the indictment in obtaining the search warrant, ignoring the exculpatory evidence showing the charges were authorized and legitimate, causing a false presentation of evidence to the grand jury ensuring Plaintiff's indictment, and continuing the prosecuting of Plaintiff in reckless disregard to his innocence.

219.   Defendants United States, Savage, Scarince, and Henderson's pursuit of a baseless criminal indictment, was negligent and a willful violation of their obligations under the Constitution, statutory obligations, and Secret Service polies.  They breached that duty of care once they initiated and conducted their investigation inf the face of evidence they possessed establishing Plaintiff's innocence, and suppressing exculpatory evidence and presenting false evidence to the judge granting the Search

Warrant, the grand jury issuing the indictment, and continuing the prosecution.  Their actions were so far below the standard of legitimate investigations, that they were not making discretionary decisions or legitimate judgments, but acted negligently and recklessly in violating the standards governing legitimate law enforcement conduct. Their conduct was negligent, and they negligently inflicted extreme emotional abuse on Plaintiff. They did so with a reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that their actions would cause severe emotional, reputational, and financial harm to Plaintiff. As a result of their intentional and reckless acts, Plaintiff suffered severe emotional distress by causing him to live under indictment for nearly five years.

220.   As a proximate result of Defendants' actions, Plaintiff Psaila has been damaged by the loss of property, interruption/destruction of his business and business reputation resulting in past and future economic losses, all in an amount to be proven at trial, but in excess of $18,000,000—one-half of the business losses to Marco Marco from the inception of the investigation to the present.  As a further proximate result of Defendants Savage, Scarince, and Henderson's actions, Plaintiff Psaila has been damaged by loss of past and future earnings in an amount of at least $18,000,000. Therefore, Plaintiff has suffered a combined property and economic damages amount of at least $35,000,000.

221.   As a further proximate result of Defendants Savage, Scarince, and Henderson's actions, Plaintiff's personal injuries from the economic harm to his business, Marco Marco, based on his one-half share of the business for past economic losses is at least $18,000,000. In addition, as a further proximate result of Defendants Savage, Scarince, and Henderson's actions, Plaintiff Psaila has been damaged by the loss of future earnings in an amount of at least $18,000,000. Therefore, Plaintiff has suffered personal injuries of at least $35,000,000.

222.   As a further proximate result of Defendants Savage, Scarince and Henderson's actions, Plaintiff Psaila was required to spend more than $180,000 in attorney fees and other expenses defending himself in the baseless criminal proceeding.

223.   As a further proximate result of Defendants Savage, Scarince and Henderson's actions, Plaintiff Psaila has suffered and will continue to suffer a loss of reputation in the community, damages relating to which will be proven at trial. As a further proximate result of Defendants Savage, Scarince and Henderson's actions, Plaintiff Psaila has suffered and will continue to suffer emotional distress, pain, and suffering, physical injuries, causing him to seek past and future medical treatment with associated costs and damages in an amount to be proven at trial.

**NINTH  CLAIM FOR RELIEF**

**FEDERAL TORT CLAIMS ACT—NEGLIGENCE (Negligent Training, Supervision and failure to discipline) (CALIFORNIA COMMON LAW)**

**AGAINST THE UNITED STATES OF AMERICA**

224.   Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein.

225.   The United States, Defendant Savage, Defendant Scarince, in their supervisory capacities, once they initiated and continued the investigation of Plaintiff, owed a duty of care to ensure that Defendants Savage, Scarince and Henderson complied with their mandatory duties under the United State Constitution, State law, and Secret Service policies.  Defendants Savage, Scarince, and Henderson were employed by Defendant United States and were acting within the scope of their employment when they engaged in these actions, and thus the United States is legally responsible for such illegal acts under the FTCA.  Defendants Savage, Scarince and Henderson in investigating and prosecuting Plaintiff, had a mandatory duty not to violate the Constitution, to comply with federal law, and Secret Service policies to not

suppress exculpatory evidence, to not present false evidence to the judge approving the search warrant and the grand jury returning the indictment, and to not continue the prosecution of Plaintiff in reckless disregard to his innocence.

226.   Defendant United States, acting through Defendants Savage, Scarince, and Henderson, based on their mandatory obligations, owed a duty of care to Plaintiff and violated that duty of care when they acted with a deliberate indifference to Plaintiff Psaila's innocence.

227.   Defendant United States, failed to supervise Defendant Savage, to ensure that he would not violate Plaintiff's rights by failing to disclose his bribe from Girardi, failing to disclose his fake presidential trips, failing to disclose his conflict of interest in initiating the case against Plaintiff, being personally involved and supervising the Psaila investigation.  The United States failed to ensure that the investigation would be conflict free and would not violate Plaintiff's rights.  The United States failed in its supervision, training and discipline of Savage.  If it had, Savage would never have been in the position to initiate the Psaila investigation and Psaila would never have been charged.  Defendant Savage failed to supervise Scarince, and Scarince failed to supervise Henderson, and they collectively failed to train, and discipline Henderson, and thereby ratified Henderson's reckless disregard of Plaintiff's rights and his innocence.

228.   Defendant United States and Savage, failed to supervise and train Scarince and Henderson to ensure the Psaila investigation did not violate Psaila's rights.  Defendant United States and Savage, caused an investigation and prosecution of Plaintiff done with reckless disregard to his innocence, in violation of the Constitution, state law and Secret Service policies requiring unbiased and conflict free investigations, the disclosure of *Brady* evidence, the requirement that fabricated and false evidence would not be presented to judges  issuing the search warrant and the grand jury returning the indictment, and continuing an investigation and prosecution in

reckless disregard of Plaintiff's rights.  Defendant United States, Savage and Scarince ratified Henderson's misconduct by failing to discipline Henderson and adopting his deliberate and reckless disregard of Plaintiff's rights and his innocence.

229.   By failing to train, supervise and discipline Defendants Savage, Scarince and Henderson, the United States ensured that Plaintiff's rights would be violated, and thereby ratified the violation of Plaintiff's rights by Defendants Savage, Scarince and Henderson. The United States and Savage, through his own conduct and his failures to ensure an unbiased and conflict-free investigation, ratified the malicious and reckless prosecution of Plaintiff.

230.   The actions and inactions of the United States through Defendants Savage, Scarince and Henderson, were a direct and proximate cause and a substantial factor in bringing about Plaintiff's damages as outlined above.

WHEREFORE, Plaintiff Psaila prays for judgment against Defendants, and each of them, as follows:

1.      For general damages according to proof and not less than $18,200,000;

2.      For future loss of earnings and loss of earning capacity according to proof;

3.      For interest thereon at the legal rate;

4.      For costs of suit incurred herein;

5.      For such other and further relief as the Court deems just and proper; and

6.      For exemplary damages in an amount that is just and proper.

DATED:      June 10, 2024           MCLANE, BEDNARSKI & LITT, LLP
                                    By: /s/ David S. McLane
                                          David S. McLane
                                          Barrett S. Litt
                                          Marilyn E. Bednarski
                                          Bruce Bealke
                                          Stanley Greenberg
                                          Attorneys for Plaintiff
                                          CHRISTOPHER PSAILA

**VI.      JURY DEMAND**

Plaintiff hereby demands a jury trial.


DATED:      June 10, 2024                    McLane, Bednarski & Litt, LLP


                                        By: /s/ David S. McLane
                                            David S. McLane
                                            Barrett S. Litt
                                            Marilyn E. Bednarski
                                            Bruce Bealke (Pro Hac Vice)
                                            Stanley Greenberg
                                            Attorneys for Plaintiff
                                            CHRISTOPHER PSAILA