HARVINDER S. ANAND (SBN 243913)
ANAND LAW GROUP, P.C.
301 N. Lake Avenue, Suite 600
Pasadena, California 91101
Phone: (626) 239-7250
Fax: (626) 239-7150
Email: harv@anandlawgroup.com

Attorneys for Defendant
LORENZO ROBERT SAVAGE III

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, UNITED STATES OF AMERICA, and DOES 1 TO 10, Inclusive,<br><br>Defendants. | Case No. 2:23-cv-07120-MWF (SKx)<br><br>Honorable Michael W. Fitzgerald<br><br>**DEFENDANT ROBERT SAVAGE'S NOTICE OF AND MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>**[DECLARATIONS AND REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]**<br><br>First Amended Complaint served: 6/10/2024<br><br>Hearing:<br>Date: November 4, 2024<br>Time: 10:00 a.m.<br>Courtroom: 5A |

-1-

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 4, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California, 90012, Courtroom 5A, Defendant Lorenzo Robert Savage III, sued herein as Robert Savage, will and hereby does respectfully move this Court for an order granting sanctions under Rule 11 of the Federal Rules of Civil Procedure.

Mr. Savage respectfully requests that the Court issue an order granting monetary sanctions, jointly and severally, against Plaintiff Christopher Psaila, attorney David S. McLane, and McLane, Bednarski & Litt, LLP.  Mr. Savage seeks monetary sanctions in the amount of $32,340 for legal fees incurred and expected to be incurred in connection with filing his motion to dismiss the First Amended Complaint ("FAC") and with filing this motion.  (Declaration of Harvinder S. Anand, dated Aug. 30, 2024 ("Anand Decl."), ¶ 15.)  Mr. McLane signed the  FAC.

This motion is brought because the FAC is both factually and legally frivolous.  Under Rule 11(c)(5)(A), the Court may not impose a monetary sanction "against a represented party for violating Rule 11(b)(2)," as the motion alleges. Mr. Savage respectfully requests that the Court apportion monetary sanctions against Plaintiff and his attorneys.

This motion is based on this Notice and the attached Memorandum of Points and Authorities; the Declarations of Lorenzo Robert Savage III, Michele M. Savage, and Harvinder S. Anand; the Request for Judicial Notice, and all papers and pleadings on file herein; and on such additional papers and arguments as may be presented at or before the hearing of this matter.

///

///

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

1    This motion is made following the conference of counsel pursuant to L.R. 7-

2    3, which took place starting on July 11, 2024.  (Anand Decl., ¶¶ 6-10 & Exhs. 1-2.)

3    Mr. Savage complied with Federal Rule of Civil Procedure 11(c)(2) prior to filing

4    this motion.  (*Id.*, ¶ 11.)

5    Dated: August 30, 2024                          Respectfully submitted,

6                                                    ANAND LAW GROUP, P.C.

7                                                    By:   /s/ Harvinder S. Anand
8                                                    HARVINDER S. ANAND

9                                                    Attorneys for Defendant
                                                     Lorenzo Robert Savage III

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    Introduction ............................................................................................ 1

II.   Legal Standards ...................................................................................... 1

III.  The FAC Is Permeated with Falsehoods and Is Factually Baseless .............. 3

    A.   The 95-Page FAC Alleges Only One True Fact Regarding Mr.
        Savage's Involvement in Plaintiff's Criminal Investigation and
        Prosecution ..................................................................................... 3

    B.   Mr. Savage Honorably Retired from the Secret Service and He
        Did Not Directly Supervise Agent Scarince ......................................... 4

        1.   Plaintiff Refused To Consider Evidence Mr. Savage
            Retired in Good Standing .......................................................... 4

        2.   Plaintiff's FAC Continued Falsely Alleging Mr. Savage
            Directly Supervised Agent Scarince After Being Informed
            It Was Untrue .......................................................................... 5

    C.   Plaintiff Repeats Numerous False Allegations in the FAC After
        the Court Stated the Complaint Allegations Were "Rank
        Speculation." .................................................................................. 6

    D.   The FAC Is Misleading Because Plaintiff Omitted His
        Admission of Overcharging Ms. Girardi More than $100,000 ........... 8

IV.   The FAC Is Also Legally Baseless ................................................................ 9

    A.   Plaintiff Made Up the Bribery Allegation ........................................... 9

        1.   The FAC Falsely Claims Mr. Girardi Paid Cash and that
            His Law Firm's Bank Records Do Not Show a Payment to
            Mr. or Mrs. Savage ................................................................... 9

        2.   Without the FAC's False Allegations, Plaintiff Concedes
            There Was No Bribe by Admitting Mr. Girardi Paid Mr.
            Savage for Settlement in the Volkswagen Case ........................ 10

        3.   The Bribery Accusation Is Legally Frivolous .......................... 12

# TABLE OF CONTENTS
## (continued)

**Page**

B.    Contrary To Settled Law, Plaintiff Tries to Hold Mr. Savage Vicariously Liable for the Actions of Others Because He Has No Facts Showing SAIC Savage Personally and Intentionally Acted Unconstitutionally ...................................................................... 13

C.    Plaintiff's Fourth Amendment Claim Is Specious ............................ 14

D.    Plaintiff's Fifth Amendment Claim Is Spurious ............................... 15

    1.    There Was No *Brady* Evidence and in Any Event the Government Is Not Required To Present Exculpatory Information to the Grand Jury .................................................. 15

    2.    The Government Independently Decided to Pursue Charges ..................................................................................... 16

    3.    *Henthorn* Only Applies To Testifying Witnesses and No Disclosures Were Due in Any Event ...................................... 17

E.    The *Bivens* Malicious Prosecution Claim Is Baseless ....................... 17

F.    Mr. Savage Is Entitled To Qualified Immunity ............................... 18

G.    A *Bivens* Claim Does Not Exist ....................................................... 19

    1.    This Case Presents a New Context ........................................... 19

    2.    Special Factors Preclude a *Bivens* Remedy in this Case .......... 21

V.    Sanctions Are Warranted .............................................................................. 22

VI.    Conclusion ..................................................................................................... 23

Certificate of Compliance with Local Civil Rule 11-6.1 ...................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aponte v. Calderon*,
    284 F.3d 184 (1st Cir. 2002) ............................................................... 12

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ............................................................................ 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 13

*Barts v. Joyner*,
    865 F.2d 1187 (11th Cir. 1989) ........................................................... 18

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ....................................................................*passim*

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*,
    498 U.S. 533 (1991) ............................................................................ 22

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ............................................................... 2

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ............................................................................... 2

*Egbert v. Boule*,
    596 U.S. 482, 142 S. Ct. 1793 (2022) .................................... 20, 21, 22

*Farah v. Weyker*,
    926 F.3d 492 (8th Cir. 2019) ............................................................... 21

*Flores v. Satz*,
    137 F.3d 1275 (11th Cir. 1998) ........................................................... 16

*Gaiardo v. Ethyl Corp.*,
    835 F.2d 479 (3d Cir. 1987) ............................................................. 1, 8

