HARVINDER S. ANAND (SBN 243913)
ANAND LAW GROUP, P.C.
301 N. Lake Avenue, Suite 600
Pasadena, California 91101
Phone: (626) 239-7250
Fax: (626) 239-7150
Email: harv@anandlawgroup.com

Attorneys for Defendant
LORENZO ROBERT SAVAGE III

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PSAILA,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA GIRARDI aka ERIKA JAYNE, AMERICAN EXPRESS COMPANY, ROBERT SAVAGE, KENNETH HENDERSON, STEVE SCARINCE, PETER GRIMM, LAIA RIBATALLADA, MICHAEL MINDEN, UNITED STATES OF AMERICA, and DOES 1 TO 10, Inclusive,<br><br>Defendants. | Case No. 2:23-cv-07120-MWF (SKx)<br><br>Honorable Michael W. Fitzgerald<br><br>**DECLARATION OF HARVINDER S. ANAND IN SUPPORT OF MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>First Amended Complaint served: 6/10/2024<br><br>Hearing:<br>Date:  November 4, 2024<br>Time: 10:00 a.m.<br>Courtroom: 5A |

-1-

## DECLARATION OF HARVINDER S. ANAND

I, Harvinder S. Anand, declare as follows:

1.     I make this declaration based on my personal knowledge, except as to information stated upon information and belief, which I believe to be true. If called to testify as a witness, I could and would testify competently to the facts stated herein.

2.     I met and conferred with Dave McLane, lead counsel for Plaintiff, between June 26 and August 27, 2024, in an attempt to avoid filing a motion to dismiss Plaintiff's First Amended Complaint ("FAC"), and to avoid filing the Rule 11 motion.  I spoke to Mr. McLane on June 26, 2024, and I communicated with him via email between July 1 and August 27, 2024.  Attached hereto as **Exhibits 1 and 2** are true and correct printouts of our email communications.

3.     I told Mr. McLane on June 26, 2024, that I believed the FAC did not provide any basis for relief.  He disagreed.

4.     I sent Mr. McLane an email on July 1, 2024, asking Plaintiff to dismiss the complaint.  (Exh. 1.)

5.     Mr. McLane replied by email on July 3, 2024, that his client's position had not changed.  (Exh. 1.)

6.     After filing Mr. Savage's motion to dismiss, I sent Mr. McLane and Marily Bednarski an email on July 11, 2024, asking Plaintiff to reconsider his position.  I stated that Mr. Savage intends to pursue a Rule 11 motion if the FAC is not dismissed, but I sincerely did not want to have to file it.  (Exh. 1.)

7.     Mr. McLane responded by email on July 11, 2024, stating Plaintiff's case is meritorious.  (Exh. 1.)

8.     I replied to Mr. McLane twice on July 11, 2024.  In my first email I said that Mr. Savage respectfully disagrees that the FAC is meritorious.  (Exh. 1.)

**DECLARATION OF HARVINDER S. ANAND IN SUPPORT OF
MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**

9.      In my second email, I offered to provide copies of Mr. Savage's "LEOSA" (Law Enforcement Officers Safety Act Improvements Act) card and his Retired Secret Service badge.  I stated that the LEOSA card is issued to agents who retire in good standing, not to agents who are forced to resign.  I also stated: "The LEOSA card is an official government ID.  Please agree that if you get the copies, you will in good faith reevaluate the allegations in paragraph 43." I asked Mr. McLane to withdraw the allegations in paragraph 43 of the FAC. (Exh. 1.)  I did not receive a response.

10.     I sent Mr. McLane and Ms. Bednarski an email on August 27, 2024, again providing reasons why Mr. Savage believes the FAC should be dismissed, and in an effort to avoid filing a Rule 11 motion.  I did not receive a response.

11.     I will cause the Rule 11 motion and supporting filings served on Plaintiff on August 30, 2024, by delivering the documents to his attorney's office.

12.     Attached hereto as **Exhibit 3** is a true and correct copy of the transcript of the April 8, 2024, hearing before this Court, which was filed with Plaintiff's opposition to Mr. Savage's motion to dismiss the FAC.

13.     Attached hereto as **Exhibit 4** is a true and correct copy of the transcript of the December 13, 2016, hearing in the *Volkswagen* case, which was filed with Plaintiff's opposition to Mr. Savage's motion to dismiss the FAC.

14.     My billing rate for this matter is reduced to $300 per DOJ guidelines. My customary billing rate is substantially higher.  I have been practicing law for approximately twenty-five years.

15.     Mr. Savage seeks sanctions in the amount of $32,340 for legal fees associated with filing the motion to dismiss ($16,650 for 55.5 hours, including 50.5 hours expended thus far) and the Rule 11 motion ($15,690 for 52.3 hours, including 27.3 hours expended thus far).  The foregoing total hours include (a) estimated time to prepare for the hearing and the hearing on the motion to

-3-

1    dismiss; and (b) estimated time to prepare the reply in support of the Rule 11

2    motion and to prepare for the hearing and the hearing on the Rule 11 motion.

3    I have not included costs for the Rule 11 motion, which are unknown.

4         I declare under penalty of perjury under the laws of the United States of

5    America that the foregoing is true and correct.  Executed on August 30, 2024, at

6    La Canada, California.

7

8    _____

9    Harvinder S. Anand

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF HARVINDER S. ANAND IN SUPPORT OF
MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**

EXHIBIT 1

**Harvinder Anand**

| | |
|---|---|
| **From:** | Harvinder Anand |
| **Sent:** | Thursday, July 11, 2024 10:13 PM |
| **To:** | Dave McLane; Marilyn Bednarski; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos |
| **Subject:** | RE: Psaila -- FAC |

Dear Dave,

We appreciate your willingness to correct allegations in the FAC.  I am writing to provide proof that Rob voluntarily and honorably retired from the Secret Service.  Please withdraw the allegations in paragraph 43 of the FAC.

I can provide copies of Rob's "LEOSA" (Law Enforcement Officers Safety Act Improvements Act) card and his Retired Secret Service badge.  The LEOSA card permits Rob to carry a firearm as a retired agent.  The card and badge are only issued to agents who retire in good standing.  They are not issued to agents who are forced to resign.  The allegation that Rob improperly charged the Secret Service hotel expenses is simply untrue.

I will send you the above-described copies if you agree that you will not disseminate them to anyone and will only use them in this matter to verify the above representations.  The LEOSA card is an official government ID.  Please agree that if you get the copies, you will in good faith reevaluate the allegations in paragraph 43.

Please let me know if you would like the copies.

Thanks.

Harv


**Harvinder S. Anand | Anand Law Group, P.C.**
301 N. Lake Avenue, Suite 600 | Pasadena, CA 91101
Phone: (626) 239-7250 | Fax: (626) 239-7150
Email: Harv@AnandLawGroup.com |www.anandlawgroup.com

**CONFIDENTIALITY NOTICE:**  This email message is being sent by an attorney.  It is intended exclusively for the official and confidential use of the recipient(s) to whom it is addressed.  This communication contains information that may be confidential, privileged, attorney work-product, proprietary, and/or otherwise exempted from disclosure under applicable law.  If you are not a named addressee, you are not authorized to read, print, retain, copy, disclose, or disseminate any part of this message or any attachments.  Please notify us immediately by reply email that you have received this message in error and promptly delete all copies of the message, including any attachments.

**From:** Harvinder Anand
**Sent:** Thursday, July 11, 2024 3:55 PM
**To:** Dave McLane <DMcLane@mbllegal.com>; Marilyn Bednarski <MBednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos <MBolanos@mbllegal.com>
**Subject:** RE: Psaila -- FAC

Dave, I had not seen your declaration.  We appreciate the acknowledgements regarding certain facts.

I think we have to respectfully agree to disagree on the FAC being meritorious.

Harv

**Harvinder S. Anand | Anand Law Group, P.C.**
301 N. Lake Avenue, Suite 600 | Pasadena, CA 91101
Phone: (626) 239-7250 | Fax: (626) 239-7150
Email: Harv@AnandLawGroup.com |www.anandlawgroup.com

**CONFIDENTIALITY NOTICE:** This email message is being sent by an attorney.  It is intended exclusively for the official and confidential use of the recipient(s) to whom it is addressed.  This communication contains information that may be confidential, privileged, attorney work-product, proprietary, and/or otherwise exempted from disclosure under applicable law.  If you are not a named addressee, you are not authorized to read, print, retain, copy, disclose, or disseminate any part of this message or any attachments.  Please notify us immediately by reply email that you have received this message in error and promptly delete all copies of the message, including any attachments.

**From:** Dave McLane <DMcLane@mbllegal.com>
**Sent:** Thursday, July 11, 2024 2:50 PM
**To:** Harvinder Anand <harv@anandlawgroup.com>; Marilyn Bednarski <MBednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos <MBolanos@mbllegal.com>
**Cc:** Dave McLane <DMcLane@mbllegal.com>
**Subject:** RE: Psaila -- FAC

Dear Harvinder:  I have not had a chance to review your MTD, but we met and conferred prior to you filing it, and I told you we would oppose your motion to dismiss. You are putting the cart before the horse.  You do not have to do what your client instructs you to do on seeking sanctions.  You are the attorney and it is your decision on whether to seek sanctions.  Your warning has no impact on our position, and how we will litigate the case.  I believe our FAC is meritorious and made in good faith, and you will be unsuccessful in seeking sanctions.

In any event, it is premature before any ruling by the Court on your motion to dismiss. We will strenuously oppose any motion for sanctions, and I am confident the Court will rule against you on such a motion.  There is no need to meet and confer, as we already have discussed your MTD and met and conferred over the phone, you have sent me an email with the $7,500 check seeking that we dismiss the case, and I have responded to the information you provided in my declaration in my opposition to Scarince/Henderson and will include that information in my declaration in my opposition to your motion to dismiss since I thought it was important to address  the information you sent me.

We submit our case against Mr. Savage is meritorious.

Sincerely,

David S. McLane
McLane, Bednarski & Litt, LLP
975 East Green Street
Pasadena, California 91106
Tel:  626-844-7660
Fax:  626-844-7670
Email:  dmclane@mbllegal.com

# McLANE, BEDNARSKI + LiTT, LLP
## CRIMINAL DEFENSE AND CIVIL RIGHTS ATTORNEYS

### WARNING-PRIVILEGED LEGAL COMMUNICATION

This e-mail is confidential and privileged. It is intended only for the use of the named recipient(s). The information contained may be subject to an attorney-client privilege and/or attorney work product protection.  Any unauthorized use is strictly prohibited and no privilege or protection is waived. If there has been an error in sending this message, please advise us by reply e-mail or call us at (626) 844-7660 and delete any file containing this e-mail.

**From:** Harvinder Anand <harv@anandlawgroup.com>
**Sent:** Thursday, July 11, 2024 2:05 PM
**To:** Dave McLane <DMcLane@mbllegal.com>; Marilyn Bednarski <MBednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos <MBolanos@mbllegal.com>
**Subject:** RE: Psaila -- FAC

Hi Dave, if you have had a chance to review our filing, you have seen that Rob intends to have me pursue a Rule 11 motion.  I sincerely do not want to have to file it.

Please let me know if you would like to meet and confer any further regarding the viability of the claims against my client.  The MTD sets forth my analysis of why I think the two claims against him are not reasonably grounded in fact or law.  If I am missing something, please let me know.  I will consider and present any information you provide to Rob and see if he changes his position.  Otherwise, I am instructed to serve you with a Rule 11 motion.

Again, I really don't want to do it, so I am reaching out to you in good faith to see if we can avoid it.  If there's nothing for us to discuss, so be it.  If there is, I'm willing to listen.

I would appreciate you letting me know by tomorrow if you would like to discuss.

Thanks.

Harv

**Harvinder S. Anand | Anand Law Group, P.C.**
301 N. Lake Avenue, Suite 600 | Pasadena, CA 91101
Phone: (626) 239-7250 | Fax: (626) 239-7150
Email: Harv@AnandLawGroup.com |www.anandlawgroup.com

**CONFIDENTIALITY NOTICE:**  This email message is being sent by an attorney.  It is intended exclusively for the official and confidential use of the recipient(s) to whom it is addressed.  This communication contains information that may be confidential, privileged, attorney work-product, proprietary, and/or otherwise exempted from disclosure under applicable law.  If you are not a named addressee, you are not authorized to read, print, retain, copy, disclose, or disseminate any part of this message or any attachments.  Please notify us immediately by reply email that you have received this message in error and promptly delete all copies of the message, including any attachments.

**From:** Dave McLane <DMcLane@mbllegal.com>
**Sent:** Wednesday, July 3, 2024 5:06 PM
**To:** Harvinder Anand <harv@anandlawgroup.com>; Marilyn Bednarski <MBednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos <MBolanos@mbllegal.com>
**Cc:** Dave McLane <DMcLane@mbllegal.com>
**Subject:** RE: Psaila -- FAC

Hi Harv, in response to your email, our position has not changed. We will not stipulate to dismiss our action against Mr. Savage, and we will oppose your motion to dismiss. As you stated, we have fully met and conferred over the phone, and we appreciate your outreach to discuss the issue.

Best Regards,

David S. McLane
McLane, Bednarski & Litt, LLP
975 East Green Street
Pasadena, California 91106
Tel: 626-844-7660
Fax: 626-844-7670
Email: dmclane@mbllegal.com



### WARNING-PRIVILEGED LEGAL COMMUNICATION

This e-mail is confidential and privileged. It is intended only for the use of the named recipient(s). The information contained may be subject to an attorney-client privilege and/or attorney work product protection. Any unauthorized use is strictly prohibited and no privilege or protection is waived. If there has been an error in sending this message, please advise us by reply e-mail or call us at (626) 844-7660 and delete any file containing this e-mail.

**From:** Harvinder Anand <harv@anandlawgroup.com>
**Sent:** Monday, July 1, 2024 4:49 PM
**To:** Dave McLane <DMcLane@mbllegal.com>; Marilyn Bednarski <mbednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com
**Subject:** Psaila -- FAC

Dear Mr. McLane, Ms. Bednarski, Mr. Bealke, and Mr. Greenberg,

I hope you are doing well.

