UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 23-07120-MWF (SKx) | **Date:** November 13, 2024 |
| **Title:** Christopher Psaila v. Erika Girardi et al. | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [114]; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [116]

Before the Court are two motions to dismiss:

The first Motion to Dismiss ("Henderson and Scarince MTD") was filed on June 27, 2024, by Defendants Kenneth Henderson and Steve Scarince. (Docket No. 114). Plaintiff Christopher Psaila filed an Opposition on July 8, 2024 ("Henderson and Scarince Opp."). (Docket No. 115). Defendants filed a Reply on July 15, 2024 ("Henderson and Scarince Reply"). (Docket No. 120).

The second Motion to Dismiss ("Savage MTD") was filed on July 10, 2024, by Defendant Robert Savage. (Docket No. 116). Plaintiff filed an Opposition on August 5, 2024 ("Savage Opp."). (Docket No. 123). Defendant filed a Reply on August 26, 2024 ("Savage Reply"). (Docket No. 124).

The Court has read and considered the papers on the motions and held a hearing on September 23, 2024.

For the reasons discussed below, both motions to dismiss are **GRANTED** *without leave to amend*. Additionally, Defendant Savage's request for judicial notice (Docket No. 117) is **DENIED** *as moot* because the Court did not rely on the documents in its ruling.

---

**CIVIL MINUTES—GENERAL**                                                                      1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-07120-MWF (SKx)           **Date:** November 13, 2024
**Title:** Christopher Psaila v. Erika Girardi et al.

## I. BACKGROUND

The Court previously summarized the allegations in the Complaint in its Order granting Defendants' Motions to Dismiss ("Prior Order"). (Docket No. 106). The factual allegations made in the First Amended Complaint ("FAC") remain largely unchanged from the original Complaint. Therefore, the Court will not repeat those facts here but incorporates by reference the factual background from the Prior Order.

## II. LEGAL STANDARD

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (citation omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-07120-MWF (SKx) | Date: November 13, 2024 |
| Title: Christopher Psaila v. Erika Girardi et al. | |

### III. DISCUSSION

#### A. Henderson and Scarince MTD

Defendants Henderson and Scarince argue that Plaintiff's claim should be dismissed because (1) Defendants Henderson and Scarince are entitled to qualified immunity; (2) the *Bivens* claim fails on the merits; and (3) *Bivens* should not be expanded to cover the Fourth and/or Fifth Amendment claims made here. (Henderson and Scarince MTD at 14).

##### 1. *Bivens*

Before affording a plaintiff a cause of action under *Bivens*, a court must go through a two-step inquiry:

> First, we ask whether the case presents "a new *Bivens* context" — i.e., is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed."

*Egbert v. Boule*, 596 U.S. 482, 492 (2022) (internal citation omitted) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136–39 (2017)).

"In assessing whether a context is 'new,' the Supreme Court has instructed us not to examine *Bivens* cases in the lower courts, but only "the three cases in which the [Supreme] Court has implied a damages action." *Pettibone v. Russell*, 59 F.4th 449, 455 (9th Cir. 2023) (quoting *Egbert v. Boule*, 596 U.S. 492). The Court has provided a non-exhaustive "list of differences that are meaningful enough to make a given context a new one," including "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; . . . the statutory or other legal mandate under which the officer was operating;" and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 582 U.S. at 139–40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

Additionally, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *id.* at 135 (quoting *Iqbal*, 556 U.S. at 675), one that "places great stress on the separation of powers," *Egbert*, 596 U.S. at 497 (quoting *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 636 (2021) (plurality opinion)). Therefore, "if 'there is *any* reason to think that Congress might be better equipped to create a damages remedy' for a constitutional violation, we must refrain from recognizing one." *Pettibone*, 59 F.4th at 454 (quoting *Egbert*, 596 U.S. at 483) (emphasis in original).

In the FAC, Plaintiff brings two claims for relief under *Bivens*. The first claim is premised on violations of the Fourth and Fifth Amendments. Specifically, Plaintiff alleges that he was subjected to a "warrantless search without probable cause" in violation of the Fourth Amendment and malicious prosecution in violation of the Fifth Amendment. (Henderson and Scarince Opp. at 21–22). Plaintiff's second claim for relief is a "supervisorial *Bivens* claim against Defendants Savage and Scarince" for failing to supervise, train, and discipline Defendant Henderson during the investigation. (*Id.* at 6; FAC at ¶¶ 132–143).