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

4

**Cases:**

5

*Ganek v. Leibowitz*,

6     874 F.3d 73 (2d Cir. 2017) .................................................................. 14

7     *Harrington v. Cty. of Suffolk*,

8     607 F.3d 31 (2d Cir. 2010) .................................................................. 12

9     *Hartman v. Moore*,

10    547 U.S. 250 (2006) ............................................................... 16, 17, 18

11    *Hernandez v. Mesa*,

12    140 S. Ct. 735 (2020) ......................................................................... 20

13    *Imprenta Servs., Inc. v. Karll*, No. CV 20-6177-GW-PVCX,

14    2022 WL 2784418 (C.D. Cal. July 5, 2022) ...................................... 8, 9

15    *Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM,

16    2024 WL 326598 (D. Or. Jan. 29, 2024) ............................................ 18

17    *Jones v. U.S. Secret Serv.*, No. CV 22-0962 (TSC),

18    2023 WL 8634586 (D.D.C. Nov. 10, 2023) ........................................ 21

19    *Littell v. United States*,

20    191 F. Supp. 2d 1338 (M.D. Fla. 2002) .............................................. 12

21    *Livers v. Schenck*,

22    700 F.3d 340 (8th Cir. 2012) .............................................................. 16

23    *Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448,

24    2023 WL 5426738 (9th Cir. Aug. 23, 2023) ....................................... 21

25    *McDonnell v. United States*,

26    579 U.S. 550 (2016) ........................................................................... 12

27

28

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases:**

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ................................................................ 1, 8, 12, 13

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ................................................................................. 18, 19

*Morgan v. Gertz*,
   166 F.3d 1307 (10th Cir. 1999) ..................................................................... 16

*Moser v. Bret Harte Union High Sch. Dist.*,
   366 F.Supp.2d 944 (E.D. Cal. 2005) ............................................................ 22

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ....................................................................................... 19

*O'Malley v. New York City Transit Auth.*,
   896 F.2d 704 (2d Cir. 1990) ................................................................... 12, 13

*O'Neal v. Eu*,
   866 F.2d 314 (9th Cir. 1989) ........................................................................ 19

*OSU Student All. v. Ray*,
   699 F.3d 1053 (9th Cir. 2012) ...................................................................... 14

*Pettibone v. Russell*,
   59 F.4th 449 (9th Cir. 2023) ............................................................... 20, 21, 22

*Purbeck v. Coffin*, No. 1:21-CV-00047-BLW,
   2024 WL 342092 (D. Idaho Jan. 29, 2024) ................................................. 21

*Robertson v. Sichel*,
   127 U.S. 507 (1888) ...................................................................................... 13

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases:**

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000) ........................................................ 14, 15

*Smiddy v. Varney*,
  665 F.2d 261 (9th Cir. 1981), *overruled in part on other grounds as*
  *recognized by Gonzalez v. Cty. of Los Angeles*, No. 22-55386,
  2023 WL 5951015 (9th Cir. Sept. 13, 2023) (unpublished) ................. 16, 17, 18

*Smith v. Ricks*,
  31 F.3d 1478 (9th Cir. 1994) ........................................................ 1, 2

*Spreadbury v. Bitterroot Pub. Libr.*,
  862 F.Supp.2d 1054 (D. Mont. 2012) ................................................ 12

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ........................................................ 11

*Strickler v. Greene*,
  527 U.S. 263 (1999) ................................................................. 15

*Szabo Food Serv., Inc. v. Canteen Corp.*,
  823 F.2d 1073 (7th Cir. 1987) ....................................................... 2

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) (en banc) .......................................... 2, 3, 5

*Truesdell v. S. California Permanente Med. Grp.*,
  293 F.3d 1146 (9th Cir. 2002) ..................................................... 2, 9, 19

*United States v. Al Mudarris*,
  695 F.2d 1182 (9th Cir. 1995) ....................................................... 16

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases:**

*United States v. Alvarez,*
    358 F.3d 1194 (9th Cir. 2004) ............................................................. 16

*United States v. Buffington,*
    815 F.2d 1292 (9th Cir. 1987) ............................................................. 16

*United States v. Perkins,*
    850 F.3d 1109 (9th Cir. 2017) ............................................................. 14

*United States v. Santiago,*
    46 F.3d 885 (9th Cir. 1995) ............................................................. 16

*United States v. Trayer,*
    898 F.2d 805 (D.C. Cir. 1990) ............................................................. 12

*United States v. Williams,*
    504 U.S. 36 (1992) ......................................................... 16, 17

*Wood v. Moss,*
    572 U.S. 744 (2014) ......................................................... 13

*Woodrum v. Woodward County, Okla.,*
    866 F.2d 1121 (9th Cir. 1989) ............................................................. 2

*Worrell v. Uniforms To You & Co.,*
    673 F. Supp. 1461 (N.D. Cal. 1987) ....................................................... 22

*Zaldivar v. City of Los Angeles,*
    780 F.2d 823, 831 (9th Cir. 1986), *abrogated on other grounds by*
    *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ...........................*passim*

*Ziglar v. Abbasi,*
    582 U.S. 120, 137 S.Ct. 1843 (2017) .............................................. 13, 19, 20, 22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Statutes and Rules:**

18 U.S.C. § 926C(a) ............................................................................... 4

18 U.S.C. § 926C(c)(1) ........................................................................... 4

Federal Rule of Civil Procedure 11 ............................................... *passim*

Federal Rule of Civil Procedure 11(b) .................................................. 4, 5

Federal Rule of Civil Procedure 11(b)(2) ............................................... 2

Federal Rule of Civil Procedure 11(b)(3) ............................................... 2


**Other Authorities:**

Model Ninth Circuit Criminal Jury Instruction 10.1 (Official Act-Defined) .......... 12

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction.

Lorenzo Robert Savage III, sued herein as Robert Savage, proudly served the United States while rising through the ranks of the Secret Service over a twenty-five year career, ascending to Special Agent in Charge ("SAIC") of the Los Angeles office.  Plaintiff's false allegations, most significantly the fabricated bribery accusation, have caused Mr. Savage significant reputational harm and loss of business.

The 95-page the First Amended Complaint ("FAC") includes only one true allegation about Mr. Savage's role in Plaintiff's matter: he asked agents to investigate Erika Girardi's complaint as the law permits.  Plaintiff's own allegations establish there was no bribe.  He makes countless untrue and baseless allegations to fill the factual void.  The FAC is factually and legally frivolous.

Mr. Savage repeatedly sought to avoid filing this motion by asking Plaintiff to withdraw the FAC.  The Ninth Circuit has upheld a Rule 11 attorney's fees award for a plaintiff filing an amended complaint making "very serious charges of mail fraud and racketeering without foundation."  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986).  "A complaint filed in federal court is not a vehicle for airing rumor, suspicion, or mere hostility."  *Id.*  Rule 11 sanctions are necessary to deter frivolous filings like the FAC for the benefit of the judicial system as much as of other litigants.  Mr. Savage respectfully requests that the Court sanction Plaintiff and his counsel in the amount of $32,340.