Further to my discussion with Mr. McLane last week, the First Amended Complaint (the "FAC") should be dismissed. We request that you voluntarily dismiss the FAC because further litigation should not be necessary to resolve this matter. If you do not voluntarily dismiss, Mr. Savage will file a motion to dismiss.

The FAC continues to falsely accuse Mr. Savage of accepting a bribe from Mr. Girardi. As set forth in Mr. Savage's motion to dismiss the complaint and reply, there was no bribe. The FAC includes apparently two main changes to the complaint's factual allegations in an attempt to make out the meritless bribery claim: (1) the $7,500 payment amount is changed to an unknown amount; and (2) Mr. Girardi is alleged to have made additional statements to the court on December 13, 2016, in the Volkswagen case. Neither change, however, alters the analysis.

On June 26, 2024, I emailed you a copy of the check and deposit slip showing that the payment amount from Mr. Girardi indeed was $7,500, a copy of which is attached. As you know, the $7,500 payment was the same amount as the settlement reached in the Volkswagen case before Mr. Girardi's involvement. Accordingly, Mr. Girardi's payment was for the Volkswagen settlement and not a bribe. Mr. Girardi's additional December 13, 2016, statements to the court only confirm that fact. Please also see the motion to dismiss and reply.

The FAC's claim that Mr. Girardi bribed Mr. Savage is simply untrue. Plaintiff cannot continue accusing Mr. Savage of committing a serious federal crime with zero factual basis. The FAC should be dismissed for this reason alone.

The remaining allegations in the FAC are similarly devoid of factual support. Mr. Savage did not tell the agents to take any action other than to investigate Ms. Girardi's allegations. As the Court explained during the April 8, 2024, hearing, "as to the special agent in charge, he just didn't do enough. And the idea that he authorized things . . . sort of was the proximate cause of all of this was -- is just rank speculation, I thought that there was a lot of merit [to Mr. Savage's arguments]." (4/8/24 Tr., at 6:1-4.)

The FAC does not include any new factual allegation regarding Mr. Savage's involvement in this matter, nor could it. As Mr. Savage has stated many times, he played no role in the investigation or prosecution of Mr. Psaila after asking Agents Henderson and Scarince to investigate. As I explained during the April 8, 2024, hearing, the allegation that former SAIC Savage directly supervised Agent Scarince is untrue. Agent Scarince's title was Assistant to the Special Agent in Charge and he reported to David Murray, Assistant Special Agent in Charge ("ASAIC") for Investigations. ASAIC Murray reported to Deputy Special Agent in Charge Jesse Baker, who was second in command of the Secret Service Los Angeles Field Office.

Please note that the allegation in FAC paragraph 57 is incorrect. Please check with AMEX's counsel to confirm.

The allegations in FAC paragraph 43 are likewise completely false. Mr. Savage honorably and voluntarily retired from the Secret Service to pursue a desirable position in a private organization.

The FAC is also devoid of any legal basis to sue Mr. Savage. There was no Fifth Amendment or Fourth Amendment violation for the reasons set forth in the motion to dismiss and reply brief. The claims are not plausible because Plaintiff has no factual basis to sue Mr. Savage. There is no *Bivens* claim. Even if this were a close case factually— it is not— Mr. Savage is entitled to qualified immunity. As set forth in the motion and reply, the FAC is contrary to numerous controlling legal authorities.

The Court stated in its dismissal order that it was "dubious that any amendment will not be futile." (Order, at 13.) The FAC does not allege any fact to warrant Plaintiff continuing to pursue this matter against Mr. Savage.

The FAC adds a *Bivens* "supervisorial liability" claim. But the United States Supreme Court has expressly ruled that "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar v. Abbasi*, 582 U.S. 120, 140–41 (2017). A "*Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Id.* Please see Mr. Savage's motion to dismiss and reply brief for additional legal authorities supporting that settled legal principle.

Assuming *arguendo Bivens* vicarious liability could be imposed in some case, there is no factual support for such a claim here because, as the Court made clear, "the idea that [Mr. Savage] authorized things . . . sort of was the proximate cause of all of this was -- is just rank speculation." (4/8/24 Tr., at 6:2-4.)

We strongly urge you to dismiss the FAC because we believe further litigation will prove that the FAC is both factually and legally meritless, just like the complaint. Respectfully, the FAC is actually frivolous. We emphasize that we do not want to engage in needless litigation.

Please let me know by July 5, 2024, whether you will dismiss the FAC. I believe that my telephone conference with Mr. McLane last week constitutes compliance with Local Rule 7-3, but I'm available to further discuss the issues set forth above or anything else you would like to discuss. Please let me know if you would like to set up a call. I'm fairly flexible over the next couple of days and Friday.

Harv

**Harvinder S. Anand | Anand Law Group, P.C.**
301 N. Lake Avenue, Suite 600 | Pasadena, CA 91101
Phone: (626) 239-7250 | Fax: (626) 239-7150
Email: Harv@AnandLawGroup.com |www.anandlawgroup.com

**CONFIDENTIALITY NOTICE**:  **This email message is being sent by an attorney.  It is intended exclusively for the official and confidential use of the recipient(s) to whom it is addressed.  This communication contains information that may be confidential, privileged, attorney work-product, proprietary, and/or otherwise exempted from disclosure under applicable law.  If you are not a named addressee, you are not authorized to read, print, retain, copy, disclose, or disseminate any part of this message or any attachments.  Please notify us immediately by reply email that you have received this message in error and promptly delete all copies of the message, including any attachments.**

# EXHIBIT 2

**Harvinder Anand**

| | |
|---|---|
| **From:** | Harvinder Anand |
| **Sent:** | Tuesday, August 27, 2024 12:48 PM |
| **To:** | 'Dave McLane'; 'Marilyn Bednarski'; 'bealkelaw@protonmail.com'; 'Stanmanlaw@aol.com' |
| **Subject:** | RE: Psaila -- FAC |

Dear Mr. McLane, Ms. Bednarski, Mr. Bealke, and Mr. Greenberg,

I hope you are doing well. We filed Rob's reply brief in support of his motion to dismiss yesterday afternoon. We renew our request for Plaintiff to voluntary dismiss the FAC.

The motion and reply establish that the bribery allegation is untrue. Mr. Girardi's statements at the December 13, 2016, hearing make clear that he spontaneously and unilaterally decided to dismiss Mr. and Mrs. Savage's case and pay them for settlement in the Volkswagen case. Among other things, Mr. Girardi emphasized to the Court that he was "doing this because the Court has indicated that [he had] done something inappropriate, and [he] really didn't." (Transcript, at 13:24-14:1.) There is no plausible basis to claim the $7,500 payment was a bribe.

The Ninth Circuit has upheld a Rule 11 attorney's fees award for a plaintiff filing an amended complaint when it "made very serious charges of mail fraud and racketeering without foundation." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986). "A complaint filed in federal court is not a vehicle for airing rumor, suspicion, or mere hostility. Without connection made between its allegations against [a defendant] and its own injury, [the plaintiff] was engaging in scurrilous speculation." *Id.*

All that remains in the FAC is a single factual allegation about what Rob did in Plaintiff's entire investigation and prosecution. That action was permitted by law. And as set forth in the reply, the FAC still includes untrue allegations. There is no plausible basis to impose any liability on Rob in this matter.

As stated in my July, 11, 2024, email, I really do not want to proceed with a Rule 11 motion. We respectfully request that you reconsider your position and let me know by tomorrow whether you will agree to voluntarily dismiss the FAC.

Please let me know if you would like to discuss anything.

Thanks.

Harv

**Harvinder S. Anand | Anand Law Group, P.C.**
301 N. Lake Avenue, Suite 600 | Pasadena, CA 91101
Phone: (626) 239-7250 | Fax: (626) 239-7150
Email: Harv@AnandLawGroup.com |www.anandlawgroup.com

**CONFIDENTIALITY NOTICE:** This email message is being sent by an attorney. It is intended exclusively for the official and confidential use of the recipient(s) to whom it is addressed. This communication contains information that may be confidential, privileged, attorney work-product, proprietary, and/or otherwise exempted from disclosure under applicable law. If you are not a named addressee, you are not authorized to read, print, retain, copy, disclose, or disseminate any part of this message or any attachments. Please notify us immediately by reply email that you have received this message in error and promptly delete all copies of the message, including any attachments.

**From:** Dave McLane <DMcLane@mbllegal.com>
**Sent:** Thursday, July 11, 2024 2:50 PM
**To:** Harvinder Anand <harv@anandlawgroup.com>; Marilyn Bednarski <MBednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos <MBolanos@mbllegal.com>
**Cc:** Dave McLane <DMcLane@mbllegal.com>
**Subject:** RE: Psaila -- FAC

Dear Harvinder:  I have not had a chance to review your MTD, but we met and conferred prior to you filing it, and I told you we would oppose your motion to dismiss. You are putting the cart before the horse.  You do not have to do what your client instructs you to do on seeking sanctions.  You are the attorney and it is your decision on whether to seek sanctions.  Your warning has no impact on our position, and how we will litigate the case.  I believe our FAC is meritorious and made in good faith, and you will be unsuccessful in seeking sanctions.

In any event, it is premature before any ruling by the Court on your motion  to dismiss.  We will strenuously oppose any motion for sanctions, and I am confident the Court will rule against you on such a motion.   There is no need to meet and confer, as we already have discussed your MTD and met and conferred over the phone, you have sent me an email with the $7,500 check seeking that we dismiss the case, and I have responded to the information you provided in my declaration in my opposition to Scarince/Henderson and will include that information in my declaration in my opposition to your motion to dismiss since I thought it was important to address  the information you sent me.

We submit our case against Mr. Savage is meritorious.

Sincerely,

David S. McLane
McLane, Bednarski & Litt, LLP
975 East Green Street
Pasadena, California 91106
Tel:  626-844-7660
Fax:  626-844-7670
Email:  dmclane@mbllegal.com



<u>**WARNING-PRIVILEGED LEGAL COMMUNICATION**</u>
This e-mail is confidential and privileged. It is intended only for the use of the named recipient(s). The information contained may be subject to an attorney-client privilege and/or attorney work product protection.  Any unauthorized use is strictly prohibited and no privilege or protection is waived. If there has been an error in sending this message, please advise us by reply e-mail or call us at (626) 844-7660 and delete any file containing this e-mail.

**From:** Harvinder Anand <harv@anandlawgroup.com>
**Sent:** Thursday, July 11, 2024 2:05 PM
**To:** Dave McLane <DMcLane@mbllegal.com>; Marilyn Bednarski <MBednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos <MBolanos@mbllegal.com>
**Subject:** RE: Psaila -- FAC

Hi Dave, if you have had a chance to review our filing, you have seen that Rob intends to have me pursue a Rule 11 motion.  I sincerely do not want to have to file it.

Please let me know if you would like to meet and confer any further regarding the viability of the claims against my client. The MTD sets forth my analysis of why I think the two claims against him are not reasonably grounded in fact or law. If I am missing something, please let me know. I will consider and present any information you provide to Rob and see if he changes his position. Otherwise, I am instructed to serve you with a Rule 11 motion.

Again, I really don't want to do it, so I am reaching out to you in good faith to see if we can avoid it. If there's nothing for us to discuss, so be it. If there is, I'm willing to listen.

I would appreciate you letting me know by tomorrow if you would like to discuss.

Thanks.

Harv

**Harvinder S. Anand | Anand Law Group, P.C.**
301 N. Lake Avenue, Suite 600 | Pasadena, CA 91101
Phone: (626) 239-7250 | Fax: (626) 239-7150
Email: Harv@AnandLawGroup.com |www.anandlawgroup.com

**CONFIDENTIALITY NOTICE:** This email message is being sent by an attorney. It is intended exclusively for the official and confidential use of the recipient(s) to whom it is addressed. This communication contains information that may be confidential, privileged, attorney work-product, proprietary, and/or otherwise exempted from disclosure under applicable law. If you are not a named addressee, you are not authorized to read, print, retain, copy, disclose, or disseminate any part of this message or any attachments. Please notify us immediately by reply email that you have received this message in error and promptly delete all copies of the message, including any attachments.

---

**From:** Dave McLane <DMcLane@mbllegal.com>
**Sent:** Wednesday, July 3, 2024 5:06 PM
**To:** Harvinder Anand <harv@anandlawgroup.com>; Marilyn Bednarski <MBednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com; Marie Bolanos <MBolanos@mbllegal.com>
**Cc:** Dave McLane <DMcLane@mbllegal.com>
**Subject:** RE: Psaila -- FAC

Hi Harv, in response to your email, our position has not changed. We will not stipulate to dismiss our action against Mr. Savage, and we will oppose your motion to dismiss. As you stated, we have fully met and conferred over the phone, and we appreciate your outreach to discuss the issue.

Best Regards,

David S. McLane
McLane, Bednarski & Litt, LLP
975 East Green Street
Pasadena, California 91106
Tel: 626-844-7660
Fax: 626-844-7670
Email: dmclane@mbllegal.com



**WARNING-PRIVILEGED LEGAL COMMUNICATION**

This e-mail is confidential and privileged. It is intended only for the use of the named recipient(s). The information contained may be subject to an attorney-client privilege and/or attorney work product protection.  Any unauthorized use is strictly prohibited and no privilege or protection is waived. If there has been an error in sending this message, please advise us by reply e-mail or call us at (626) 844-7660 and delete any file containing this e-mail.

**From:** Harvinder Anand <harv@anandlawgroup.com>
**Sent:** Monday, July 1, 2024 4:49 PM
**To:** Dave McLane <DMcLane@mbllegal.com>; Marilyn Bednarski <mbednarski@mbllegal.com>; bealkelaw@protonmail.com; Stanmanlaw@aol.com
**Subject:** Psaila -- FAC

Dear Mr. McLane, Ms. Bednarski, Mr. Bealke, and Mr. Greenberg,

I hope you are doing well.