Beginning with Plaintiff's first claim for relief, both alleged violations, under the Fourth and Fifth Amendment, present new *Bivens* contexts. Plaintiff's alleged Fourth Amendment violation is meaningfully different from *Bivens*—the only Supreme Court case recognizing an implied damages remedy for Fourth Amendment violations. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff argues that his claim does not present a new context because, at bottom, the alleged facts establish that he was subjected to a warrantless search similar to that in *Bivens*. (Henderson and Scarince Opp. at 22). The Court is not persuaded by Plaintiff's high-level comparison. As explained in the Prior Order, the legal mandate under which Defendants Henderson and Scarince operated is different from that of the agents in *Bivens*. (Prior Order at 7). Plaintiff has failed to adequately rebut this point in the FAC or his Opposition.

As for Plaintiff's alleged Fifth Amendment violation, the Court is similarly not persuaded. Plaintiff cites to *Hartman v. Moore*, 547 U.S. 250 (2006) for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

proposition that "the Supreme Court has recognized that a cause of action for malicious prosecution may be maintained under *Bivens*." (Henderson and Scarince Opp. at 21). *Hartman*, however, was premised on a retaliatory prosecution in violation of the First Amendment, and the Supreme Court has since concluded that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 499. Given the Supreme Court's restrictive approach to implying causes of action under *Bivens*, this Court is unwilling to read into *Hartman* an implied cause of action for malicious prosecution. And, for similar reasons, the Court is not persuaded by Plaintiff's argument that *Davis*, which was premised on a cause of action for sex-discrimination, extends to claims for malicious prosecution under the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 230–31).

Plaintiff's second claim for supervisorial liability also arises under a new *Bivens* context. The crux of Plaintiff's claim is that Defendant Scarince failed to supervise, train, and discipline Defendant Henderson when he was engaged in the conduct that led to the constitutional violations discussed above. (*See* FAC ¶¶ 134–36). Because the supervisorial liability claim is premised on the same alleged violations of the Fourth and Fifth Amendment, Plaintiff's second claim similarly arises under a new *Bivens* context.

The Court thus proceeds to the next step of the two-step inquiry. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137). Defendants Henderson and Scarince argue that alternative remedies exist because, among other things, Plaintiff can report his complaints of officer misconduct to executive branch agencies that have internal grievance procedures and regulatory obligations to investigate these complaints, such as the Inspector General of the Department of Homeland Security (the "Inspector General"). (Henderson and Scarince MTD at 26 (citing 5 U.S.C. App. 3 § 8I(c); 6 U.S.C. § 113(b); 6 U.S.C. § 381; 6 U.S.C. § 345).

Plaintiff asserts that these "reporting mechanisms provide inadequate levels of deterrence." (Henderson and Scarince Opp. at 25). But the Ninth Circuit has expressly found that the grievance procedure involving the Inspector General "afford[s] plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

. . . an alternative remedy that 'independently forcelose[s] a *Bivens* action." *Pettibone*, 59 F.4th at 457; *see also Egbert*, 596 U.S. at 493 ("Nor does it matter that 'existing remedies do not provide complete relief.'") (internal citation omitted).  Plaintiff attempts to distinguish *Pettibone* because the defendant there was "carrying out an executive order," rather than a "statutory mandate." (Henderson and Scarince Opp. at 25).  This distinction, however, has no bearing on the ***existence*** of these alternative remedial structures.

Additionally, Defendants Henderson and Scarince argue that the FTCA is another alternative remedial scheme available to Plaintiff.  (Henderson and Scarince MTD at 28–29).  Plaintiff, citing to *Carlson v. Green*, responds that the Supreme Court established that the FTCA is not an exclusive alternative remedy to *Bivens*. (Henderson and Scarince Opp. at 26–27 (citing *Carlson v. Green*, 446 U.S. 14, 23 (1980)).  In the Prior Order, however, the Court responded to this argument and concluded that more recent Supreme Court jurisprudence expanded the available alternative remedies that foreclose *Bivens* claims.  (Prior Order at 8) (citing *Abbasi*, 582 U.S. at 138; *Egbert*, 596 U.S. at 493).  In light of that recent authority, the Court determined that the FTCA was another alternative remedial structure potentially available to Plaintiff, thereby precluding a *Bivens* action.  (*Id.* at 9); *see also Hernandez v. Mesa*, 589 U.S. 93, 111 (2020) ("Congress passed the so-called Westfall Act, formally the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679[,] [which] makes the [FTCA] 'the exclusive remedy for most claims against Government employees arising out of their official conduct.'" (quoting *Hui v. Castaneda*, 559 U.S. 799, 806 (2010))); *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (holding that the FTCA constituted a special factor precluding a *Bivens* claim).