### II.    Legal Standards.

Federal Rule of Civil Procedure 11 requires attorneys and their clients to "'stop, think, investigate, and research' before filing papers to initiate a suit."  *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).  An attorney must ensure a complaint is "'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose."  *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir.

1    1994).  A "violation of Rule 11 is complete when the paper is filed."  *Cooter &*
2    *Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).

3         "Rule 11 sanctions shall be assessed" if a filing "is frivolous, legally
4    unreasonable, or without factual foundation, even though the paper was not filed in
5    subjective bad faith."  *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.
6    1986), *abrogated on other grounds by Cooter & Gell*, 496 U.S. 384.  Either
7    "legally frivolous" or "factually misleading" complaints violate Rule 11.  *Truesdell*
8    *v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002)
9    (citing Fed. R. Civ. P. 11(b)(2), (3)).

10        "Factually frivolous" filings are those that are "both baseless and made
11   without a reasonable and competent inquiry."  *Townsend v. Holman Consulting*
12   *Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).  "The key question in
13   assessing [legal] frivolousness is whether a complaint states an arguable claim–not
14   whether the pleader is correct in his perception of the law."  *Woodrum v.*
15   *Woodward County, Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989).

16        When a "complaint is the primary focus of Rule 11 proceedings, a district
17   court must conduct a two-prong inquiry to determine (1) whether the complaint is
18   legally or factually baseless from an objective perspective, and (2) if the attorney
19   has conducted a reasonable and competent inquiry before signing and filing it."
20   *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations
21   omitted).  The "central purpose of Rule 11 is to deter baseless filings in district
22   court."  *Cooter & Gell*, 496 U.S. at 393; *see also Szabo Food Serv., Inc. v. Canteen*
23   *Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987) ("Rule 11 is designed to discourage
24   unnecessary complaints and other filings, for the benefit of the judicial system as
25   much as of the defendants.").

26   ///
27   ///
28   ///

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

III.     **The FAC Is Permeated with Falsehoods and Is Factually Baseless.**

Not only is the FAC entirely without "factual foundation," *Zaldivar*, 780 F.2d at 831, it is permeated with false allegations.

A.     The 95-Page FAC Alleges Only One True Fact Regarding Mr. Savage's Involvement in Plaintiff's Criminal Investigation and Prosecution.

Mr. Savage's motion to dismiss the complaint ("MTD Complaint") established that Plaintiff's 70-page pleading alleged only a total of two facts about what SAIC Savage did after Ms. Girardi reported credit card fraud to him: (1) he told Agents Kenneth Henderson and Steve Scarince to investigate her complaint; and (2) he "emailed Defendant Grimm of AMEX requesting a call to discuss the case." (Reply Br. [Dkt. No. 91], at 2:7-12.) Mr. Savage informed Plaintiff on March 22, 2024, that the second allegation was untrue. (*Id.*, at 2:11-12.) Plaintiff still included it in the FAC. (FAC, at 29:21-22.)

Plaintiff finally concedes the second allegation was untrue and that "it was defendant Henderson not Savage who emailed Defendant Peter Grimm requesting a call to discuss the case." (Dkt. No. 123-1 at 2:22-24 [McLane Decl.].) Plaintiff included the baseless allegation in his amended pleading without conducting a reasonable inquiry, making it factually frivolous. *Townsend*, 929 F.2d at 1362.

Plaintiff twice asserted Mr. Savage emailed Mr. Grimm "the day of the secret recording by the Secret Service Defendants" (FAC, at 29:20-21) so he could argue Mr. Savage was involved in his investigation. In his opposition to the MTD Complaint, Plaintiff stated: "Had Savage not been involved in the investigation, as he claims, this step [emailing Mr. Grimm] would have been taken by Defendant Scarince and Henderson as the agents investigating Defendant Girardi's claim. Instead, Savage was personally involved in the investigation because it involved his friend Tom Girardi." (Opp. to MTD Complaint [Dkt. No. 81], at 6:6-9.) The first assertion in the foregoing quotation was true but the second was false.

-3-

Plaintiff admits Agent Henderson emailed Mr. Grimm but he refuses to accept or follow his own words by still trying to connect Mr. Savage to his investigation.  Plaintiff persists in baselessly accusing Mr. Savage of all sorts of horrible conduct, including that he "fabricated evidence to maliciously prosecute Plaintiff during the entire investigation."  (Opp. to MTD FAC [Dkt. No. 123], at 15:21-22; *id.*, at 16:1-2 (citing "Deliberate Fabrication of Evidence" jury instruction).)  Rule 11 applies to the foregoing statements in Plaintiff's brief because he made representations to the court by "later advocating" his same position in the FAC, *see* Fed. R. Civ. P. 11(b), which also alleged Mr. Savage "fabricat[ed] reports and evidence intentionally" (FAC, at 10:4-9).

> B.    Mr. Savage Honorably Retired from the Secret Service and He Did Not Directly Supervise Agent Scarince.
>
> 1.    Plaintiff Refused To Consider Evidence Mr. Savage Retired in Good Standing.

Plaintiff's allegations about Mr. Savage's employment with the government, including that Mr. Savage "was eventually involuntarily separated from the Secret Service during the investigation in this case" (FAC, 21:26-22:9), are untrue.  His claims are made on unspecified purported "information and belief."  (*Id.*)

Before filing his motion to dismiss the FAC ("MTD FAC"), Mr. Savage informed Plaintiff he honorably and voluntarily retired from the Secret Service to pursue a desirable position in a private organization.  (Declaration of Harvinder S. Anand, dated Aug. 30, 2024 ("Anand Decl."), Exh. 1.)  On July 11, 2024, Mr. Savage offered to provide Plaintiff a copy of Mr. Savage's "LEOSA" (Law Enforcement Officers Safety Act Improvements Act) card and informed him that the card permits Mr. Savage to carry a firearm because he retired in good standing. (*Id.*); s*ee* 18 U.S.C. § 926C(a), (c)(1) (permitting "qualified retired law enforcement officer" who "separated from service in good standing from service with a public agency as a law enforcement officer" to carry concealed firearms).

-4-

Mr. Savage asked Plaintiff to withdraw his allegations in paragraph 43 of the FAC. (Anand Decl., ¶ 9.)  Plaintiff did not respond to Mr. Savage's offer.  (*Id.*)

Mr. Savage's concurrently filed declaration attaches a redacted copy of his LEOSA card and Mr. Savage affirms that the allegations in FAC paragraph 43 are untrue.  (Declaration of Lorenzo Robert Savage III, dated Aug. 30, 2024 ("R. Savage Decl."), ¶ 6 & Exh. 1.)

The allegations in paragraph 43 of the FAC are without factual foundation, *Zaldivar*, 780 F.2d at 831, and are factually frivolous, *Townsend*, 929 F.2d at 1362. Plaintiff also violated Rule 11 by repeating his paragraph 43 allegations in opposing Mr. Savage's MTD FAC (*see* Dkt. No. 123, at 4:13-16), after Mr. Savage offered to provide proof that they are untrue, Fed. R. Civ. P. 11(b).