Further to my discussion with Mr. McLane last week, the First Amended Complaint (the "FAC") should be dismissed.  We request that you voluntarily dismiss the FAC because further litigation should not be necessary to resolve this matter.  If you do not voluntarily dismiss, Mr. Savage will file a motion to dismiss.

The FAC continues to falsely accuse Mr. Savage of accepting a bribe from Mr. Girardi.  As set forth in Mr. Savage's motion to dismiss the complaint and reply, there was no bribe.  The FAC includes apparently two main changes to the complaint's factual allegations in an attempt to make out the meritless bribery claim: (1) the $7,500 payment amount is changed to an unknown amount; and (2) Mr. Girardi is alleged to have made additional statements to the court on December 13, 2016, in the Volkswagen case.  Neither change, however, alters the analysis.

On June 26, 2024, I emailed you a copy of the check and deposit slip showing that the payment amount from Mr. Girardi indeed was $7,500, a copy of which is attached.  As you know, the $7,500 payment was the same amount as the settlement reached in the Volkswagen case before Mr. Girardi's involvement.  Accordingly, Mr. Girardi's payment was for the Volkswagen settlement and not a bribe.  Mr. Girardi's additional December 13, 2016, statements to the court only confirm that fact.  Please also see the motion to dismiss and reply.

The FAC's claim that Mr. Girardi bribed Mr. Savage is simply untrue.  Plaintiff cannot continue accusing Mr. Savage of committing a serious federal crime with zero factual basis.  The FAC should be dismissed for this reason alone.

The remaining allegations in the FAC are similarly devoid of factual support.  Mr. Savage did not tell the agents to take any action other than to investigate Ms. Girardi's allegations.  As the Court explained during the April 8, 2024, hearing, "as to the special agent in charge, he just didn't do enough. And the idea that he authorized things . . . sort of was the proximate cause of all of this was -- is just rank speculation, I thought that there was a lot of merit [to Mr. Savage's arguments]."  (4/8/24 Tr., at 6:1-4.)

The FAC does not include any new factual allegation regarding Mr. Savage's involvement in this matter, nor could it.  As Mr. Savage has stated many times, he played no role in the investigation or prosecution of Mr. Psaila after asking Agents Henderson and Scarince to investigate.  As I explained during the April 8, 2024, hearing, the allegation that former SAIC Savage directly supervised Agent Scarince is untrue.  Agent Scarince's title was Assistant to the Special Agent in Charge and he reported to David Murray, Assistant Special Agent in Charge ("ASAIC") for Investigations.  ASAIC Murray reported to Deputy Special Agent in Charge Jesse Baker, who was second in command of the Secret Service Los Angeles Field Office.

Please note that the allegation in FAC paragraph 57 is incorrect.  Please check with AMEX's counsel to confirm.

The allegations in FAC paragraph 43 are likewise completely false. Mr. Savage honorably and voluntarily retired from the Secret Service to pursue a desirable position in a private organization.

The FAC is also devoid of any legal basis to sue Mr. Savage. There was no Fifth Amendment or Fourth Amendment violation for the reasons set forth in the motion to dismiss and reply brief. The claims are not plausible because Plaintiff has no factual basis to sue Mr. Savage. There is no *Bivens* claim. Even if this were a close case factually— it is not— Mr. Savage is entitled to qualified immunity. As set forth in the motion and reply, the FAC is contrary to numerous controlling legal authorities.

The Court stated in its dismissal order that it was "dubious that any amendment will not be futile." (Order, at 13.) The FAC does not allege any fact to warrant Plaintiff continuing to pursue this matter against Mr. Savage.

The FAC adds a *Bivens* "supervisorial liability" claim. But the United States Supreme Court has expressly ruled that "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar v. Abbasi*, 582 U.S. 120, 140–41 (2017). A "*Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Id.* Please see Mr. Savage's motion to dismiss and reply brief for additional legal authorities supporting that settled legal principle.

Assuming *arguendo Bivens* vicarious liability could be imposed in some case, there is no factual support for such a claim here because, as the Court made clear, "the idea that [Mr. Savage] authorized things . . . sort of was the proximate cause of all of this was -- is just rank speculation." (4/8/24 Tr., at 6:2-4.)

We strongly urge you to dismiss the FAC because we believe further litigation will prove that the FAC is both factually and legally meritless, just like the complaint. Respectfully, the FAC is actually frivolous. We emphasize that we do not want to engage in needless litigation.

Please let me know by July 5, 2024, whether you will dismiss the FAC. I believe that my telephone conference with Mr. McLane last week constitutes compliance with Local Rule 7-3, but I'm available to further discuss the issues set forth above or anything else you would like to discuss. Please let me know if you would like to set up a call. I'm fairly flexible over the next couple of days and Friday.

Harv

**Harvinder S. Anand | Anand Law Group, P.C.**
301 N. Lake Avenue, Suite 600 | Pasadena, CA 91101
Phone: (626) 239-7250 | Fax: (626) 239-7150
Email: Harv@AnandLawGroup.com |www.anandlawgroup.com

**CONFIDENTIALITY NOTICE:** This email message is being sent by an attorney. It is intended exclusively for the official and confidential use of the recipient(s) to whom it is addressed. This communication contains information that may be confidential, privileged, attorney work-product, proprietary, and/or otherwise exempted from disclosure under applicable law. If you are not a named addressee, you are not authorized to read, print, retain, copy, disclose, or disseminate any part of this message or any attachments. Please notify us immediately by reply email that you have received this message in error and promptly delete all copies of the message, including any attachments.

# EXHIBIT 3

109:01:49                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

4

5

CHRISTOPHER PSAILA,              )
6                                )
              Plaintiff,         )
7                                )
                   vs.           )
8                                )   2:23-CV-7120-MWF
ERIKA GIRARDI, et al.,           )
9                                )
              Defendants.        )
10  _____ )
                                 )
11                               )
                                 )
12

13

14

15              REPORTER'S TRANSCRIPT OF HEARING

16                 Los Angeles, California

17                 Monday, April 8, 2024

18

19

20

21        _____

22              AMY DIAZ, RPR, CRR, FCRR
                Federal Official Reporter
23            350 West 1st Street, #4455
                Los Angeles, CA 90012
24

25
       *Please order court transcripts here:  www.amydiazfedreporter.com*

```
1        APPEARANCES OF COUNSEL:

2

         For the Plaintiff:
3

4                    MCLANE BEDNARSKI & LITT LLP
                     By:  Marilyn Bednarski, Attorney at Law
5                         David McLane, Attorney at Law
                     975 East Green Street
6                    Pasadena, California 91106

7                    STANLEY I GREENBERG, A LAW CORPORATION
                     By:  Stanley Greenberg, Attorney at Law
8                    11845 West Olympic Boulevard, Suite 1000
                     Los Angeles, California 90064
9
                     BEALKE LAW
10                   By:  Bruce Bealke, Attorney at Law
                     77 West Wacker Drive, Suite 45001
11                   Chicago, Illinois 60601

12

13       For the Defendants:

14                   ORRICK HERRINGTON & SUTCLIFFE LLP
                     By:  Ben Au, Attorney at Law
15                   631 Wilshire Boulevard, Suite 2C
                     Santa Monica, California 90401
16
                     ANAND LAW GROUP P.C.
17                   By:  Harvinder Anand, Attorney at Law
                     301 North Lake Avenue, Suite 600
18                   Pasadena, California 91101

19                   Deann Rivard, Attorney at Law

20

21

22

23

24

25
```

|     |          |                                                              |
| --- | -------- | ------------------------------------------------------------ |
| 1   | 09:09:06 | THE CLERK:  Calling item one, CV-23-7120 Christopher        |
| 2   | 09:09:13 | Psaila vs Erika Girardi, et al.                             |
| 3   | 09:09:17 | Counsel, please state your appearances for the             |
| 4   | 09:09:19 | record.                                                     |
| 5   | 09:09:20 | THE COURT:  Please call the calendar.                       |
| 6   | 09:09:27 | THE CLERK:  I'm sorry, Your Honor, can you hear me?         |
| 7   | 09:09:37 | THE COURT:  Ms. Diaz, can you hear us?                      |
| 8   | 09:09:51 | MR. MCCLANE:  Your Honor, this is David McLane here        |
| 9   | 09:09:53 | for the plaintiff, if the Court can hear us.               |
| 10  | 09:09:55 | THE COURT:  I want to make sure that the clerk and          |
| 11  | 09:09:58 | the court reporter can hear us.  Yes, I can hear you,        |
| 12  | 09:10:03 | Mr. McLane.                                                 |
| 13  | 09:10:04 | Again, would the clerk and court reporter please            |
| 14  | 09:10:07 | indicate whether you can hear us?                          |
| 15  | 09:10:10 | THE CLERK:  Are you able to hear me now?                    |
| 16  | 09:10:29 | THE COURT:  Just a moment, counsel.                         |
| 17  | 09:11:08 | Counsel, I just spoke to the deputy clerk by phone,        |
| 18  | 09:11:15 | and he and Ms. Diaz can hear us, but for some reason we are |
| 19  | 09:11:21 | not hearing them.                                          |
| 20  | 09:11:23 | So let me go ahead, then, and just call the calendar        |
| 21  | 09:11:27 | myself.  Calling item one, Christopher Psaila vs. Erika     |
| 22  | 09:11:34 | Girardi, et al., CV 23-7120-MWF.                           |
| 23  | 09:11:39 | Counsel for the plaintiff, please make your                |
| 24  | 09:11:43 | appearance.                                                 |
| 25  | 09:11:45 | MR. MCCLANE:  Good morning, Your Honor.  Dave               |

| | |
|---|---|
| 09:11:47 | McLane, along with Marilyn Bednarski, Stan Greenberg and |
| 09:11:51 | Bruce Bealke.  We are all present in the attorney lounge on |
| 09:11:56 | the second floor appearing on behalf of Mr. Psaila, who is |
| 09:12:00 | also located in the courtroom. |
| 09:12:03 | I would just note for the record, Your Honor, I |
| 09:12:05 | apologize, when the Court issued, it said it was a Zoom |
| 09:12:10 | hearing, I thought the attorneys could still appear in |
| 09:12:13 | person, so I showed up to the courthouse.  So that is why I'm |
| 09:12:15 | here, but I'm on Zoom. |
| 09:12:19 | THE COURT:  That is fine, Mr. McLane. |
| 09:12:21 | Occasionally, if, say, one person is in San Luis |
| 09:12:25 | Obispo, or something, I'll allow that -- I'll allow that |
| 09:12:31 | person to appear by phone.  Generally, this has been my |
| 09:12:34 | practice starting with the pandemic, that if it's Zoom, it's |
| 09:12:40 | Zoom for everybody.  If it's in the courtroom, then it's |
| 09:12:43 | courtroom for everybody, unless one person might be by |
| 09:12:45 | telephone, because it just -- it's awkward for the staff to |
| 09:12:50 | try to set it up where some people are on Zoom and some |
| 09:12:54 | people are not.  And I also just think that it's somewhat |
| 09:12:57 | unfair.  If there is a good reason to let counsel appear by |
| 09:13:01 | Zoom, then I do that for everyone. |
| 09:13:03 | And as you can imagine, if counsel are in New York |
| 09:13:06 | or Washington, then if they learn that Los Angeles counsel |
| 09:13:09 | want to appear in the courtroom, then they feel pressured to |
| 09:13:12 | fly out here.  And the whole purpose of having things by Zoom |

1  09:13:15   is to avoid that.  So you are here, that is fine.

2  09:13:19         Let me -- would counsel for the defendants please

3  09:13:23   make their appearances.

4  09:13:26         MS. RIVARD:  Good morning, Your Honor.  Deann Rivard

5  09:13:29   appearing on behalf of Defendants Kenneth Henderson and Steve

6  09:13:34   Scarince.

7  09:13:37         MR. ANAND:  Good morning, Your Honor.  Harvinder

8  09:13:39   Anand for Defendant Robert Savage.

9  09:13:46         MR. AU:  Good morning, Your Honor.  Benjamin Au for

10 09:13:49   Defendant American Express and Defendant Peter Grimm.

11 09:13:53         THE COURT:  Anyone especially on the defense side?

12 09:13:58         Counsel, you received my tentative.  In addition to

13 09:14:01   the issues which were addressed there, which is whether this

14 09:14:10   amounts to an extension of *Bivens*, there is some other -- I

15 09:14:19   tried to present it in as straightforward and simple as way

16 09:14:23   as possible, but from your briefs, there is some other issues

17 09:14:26   that I'm also interested in, because it just -- I wasn't

18 09:14:30   clear necessarily what the arguments of the parties are.

19 09:14:36         One is, the first is what the plaintiff's response

20 09:14:44   would be to the arguments that are set forth, especially in

21 09:14:50   the reply, not solely in the reply, I'm not suggesting it was

22 09:14:53   an improper sandbagging, but put very forcefully in the

23 09:15:00   reply, that ultimately there is just not enough here under

24 09:15:04   *Twombly* and *Iqbal*, because each -- essentially as to each set

25 09:15:09   of these, the Secret Service defendants, it kind of falls

109:15:14    short as to the special agent in charge, he just didn't do

209:15:19    enough.  And the idea that he authorized things, you know,

309:15:23    sort of was the proximate cause of all of this was -- is just

409:15:29    rank speculation, I thought that there was a lot of merit.

509:15:32         And then also, that for the more subordinate

609:15:38    officers, that they weren't the ones who supposedly had this

709:15:43    illicit relationship with Mr. Girardi; that they wouldn't

809:15:47    have been -- there is just no reasonable inference that they

909:15:50    would have had any idea of what was going on here, other than

1009:15:53   their boss told them to investigate something, and there was

1109:15:56   plenty, appeared to be, evidence in support of that, and

1209:15:59   obviously, it was enough for the U.S. Attorney's Office and

1309:16:02   the grand jury.