### 2. Qualified Immunity

Defendants Henderson and Scarince argue that they are entitled to qualified immunity.  (Henderson and Scarince MTD at 14–17).  "Qualified immunity involves a two-step inquiry: (1) whether the officer's conduct violated a constitutional right; and (2) whether that right was clearly established when viewed in the context of this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

case."  *Ctr. for Bio-Ethical Reform Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 793 (9th Cir. 2008).

### a. Violations of the Fourth and Fifth Amendment

Plaintiff alleges that Defendants Henderson and Scarince committed significant *Brady* violations by failing "to disclose Savage's fake presidential trips, his relationship with Girardi, the personal promise to pay $100,000 and eventual payment of $7,500."  (Henderson and Scarince Opp. at 10).

The Court concludes Plaintiff has failed to allege sufficient facts that lead to a reasonable inference that Defendants Henderson and Scarince were actually aware of Defendant Savage's "fake presidential trips," the alleged bribe, or his relationship with Mr. Girardi.  (*Id.*).  Plaintiff does not allege any facts upon which such an inference can be made, but rather, admits that Plaintiff cannot presently make those factual allegations without "the opportunity to conduct discovery."  (*Id.* at 11).  Without more, however, Plaintiff has not plausibly alleged that Defendants Henderson and Scarince committed *Brady* violations by intentionally withholding impeachment information.

Plaintiff further argues that Defendants fabricated evidence used to prosecute Plaintiff and continued the investigation of Plaintiff in reckless disregard of his innocence.  (*Id*. at 11–12).  Probable cause exists if Defendants Henderson and Scarince knew "reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 924–25 (9th Cir.2001) (quoting *Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir.1995)) (internal quotation marks omitted).  "While an officer may not ignore exculpatory evidence that would negate a finding of probable cause, once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012) (citation and internal quotation marks omitted).

Plaintiff argues there was no credible evidence of fraud that Defendants Henderson and Scarince could have relied on to apply for a search warrant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

(Henderson and Scarince Opp. at 14).   This assertion is contradicted by the allegations in the FAC.  To begin, Plaintiff alleges Defendant Girardi reported to Defendant Savage that charges and transactions made to the AMEX card by Plaintiff and Marco Marco amounting to approximately $800,000 were fraudulent and not authorized.  (FAC ¶¶ 3, 52).  Defendants Henderson and Scarince also had a recording of Plaintiff agreeing that he might have mistakenly made some accounting errors.  (*Id.* ¶ 55).  The allegation that Defendants Henderson and Scarince did not conduct basic investigatory activities and that they possessed evidence establishing Plaintiff's authorization to charge Defendant Girardi's AMEX card fails to address the assumption that Defendants Henderson and Scarince knew, or reasonably should have known, that the statements and other evidence presented to them were false.

Plaintiff also argues that Defendants Henderson and Scarince were deliberately indifferent to his innocence because, following the execution of the search warrant, Defendants possessed and ignored "evidence establishing Plaintiff's innocence."  (*Id.* at 15).  Plaintiff asserts the Defendants Henderson and Scarince were "on notice" that they possessed this exculpatory evidence because Plaintiff sent an email to Defendant Henderson indicating that such evidence was on the phones and computers seized during the search.  (*Id.*)  And despite this, Defendants Henderson and Scarince "intentionally caused false evidence" to be presented to the grand jury.  (*Id.* at 16.)