       2.      <u>Plaintiff's FAC Continued Falsely Alleging Mr. Savage Directly Supervised Agent Scarince After Being Informed It Was Untrue</u>.

SAIC Savage did not directly supervise Agent Scarince as Plaintiff alleges. (FAC, at 13:18-19 (Agent Scarince "was Defendant Savage's number one assistant").)  Mr. Savage informed Plaintiff during the April 8, 2024, hearing that his allegation was untrue (Anand Decl., Exh. 3 [4/8/24 Hearing Tr.], at 27-28), but Plaintiff repeated it in the FAC anyway.  That allegation is also without factual foundation and factually frivolous.

Before filing his MTD FAC, Mr. Savage also informed Plaintiff that "Agent Scarince reported to David Murray, Assistant Special Agent in Charge ('ASAIC') for Investigations."  (Anand Decl., Exh. 1; *see also* R. Savage Decl., ¶ 3.)  "ASAIC Murray reported to Deputy Special Agent in Charge Jesse Baker, who was second in command to SAIC Savage."  (*Id.*)

Plaintiff continues baselessly suing Mr. Savage for "failures to train and supervise agent Henderson on the case [without which] there would not have been a violation of Plaintiff's constitutional rights."  (Opp. to MTD FAC [Dkt. No. 123],

at 2:4-6.)  His claim is factually frivolous and contrary to settled law, also making it legally frivolous.  (*See infra*, Sections IV.B and IV.G.)

      C.    <u>Plaintiff Repeats Numerous False Allegations in the FAC After the Court Stated the Complaint Allegations Were "Rank Speculation."</u>

The Court informed Plaintiff during the April 8, 2024, hearing that "the idea that [Mr. Savage] authorized things . . . sort of was the proximate cause of all of this was -- is just rank speculation."  (Anand Decl., Exh. 3, at 6:1-4.)  Plaintiff was undeterred.  His 95-page FAC repeats virtually all or all of the same baseless allegations Plaintiff made in his complaint, including:

▪    "The evidence in this case establishes beyond all dispute" that SAIC Savage "conspire[ed] with" all the other defendants to claim Marco Marco's credit charges "were fraudulent" because "Defendants knew" before Plaintiff's indictment that all the charges "were authorized [and] legitimate."  (FAC, at 19:23-20:1; Compl., at 16:23-26.)

▪    SAIC Savage "along with" the other defendants "acted on the Girardis' behalf, specifically on Erika Girardi's behalf, with deliberate and reckless indifference to the truth that Chris Psaila and/or Marco Marco did not owe Ms. Girardi any money."  (FAC, at 10:1-4; Compl., at 9:19-22.)

▪    "Their actions violated Chris Psaila's constitutional rights under Bivens: their actions constituted malicious prosecution under state law because the criminal charges lacked probable cause as the charges were authorized and legitimate; they violated his rights by fabricating reports and evidence intentionally or with reckless disregard to their falsity; and they violated his rights by concealing exculpatory and impeachment evidence."  (FAC, at 10:4-9; Compl., at 9:22-27.)

▪    "Defendants Savage, Scarince and Henderson failed to do any due diligence to solicit evidentiary proof from either AMEX or Erika and Tom Girardi to substantiate whether any of the actual invoices and credit card charges were false and/or unauthorized."  (FAC, at 5:23-26; Compl., at 5:19-22.)

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

▪ "Defendant Savage was biased and invested in securing the eventual reimbursement of $787,117.88 for his friends, the Girardis." (FAC, at 38:20-21; Compl., at 32:12-13.)

▪ "[F]alse reports were intentionally ratified by" SAIC Savage, "who recklessly failed to investigate the allegations in violation of Plaintiff's rights." (FAC, at 46:13-15; Compl., at 40:1-3.)

▪ SAIC Savage "endorsed and approved" the search warrant application "based on lies and without probable cause." (FAC, at 31:4-5; Compl., at 24:26-25:1)

▪ SAIC Savage and the other defendants "bull[ied] and cow[ed] Plaintiff Psaila into agreeing he overcharged Erika Girardi." (FAC, at 31:4-5; Compl., at 24:26-25:1.)

▪ SAIC Savage "personally participated and [was] integrally involved in the investigation and prosecution of Psaila." (FAC, at 65:25-26.)

Plaintiff makes all the above allegations without a single supporting fact. They all are false. Mr. Savage "played no role in Plaintiff's criminal investigation or prosecution." (R. Savage Decl., ¶ 7.) Before this case started, Mr. Savage "did not know about any investigative step that either Agent Henderson or Agent Scarince took or did not take in Plaintiff's criminal investigation"; or that Ms. Girardi "met with Plaintiff on December 14, 2016, or that she recorded their conversation." (*Id.*) Mr. Savage "did not ever inquire about the status of the Plaintiff's investigation or discuss it with Agent Scarince or Agent Henderson after December 7, 2016," or "with anyone else in the Secret Service or in the United States Attorney's Office." (*Id.*)

Plaintiff negates his allegations of a conspiracy by alleging that "Erika Girardi made and caused her assistants . . . to make" "false accusations" to the Secret Service against Plaintiff. (FAC, at 5:1-4; *id.*, at 28:17-18 (same).). There would have been no reason for Ms. Girardi to lie if there was some grand

1  conspiracy as Plaintiff contends.  And Plaintiff does not allege a single fact

2  showing SAIC Savage knew Ms. Girardi was lying, if in fact that is true.

3  Mr. Savage affirms he "did not know Ms. Girardi was lying to the Secret Service,

4  if in fact that is true."  (R. Savage Decl., ¶ 8.)

5        Plaintiff should have heeded the Court's observation that he was engaging in

6  "rank speculation" against Mr. Savage.  Plaintiff was required to "'stop, think,

7  investigate, and research' before filing" the FAC.  *Gaiardo*, 835 F.2d at 482.

8  But he did none of that.  "A complaint filed in federal court is not a vehicle for

9  airing rumor, suspicion, or mere hostility." *MGIC Indem. Corp.*, 803 F.2d at 505.

10  Plaintiff does not allege that SAIC Savage personally took any investigative action

11  in this matter even though he and his attorneys had access to more than 3,500

12  pages of discovery from his criminal case for years before they initiated this action.

13  (RJN, Exh. 2, at 3:8-11.)

14        All the above allegations were without any factual foundation before

15  Plaintiff conceded that Mr. Savage did not email Mr. Grimm.   But Plaintiff now

16  does not have any fact showing Mr. Savage took even one action in his entire

17  criminal investigation and prosecution after introducing Ms. Girardi to Agents

18  Henderson and Scarince.  Yet he continues pressing numerous false allegations

19  against Mr. Savage.

20        D.    The FAC Is Misleading Because Plaintiff Omitted His Admission of

21              Overcharging Ms. Girardi More than $100,000.

22        Plaintiff again strategically omitted from the FAC his highly inculpatory

23  admission that he owed Ms. Girardi "just over $100,000."  (Dkt. No. 32-1, at 1:22-

24  26 [Decl. of M. Bednarski].)  Plaintiff's own words likely caused him to be

25  investigated further and eventually prosecuted.  Omitting material facts makes a

26  pleading "objectively baseless and lacking evidentiary support." *Imprenta Servs.,*

27  *Inc. v. Karll*, No. CV 20-6177-GW-PVCX, 2022 WL 2784418, at *2–3 (C.D. Cal.