1409:16:03         So I -- I understand the frustration of the

1509:16:09   plaintiff in the sense that it seems that what, from his

1609:16:13   point of view, are these bad actors kind of falling between

1709:16:16   two stools, but that does seem where the allegations get us.

1809:16:20         The other one is that in addition to the

1909:16:25   administrative remedies, which the government -- you know, I

2009:16:29   understand the plaintiff saying, look, I don't really like

2109:16:32   these, these don't do me a whole lot of good, as that may be,

2209:16:35   if the Supreme Court and the Ninth Circuit disagree, then

2309:16:38   that is that.

2409:16:38         But had I -- if somebody had just presented this

2509:16:44   scenario to me independent of these facts, just saying, the

**Ex. 15-6**

109:16:49    special agent in charge was bribed to have this unfounded

209:16:54    allegation, I would have thought the remedies were, one, just

309:16:59    a criminal thing, obviously.  But beyond that, from a civil

409:17:03    point of view, that it would be something that would fall

509:17:06    within the Federal Tort Claims Act.

609:17:09         And I'm not sure, having read your briefs, what the

709:17:14    point of the parties is in that regard.  In regard to the

809:17:18    plaintiff, I'm -- it seems to me that there is an

909:17:22    acknowledgement that exists, or perhaps this claim was made,

1009:17:25   but why the facts -- the fact of not having punitive damages,

1109:17:30   of not having a jury trial could possibly be seen as enough

1209:17:35   would, in light of recent Supreme Court and Ninth Circuit

1309:17:39   cases, is, I think, a problem except for the *Carlson* case,

1409:17:47   the Bureau of Prisons case; in which case I don't think that

1509:17:52   the defendants really dealt with that specific issue.

1609:17:56        You know, even in the replies, there is -- they are

1709:18:00   saying, look, you know, in addition to all of these

1809:18:04   administrative remedies, you also have the Federal Tort

1909:18:07   Claims Act, which, however, there doesn't seem to really be a

2009:18:12   recognition, albeit back in 1980, you know, that there was --

2109:18:18   the Supreme Court did look on this case, albeit for the

2209:18:22   Bureau of Prisons.

2309:18:22        So those are some additional issues that occurred to

2409:18:26   me, in addition to what I just put forth in the written

2509:18:31   tentative.

09:18:32 1       So since the -- my tentative view was to grant the

09:18:37 2   motions, let me hear first from counsel for the plaintiff,

09:18:42 3   and as well, what -- what is the -- what would the argument

09:18:49 4   be that the motions should be granted with leave to amend?

09:18:56 5       MR. MCCLANE:  Your Honor, I'll answer addressing

09:19:01 6   it -- does the Court want me to address either the *Bivens* and

09:19:05 7   the alternative remedies, or the sufficiency of the

09:19:09 8   allegations first?

09:19:11 9       THE COURT:  You can do either or both, and in

09:19:15 10  whichever order you would like to address them.

09:19:18 11      MR. MCCLANE:  Okay.  Well, first of all, with

09:19:20 12  respect to the sufficiency of the allegations, Your Honor,

09:19:26 13  there is this misnomer that somehow we have all the evidence

09:19:29 14  in the case; we don't.  Mr. Greenberg returned the discovery

09:19:37 15  to the prosecutor.  We don't have that.

09:19:39 16      And secondly, the type of things that would support

09:19:41 17  our claims, such as e-mails between the prosecutor and the

09:19:46 18  investigators, e-mails between Mr. Savage, Mr. Scarince and

09:19:51 19  Mr. Henderson, their memo to the prosecutor about the facts

09:19:56 20  and what supports it, what sort of investigation they did,

09:20:00 21  the prosecutor memo to decide that we'll proceed with the

09:20:04 22  case within the office, the decision to decline prosecution,

09:20:09 23  all of that wouldn't be produced in criminal discovery in any

09:20:12 24  event.

09:20:13 25      And that is the discovery that we would seek in this

1 09:20:16  case that we believe would substantiate the charges.

2 09:20:20        And we are at the very beginning stage of this case,

3 09:20:23  Your Honor.  I think that we more than met the burden to

4 09:20:28  establish placing the defendants on notice.  This is not a

5 09:20:33  case that Mr. Savage's counsel cites, this *Papasan* case.

6 09:20:38  That was a fraud case.  Fraud requires, if you read the case,

7 09:20:42  Your Honor, that requires heightened particular allegations,

8 09:20:46  more specific allegations.

9 09:20:48        We are handicapped in this case.  We don't have the

10 09:20:52  discovery.  We don't have the kind of evidence, including

11 09:20:54  depositions and written discovery to the U.S. Attorney, to

12 09:20:58  AmEx, and to the defendants, which would flush out what they

13 09:21:02  knew and when they knew it specifically.

14 09:21:04        But, Your Honor, what we have alleged is that prior

15 09:21:11  to sending in the undercover investigator on December 14th,

16 09:21:17  2016, Mr. Girardi, Tom Girardi, was appearing on behalf of

17 09:21:22  Mr. Savage in a courtroom where there was -- he was

18 09:21:27  representing them on the Volkswagen suit, where he

19 09:21:33  promised -- and, Your Honor, I would submit, and there was an

20 09:21:35  argument by the defense counsel that we were only citing

21 09:21:39  newspaper reports.  Since the filing of the complaint, we

22 09:21:42  have the transcript.  And we can amend the complaint and

23 09:21:44  allege the specific allegations from the transcript where

24 09:21:48  Mr. Girardi said, I will personally pay Mr. Savage $100,000.

25 09:21:55  This was the day before they send the agents to interview and

| | |
|---|---|
| 1 09:22:01 | interrogate -- and send in Ms. Girardi to do the under |
| 2 09:22:06 | recording. |
| 3 09:22:06 | This set in motion a chain of events that led to the |
| 4 09:22:11 | prosecution of Mr. Psaila.  The Court should ask itself, why |
| 5 09:22:17 | the Secret Service?  Why not the LAPD?  Why not the FBI? |
| 6 09:22:22 | Why -- is it a mere coincidence that Mr. Savage is the head |
| 7 09:22:27 | of the Secret Service?  Is it a mere coincidence that he's a |
| 8 09:22:31 | good friend of Tom Girardi and Erika Girardi, and this case |
| 9 09:22:35 | ended in the laps of the Secret Service?  And this is not a |
| 10 09:22:38 | coincidence.  And it's a fair inference because of their |
| 11 09:22:41 | personal relationship, because of the financial relationship, |
| 12 09:22:44 | because of the attorney-client relationship that was never, |
| 13 09:22:48 | ever, ever disclosed to the defense, and I doubt was even |
| 14 09:22:51 | disclosed to the prosecutor. |
| 15 09:22:55 | THE COURT:  And in that sense -- excuse me, |
| 16 09:22:59 | Mr. McLane.  This I thought was one of the most persuasive |
| 17 09:23:03 | arguments in the reply brief is, what is the basis for |
| 18 09:23:11 | thinking that the two subordinate agents were themselves |
| 19 09:23:16 | aware of this?  I mean, it just seems to me the most rank |
| 20 09:23:20 | speculation.  There is just nothing to suggest that -- it |
| 21 09:23:23 | just -- it doesn't -- in the technical sense in which *Twombly* |
| 22 09:23:27 | and *Iqbal* are using plausibility, it just seems to me that |
| 23 09:23:31 | you are thinking it could possibly be the case, and you want |
| 24 09:23:34 | the case to go forward, so you can rummage around and get |
| 25 09:23:38 | discovery to see if it could possibly be true.  That is |

109:23:40  exactly what *Twombly* and *Iqbal* don't allow.

209:23:42  In this sense, I think even if I were to be inclined

309:23:47  to deny the motion as to Special Agent Savage, at least on

409:23:52  this point, what is the basis, then, for not granting it for

509:23:56  the other two agents?

609:23:58  MR. MCCLANE:  Your Honor, this is the basis, the

709:24:00  basis is this:  That Scarince is second in charge at the

809:24:04  Secret Service in LA.  He works directly below Savage.  This

909:24:09  wasn't supervised by a lower-level supervisor just above --

1009:24:14  just above Mr. Henderson.  This was supervised by the Chief

1109:24:20  of the Secret Service in LA.  This was supervised by the

1209:24:23  second in command.

1309:24:26  And there it's a fair inference that there would be

1409:24:31  questions by Mr. Henderson and Mr. Scarince as to why we are

1509:24:36  taking this case.  What is the basis for taking this case?

1609:24:40  And I think it's a fair inference that Mr. Savage would have

1709:24:44  disclosed to them the basis that, I know Tom Girardi, that

1809:24:49  we -- I want to investigate this case for my friend.  And I

1909:24:54  think that is a fair inference from the relationship between

2009:24:57  Mr. Savage and Mr. Girardi, and Mr. Savage and Mr. Scarince.

2109:25:03  And, Your Honor, that is why I think that would be

2209:25:06  the basis as to why that information was a fair inference

2309:25:11  from our pleadings, is that that information was shared with

2409:25:15  Mr. Scarince and Henderson.  I would disagree that it's rank

2509:25:18  speculation.

1 09:25:19    It could be common knowledge within any

2 09:25:22 investigative agency that the agents who are doing the

3 09:25:28 investigation would want to know why are we investigating

4 09:25:30 this case.

5 09:25:31    THE COURT:  But the Secret Service investigates

6 09:25:33 credit card fraud all the time.  You know, it's not like it's

7 09:25:36 the NASA Inspector General, or something.

8 09:25:40    MR. MCCLANE:  But because of the nature of the

9 09:25:41 victims, Your Honor, Tom Girardi and Erika Girardi, that I

10 09:25:45 think is a natural and fair inference that that would have

11 09:25:48 piqued the inference of both Mr. Scarince and Mr. Henderson

12 09:25:51 to find out what is going on here?  Why are we investigating

13 09:25:55 this case?  How did we get this case?  That is why I think it

14 09:25:58 would have -- she would have gone to -- that they would have

15 09:26:06 gone to -- they would have figured out or asked, why do we

16 09:26:10 have this case?

17 09:26:11    And -- and Erika Girardi actually says in her

18 09:26:15 declarations in the anti-SLAPP that she went to Mr. Savage

19 09:26:18 because she knew him, because of their personal relationship.

20 09:26:22    And, Your Honor, right after the December 14th, the

21 09:26:29 investigation -- the -- when Mr. -- when they did the

22 09:26:32 undercover interview, that is when Mr. Henderson --

23 09:26:37 Mr. Savage contacted Mr. Grimm with AmEx, and then Mr. Grimm

24 09:26:44 starts supplying information to Mr. Henderson.  There is a

25 09:26:48 close loop there in the nexus.  It wasn't, Mr. Savage was

109:26:52   sitting in an ivory tower and not communicating with

209:26:56   Mr. Scarince and Mr. Henderson, they were well-connected in

309:27:01   this case from the get-go.

409:27:03       And that is why when there is speculation that

509:27:08   the -- that what the defendants contend is speculation that

609:27:11   Mr. Scarince and Mr. Savage would be actively involved in

709:27:17   terms of pursuing the search warrant, in terms of the

809:27:20   allegations in the search warrant, in terms of the meetings

909:27:23   between Henderson and Erika Girardi and Mr. Pence concerning

1009:27:28   just before the indictment was returned, we allege that

1109:27:32   Mr. Scarince and Mr. Savage approved and ratified it. But

1209:27:36   that is a fair inference from the evidence.

1309:27:39       And why, Your Honor, you might ask?  Because

1409:27:41   Mr. Henderson was a young investigator.  Mr. Scarince showed

1509:27:46   up at the time of the search warrant, at the execution of the

1609:27:50   search warrant, and interviewed Mr. Psaila.  He was involved

1709:27:54   the whole way through.  It would have made sense that when

1809:27:58   that search warrant affidavit was drafted and reviewed by

1909:28:02   Mr. Henderson, that both Mr. Savage, Savage as an interested

2009:28:11   party, who is trying to help his friend, which is what we

2109:28:14   allege, and I think is a very fair inference from the

2209:28:17   evidence, would have been involved in reviewing that search

2309:28:21   warrant affidavit.  And also, would have been involved in

2409:28:26   just before the indictment and what evidence that they had.

2509:28:29       And we know, also, Your Honor, is that we alleged in

the complaint that after the execution of the search warrant, that Mr. Henderson was placed on notice that all the transactions would have been justified, and that there was texts, e-mails, sketches, et cetera, in the evidence seized by the Secret Service.

And what does Mr. Henderson do?  He goes to Washington D.C. to then be involved in protecting the president.  So what goes on with the evidence?  Someone has to step into the breach.  That would have been Mr. Scarince and Mr. Savage, who are in Los Angeles.  They would have reviewed the evidence.  They had access to the evidence.

And what we allege is when we are talking about a due process violation, Your Honor, under the jury instructions 9.33, it doesn't require that you actually have to know that you are fabricating evidence, but you act with reckless disregard to an individual's innocence.