The Court is not persuaded.  Although Defendants Henderson and Scarince seized Plaintiff's phones and computers, Plaintiff's argument necessarily assumes that Defendants Henderson or Scarince would construe the evidence in the manner Plaintiff suggests and arrive at a similar conclusion.  Moreover, the FAC states that a week prior to the grand jury proceedings, Defendant Henderson was told by an AMEX employee that AMEX had reimbursed Defendant Girardi for a total of $787,177.88, and this reimbursement "was critical for the Secret Service to seek a grand jury indictment against Plaintiff."  (FAC ¶ 78).  Again, Plaintiff fails to address the underlying assumption that Defendants Henderson and Scarince knew, or should have known, that the evidence and statements provided by AMEX or Defendant Girardi were false, while those provided by Plaintiff were true.  Nor does Plaintiff explain why Defendants Henderson and Scarince should have weighed the statements and evidence

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

provided by Plaintiff after the search in a more favorable manner than the statements and evidence provided by Defendant Girardi or Plaintiff himself in the recording.

### b. Supervisorial Liability

Plaintiff also brings a claim against Defendant Scarince "based on supervisorial *Bivens* liability." (Henderson and Scarince Opp. at 12).

Under *Bivens*, a government official "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 676; *see also Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) ("*respondeat superior* is inapplicable to *Bivens* actions"). However, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted) (a § 1983 case often cited in *Bivens* cases). The claim that a supervisory official "knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208) (finding that conclusory allegations that supervisor promulgated unconstitutional policies and procedures which authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory liability).

Plaintiff claims, among other things, that Defendant Scarince failed to carry out his "affirmative duty to ensure Defendant Henderson did not violate Plaintiff's constitutional rights," "failed to supervise, train and discipline Henderson for his reckless disregard of the evidence," "failed in [his] duty to ensure that Henderson conducted a fair investigation," and "failed to ensure that the evidence seized by the search warrant was properly evaluate[d] by Henderson." (FAC ¶¶ 134–36).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-07120-MWF (SKx)          **Date:** November 13, 2024
**Title:** Christopher Psaila v. Erika Girardi et al.

For similar reasons as those discussed above, the Court concludes Plaintiff has failed to plausibly allege that Defendant Scarince acquiesced to the "unconstitutional conduct" of Defendant Henderson or otherwise failed to train, supervise, or control Defendant Henderson so that he would not engage in such conduct. *See Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted). At bottom, Plaintiff has not plausibly alleged that Defendant Henderson committed any constitutional violations, nor that Defendant Scarince knew or should have known about the alleged constitutional violations. The FAC also does not contain facts indicating how the alleged violations could have been prevented with a different training program or supervision protocol. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("[A] plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury.").

Therefore, even if there is a valid *Bivens* claim against Defendants Henderson and Scarince, they are protected by qualified immunity.

Accordingly, the Henderson and Scarince MTD is granted.

**B.**      **Savage MTD**

Defendant Savage makes the same arguments as Defendants Henderson and Scarince—that there is no *Bivens* action, and he is entitled to qualified immunity. (Savage MTD at 10–20).

As to the *Bivens* claims, Plaintiff similarly pleads a violation of the Fourth and Fifth Amendment, a malicious prosecution claim under *Hartman*, and "supervisorial liability" claim. Plaintiff argues that the "supervisorial liability" claim is not brought under a theory of respondeat superior. Rather, Defendant "Savage is being sued for his own personal conduct in initiating and prosecuting Plaintiff, and his supervisory conduct in authorizing the investigation of Plaintiff, . . . his conduct in receiving a bribe or gratuity," and his failure in not disclosing his relationship to Mr. Girardi. (Savage Opp. at 21).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07120-MWF (SKx)          Date:  November 13, 2024
Title:  Christopher Psaila v. Erika Girardi et al.

### 1. *Bivens*

Defendant Savage first argues that this case presents a new context because (1) the rank of the officers involved; (2) the statutory or other legal mandate under which the officer was operating; (3) the risk of disruptive intrusion by the Judiciary into the functioning of other branches; and (4) the generality or specificity of the official action.  (*Id.* at 21).  As in its Prior Order, the Court determines that the first three differences are sufficient to determine that this case presents a new *Bivens* context.  *See Abbasi*, 582 U.S. at 147–49 ("the new-context inquiry is easily satisfied" and "even a modest extension is still an extension").