28  July 5, 2022) (making finding because complaint omitted reference to key

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

communications).  "[F]actually misleading" complaints violate Rule 11.  *Truesdell*, 293 F.3d at 1153.

## IV.   The FAC Is Also Legally Baseless.

### A.   Plaintiff Made Up the Bribery Allegation.

Plaintiff has improperly sought to create the specter of impropriety by invoking an unrelated matter involving attorney Tom Girardi, making up out of whole cloth that Mr. Girardi "bribed" SAIC Savage to investigate and prosecute Plaintiff.  Falsely accusing someone of committing a serious federal matter is no trifling matter.  Plaintiff hurls the charge to try to make out baseless legal claims.

#### 1.   The FAC Falsely Claims Mr. Girardi Paid Cash and that His Law Firm's Bank Records Do Not Show a Payment to Mr. or Mrs. Savage.

Plaintiff admits his FAC falsely alleges that Mr. Girardi paid Mr. Savage "in cash . . . in an unknown amount" (FAC, at 30:10-11).  (*See* Dkt. No. 123-1, at 2:8-21 [McLane Decl.]; Opp. to MTD FAC, at 7:22-8:3.)  The MTD FAC attached the $7,500 check Girardi Keese issued to Mr. Savage and his wife to resolve the Volkswagen case.  (MTD FAC, Exh. 1 [Dkt. No. 116, at ECF p. 33].)  The check proves that two more FAC allegations are also false:

▪   "[B]ank records for the trust account and general account for the Girardi Keese firm . . . do not reflect a $7,500 check to Rob Savage or his wife, Michelle Savage."  (FAC, at 30:5-8.)

▪   Mr. Girardi paid cash "to cover up the payment . . . and to cover up the Girardis [sic] quid pro quo arrangement with Savage."  (*Id.*, at 30:11-13.)

Plaintiff did not address those two false allegations.  (*See* McLane Decl., at 2:8-21.)  Plaintiff admits he "would amend the FAC" to reflect the fact that Mr. Girardi paid Mr. and Mrs. Savage $7,500 by check.  (Mot., at 8:1-3.)

Plaintiff's three allegations regarding the alleged cash payment are without factual foundation, factually frivolous, and a sham.  Plaintiff interposed them to try

to resuscitate his bribery claim after admitting in the complaint that Mr. Girardi "paid Mr. Savage $7,500 to compensate [him] for his damages in the Volkswagen suit." (Compl., at 6:3-4.)

> ## 2. Without the FAC's False Allegations, Plaintiff Concedes There Was No Bribe by Admitting Mr. Girardi Paid Mr. Savage for Settlement in the Volkswagen Case.

When the FAC is stripped of the above allegations, Plaintiff admits that his bribery accusation is untrue by conceding that Mr. Girardi provided Mr. Savage legal services while "represent[ing] [him] in a lawsuit against Volkswagen where Savage was a plaintiff" (FAC, at 6:5-6), that Mr. Savage received a $7,500 settlement offer through prior counsel before he engaged Mr. Girardi (*id.*, at 23:18-19), and that Mr. Girardi paid Mr. Savage "to compensate him for the damages Defendant Savage claimed in his personal lawsuit" (*id.*, at 59:20-23).

Plaintiff persists in pressing his bribery accusation without any factual basis. The December 13, 2016, *Volkswagen* hearing transcript—on which Plaintiff relies—confirms that Mr. Girardi represented he would pay Mr. and Mrs. Savage only after the Court:

- ▪ Informed Mr. Girardi "[t]here may be an OSC coming" for his failure to follow the Court's order to speak to the mediator (Anand Decl., Exh. 4, at 6:7-10);

- ▪ Expressed great concern about Mr. Girardi not complying with a second order (*id.*, at 8:22-25 ("[T]his whole sequence of events is extremely problematic and just a direction that is exceedingly troubling to me, and I won't stand for it"); *id.*, at 9:9-12 ("I take that idea of my orders being followed extremely seriously, and I'm having strong concern here that that hasn't happened, at least as far as your involvement in the case so far."); and

1   ▪   Stated it would "follow up as appropriate" and that it had "a really
2   uneasy feeling about the way that this has gone down in terms of respecting and
3   following [the Court's] orders, and [it] can't tolerate that." (*Id.*, at 10:6-9.)

4   Clearly understanding he might face an OSC re: sanctions or OSC re:
5   contempt, Mr. Girardi immediately said in response to the Court's last statement
6   that he would "withdraw our objection" to the settlement and "pay these people
7   what they have coming to them, and we'll withdraw the objection." (*Id.*, at 10:11-
8   12.) "That's because if the Court thinks [he] intentionally did something wrong or
9   tried to do anything inappropriate, that doesn't work with [him]." (*Id.*, at 10:13-
10  15.) Mr. Girardi even emphasized that he was "doing this because the Court has
11  indicated that [he had] done something inappropriate, and [he] really didn't." (*Id.*,
12  at 13:24-14:1.)

13  The transcript proves Mr. Girardi spontaneously and unilaterally promised to
14  pay Mr. and Mrs. Savage in the middle of a federal court hearing in response to the
15  Court expressing grave misgivings about Mr. Girardi's apparent failure to follow
16  multiple court orders. Mr. Girardi even agreed to dismiss the case without client
17  approval. (R. Savage Decl., ¶ 9; Declaration of Michelle Savage, dated Aug. 30,
18  2024 ("M. Savage Decl."), ¶ 2.)

19  Mr. Girardi then paid Mr. and Mrs. Savage $7,500 by check through his law
20  firm's operating account because they both were plaintiffs in the Volkswagen case
21  and they had received the same settlement offer through prior counsel. (FAC, at
22  23:18-19.) Plaintiff admits Mr. Girardi paid Mr. Savage "to compensate him for
23  the damages Defendant Savage claimed in his personal lawsuit." (FAC, at 59:20-
24  23.)

25  The Court is not "required to accept as true" any contrary FAC allegations
26  "that are merely conclusory, unwarranted deductions of fact, or unreasonable
27  inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

28

-11-

Mr. and Mrs. Savage affirm that they "received $7,500 from Mr. Girardi for settlement of the Volkswagen case and for no other reason." (R. Savage Decl., ¶ 10; M. Savage Decl., ¶ 3.)  Neither Mr. Savage nor Mrs. Savage knew before the December 13, 2016, Volkswagen hearing that Mr. Girardi would offer to pay them directly, or that Mr. Girardi would dismiss their case. (*Id.*)  Mr. Girardi's statements to the Court came as a surprise to both of them. (*Id.*)

### 3. The Bribery Accusation Is Legally Frivolous.

The fact that SAIC Savage did not take a single action in Plaintiff's criminal investigation or case proves conclusively that the $7,500 payment was for the Volkswagen settlement and not a bribe.