And that is our allegation here, Your Honor, is that after they seized all the evidence -- and probable cause is a continuing thing.  It's a probable cause that you determine at the time of seeking the indictment; not just at the search warrant.  And if it evaporates and eviscerates at that point in time, then you -- you know, if -- if the evidence in your possession shows that a person is innocent, then you are not supposed to seek a grand jury indictment, which they --

THE COURT:  Look, Mr. McLane, it's not, in theory at

| | |
|---|---|
| 1 09:30:14 | least, it's not that failure to acknowledge overwhelming |
| 2 09:30:22 | evidence cannot possibly make out the sort of claim. |
| 3 09:30:25 | I mean, I had a Section 1983 claim where the jury |
| 4 09:30:28 | returned it against the LAPD detective because it -- it |
| 5 09:30:34 | relied entirely on the testimony of one witness, and there |
| 6 09:30:37 | was just complete, clear, unambiguous evidence that that |
| 7 09:30:42 | witness was this incorrigible liar, both in that case and in |
| 8 09:30:47 | other cases, and the detective knew that. And I didn't -- |
| 9 09:30:49 | you know, I'm sure that is why the jury returned the verdict |
| 10 09:30:53 | against her. |
| 11 09:30:54 | Here, I mean, maybe -- look, and I'm saying this |
| 12 09:30:58 | just hypothetically, but maybe Agent Scarince just wasn't a |
| 13 09:31:00 | very good agent. You know, maybe he should have analyzed |
| 14 09:31:03 | this stuff. But the idea that that somehow is this |
| 15 09:31:07 | constitutional violation, obviously, the U.S. Attorney's |
| 16 09:31:11 | Office didn't expect it to be analyzed. The AUSAs thought |
| 17 09:31:14 | there was probable cause. The grand jury thought there was |
| 18 09:31:16 | probable cause. |
| 19 09:31:17 | I just -- this idea, then, that -- you are acting as |
| 20 09:31:22 | if there was some letter in these documents in which it was |
| 21 09:31:25 | set out, you know, sealed in blood between Mr. Savage and the |
| 22 09:31:32 | Girardis, that he was in on -- that he was being bribed or he |
| 23 09:31:35 | was in on this, or that, you know, We intend to get this much |
| 24 09:31:39 | money back from American Express, and we'll give you your |
| 25 09:31:43 | cut. I just -- and that somehow that was just -- that was |

109:31:46  known to Mr. Henderson, and he chose to ignore it.  The

209:31:52  situation as it's put forth in your own complaint is just so

309:31:56  different from that.

409:31:58        MR. MCCLANE:  Well, Your Honor, I would say this,

509:32:00  Your Honor:  That they were on notice that Chris Psaila

609:32:05  e-mailed Mr. Henderson and said, All the evidence is on the

709:32:11  computers, the evidence you seized.  I need that back, so I

809:32:15  can do business again.  There is texts, e-mails, and et

909:32:22  cetera that support what we charged Ms. Girardi.

1009:32:26       They were on notice that there is evidence of

1109:32:27  innocence, and you then go to the grand jury.  And they went

1209:32:30  to the grand jury on these seven specific charges, Your

1309:32:33  Honor, seven specific charges where they had the evidence.

1409:32:37  And Ms. Girardi says in the meeting the day before they went

1509:32:41  to the grand jury, and I suspect that Mr. Henderson testified

1609:32:44  before the grand jury, that she said that there was no

1709:32:48  evidence in her records supporting the seven charges.

1809:32:54       Well, they had the evidence there in their

1909:32:56  possession.  They had information that Chris Psaila told them

2009:33:02  that they had evidence in their possession, and they acted

2109:33:04  with reckless disregard to his innocence.  That is the jury

2209:33:07  instruction 9.33.  We don't have to prove that they knew that

2309:33:14  she was lying for sure, but that they acted with reckless

2409:33:18  disregard to the facts.  And they did, Your Honor.  That is

2509:33:20  all we have to allege.

1   09:33:24       Remember, this is just at the pleading stage, Your

2   09:33:26    Honor.  This is not after discovery has been conducted in

3   09:33:28    this case.

4   09:33:29       So I think we have alleged sufficient evidence to

5   09:33:32    get at least beyond the pleading stage.

6   09:33:35       THE COURT:  Let's turn to, then, why these various

7   09:33:41    alternatives are insufficient, and *Bivens* then is the

8   09:33:47    required remedy.

9   09:33:49       MR. MCCLANE:  Your Honor, this is -- and I think

10   09:33:55    about this case, and I know where the Supreme Court is going

11   09:33:57    here, and I think the Court knows where the Supreme Court is

12   09:34:00    trying to head, but they are not there yet.

13   09:34:04       The Supreme Court, and I've read the cases, have

14   09:34:07    criticized the common law remedy of *Bivens*.  And they say if

15   09:34:12    Congress wants to pass a law to hold federal agents

16   09:34:15    responsible, then Congress should pass a law.

17   09:34:17       But notably, the Supreme Court has not overruled

18   09:34:20    *Bivens*.  It has not overruled *Hartman vs. Moore* that says

19   09:34:24    that a person can proceed on a *Bivens* action for malicious

20   09:34:28    prosecution.  Those cases are still good law.  They are still

21   09:34:33    binding on this Court.  There is still a *Bivens* common law

22   09:34:37    remedy.

23   09:34:38       And why was *Bivens* enacted in the first place?

24   09:34:42    Because it seems illogical that federal law enforcement

25   09:34:46    officers, who are the role models for local police officers,

Ex. 15-17

they can willy-nilly violate an individual's rights; yet
local police officers can be held responsible under Section
1983. We are -- and Section 1983 for excessive force, where
an officer makes a split-second decision, that they think
that the defendant is armed.

We are alleging something far more serious here.
That in the cold of night, with contemplation, these ordinary
law enforcement officers, acting on behalf of the Secret
Service, engaged in the plan because it benefited Mr. Savage
personally, professionally, and transactionally to conspire
with the Girardis to maliciously prosecute Mr. Psaila.

And I would just say, Your Honor, you just said it
yourself, the Secret Service prosecutes credit card fraud all
the time. It's a routine case. I would ask the Court to
look at the Supreme Court cases where it said, No, we are not
going to extend *Bivens* to this context. They are
dramatically different, dramatically different cases. They
are not routine cases.

Like the *D.C.* case, that was a case where they were
suing President Trump, and they were seeking injunctive
relief. That is not a routine case. This case involves
ordinary law enforcement action.

What is the meaningful difference that the
defendants allege here in this case? Basically, the
meaningful difference is that they are saying that it's not

| | |
|---|---|
| 09:36:30 | like *Bivens* because they got a search warrant; whereas, in |
| 09:36:37 | *Bivens*, they just -- they did it -- they conducted an illegal |
| 09:36:40 | search. |
| 09:36:41 | Your Honor, I would respectfully submit that the |
| 09:36:43 | meaningful -- that is a difference that is not meaningful. |
| 09:36:48 | Because under *Franks v. Delaware*, under all the cases |
| 09:36:53 | involving search warrants, the analysis is basically the |
| 09:36:55 | same:  You excise the falsehoods from the search warrant |
| 09:36:59 | application, and you still decide whether there is probable |
| 09:37:02 | cause or not. |
| 09:37:04 | So whether you have a search warrant or not, if you |
| 09:37:06 | allege misconduct in the affidavit and falsehood, which we |
| 09:37:11 | have done here, the Court still analyzes whether there is |
| 09:37:14 | probable cause. |
| 09:37:14 | Secondly, Your Honor, the big meaningful difference, |
| 09:37:18 | especially with respect to Mr. Savage, is that he's a |
| 09:37:21 | higher-level official and he shouldn't be bothered with |
| 09:37:25 | having to defend -- having to defend this lawsuit personally |
| 09:37:30 | because of being a higher-level official. |
| 09:37:33 | Well, first of all, he's no longer in the |
| 09:37:35 | government.  He's no longer a high-level official.  This will |
| 09:37:39 | not intrude on any executive or the actions of the Secret |
| 09:37:45 | Service at this time. |
| 09:37:46 | Second of all, Your Honor, he -- he did not act as |
| 09:37:51 | an executive overseeing, you know, the agents who were |

**Ex. 15-19**

| | |
|---|---|
| 09:37:58 | handling this case on their own. |
| 09:38:00 | What they -- what they -- what they did in this |
| 09:38:03 | case, Your Honor, he was personally involved.  He's the -- |
| 09:38:06 | he's the reason this case was brought in the first place.  He |
| 09:38:14 | absented himself from the role of being -- |
| 09:38:15 | THE COURT:  Mr. McLane, I need to hear from both |
| 09:38:18 | sets of defendants.  And like I said, I'm giving the parties |
| 09:38:22 | an hour for this, but I do have a full 10:00 calendar. |
| 09:38:25 | So what I -- let me ask you to address, then, what |
| 09:38:30 | in your view is the, both the status and the significance of |
| 09:38:35 | the Federal Torts Claims Act? |
| 09:38:38 | MR. MCCLANE:  Well, we have been very transparent, |
| 09:38:41 | Your Honor.  We said in our complaint, we are not hiding the |
| 09:38:43 | ball on anything.  We said we are going to file an FTCA |
| 09:38:47 | claim; we did.  It was denied February 9th. |
| 09:38:50 | I sent an e-mail to all parties asking their |
| 09:38:54 | position, and this was like a couple of months ago, that I |
| 09:38:58 | plan on amending a complaint, would they oppose?  Would they |
| 09:39:04 | oppose the amendment?  And I haven't heard from anyone |
| 09:39:08 | whether they oppose the amendment or not, but I'm going to do |
| 09:39:12 | a meet and confer letter.  And we are going to amend. |
| 09:39:15 | We always knew that *Bivens* in this context was a |
| 09:39:19 | challenging context in light of where the Supreme Court is |
| 09:39:21 | going.  But the Supreme Court is not there yet, Your Honor. |
| 09:39:25 | So where we are on this:  They say that the FTCA is |

**Ex. 15-20**

09:39:30  1   an adequate remedy, but the United States is not in this

09:39:33  2   case.  And I know that they are going to be filing a motion

09:39:37  3   to dismiss.  They are going to argue that it's a

09:39:42  4   discretionary function.  They are going to argue that we

09:39:45  5   can't bring it because this is a government action; not a

09:39:48  6   private action.

09:39:50  7          And, Your Honor, I would proffer this that I learned

09:39:57  8   from counsel for Mr. Scarince and Mr. Henderson in a

09:40:02  9   conversation, she said that she was hired to represent

09:40:07  10  Mr. Henderson and Mr. Scarince; that they had a nondisclosure

09:40:11  11  agreement with the government, and that they were being

09:40:16  12  indemnified.  And she said that Mr. Savage was not being

09:40:19  13  indemnified, okay?  That is what she said in the

09:40:24  14  conversation.

09:40:25  15         THE COURT:  Counsel, look, this really isn't in

09:40:27  16  front of me right now.  I'm not going to base a ruling on a

09:40:31  17  conversation between lawyers.  But the --

09:40:34  18         MR. MCCLANE:  Okay.

09:40:35  19         THE COURT:  -- the question, then, here is

09:40:38  20  whether -- I understand your point.  So it seems to me you've

09:40:41  21  got -- well, there was one argument you made in your briefs,

09:40:43  22  which was that the FTCA is insufficient based on the old

09:40:49  23  Bureau of Prisons case from 1980, the *Carlson* case.

09:40:53  24         And then the second one you are saying right now, is

09:40:55  25  who knows if there even is an FTCA claim, because it's going

| | |
|---|---|
| 1 09:41:01 | to get added, but when it gets added, maybe it will get get |
| 2 09:41:05 | dismissed. |
| 3 09:41:06 | MR. MCCLANE:  The only point I would add, Your |
| 4 09:41:08 | Honor, just real briefly, because I know you want to hear |
| 5 09:41:10 | from the defendants, and they should have an opportunity to |
| 6 09:41:12 | be heard, is there will be a course and scope argument made. |
| 7 09:41:15 | And that is the only reason I have brought this up.  If the |
| 8 09:41:18 | government's not indemnifying Mr. Savage, then they are going |
| 9 09:41:22 | to move to dismiss the complaint against -- on the FTCA, |
| 10 09:41:26 | alleging that Mr. Savage was acting outside course and scope. |
| 11 09:41:34 | THE COURT:  I understand your argument. |
| 12 09:41:35 | MR. MCCLANE:  But that is a real concern for me. |
| 13 09:41:38 | And so we are going to amend and add an FTCA claim. |
| 14 09:41:41 | That should be within the next month.  I hope the parties |
| 15 09:41:44 | don't object to it.  It would be in their interest to have |
| 16 09:41:48 | it. |
| 17 09:41:48 | THE COURT:  Counsel, please. |
| 18 09:41:49 | MR. MCCLANE:  Sorry. |
| 19 09:41:50 | THE COURT:  If I give you leave to amend, then you |
| 20 09:41:53 | can go ahead and do it. |
| 21 09:41:56 | But for now, what is -- what specifically would |
| 22 09:42:03 | you -- and you have mentioned that you've gotten the |
| 23 09:42:06 | transcripts.  So what else would you do to strengthen the |
| 24 09:42:10 | *Bivens* claim if I gave you leave to amend? |
| 25 09:42:13 | MR. MCCLANE:  Your Honor, we would add the |

**Ex. 15-22**

09:42:16  allegations from that.  I would analyze the evidence more

09:42:19  carefully to see if there are additional facts that I can

09:42:24  allege that would satisfy the Court.  We believe that we have

09:42:28  alleged sufficient, but I understand the Court's concern.

09:42:32  But we should be given that opportunity at this stage for

09:42:38  leave to amend, and analyze it in light of the arguments that

09:42:41  they have made, and see if, based on what we have right now,

09:42:45  whether we have additional facts.

09:42:46       But certainly we have the transcript of the

09:42:49  allegations with Mr. Girardi, and I -- also review and see if

09:42:55  there is additional allegations against Mr. Henderson and

09:42:57  Mr. Scarince.

09:42:59       THE COURT:  All right.  Thank you.

09:43:00       Let me hear from counsel for Messrs. Henderson and

09:43:05  Scarince.  And in particular, I mean, both to respond to the

09:43:08  argument we just heard, but also in particular, let's say

09:43:13  that the arguments were even more pointed against them, that

09:43:16  there was this true malicious prosecution, where the

09:43:23  allegation with facts supporting it under *Twombly* and *Iqbal*

09:43:27  said, look, they -- they misused their offices because Erika

09:43:36  Girardi said to them, Look, this is a concoction to get money

09:43:40  from American Express, and we are going to share that money

09:43:42  with you.  So please make sure that Mr. Psaila gets indicted.