Defendant Savage held a different rank from the agents in *Bivens*.  In *Bivens*, the defendants were line agents of the Federal Bureau of Narcotics.  403 U.S. at 389.  Defendant Savage was the "the senior official in charge of the Secret Service's Los Angeles office."  (Savage MTD at 21).  And, similar to Defendants Henderson and Scarince, Defendant Savage whose "primary duty and responsibility was to oversee the nation's third largest office charged with protecting the President of the United States and other high-ranking government officials" was under a different legal mandate than that of the defendants in *Bivens*.  (Savage MTD at 22).  Plaintiff has not adequately addressed these points in either the FAC or his Opposition.

Plaintiff argues that no special factors counsel against allowing the *Bivens* remedy because "[t]his is a unique case, and the facts alleged against Savage are so compelling that they justify applying *Bivens* in this context."  (Savage Opp. at 22).

However, the Court previously found, taking into account the factual context of this case, that providing a *Bivens* remedy would carry a risk of disruptive intrusion by the Judiciary into the functioning of other branches.  (*See* Prior Order at 12) (quoting *Pettibone*, 59 F.4th at 455).  The Court was particularly concerned that, in order to proceed on his Fourth Amendment claim, Plaintiff would have to "probe the causal chain" and "delve into the evidence before numerous decision makers."  *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019).  This inquiry would "pose a greater risk of intruding on the investigatory . . . function[ ] of the executive branch," *Annappareddy v. Pascale*, 996 F.3d 120, 133 (4th Cir. 2021), than in *Bivens* because "*Bivens* did not

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

require this type of fact-checking and conscience-probing," *Ahmed v. Weyker*, 984 F.3d 564, 569 (8th Cir. 2020).  The "extraordinary" facts presented in this case do not negate these concerns.  (Savage Opp. at 22).

These differences would also be applicable to *Davis*, *Hartman*, and Plaintiff's "supervisorial liability" claim.  Therefore, the Court agrees with Defendant Savage that this action presents a new *Bivens* context.

For the next step in the inquiry, Defendant Savage presents the same argument as Defendants Henderson and Scarince—Plaintiff "can report any alleged misconduct to the Inspector General of the Department of Homeland Security, who must either investigate or refer the matter to the Officer for Civil Rights and Civil Liberties." (Savage MTD at 30 (quoting *Pettibone*, 59 F.4th at 456–57)).  Defendant Savage also argues that the FTCA is an alternative remedial structure available to Plaintiff.  (Savage MTD at 30).  For the reasons discussed in the analysis of the Henderson and Scarince MTD, the alternative remedial structures preclude a *Bivens* action.

### 2. Qualified Immunity

Even if there is a valid *Bivens* claim against Defendant Savage, he is protected by qualified immunity.

The Court begins with Plaintiff's claim that Defendant Savage violated Plaintiff's clearly established rights when he accepted a bribe from the Girardis in exchange for initiating the investigation against Plaintiff.  In support of his allegations that a bribe or quid pro quo transaction occurred, Plaintiff points to Mr. Girardi's representation of Defendant Savage and his wife in an unrelated lawsuit where the Savages sued Volkswagen for an alleged defective brake system.  (FAC ¶ 48). Plaintiff connects the lawsuit to the investigation because Mr. Girardi's involvement in the lawsuit "occurred roughly at the same time" that "Defendant Savage agreed to assist Defendant Erika Girardi with seeking reimbursement for the AMEX credit card charges."  (*Id.* ¶ 49).  Additionally, Plaintiff alleges that, during the course of the lawsuit, the court accused Mr. Girardi of behaving improperly by disobeying the court's orders.  (*Id.* ¶ 50).  In response to court's concerns, Mr. Girardi stated he would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-07120-MWF (SKx) | Date: November 13, 2024 |
| Title: Christopher Psaila v. Erika Girardi et al. | |

rather withdraw the Savage's complaint and personally pay them $100,000, the amount he believed they were entitled to in the lawsuit, because he did not want to be accused of behaving inappropriately. (*Id.*). Ultimately, however, Mr. Girardi paid Defendant Savage and his wife $7,500 to compensate them for their damages in the Volkswagen suit. (Savage MTD at 10). From these factual allegations, Plaintiff argues that "a fair inference" is that the Girardis and Defendant Savage had engaged in a quid pro quo transaction, whereby Defendant Savage agreed to investigate Defendant Girardi's claims in exchange for Mr. Girardi intervening in the Volkswagen litigation to get Defendant Savage more money. (Savage Opp. at 13–14).