SAIC Savage "[m]erely arrang[ed] a meeting" between Ms. Girardi and Agents Henderson and Scarince, which "do[es] not qualify as the taking of a specific [official] action." *McDonnell v. United States*, 579 U.S. 550 (2016); Model Ninth Circuit Criminal Jury Instruction 10.1 (Official Act—Defined) (same; citing *McDonnell*).  The agents then investigated Ms. Girardi's complaint as permitted by law. *United States v. Trayer*, 898 F.2d 805, 808 (D.C. Cir. 1990) ("[O]f course, there is no constitutional right to be free of investigation."); *see also Aponte v. Calderon*, 284 F.3d 184, 193 (1st Cir. 2002) ("[I]nvestigations, alone, do not trigger due process rights."); *Spreadbury v. Bitterroot Pub. Libr.*, 862 F.Supp.2d 1054, 1057 (D. Mont. 2012).  Rather, "the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion." *Harrington v. Cty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010); *Littell v. United States*, 191 F.Supp.2d 1338, 1345 (M.D. Fla. 2002).

The Ninth Circuit has upheld a Rule 11 attorney's fees award for a plaintiff making "very serious charges of mail fraud and racketeering without foundation" in an amended pleading. *MGIC Indem. Corp.*, 803 F.2d at 505; *see also O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990) (ordering district court to impose Rule 11 sanction for "baseless" RICO claim; "need to impose a

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

sanction was enhanced" after plaintiff was "warned by defendants that they would
request a rule 11 sanction if he were to pursue the RICO claim"). "A complaint
filed in federal court is not a vehicle for airing rumor, suspicion, or mere hostility."
*MGIC Indem. Corp.*, 803 F.2d at 505. "Without connection made between its
allegations against [a defendant] and its own injury, [the plaintiff] was engaging in
scurrilous speculation." *Id.* These principles apply equally here.

B.     Contrary To Settled Law, Plaintiff Tries to Hold Mr. Savage
       Vicariously Liable for the Actions of Others Because He Has No
       Facts Showing SAIC Savage Personally and Intentionally Acted
       Unconstitutionally.

Plaintiff repeatedly lumps SAIC Savage together with other defendants
because he does not have any facts to plead against SAIC Savage.

But "*Bivens* is not designed to hold officers responsible for acts of their
subordinates." *Ziglar v. Abbasi*, 582 U.S. 120, 140-41 (2017). "Because vicarious
liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each
Government-official defendant, through the official's own individual actions, has
violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also
Wood v. Moss*, 572 U.S. 744, 763 (2014) ("[I]ndividual government officials
'cannot be held liable' in a *Bivens* suit 'unless they themselves acted
[unconstitutionally].'") (quoting *Iqbal*, 556 U.S. at 683; alteration in original).

This rule applies to "[t]he head of a department, or other superior
functionary." *Robertson v. Sichel*, 127 U.S. 507, 515 (1888). "A public officer or
agent is not responsible for the misfeasances or position wrongs, or for the
nonfeasances or negligences or omissions of duty, of the subagents or servants or
other persons properly employed by or under him, in the discharge of his official
duties." *Id.* at 515-16; *see also Iqbal*, 556 U.S. at 676 (same; quoting *Robertson*).
"Absent vicarious liability, each Government official, his or her title

-13-

1  notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at

2  677; *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (same).

3       Plaintiff cannot square his two *Bivens* claims with the above controlling

4  Supreme Court authorities, including one dating to 1888. Plaintiff does not have a

5  single fact showing Mr. Savage did anything in his investigation or prosecution or

6  that he even knew anything about Plaintiff's matter. (*See supra*, Section III.) That

7  alone bars his first *Bivens* claim. Plaintiff adds a second *Bivens* "supervisorial

8  liability" claim in flagrant disregard of the settled authorities discussed above.

9       C.    Plaintiff's Fourth Amendment Claim Is Specious.

10       Plaintiff contends that the search warrant affidavit was false but he again did

11 not attach it to his FAC and he does not make a single factual allegation that SAIC

12 Savage played any role in obtaining the warrant. Plaintiff claims only on

13 "information and belief" that SAIC Savage "endorsed and approved" the search

14 warrant application. (*Id.* at 31:3-4.) Plaintiff does not state any fact to support that

15 bald conclusion, which is insufficient to impose vicarious liability on SAIC

16 Savage. *E.g., Iqbal*, 556 U.S. at 676; *see also Ganek v. Leibowitz*, 874 F.3d 73, 92

17 (2d Cir. 2017) (holding that a plaintiff has "to plead facts showing each supervisor

18 defendant's personal involvement in the submission of an intentionally or

19 recklessly false statement to the magistrate judge" in a search warrant application).

20       Plaintiff repeatedly claims that the search warrant was issued without

21 probable cause but he does not attach the affidavit, which does not permit the court

22 to conclude the search warrant was obtained illegally. *United States v. Perkins*,

23 850 F.3d 1109, 1116 (9th Cir. 2017) (requiring showing that alleged

24 misrepresentation or omission would have caused the warrant to not issue, "*i.e.*,

25 [that the alleged misrepresentation or omission was] necessary to finding probable

26 cause"). Without making that showing, there can be no Fourth Amendment

27 violation on which to premise *Bivens* liability. *See Shwarz v. United States*, 234

28 F.3d 428, 435 (9th Cir. 2000) ("Because the issuing court's reliance on the

-14-

1  falsehoods in the [agent's supporting] declarations does not undermine its findings

2  of probable cause, the Orders for Entry were valid. Thus, the search and seizure

3  were constitutional, and Appellants' *Bivens* claim was rightly dismissed.").

4        Plaintiff again strategically omits from his FAC that he "admit[ted] [in a

5  recorded conversation] that he owe[d] [Ms. Girardi] . . . just over $100,000."

6  (Dkt. No. 32-1, at 1:22-26.)  Plaintiff's admission was highly relevant to the Secret

7  Service's investigation and it likely was a big reason Agent Henderson was able to

8  obtain a search warrant 26 days after Plaintiff made the inculpatory admission and

9  also likely one of the reasons Plaintiff was indicted.

10       The above authorities bar Plaintiff's Fourth Amendment claim, making it

11 legally frivolous.

12       D.    Plaintiff Fifth Amendment Claim Is Spurious.

13       Plaintiff's Fifth Amendment claim that SAIC Savage "suppressed and

14 concealed *Brady* information from the Assistant United States Attorney, the Grand

15 Jury, defense counsel and Chris Psaila during the criminal prosecution, without

16 which there was no probable cause to proceed with the charges" (FAC, at 59:1-4)

17 is also factually untrue and legally frivolous.

18             1.    There Was No *Brady* Evidence and in Any Event the

19                   Government Is Not Required To Present Exculpatory

20                   Information to the Grand Jury.

21       As established above, Plaintiff's bribery claim is untrue.  Plaintiff has only

22 pleaded a professional relationship between Messrs. Savage and Girardi.  That is

23 irrelevant because Mr. Savage was not a percipient witness in Plaintiff's matter, he

24 played no role in Plaintiff's investigation or prosecution, he would not have been a

25 witness at trial, and Plaintiff did not even have a trial.  Accordingly, there was no

26 *Brady* evidence and there was no *Brady* violation.  *Strickler v. Greene*, 527 U.S.