09:43:46       In that case, what -- are you saying that there

09:43:52  would not be a federal tort  -- there wouldn't be the federal

Ex. 15-23

| | |
|---|---|
| 1 09:43:56 | tort on that sense?  Or are you saying that they also |
| 2 09:43:59 | couldn't be sued under *Bivens*? |
| 3 09:44:01 | I mean, it seems to me that given such egregious |
| 4 09:44:05 | conduct, there should be some sort of lawsuit somewhere that |
| 5 09:44:09 | Mr. Psaila could avail himself of. |
| 6 09:44:12 | So I just want to find out, then, what is the |
| 7 09:44:14 | position of Messrs. Henderson and Scarince in regard to -- in |
| 8 09:44:21 | regard to that situation, where it seems to me that there is |
| 9 09:44:24 | this argument that they -- that the only remedies would be |
| 10 09:44:28 | the administrative remedies.  And perhaps that is sufficient |
| 11 09:44:32 | under the new Supreme Court case law, but it does -- I would |
| 12 09:44:40 | understand Mr. Psaila's frustration if that, in fact, is the |
| 13 09:44:45 | law. |
| 14 09:44:47 | MS. RIVARD:  Thank you, Your Honor. |
| 15 09:44:47 | I would ask that plaintiff's counsel mute himself, |
| 16 09:44:50 | because noise keeps coming through, and I don't want it to |
| 17 09:44:53 | interfere with the record on my end, at least.  And apologies |
| 18 09:44:59 | for that. |
| 19 09:45:00 | Good morning, Your Honor.  Thank you very much. |
| 20 09:45:01 | Counsel for plaintiff has stated that he has |
| 21 09:45:06 | transcripts of the court appearance in the case involving |
| 22 09:45:12 | Mr. Savage that Mr. Girardi was representing him on. |
| 23 09:45:17 | And so, an analysis of those transcripts, I think if |
| 24 09:45:22 | there is in the transcripts some sort of statement that |
| 25 09:45:27 | Messrs. Henderson or Scarince were somehow in on the bribery |

| | |
|---|---|
| 1 09:45:37 | scheme that is alleged in the complaint, then by all means, |
| 2 09:45:42 | that would be egregious government conduct. |
| 3 09:45:45 | However, there is no evidence that Messrs. Henderson |
| 4 09:45:50 | or Scarince have had or had any prior knowledge of the |
| 5 09:45:59 | alleged relationship between Savage and Girardi, such that it |
| 6 09:46:08 | could be imputed that their investigation of plaintiff was |
| 7 09:46:16 | based on anything other than a referral by a supervisor to |
| 8 09:46:21 | conduct an investigation. |
| 9 09:46:23 | I will point, also, to plaintiff's complaint and the |
| 10 09:46:30 | wording of the complaint, that there was no allegation that |
| 11 09:46:37 | either Agent Henderson or Scarince knew, or reasonably should |
| 12 09:46:43 | have known at the time, that Ms. Girardi was lying. |
| 13 09:46:49 | And point of fact, there was an interview of Ms. |
| 14 09:46:56 | Girardi.  There was a surreptitious recording of plaintiff, |
| 15 09:47:05 | where plaintiff accepted responsibility, and said that he |
| 16 09:47:10 | would find a way of paying Ms. Girardi back, even if he had |
| 17 09:47:15 | to take out a loan. |
| 18 09:47:17 | These are not actions that would cause any law |
| 19 09:47:21 | enforcement officer to believe that there was not fraud such |
| 20 09:47:26 | that they would be on notice that this investigation was |
| 21 09:47:32 | untoward in any way. |
| 22 09:47:33 | And as the Court pointed out, the Secret Service |
| 23 09:47:36 | regularly investigated these types of crimes.  And so it's |
| 24 09:47:40 | not -- it's not something that would cause a reasonable law |
| 25 09:47:49 | enforcement officer with the Secret Service to question being |

Ex. 15-25

| | |
|---|---|
| 1 09:47:55 | assigned to this type of investigation, or would cause or |
| 2 09:48:00 | instigate an investigation of the supervisor assigning them |
| 3 09:48:04 | to the case. |
| 4 09:48:05 | And so for that reason, there is no allegation of |
| 5 09:48:15 | true malicious prosecution that can be made against them |
| 6 09:48:25 | regardless. |
| 7 09:48:25 | The Court asked if there was some other remedy. |
| 8 09:48:29 | Well, the remedy is provided by Congress with the Federal |
| 9 09:48:32 | Tort Claims Act.  And, you know, it is a remedy.  And case |
| 10 09:48:41 | law has held that even if a remedy doesn't please all |
| 11 09:48:46 | plaintiffs, it is nonetheless a remedy, and that it's -- and |
| 12 09:48:54 | I'll quote from -- excuse me for a moment -- *Ziglar vs.* |
| 13 09:49:08 | *Abbasi*.  Apologies.  I apologize.  I can't find the exact |
| 14 09:50:09 | quote that I'm looking for, and I apologize for that. |
| 15 09:50:11 | Regardless, there are administrative remedies that |
| 16 09:50:14 | are available to the plaintiff.  And it is defendants' |
| 17 09:50:20 | Henderson and Scarince's position that there is no claim for |
| 18 09:50:26 | malicious prosecution. |
| 19 09:50:27 | And point of fact, having been a county prosecutor, |
| 20 09:50:35 | in applying for a search warrant, the law enforcement officer |
| 21 09:50:41 | presents the information, and a judge is able to request |
| 22 09:50:46 | additional information if the judge does not find that there |
| 23 09:50:52 | is sufficient probable cause. |
| 24 09:50:54 | And in this case, there is no allegation that these |
| 25 09:50:57 | defendants, Henderson and Scarince, hid anything from -- from |

**Ex. 15-26**

the judge.  As far as they knew, Ms. Girardi was telling the
truth.  And it was corroborated by plaintiff's statements in
a surreptitious conversation that was recorded.  And American
Express corroborated the information that was being presented
in the search warrant.

        And so there is no -- there is no claim that
Henderson or Scarince hid evidence from a judge in order to
obtain probable cause imprimatur from a court.

        And with that, I'll submit.

        THE COURT:  Thank you.

        Mr. Anand, what do you have to say on behalf of
Mr. Savage?  You are muted, sir.

        MR. ANAND:  I apologize, Your Honor.  Thank you.

        Your Honor, to say the complaint is so -- it's just
filled with supposition upon supposition.  And it starts with
this bribery allegation.  And, you know, let's recall that
that is alleging somebody committed a crime.  And it is
really remarkable that somebody would make that allegation
with absolutely zero factual support.

        And I laid it out in my papers, Your Honor, I'm not
going to repeat it all, but the idea that there was a bribe
here is refuted by their own allegation.  It's a legal
conclusion, and it is just completely -- there is no basis
for it, and they just make it up, and it's just wrong.

        And from there, they go on to say Mr. Savage engaged

Ex. 15-27

09:52:59  in some parade of horribles.  And it's all based on a bunch

09:53:05  of false statements.  And again, it is a false statement to

09:53:08  say that Agent Scarince was the second in charge of the

09:53:13  Secret Service, that is just false.

09:53:17       THE COURT:  Mr. Anand, I have to accept the

09:53:19  allegations that are in the complaint.  I mean, the whole

09:53:21  point of going forward with discovery and a trial is to

09:53:24  determine whether these things would be true or not.  So that

09:53:27  is not the point.

09:53:30       In the unlikely event that Mr. Savage brings some

09:53:33  later motion under Rule 11 saying there is no basis for this

09:53:36  complaint, then that -- then that matter would be raised, but

09:53:40  as it is, I'm going to accept these things as true.

09:53:43       Now, the other point that you are making, which is

09:53:46  at some point you just, it's supposition based on supposition

09:53:51  based on supposition, then that is a perfectly fine argument

09:53:54  here.  It's the whole basis of *Twombly* and *Iqbal*.

09:53:59       So here, you know, one of the things that you raised

09:54:02  in your brief was that there -- regardless of what Mr. Savage

09:54:08  might have done, that he just wasn't then involved enough in

09:54:12  later events to really show that he was kind of -- that his

09:54:16  actions were really the proximate cause here of the

09:54:20  indictment.

09:54:21       So why don't you explain the argument further for

09:54:25  me.

1  09:54:27        MR. ANAND:  Yes, Your Honor.  The only point I was

2  09:54:29  making with regard to the levels is I think the Court can

3  09:54:31  tell from its judicial experience that there is multiple

4  09:54:34  layers of review within an organization like the Secret

5  09:54:38  Service.  Anyway, I won't belabor the point, Your Honor.

6  09:54:42        In terms of there not being any kind of connection,

7  09:54:47  Fourth Amendment, Your Honor, it is not enough to say that

8  09:54:52  upon information and belief that there was a reckless

9  09:54:55  adoption of this search warrant affidavit.

10 09:54:58        I cited a Second Circuit case, Your Honor.  There is

11 09:55:00  also numerous Supreme Court cases saying that you have to

12 09:55:04  show actual direct involvement.  There is no respondeat

13 09:55:09  superior under -- for a constitutional violation, or *Bivens*

14 09:55:14  violation.

15 09:55:15        The same thing goes for the Fifth Amendment

16 09:55:21  allegation, Your Honor.  There is no *Brady* evidence here.

17 09:55:24  *Brady* is not required.  There is no showing of malicious

18 09:55:28  prosecution, because Mr. Savage was not even -- there is not

19 09:55:32  a single allegation even spoke to the government; that the

20 09:55:36  AUSA or the prosecutors made an independent decision.  There

21 09:55:40  is a presumption of regularity.  There is -- there has to be

22 09:55:44  a showing that the -- in order to overcome that, there has to

23 09:55:48  be a showing that the agent or law enforcement officer

24 09:55:50  actually unduly influenced, or kind of caused the government

25 09:55:55  to do something to overcome the presumption of regularity.

**Ex. 15-29**

So when you break it down, Your Honor, there is no Fourth Amendment violation.  There is no Fifth Amendment violation.  There is no malicious prosecution.

And, you know, the one thing that is notably absent from the complaint, and from the argument this morning, is the defendant's own words, which are strategically omitted from the complaint because they undermine his claim.

And as the Court noted earlier, there was -- the way this case proceeded was Ms. Girardi came in, she made an allegation.  Even the plaintiff claims that she lied to the Secret Service.  There is absolutely not even a single factual allegation to show anybody that the Secret Service knew those were lies.

There was an investigation.  The defendant's own recording corroborated and supported the allegations of Ms. Girardi.  And that led to a search warrant, which was issued by the magistrate judge.

There is no *Franks* analysis.  I cited a Ninth Circuit case showing that they have to do a *Franks* analysis; otherwise, the *Bivens* claim should be dismissed.  That is not done.

And then from there, the Girardi, Ms. Girardi is asked the day before indictment by the government, Are these seven allegations in the indictment, were these paid?  And she again represents that these were not paid.  These are

Ex. 15-30

| | |
|---|---|
| 1 09:57:22 | fraudulent.  These -- these were not provided, so these are |
| 2 09:57:28 | fraudulent claims. |
| 3 09:57:28 | Again, that is Ms. Girardi causing the government to |
| 4 09:57:31 | issue the indictment.  Mr. Savage isn't even there for that. |
| 5 09:57:35 | They have a report for that interview.  Mr. Savage is not |
| 6 09:57:37 | there.  He is not involved in any way. |
| 7 09:57:39 | And then you have AmEx, also another independent, |
| 8 09:57:42 | third-party, acting independently, and issuing a refund. |
| 9 09:57:46 | So there is literally nothing here, Your Honor. |
| 10 09:57:50 | They have a total of two factual allegations that they have |
| 11 09:57:53 | pleaded as to what Mr. Savage himself did, and that is in my |
| 12 09:57:57 | reply.  This is not a plausible claim.  It's not even close, |
| 13 09:58:03 | we would submit, Your Honor, respectfully. |
| 14 09:58:04 | Under *Bivens*, under the Court's analysis, which the |
| 15 09:58:12 | tentative indicates, this is a new context for the reasons |
| 16 09:58:15 | the Court stated. |
| 17 09:58:16 | And *Pettibone* itself holds that the administrative |
| 18 09:58:19 | remedy, reporting it to the Department of Homeland Security |
| 19 09:58:23 | Inspector General, that is a sufficient alternative remedy. |
| 20 09:58:23 | *Pettibone* controls. |
| 21 09:58:28 | There are District Court cases, which I cited in my |
| 22 09:58:30 | motion, Your Honor, which hold the FTCA is also an |
| 23 09:58:35 | alternative remedy. |
| 24 09:58:37 | I wanted to deal with the statement, which really |
| 25 09:58:39 | should never even be made, it's improper, what another |

| | |
|---|---|
| 1 09:58:46 | attorney said to him, it's not in the papers, not in the |
| 2 09:58:48 | complaint.  Total hearsay.  And it's wrong. |
| 3 09:58:52 | The Secret Service, my understanding is, has said |
| 4 09:58:54 | Mr. Savage was acting within the course and scope.  So that |
| 5 09:58:58 | claim is just wrong and not true.  But it shouldn't even be |
| 6 09:59:00 | raised here as part of argument.  That's improper. |
| 7 09:59:04 | Your Honor, I could go on and on here.  But I think |
| 8 09:59:06 | that addresses the Court's questions.  This claim really, |
| 9 09:59:11 | really should have never been brought against Mr. Savage. |
| 10 09:59:14 | And I think it cannot be fixed.  I don't see how they can |
| 11 09:59:19 | overcome all these numerous hurdles that they've got, but I |
| 12 09:59:22 | could understand that the Court wants to give them one chance |
| 13 09:59:24 | to do it.  But I really don't see how it could be done. |
| 14 09:59:27 | And, you know, we'll deal with it.  If they come |
| 15 09:59:30 | back and they start -- let me just address the transcript. |
| 16 09:59:34 | One issue with the transcript, they allege in the complaint |
| 17 09:59:37 | what Mr. Girardi said, and it's on the record, and they quote |
| 18 09:59:40 | what Mr. Girardi said to the District Court Judge in Northern |
| 19 09:59:44 | California; which is, he said, Look, I'm -- if the Court is |
| 20 09:59:47 | upset with me, I'll pay myself the $100,000.  They were |
| 21 09:59:51 | paying $7,500, which is the exact amount for which Mr. Savage |
| 22 09:59:55 | was due for damages.  I'm not sure what the transcript is |
| 23 09:59:58 | going to add to that.  They've already got that allegation in |
| 24 10:00:01 | their complaint. |
| 25 10:00:01 | THE COURT:  All right.  Thank you, counsel. |

Ex. 15-32

1 10:00:03          MR. ANAND:  If the Court has any questions, I'm

2 10:00:05   happy to address them, Your Honor, but I don't need to

3 10:00:08   belabor these points.