The Court disagrees that those factual allegations give rise to such an inference. Plaintiff has simply pled that Mr. Girardi represented Defendant Savage and his wife in an unrelated lawsuit at or around the same time as the investigation, and in the course of that lawsuit, Mr. Girardi agreed to make a payment to the Savages, rather than face a forthcoming "order to show" cause hearing related to his failure to comply with court orders. (*See id.*, Ex. 13 at 7). From these allegations, Plaintiff asks the Court to conclude that an underlying agreement between the Girardis and Defendant Savage occurred. But Plaintiff does not explain how his theory of liability is "plausible," rather than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks and citation omitted). That is what Plaintiff has done here. *See also Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (The Ninth Circuit has "consistently emphasized . . . that 'conclusory allegations of law and unwarranted inferences' will not defeat an otherwise proper motion to dismiss.") (citation omitted).

Plaintiff next claims that Defendant Savage violated clearly established law by "initiating and prosecuting Plaintiff." (Savage Opp. at 21). The FAC shows that the overt action Defendant Savage made in the prosecution was to set up a meeting with Defendant Girardi to discuss her claims and introduce her to Defendants Scarince and Henderson. (FAC ¶ 49); (*see also* Savage Opp. at 11). But Plaintiff "has no constitutional right to be free of investigation," and it is not clear that Defendant Savage violated a clearly established right by arranging a meeting and directing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

subordinates to investigate the basis for Defendant Girardi's claims.  *United States v. Trayer*, 898 F.2d 805, 808 (D.C. Cir. 1990); *see also Harrington v. Cty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) ("[T]he duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion.").

Next, Plaintiff's supervisorial liability claims against Defendant Savage fail for the same reasons they fail against Defendant Scarince.  Plaintiff has not plausibly alleged that Defendant Henderson or Scarince committed any constitutional violations, nor that Defendant Savage knew or should have known about the alleged constitutional violations.  Plaintiff has similarly not indicated how the alleged violations could have been prevented with a different training program or supervision protocol.

Lastly, Plaintiff argues that, had Defendant Savage disclosed his "fake presidential trips, his relationship with Girardi," and the alleged promise and receipt of a bribe, "there never would have been the initiation of an investigation and prosecution; there never would have been a search warrant issued or Grand Jury indictment returned." (Henderson & Scarince Opp. at 10).

There are three components of a *Brady* violation.  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  "[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

The Court concludes that Plaintiff has failed to allege a *Brady* violation because Plaintiff cannot demonstrate that the allegedly suppressed evidence would have produced a different outcome at trial.  Where, as here, "the plaintiff['s] criminal charges were dismissed, the plaintiff[] cannot show that any suppressed evidence could have produced a different result at trial." *Puccetti v. Spencer*, 476 F. App'x 658, 661 (9th Cir. 2011) (finding persuasive the reasoning adopted by other circuit courts "in denying *Brady* claims when the plaintiff was never convicted"); *see also Morgan v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  November 13, 2024 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

*Gertz,* 166 F.3d 1307, 1310 (10th Cir.1999) ("The duties to disclose and preserve impeachment/exculpatory evidence are grounded in the due process right to a *fair trial*. . . . Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial.") (emphasis in original).

Accordingly, the Savage MTD is granted.

## IV.     LEAVE TO AMEND

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The Supreme Court identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint.  See *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

The Court concludes that leave to amend should not be granted.  Even in the absence of bad faith and undue delay, the remaining factors weigh against further amendment.  Repeated amendments, of course, prejudice Defendants by requiring a written response.  More importantly, granting leave to amend would be futile. Plaintiffs already amended their compliant once, in response to the Court's Prior Order.  Plaintiff's FAC did not cure the deficiencies; Plaintiff did not offer any amendments; and this Court does not perceive what amendments would be possible. Moreover, the Prior Order warned Plaintiff that he would only get one more opportunity to amend his Complaint.  (Prior Order at 13).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-07120-MWF (SKx)        **Date:** November 13, 2024
**Title:** Christopher Psaila v. Erika Girardi et al.

## V.    CONCLUSION

Accordingly, the Henderson and Scarince MTD is **GRANTED** *without leave to amend* and the Savage MTD is **GRANTED** *without leave to amend*. The claims against Defendants Savage, Henderson, and Scarince are **DISMISSED**. Judgment will be entered in favor of these Defendants at the conclusion of the action.

IT IS SO ORDERED.