27 263, 281 (1999) (explaining *Brady* is violated when "there is a reasonable

28 probability that the suppressed evidence would have produced a different verdict");

1  *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004) (explaining "[t]he

2  test for materiality [for *Brady* violation] is whether the requested evidence might

3  affect the outcome of the trial"); *United States v. Santiago*, 46 F.3d 885, 894 (9th

4  Cir. 1995) ("Neither a general description of the information sought nor conclusory

5  allegations of materiality suffice.").

6        Plaintiff's false claims about Mr. Savage leaving the Secret Service

7  involuntarily (*see supra*, Section III.B) also was not *Brady* evidence.

8        Assuming solely for the sake of argument there was any *Brady* evidence, the

9  government is not required to present such evidence to a grand jury. *United States*

10  *v. Williams*, 504 U.S. 36, 51–53 (1992); *United States v. Al Mudarris*, 695 F.2d

11  1182, 1186 (9th Cir. 1995). There can be no *Brady* violation here. *Morgan v.*

12  *Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (explaining that where "all criminal

13  charges were dismissed prior to trial[,] . . . courts have held universally that the

14  right to a fair trial is not implicated and, therefore, no cause of action exists under

15  § 1983"); *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012) (rejecting

16  applicability of *Brady* to pretrial proceedings); *Flores v. Satz*, 137 F.3d 1275, 1278

17  (11th Cir. 1998).

18        2.    <u>The Government Independently Decided to Pursue Charges</u>.

19        The "[f]iling of a criminal [indictment] immunizes investigating officers . . .

20  from damages suffered thereafter because it is presumed that the prosecutor filing

21  the complaint exercised independent judgment in determining that probable cause

22  for an accused's arrest existed at that time." *Smiddy v. Varney*, 665 F.2d 261, 266

23  (9th Cir. 1981), *overruled in part on other grounds as recognized by Gonzalez v.*

24  *Cty. of Los Angeles*, No. 22-55386, 2023 WL 5951015, at *2 (9th Cir. Sept. 13,

25  2023) (unpublished) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)). An

26  "indictment regular on its face and returned by a legally constituted and unbiased

27  grand jury is presumed to be valid." *United States v. Buffington*, 815 F.2d 1292,

28  1304 (9th Cir. 1987). "[A] challenge to the reliability or competence of the

-16-

evidence presented to the grand jury will not be heard." *Williams*, 504 U.S. at 54. The government independently prepared the indictment and decided what charges to file. *Smiddy*, 665 F.2d at 266. SAIC Savage had nothing to do with Plaintiff's indictment or prosecution.

3.   *Henthorn* Only Applies To Testifying Witnesses and No Disclosures Were Due in Any Event.

*Henthorn* only applies to testifying witnesses, *Santiago*, 46 F.3d at 895, and Mr. Savage had nothing to say about Plaintiff's case. In any event, Plaintiff stipulated to receiving the government's "supplemental disclosure," which included *Henthorn* material, on October 22, 2021. (RJN, Exh. 3, at 2:12-14; *id.* Exh. 1, at 3:2-6.) The disclosure was due approximately one month after Plaintiff's case was dismissed on September 29, 2021. (FAC, at 64:10-11.) Accordingly, there also can be no *Henthorn* violation here.

The above authorities foreclose Plaintiff's Fifth Amendment claim, making it legally frivolous.

E.   The *Bivens* Malicious Prosecution Claim Is Baseless.

Plaintiff apparently presses a *Bivens* malicious prosecution claim under *Hartman v. Moore*, 547 U.S. 250 (2006). (FAC, at 9:8-9.) Assuming *arguendo* such a claim exists, which is highly unlikely, *Hartman* has nothing to do with this case and Plaintiff also does not comply with either that case's or other authorities' pleading requirements. *E.g., Hartman*, 547 U.S. at 263, 265 (holding that a *Bivens* plaintiff must "plead and prove" the absence of probable cause "both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity").

SAIC Savage did not cause Plaintiff to be charged criminally because he never spoke to the government about Plaintiff. *E.g., Smiddy*, 665 F.2d at 266 (explaining "a showing that the [prosecuting] attorney was pressured or caused by the investigating officers to act contrary to his independent judgment will rebut the

presumption" that "the prosecutor filing the [indictment] exercised independent judgment in determining that probable cause [existed for the charge]" and "remove the [officer's] immunity"); *Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989) ("The intervening acts of the prosecutor [and] grand jury . . . each break the chain of causation . . . ."); *Hartman*, 547 U.S. at 252 (stating agents "induc[ed]" criminal prosecution of defendants).

Plaintiff's inculpatory admission that he overcharged Ms. Girardi by "over $100,000" likely was a significant reason why he was indicted. Plaintiff claims he is innocent but he omitted his recorded admission from the FAC because, here again, it significantly undermines his claims. Because Plaintiff's inculpatory admission provides support for the indictment, he has not pleaded an absence of probable cause for that reason too. *Hartman*, 547 U.S. 265; *Smiddy*, 665 F.2d at 266.

F.    Mr. Savage Is Entitled To Qualified Immunity.

Plaintiff's claims are legally frivolous because even if this were a close case —respectfully, it is not—Mr. Savage is entitled to qualified immunity.

Qualified immunity protects government officials from personal liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "It is a heavy burden to prove a clearly established right for the purposes of qualified immunity." *Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM, 2024 WL 326598, at *3 (D. Or. Jan. 29, 2024) (citing cases). As long as there is a "legitimate question" about the constitutionality of particular conduct, "it cannot be said that [such conduct] violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985).

Qualified immunity "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Iqbal*, 556 U.S. at 672;

*id.* at 685 ("avoidance of disruptive discovery"). To determine "whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability . . . for an official charged with violations arising from his or her superintendent responsibilities." *Iqbal*, 556 U.S. at 677; *see also O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1989) ("A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*.").

Plaintiff's entire FAC is frivolous because he has no legally arguable Fourth or Fifth Amendment claim, no *Bivens* malicious prosecution claim (assuming one can even be pleaded), or a *Bivens* "supervisorial liability" claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact."); *Zaldivar*, 780 F.2d at 831; *Truesdell*, 293 F.3d at 1153 (explaining either "legally frivolous" or "factually misleading" complaints violate Rule 11).

Plaintiff thus fails to plead or establish the violation of any clearly established right. Assuming *arguendo* this were a close case factually, Mr. Savage is entitled to qualified immunity, *Mitchell*, 472 U.S. at 535 n.12, which independently bars both his claims.

G.    A *Bivens* Claim Does Not Exist.

Plaintiff adds a second *Bivens* claim to his FAC for "supervisorial liability." But "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Abbasi*, 582 U.S. at 140-41. A "*Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Id.* Both *Bivens* claims fail because this case arises in a new context and special factors preclude such a remedy.

1.    This Case Presents a New Context.

In assessing whether a context is "new," a court may consider only "the three cases in which the [Supreme] Court has implied a damages action."