4 10:00:09          THE COURT:  Mr. Anand, thank you.

5 10:00:11          Mr. McLane, briefly.  You are muted.

6 10:00:22          MR. MCCLANE:  Okay.  Am I muted now, Your Honor?

7 10:00:25          THE COURT:  You are not.

8 10:00:25          MR. MCCLANE:  Okay.  Thank you, Your Honor.

9 10:00:27          Real briefly.  I think what both defendants do, is

10 10:00:36   that they gloss over -- and this is a much more

11 10:00:39   densely-pleaded complaint than normally would be pleaded at

12 10:00:42   this stage when we don't have the discovery in this case.

13 10:00:44          For example, they keep talking about these

14 10:00:48   administrative remedies being adequate.  What administrative

15 10:00:51   remedy?  There is no administrative remedy for damages.  And

16 10:00:55   we cited in our opposition, Your Honor, how the

17 10:01:00   administrative remedies very rarely ever result in any

18 10:01:05   discipline of any officer.  We cited the statistics that

19 10:01:09   showed the administrative remedies are inadequate.  And they

20 10:01:14   are not anywhere near a remedy for Mr. -- for Mr. Psaila.

21 10:01:19          Yes, the FTCA could potentially be a remedy.  We

22 10:01:23   could potentially have a judge trial where we could allege

23 10:01:28   the same malicious prosecution claim but without the

24 10:01:32   defendants individually sued.  But what -- when we are

25 10:01:36   talking about whether -- and the Supreme Court analysis is

Ex. 15-33

1 10:01:41  whether the alternative remedy provides a level of

2 10:01:47  deterrence, they use the language "level of deterrence" for

3 10:01:50  the conduct.

4 10:01:52       And I think the Court, in its experience, knows

5 10:01:55  unless there is personal accountability, and the threat of a

6 10:01:58  lawsuit against an individual, and it just can be passed off

7 10:02:02  to the United States to have to pay damages, there is not

8 10:02:07  that level of deterrence.

9 10:02:09       So that is why we say the FTCA itself is not even

10 10:02:13  adequate.

11 10:02:14       As far as the allegations, we keep hearing that

12 10:02:17  there is no allegations whatsoever.  I don't know, Your

13 10:02:22  Honor.  I will just say a couple of comments, and then I'll

14 10:02:25  let the Court decide.

15 10:02:26       First of all, after all three of these agents are no

16 10:02:31  longer on the case, and there is a new case agent on the

17 10:02:37  case, this case was dismissed, okay?  I think that is a very

18 10:02:41  significant fact.  Why did that happen?  These agents were no

19 10:02:46  longer involved, no longer pushing the ball towards

20 10:02:49  prosecution.

21 10:02:50       The second thing I would say is that this case

22 10:02:53  started and began with a personal relationship between Tom

23 10:02:57  Girardi and Mr. Savage.  And that was never disclosed to the

24 10:03:02  defense throughout the prosecution.  And I doubt that the

25 10:03:06  U.S. Attorney -- and it might even be one of the grounds, I'm

1  10:03:11  speculating at this point, we don't know the precise reason

2  10:03:14  why the U.S. Attorney did not proceed with this case, we know

3  10:03:17  that Tom Girardi filed bankruptcy the prior -- in

4  10:03:22  December 2020.  This case was dismissed in October 2021.  Who

5  10:03:28  knows whether the U.S. Attorney was already investigating

6  10:03:31  Mr. Girardi at that point at the time that our case was

7  10:03:33  dismissed.

8  10:03:34        But we do know at the get-go that this case started

9  10:03:38  with Mr. Girardi and Erika Girardi and the personal

10 10:03:44  relationship with Mr. Savage.  And that is why this case was

11 10:03:47  brought.  That is why this case was investigated.

12 10:03:50        And I would just say, Your Honor, as far as

13 10:03:54  liability towards Henderson and Scarince, as opposed

14 10:03:58  Mr. Savage, there is allegations that we say are false in the

15 10:04:01  search warrant affidavit under *Franks v. Delaware.*  And

16 10:04:07  Mr. Henderson says that the charges were not authorized.  We

17 10:04:11  know that the evidence shows that Ms. Girardi gave him the

18 10:04:15  credit card.  They had to have known that when they said that

19 10:04:18  the charges were authorized.

20 10:04:20        Secondly, they rely on the audio transcript.  Mr. --

21 10:04:25  as we allege, Mr. Psaila said at best there was some

22 10:04:29  accounting errors.  There may be a 100,000 mistake in

23 10:04:33  accounting, but they allege that the business was permeated

24 10:04:37  by fraud.

25 10:04:38        They also alleged there was also over an $800,000

**Ex. 15-35**

1 10:04:42    loss.  Both of those statements were false.  They had no

2 10:04:44    evidence in the search warrant affidavit to support that the

3 10:04:48    business was permeated by fraud.  There was no admission by

4 10:04:52    Mr. Psaila.  Ms. Girardi herself, if you read the anti-SLAPP

5 10:04:57    declaration, she had no idea about the charges or how much he

6 10:04:59    charged or whether she got -- there is no evidence supporting

7 10:05:02    an $800,000 loss.  And they willy-nilly threw that in there,

8 10:05:08    threw in the permeated by fraud.  That is with reckless

9 10:05:13    disregard for the truth.  If we excise those statements,

10 10:05:16   there is no probable cause.

11 10:05:17        The same thing continued on when the case was

12 10:05:19   presented towards indictment.  Same thing.  They had all the

13 10:05:22   records.  They knew from Mr. Psaila that he provided -- what

14 10:05:27   criminal defendant charged with a crime would have this

15 10:05:29   ongoing e-mail correspondence with Mr. Henderson, Please give

16 10:05:33   me back my computer, so I can run my business.  And if you

17 10:05:36   look at the computer, all the evidence is there.  Did I

18 10:05:41   commit any fraud?

19 10:05:42        Your Honor, this is a case where there was -- if --

20 10:05:45   if -- that there was a reckless disregard by all three of

21 10:05:51   these agents to the truth, because Mr. Savage wanted to

22 10:05:53   satisfy Tom Girardi and Erika Girardi.

23 10:05:56        And I think that there was a fundamental miscarriage

24 10:05:59   of justice that this case is pending before Judge Olguin for

25 10:06:04   four or five years, and then just disappeared completely.

**Ex. 15-36**

|       |          |                                                                          |
|-------|----------|--------------------------------------------------------------------------|
| 1     | 10:06:08 | And I think we should be able to proceed with discovery, be              |
| 2     | 10:06:10 | able to prove our allegations.  And you know what?  They all             |
| 3     | 10:06:14 | complained that, oh, they are being sued.  You know, it's far            |
| 4     | 10:06:18 | different for Mr. Psaila, who is charged with a federal                  |
| 5     | 10:06:21 | crime.                                                                   |
| 6     | 10:06:22 | THE COURT:  Thank you, Mr. McLane.                                        |
| 7     | 10:06:24 | MR. MCCLANE:  Big difference.                                             |
| 8     | 10:06:25 | THE COURT:  Mr. McLane, the matter is taken under                        |
| 9     | 10:06:27 | submission.  Thank you, counsel.                                         |
| 10    | 10:06:28 | MR. MCCLANE:  Thank you, Your Honor.                                      |
| 11    | 10:06:31 | MS. RIVARD:  Thank you, Your Honor.                                       |
| 12    |          | *****     *****     *****                                                 |
| 13    |          |                                                                          |
| 14    |          | I certify that the foregoing is a correct transcript from the            |
| 15    |          | record of proceedings in the above-titled matter.                        |
| 16    |          |                                                                          |
| 17    |          |                                                                          |
| 18    |          |                                                                          |
| 19    |          | ---------------------------                                              |
| 20    |          |                                                                          |
| 21    |          | Amy C. Diaz, RPR, CRR            April 8, 2024                            |
| 22    |          | S/  Amy Diaz                                                             |
| 23    |          |                                                                          |
| 24    |          |                                                                          |
| 25    |          |                                                                          |

# EXHIBIT 4

```
 1                    UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3  Before The Honorable Haywood S. Gilliam, Jr., District Judge

 4

 5  VALENCIA, et al.,              )
                                   )
 6          Plaintiffs,            )
                                   )
 7  vs.                            )   No. C 15-00887-HSG
                                   )
 8  VOLKSWAGEN GROUP OF AMERICA,   )
    INC., et al.,                  )
 9                                 )
            Defendants.            )
10  _____)

11

12                                 Oakland, California
                                   Tuesday, December 13, 2016
13

14    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                 RECORDING 2:29 - 2:48 = 19 MINUTES

15  APPEARANCES:

16  For Plaintiffs:
                            Pomerantz, LLP
17                          1100 Glendon Avenue
                            15th Floor
18                          Los Angeles, California 90024
                        BY: JORDAN L. LURIE, ESQ.
19
                            Capstone Lawyers, APC
20                          1875 Century Park East
                            Suite 1000
21                          Los Angeles, California 90067
                        BY: TAREK H. ZOHDY, ESQ.
22                          RAUL PEREZ, ESQ.

23

24            (APPEARANCES CONTINUED ON NEXT PAGE)

25
```

2

1   APPEARANCES:   (Cont'd.)

2   For Lorenzo and Michelle
       Savage:                    Girardi & Keese
3                                 1126 Wilshire Boulevard
                                  Los Angeles, California 90017
4                            BY:  THOMAS GIRARDI, ESQ.

5   For Defendants:
                                  Kerr, Russell & Weber, PLC
6                                 500 Woodward Avenue
                                  Suite 2500
7                                 Detroit, Michigan 48226
                             BY:  FRED K. HERMANN, ESQ.
8

9   Transcribed by:               Echo Reporting, Inc.
                                  Contracted Court Reporter/
10                                Transcriber
                                  echoreporting@yahoo.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

<u>Tuesday, December 13, 2016</u>                    2:29 p.m.

                    P-R-O-C-E-E-D-I-N-G-S

                        --oOo--

        THE CLERK:  Calling C 15-887, Valencia, et al.

versus Volkswagen Group of America, Inc., et al.

     Please step forward and state your appearances for the

record, please.

        MR. LURIE (telephonic):  Good afternoon, your

Honor.  Jordan Lurie and Tarek Zohdy, Capstone Law, for

Plaintiffs.

        THE COURT:  All right.  Good afternoon, Mr. Lurie.

        MR. HERMANN (telephonic):  Good afternoon, your

Honor.  This is Fred Hermann, telephonically, for Volkswagen

Group of America, Inc.

        THE COURT:  All right.  Good afternoon, Mr.

Hermann.

     All right.  Is Mr. Girardi here?

     (No response.)

        THE CLERK:  And is Mr. Perez not on the phone

line?

        MR. PEREZ (telephonic):  Yes, your Honor, Mr.

Perez is on the phone line.

        THE COURT:  All right.  Mr. Girardi, would you

state your appearance?

        MR. GIRARDI (telephonic):  Tom Girardi, yes.

*Echo Reporting, Inc.*

**Ex. 13-3**

4

1          THE COURT:  All right.

2          MR. GIRARDI:  And Mr. and Ms. Savage.

3          THE COURT:  All right.  All right.  So, I put this

4  on for further case management conference because this case

5  appears to be careening off the rails, and I want to get it

6  under control.

7     And, really, my first question is for Mr. Girardi.  You

8  appeared at the telephonic conference that we had a few

9  weeks ago, and I ordered the parties to have a discussion

10 with the mediator, and at least Mr. Lurie is representing

11 that that didn't happen.  And I need to understand whether

12 it happened and, if it didn't happen, why didn't it happen.

13         MR. GIRARDI:  Your Honor, I don't know.  I don't

14 -- I -- I didn't understand that we were supposed to meet

15 with a mediator.  We had some discussions with them that

16 were just, you know, no way anything was going to go forward

17 in any way, shape, or form.  So, I apologize if I was

18 supposed to talk to the mediator.

19         THE COURT:  I was completely clear about that.

20         MR. GIRARDI:  Oh, okay.  I did the wrong thing.

21 It wasn't a matter I was trying to -- I only got into this

22 as some way to solve a problem.  I wasn't looking for a

23 client.  I wasn't trying to do that.  I was trying to solve

24 a -- a problem due to misrepresentations that took place.

25 That's all I was trying to do.

5

1          THE COURT:  I'm concerned that my order was not

2     followed.

3          MR. GIRARDI:  Your Honor, I truly didn't

4     understand it to be followed.  I truly did not understand

5     that was an order.  I talked to the other side on several

6     occasions about the situation.  They said, Well, there's

7     nowhere we can go with this, et cetera.  And I said, Okay,

8     fine.  Whatever.  I wasn't being bad, Judge.  I -- I follow

9     judges' orders.

10          THE COURT:  I'm going to go back and look at the

11     minute order.  I think it was clear, and I think our

12     discussion was clear, and --

13          MR. GIRARDI:  Your Honor --

14          THE COURT:  -- whether -- whether or not you

15     thought it would be productive is of zero concern to me.

16     What is of concern to me is my orders being followed.  I

17     directed you to have that discussion with the mediator.  You

18     didn't do it.

19          MR. GIRARDI:  Your Honor, I -- did we get a copy

20     of the order?  I'm -- if we did, I -- I didn't see it.  I

21     didn't -- your Honor, I get -- I follow orders for 49 years

22     and 6 months of courts.  I think that's pretty clear in my

23     record and so forth.  And if there was a mistake being made,

24     it wasn't being antagonistic to you or being a jerk or being

25     an obnoxious lawyer.  Something fell in the cracks if that

6

1  was the order.  I thought that my discussions with the other

2  side were such that there was no need to go forward, and I

3  apologize.