1    *Pettibone v. Russell*, 59 F.4th 449, 455 (9th Cir. 2023) (quoting *Egbert v. Boule*,

2    142 S. Ct. 1793, 1803 (2022)).  The Supreme Court's "understanding of a new

3    context is broad." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (internal

4    citations omitted). "A claim may arise in a new context even if it is based on the

5    same constitutional provision as a claim in a case in which a damages remedy was

6    previously recognized." *Id.*  The "new-context inquiry is easily satisfied" and

7    "even a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1864, 1865.

8        "If there is even a single 'reason to pause before applying *Bivens* in a new

9    context,' a court may not recognize a *Bivens* remedy." *Pettibone*, 59 F.4th at 456

10   (quoting *Egbert*, 142 S. Ct. at 1803).  The Supreme Court "has consistently refused

11   to extend *Bivens* to any new context or new category of defendants, and "[i]ndeed,

12   the Court has refused to do so for the past [now almost 37] years." *Abbasi*, 137 S.

13   Ct. at 1857.

14       These authorities foreclose Plaintiff's arguments.  He seeks to extend *Bivens*

15   against the former SAIC of the Secret Service's Los Angeles field office even

16   though SAIC Savage played no role in his investigation or prosecution, the agents

17   who conducted the investigation applied for a search warrant, a magistrate judge

18   authorized the warrant, the government independently decided to seek charges, and

19   the grand jury independently decided to indict Plaintiff.

20       These factors alone make this case a new context. *Abbasi*, 137 S. Ct. at

21   1864, 1865; *see also Pettibone*, 59 F.4th at 455 ("The [Supreme] Court has

22   provided a non-exhaustive list of 'differences that are meaningful enough to make

23   a given context a new one,' including 'the rank of the officers involved; the

24   generality or specificity of the official action; the statutory or other legal mandate

25   under which the officer was operating; and the risk of disruptive intrusion by the

26   Judiciary into the functioning of other branches.'") (quoting *Abbasi*, 137 S. Ct. at

27   1859–60).

28

**ROBERT SAVAGE'S MOTION FOR SANCTIONS UNDER FED. RULE OF CIVIL PROCEDURE 11**

"This case differs from *Bivens*—the only Supreme Court case recognizing an implied damages remedy for Fourth Amendment violations—along all of [the four] dimensions [enumerated above]." *Pettibone*, 59 F.4th at 455; *see also Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023) (unpublished); *Purbeck v. Coffin*, No. 1:21-CV-00047-BLW, 2024 WL 342092, at *4 (D. Idaho Jan. 29, 2024).

Moreover, SAIC Savage's primary duty and responsibility was to oversee the nation's third largest office charged with protecting the President of the United States and other high-ranking government officials, not to write or execute search warrants. *Cf. Pettibone*, 59 F.4th at 455 (concluding different context existed because the Director of the Federal Protective Service's Northwest Region was "directing a multi-agency operation to protect federal property"); *cf. also Jones v. U.S. Secret Serv.*, No. CV 22-0962 (TSC), 2023 WL 8634586, at *3 (D.D.C. Nov. 10, 2023) (appeal filed).

2.     <u>Special Factors Preclude a *Bivens* Remedy in this Case</u>.

"If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Pettibone*, 59 F.4th at 456 (quoting *Egbert*, 142 S. Ct. at 1804). As in *Pettibone*, Plaintiff here "can report any alleged misconduct to the Inspector General of the Department of Homeland Security, who must either investigate or refer the matter to the Officer for Civil Rights and Civil Liberties." *Pettibone*, 59 F.4th at 456-57. Secret Service agents are part of the Department of Homeland Security. "Here, Congress has afforded [Plaintiff] an alternative remedy "that independently foreclose[s] a *Bivens* action." *Id.* (quoting *Egbert*, 142 S. Ct. at 1804); *see also, e.g., Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) ("Probing the causal chain in cases like these would involve delving into the evidence before numerous decisionmakers, including federal investigators,

prosecutors, and the grand jury."); *id.* at 500 (finding "the risk of burdening and interfering with the executive branch's investigative and prosecutorial functions . . . would invite a wide-ranging inquiry into the evidence available to investigators, prosecutors, and the grand jury").

In accord with the Supreme Court's instruction, *Pettibone* emphasizes that "'if there is *any* reason to think that Congress might be better equipped to create a damages remedy' . . ., [courts] must refrain from recognizing one]." *Pettibone*, 59 F.4th at 454 (quoting, *Egbert*, 142 S. Ct. at 1803; emphasis in *Pettibone*). As discussed above, "the 'risk of disruptive intrusion by the Judiciary into the functioning of other branches' counsels hesitation in this case." *Pettibone*, 59 F.4th at 456 (quoting *Abbasi*, 137 S. Ct. at 1860. There is especially no basis upon which to recognize a damages remedy here because Plaintiff has no factual or legal basis to sue Mr. Savage.

## V.    Sanctions Are Warranted.

The purpose of Rule 11 is to prompt attorneys "to validate the truth and legal reasonableness of the papers filed." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 547 (1991). Plaintiff's attorneys did not come close to meeting their obligations because Plaintiff has nary a fact to sue Mr. Savage and all his legal claims are foreclosed by controlling law. *E.g., Zaldivar*, 780 F.2d 831 ("The pleader, at a minimum, must have a 'good faith argument' for his or her view of what the law is, or should be."); *Moser v. Bret Harte Union High Sch. Dist.*, 366 F.Supp.2d 944, 979 (E.D. Cal. 2005) (Rule 11 violated where attorney "presents 'facts' and 'law' to the Court that are plainly wrong or misleading"); *Worrell v. Uniforms To You & Co.*, 673 F. Supp. 1461, 1464–65 (N.D. Cal. 1987) (Rule 11 violated where "the arguments presented by counsel were so legally unreasonable and lacking in factual support").

1    Sanctions are appropriate to deter frivolous filings like the FAC, especially

2    after Mr. Savage gave Plaintiff numerous chances to withdraw his pleading.

3    (Anand Decl., ¶¶ 4-10.)

4    **VI.    Conclusion.**

5    The Court should issue sanctions as requested herein.

6    Dated: August 30, 2024                    Respectfully submitted,

7                                             ANAND LAW GROUP, P.C.

8                                             By:  /s/ Harvinder S. Anand
9                                             HARVINDER S. ANAND

10                                            Attorneys for Defendant
                                              Lorenzo Robert Savage III

11

12    **Certificate of Compliance with Local Civil Rule 11-6.1**

13    I, Harvinder S. Anand, counsel of record for Defendant Lorenzo Robert

14   Savage III, sued herein as Robert Savage, certify that this brief contains 6,990

15   words, which complies with the word limit of L.R. 11-6.1.

16   Dated: August 30, 2024                    Respectfully submitted,

17                                             ANAND LAW GROUP, P.C.

18                                             By:  /s/ Harvinder S. Anand
19                                             HARVINDER S. ANAND

20                                             Attorneys for Defendant
                                               Lorenzo Robert Savage III

21

22

23

24

25

26

27

28

-23-