4       Matter of fact, our client asked the other side to see

5  the mediator on numerous occasions before all this came

6  about.

7            THE COURT:  All right.  There may be an OSC

8  coming, just so you know, on this question.  I'll look at

9  the order, but my recollection of the conversation is -- is

10  crystal clear.

11       The second issue is I -- on the telephonic conference,

12  I ordered the individual Plaintiffs to be present.  All of

13  them were except for the Savages.  Why was that?  Because

14  now I get a filing, and there's a complaint that "I wanted

15  to talk to the Judge and didn't get the chance."  Well, you

16  had a chance.  I set a hearing.  I had a proceeding at which

17  I wanted to hear from the individual Plaintiffs.  The rest

18  of them showed up, even though they don't really have a

19  problem right now, and the Savages didn't.  So, it -- it's

20  odd to me to then read a complaint that they didn't have the

21  chance to be heard when I set up a proceeding exactly for

22  that purpose.

23            MR. GIRARDI:  Well, I don't know anything about

24  that.  I wasn't around.

25            THE COURT:  Yes, you were.  You were on the call.

7

1  We discussed it, and I think you -- you apologized for why

2  they weren't on the call.  I don't even remember what

3  exactly your explanation was, but what do you -- what do you

4  mean you weren't around?

5       MR. GIRARDI:  Your Honor, these -- the request for

6  a judge took place months ago when this whole thing

7  blossomed forth --

8       THE COURT:  But --

9       MR. GIRARDI:  -- the fete to talk to the judge.

10  They're here.  You --

11       THE COURT:  Why --

12       MR. GIRARDI:  -- can ask --

13       THE COURT:  Why didn't they appear as I ordered on

14  the case management call that I had a couple of weeks ago?

15  You don't -- you have no idea?

16       MR. GIRARDI:  No.

17       THE COURT:  Did you tell them about the call?

18       MR. GIRARDI:  I don't know.

19       THE COURT:  You don't know whether you told them

20  about the call?

21       MR. GIRARDI:  I can't -- I can't say under penalty

22  of perjury that I did tell them about the call.  It would

23  certainly be my habit and practice to absolutely tell

24  somebody they have to be on a call if the Court orders it.

25       THE COURT:  But you -- you saw the order, right?

8

1       (No response.)

2            THE COURT:  Right?

3            MR. GIRARDI:  I can't say that.

4            THE COURT:  How did you join the call if you

5  didn't see the order?

6            MR. GIRARDI:  I joined the call because there was

7  a -- a printout came to me that said here's the call-in

8  number for the call.

9            THE COURT:  How did you get that printout?

10           MR. GIRARDI:  Undoubtedly from my office.

11           THE COURT:  You never saw the order?

12           MR. GIRARDI:  Your Honor, I don't want to say I

13  didn't because -- but I'm not sure that I did.  Obviously,

14  if I saw an order that said these two people should be on

15  the call, then I would have had them on the call.  It -- it

16  escapes me.

17           THE COURT:  Mr. Girardi, you've been around a long

18  time.  You know that courts rely on lawyers reading their

19  orders, right?  That I -- the idea that you might not have

20  seen it or you might not have understood or you found some

21  other way to call in, you can gather I -- and this is -- I'm

22  not prejudging the substance of any of this, but this whole

23  sequence of events is extremely problematic and just a

24  direction that is exceedingly troubling to me, and I won't

25  stand for it.  I just won't.  If you're -- you're

9

1  substituted into the case now.  You've done that.  We

2  discussed that on the call too.  You said that a notice of

3  appearance had been sent, never arrived.  It wasn't until I

4  ordered you to do a substitution of counsel that it -- that

5  it happened.

6       And, so, I -- I just don't want there to be any

7  waffling on -- on any of this.  And -- and I want you to be

8  very -- and you are.  You're being careful about what you

9  say, but I take that idea of my orders being followed

10 extremely seriously, and I'm having strong concern here that

11 that hasn't happened, at least as far as your involvement in

12 the case so far.

13          MR. GIRARDI:  Your Honor, do you think for a

14 minute that I would violate an order --

15          THE COURT:  I --

16          MR. GIRARDI:  -- intentionally?

17          THE COURT:  I don't know.

18          MR. GIRARDI:  No, seriously.

19          THE COURT:  I don't know.

20          MR. GIRARDI:  Oh, I think I'll violate an order,

21 don't put the clients on the phone, do you think I would do

22 that?

23          THE COURT:  I -- all I know is it's hard for me to

24 understand how you got on the call, and I think you had -- I

25 really thought -- I'll have to see if there is a recording

10

1  of the call.  I thought that you even said something to the

2  effect that you didn't realize that they needed to be on and

3  it was your -- you know, you -- you understood.  I don't

4  remember, but it was -- the whole thing is bizarre to me at

5  this point.

6       So, I'll -- I'll follow up as appropriate, but I have a

7  really uneasy feeling about the way that this has gone down

8  in terms of respecting and following my orders, and I can't

9  tolerate that.

10          MR. GIRARDI:  Okay, your Honor.  I'll do this.

11  I'll withdraw our objection.  I will pay these people what

12  they have coming to them, and we'll withdraw the objection.

13  That's because if the Court thinks I intentionally did

14  something wrong or tried to do anything inappropriate, that

15  doesn't work with me.  So, I personally will pay them

16  $100,000, which is what they are entitled to in this.  We'll

17  withdraw our objection.

18          THE COURT:  Okay.  Do you want to put that in

19  writing?

20          MR. GIRARDI:  Well, I hope somebody's writing it

21  down.

22          THE COURT:  No, no.  Do you have -- why don't you

23  do a stipulation with the Defendant and parties and finalize

24  it and submit it, and we'll go from there?  I don't --

25          MR. GIRARDI:  Like we'll withdraw our complaint.

11

We'll withdraw the fact that we got defrauded.  We'll
withdraw all that.  The case is over with as far as we're
concerned, and I personally, in light of the fact the Court
thought that I intentionally disobeyed an order, which isn't
true, and in light of that fact, this is worth it to me, and
I will them pay them the $100,000 they would be entitled to
had they been properly represented.  We have similar
complaints that Judge Kozinski had with the same law firm.

        (Pause.)

            THE COURT:  Mr. Lurie or Mr. Hermann, response?

            MR. LURIE:  I'm not -- we will accept the offer if
they are willing to settle separately and Mr. Girardi is
going to pay these Plaintiffs.  If that's the solution, I
think that's fine.  I would just state for the record that
the -- to reenforce a number of things the Court did say.
We made Mr. Girardi aware twice of the -- the fact that he
had to meet with the mediator after your phone call.  It's
all laid out in our joint statement, one that Mr. Girardi,
unfortunately, did not participate in.

        Just for the record, his client never sought to mediate
this case at any time after we had any disagreement, and
part of the problem here, frankly, is we've never been able
to talk to anybody to try to resolve this issue, not with
Mr. Girardi, not with the Savages.

        Our clients did participate in the conference call at

12

1  an expense to us and at some expense to them.  But if the --

2  and, just for the record, the Judge Kozinski issue, which is

3  not even close to relevant to this, but Judge Kozinski was

4  involved in one of our cases.  He ultimately went along with

5  a settlement that we reached in the <u>Nissan</u> case, and he's

6  the happiest camper you can be.  You can ask him, and he was

7  quite fine with the settlement after filing an objection.

8  It has absolutely nothing to do with this or our conduct,

9  and I think he would swear that we did an excellent job of

10 resolving the case.  It's all completely by the by.

11      But for purposes of this, I want to be sure.  We're

12 going to enter into a -- we're going to go forward with the

13 settlement agreements with our Plaintiffs.  And with respect

14 to the Savages, they no longer have a case -- they're going

15 to no longer have a case against Volkswagen.  Mr. Girardi is

16 going to resolve that separately with them.

17      Is that your understanding?

18          THE COURT:  Such as it is.  It all -- it's coming

19 off the top.  I think you need to figure out a way to

20 document whatever it is.

21          MR. LURIE:  He'll document -- I think the way to

22 document is that they will file a -- a notice of dismissal,

23 and Mr. Girardi will just pay them what he claimed he wanted

24 to pay them, if that's the appropriate way to do it.  I

25 guess the Defendant -- counsel for Defendant is on the

*Echo Reporting, Inc.*

**Ex. 13-12**

13

1   phone.  He can probably weigh in about the best mechanics

2   from his clients' point of view.

3           MR. HERMANN:  Yes --

4           THE COURT:  Mr. --

5           MR. HERMANN:  -- your Honor, Fred Hermann on

6   behalf of Volkswagen Group of America, Inc.  Obviously, our

7   interest is to finalize the agreement we've reached.  And,

8   for the Court's information, part of that settlement

9   agreement includes an agreed amendment of pleadings to

10  ensure full releases and so forth.  So, there are a few

11  moving parts going forward that may require some court

12  supervision that -- to finalize this.  But I am confident we

13  can work that out with the Capstone Firm very -- very

14  easily.

15      I share Mr. Lurie's concern, though, about what was

16  represented and said today.  As I understand it, the Savages

17  will be withdrawing completely from the case and that the

18  settlement as finalized will not include the Savages but

19  only the remaining Plaintiffs.  If we could get clarity on

20  that, it would (telephonic glitch) toward making this

21  process more streamline for getting the final papers into

22  the Court.

23          THE COURT:  What's your take?

24          MR. GIRARDI:  Yes, your Honor.  I -- I'm doing

25  this because the Court has indicated that I have done

*Echo Reporting, Inc.*

**Ex. 13-13**

14

something inappropriate, and I really didn't.  Something
fell in the cracks.  It was negligent.  It wasn't
intentional.  But I don't want to be in a situation that the
Court is thinking that.  So, therefore, the Savages are out
of the case.  We'll give a dismissal -- prepare a dismissal.
We'll sign it in a heartbeat, and then I personally will pay
the Savages a fair settlement in the case, what it should
have been, because if I made a mistake in not going back to
the mediator after I had a bunch of obnoxious calls with
these people, that was my mistake.  Shouldn't have done it,
and I apologize to you, and I think I'll get out of it this
way.

THE COURT:  Here's what you need to do.  As much
problem as this seems to have been so far, you all need to
get together, meet and confer, and figure out how this will
be structured.  I honestly don't care other than that I want
the case either to resolve or to start moving forward to a
resolution.  That's all.  That's my only concern.

So, you all need to this week -- can I order that?
We're all -- you're all here right now.  Mr. Herman, you can
be available by phone.  By the end of this week, finalize
this proposal and present it.  You don't actually need a
court approval because it's not a class settlement, but by
the end of this week, I want to know that this is wrapped
up.  If you can't do it by the end of the week, I know, Mr.

15

1  Hermann, you were talking about filing a motion to enforce,

2  and I should just set a deadline right now for that

3  happening if things aren't wrapped up by Friday.

4       How long would you need to prepare that motion?

5            MR. HERMANN:  Your Honor, that motion -- in

6  deference to my client, which the automotive industry takes

7  quite a hiatus over the holidays -- I would want to be able

8  to have early -- early January, first week of January, to be

9  able to put that in, if that's all right for the Court.  I

10 could certainly do it faster, but I'd want to allow some

11 time for my client to be able to participate in that.

12           THE COURT:  That's fine with me.  Given the track

13 record here, sooner is obviously better.  But I will defer

14 to you.  No one has more interest in getting it teed up

15 quickly than you do.  So --

16           MR. HERMANN:  Right.  And, if I may, your Honor,

17 the -- the earlier solution of finalizing the paper, the --

18 the issue of the Savages and their just (telephonic glitch)

19 from the case, that seems cut and dry and can easily be done

20 by the end of this week.

21      The other issue lies in the papers, which includes a

22 notice to some of our customers.  That process, in all

23 candor to the Court, will take longer than this week.

24           THE COURT:  Well, understood.  But, you -- again,

25 I'm not really concerned about the mechanics.  I'm just -- I

16

1  want to know if you are resolving the case, and then if it's

2  something that takes longer to execute, that's fine.  But

3  we're just past time to know -- we've got to make a decision

4  here as to where this thing is headed.  It sounds like it

5  ought to be wrapped up by, based on the representations that

6  have been made today --

7            MR. HERMANN:  I agree, your Honor.  And on behalf

8  of -- of VW, I would state again that we -- we have long ago

9  and already reached a settlement in the matter.  So, with

10 today's representations from Mr. Girardi, we are back on

11 track, but the dismissal of the two Savages, that takes care

12 of -- of the recent issues, and we can move forward with the

13 remaining Plaintiffs, as we've already agreed, to finalize

14 the paper.

15     So, I -- I agree completely we are resolved based on

16 the representations made today.

17            THE COURT:  All right.

18            MR. GIRARDI:  I will file a dismissal tomorrow

19 with the Savages.

20            THE COURT:  All right.

21            MR. LURIE:  Just to clarify, that's a dismissal

22 with prejudice, correct?

23            MR. GIRARDI:  Yeah, fine.

24            THE COURT:  All right.

25            MR. HERMANN:  And the only question -- your Honor,

**Ex. 13-16**

17

1  if I may, on behalf of VW, the only question I would make

2  over filing a dismissal, the dismissal should be with

3  prejudice --

4          THE COURT:  That was just --

5          MR. HERMANN:  -- because, again, we --

6          THE COURT:  That -- that was just acknowledged.

7  You didn't hear it.  Mr. Girardi said it will be a dismissal

8  with prejudice.

9          MR. HERMANN:  That's -- that's fine.  Thank you,

10  your Honor.

11          THE COURT:  Anything further?

12          MR. GIRARDI:  Nothing further.

13          THE COURT:  All right.

14       (Proceedings adjourned at 2:48 p.m.)

15

16

17

18

19

20

21

22

23

24

25

18

1                    CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16

17            Echo Reporting, Inc., Transcriber

18               Tuesday, January 30, 2024

19

20

21

22

23

24

25