UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 23-07120-MWF (SKx) | **Date:** March 18, 2025 |
| **Title:** Christopher Psaila v. Erika Girardi et al. | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings (In Chambers):** ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [138]

Before the Court is a Motion to Dismiss ("the Motion"), filed by Defendant United States of America on December 16, 2024. (Docket No. 138). Plaintiff Christopher Psaila filed an Opposition on January 13, 2025. (Docket No. 140). Defendant filed a Reply on January 27, 2025. (Docket No. 141).

The Court has read and considered the papers on the motions and held a hearing on **February 24, 2025**.

For the reasons set forth below, the Motion is **GRANTED** *without leave to amend*. Specially, the Court rules as follows:

- Plaintiff's Sixth, Seventh, and Eighth Claims against the United States are **DISMISSED** pursuant to Rule 12(b)(6).

- Plaintiff's Ninth Claim against the United States is **DISMISSED** pursuant to Rule 12(b)(1).

## I. BACKGROUND

The Court previously summarized the allegations in the Complaint in its Order granting Defendants' Motions to Dismiss ("Prior Order"). (Docket No. 106). The factual allegations made in the First Amended Complaint ("FAC") remain largely

---

**CIVIL MINUTES—GENERAL**                                          1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-07120-MWF (SKx)          **Date:** March 18, 2025
**Title:** Christopher Psaila v. Erika Girardi et al.

unchanged from the original Complaint. Therefore, the Court will not repeat those facts here but incorporates by reference the factual background from the Prior Order.

## II. REQUEST FOR JUDICIAL NOTICE

In connection with his Opposition, Plaintiff requests the Court take judicial notice of various documents. (*See* Request for Judicial Notice ("RJN") (Docket No. 140-4)). The United States did not file an opposition.

The Court determines that the exhibits attached to the RJN are matters of public record and are not being offered to prove the truth of the facts contained in the exhibits. Accordingly, the RJN is **GRANTED** in that the Court takes judicial notice of the search warrants and the docket, pleadings, and transcript from *Valencia, et al. v. Volkswagen Group of America Inc., et al.*, N.D. Cal., 4:15-cv-00887- HSG. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of court filings and other matters of public record); *Sangster v. Los Angeles Sheriff's Dep't*, CV 21-09573-DSF (JDEx), 2022 WL 3701638, at *4 (C.D. Cal. July 11, 2022) ("[C]ourts may take judicial notice of search warrants because they are a matter of public record."). The Court does not accept the truth of the facts contained in those filings.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

"Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)).

A jurisdictional attack under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the complaint's allegations must be accepted as true. *Id.* "[I]n a factual attack, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  March 18, 2025 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "The court need not presume the truthfulness of the plaintiff's allegations under a factual attack." *Brooke v. Superb Hosp., LLC*, No. 1:20-CV-0103 AWI SAB, 2021 WL 1173208, at *4 (E.D. Cal. Mar. 29, 2021) (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011)).

### B. Rule 12(b)(6)

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (citation omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-07120-MWF (SKx)      Date: March 18, 2025
Title: Christopher Psaila v. Erika Girardi et al.

## IV. DISCUSSION

Plaintiff asserts the four following claims for relief under the Federal Tort Claims Act ("FTCA") against the United States: (1) Malicious Prosecution; (2) Intentional Infliction of Emotional Distress ("IIED"); (3) Negligence and Negligent Infliction of Emotional Distress ("NIED"); and (4) Negligent Training, Supervision, and Failure to Discipline.

Under the doctrine of sovereign immunity, courts lack subject matter jurisdiction to hear suits against the United States and its agencies unless the government expressly and unequivocally waives its immunity. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The scope of a waiver of sovereign immunity is to be strictly construed in favor of the sovereign. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S. Ct. 687, 142 L. Ed. 2d 718 (1999).

The FTCA provides a limited waiver of "sovereign immunity for tort claims arising out of negligent" or wrongful "conduct of government employees acting within the scope of their employment." *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008). In assessing the United States' liability under the FTCA, courts "are required to apply the law of the state in which the alleged tort occurred." *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006); *see also* 28 U.S.C. § 1346(b)(1) (United States can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

Here, because the alleged act or omission occurred in California, Plaintiff's claims against the United States are subject to California law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  March 18, 2025 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

### A. Malicious Prosecution (Claim 6)

To establish a claim of malicious prosecution in California, "the plaintiff must prove that the underlying prosecution: '(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.'" *Conrad*, 447 F.3d at 767 (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 254 Cal. Rptr. 336 (1989)).

Here, analysis of the second prong—whether the underlying prosecution was brought without probable cause—is dispositive of the claim.

"When . . . the claim of malicious prosecution is based upon the initiation of a criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime." *Conrad*, 447 F.3d at 768 (quoting *Ecker v. Raging Waters Group, Inc.*, 87 Cal.App.4th 1320, 105 Cal.Rptr.2d 320, 326 (2001)) (internal quotation marks omitted). "The question is not whether [the defendant] thought the facts to constitute probable cause, but whether *the court* thinks they did." *Sheldon*, 47 Cal. 3d at 878. (quoting *Dir. Gen. of Railroads v. Kastenbaum*, 263 U.S. 25, 28, 44 S. Ct. 52, 53, 68 L. Ed. 146 (1923)).

Probable cause "signifies a level of proof below that of proof beyond a reasonable doubt, or even proof by a preponderance of the evidence." *People v. Hurtado*, 28 Cal. 4th 1179, 1188 (2002).  "[T]he trial court must carefully consider the issue of probable cause so that recovery is not permitted for mere negligence in bringing an action, or simply because the action was not successful." *Sangster v. Paetkau*, 68 Cal. App. 4th 151, 164, 80 Cal. Rptr. 2d 66 (1998) (cleaned up) (citation omitted).  "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009) (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-07120-MWF (SKx)            **Date:** March 18, 2025
**Title:** Christopher Psaila v. Erika Girardi et al.

Plaintiff fails to plausibly establish that that the United States lacked probable cause to investigate and prosecute Plaintiff.

Starting with Plaintiff's arguments regarding the search warrant, the Court concludes it was not objectively unreasonable for the Secret Service agents to suspect Plaintiff had committed a crime. As detailed in this Court's November 13 Order, the agents had sufficient evidence before them to seek and obtain the search warrant. (*See* Docket No. 134 ("November 13 Order") at 8–9). Specifically, they had (1) a witness complaining about $800,000 in unauthorized credit card charges, (2) Plaintiff's own recorded statement agreeing that he might have mistakenly overcharged Defendant Girardi, and (3) statements from a Marco Marco bookkeeper about the alleged accounting errors. (*See id.*); (*see also* FAC ¶¶ 55, 59, 60). Thus, for the reasons detailed in the November 13 Order, Plaintiff has failed to establish the agents lacked probable cause in seeking and obtaining the search warrant.

The FAC also fails to plausibly establish that the Secret Service agents lacked probable cause when seeking and obtaining the grand jury indictment. "In a federal criminal prosecution, a grand jury finds probable cause." *Conrad*, 447 F.3d at 768. Under "California tort law, a grand jury indictment creates a presumption in favor of the malicious-prosecution defendant that probable cause existed for the underlying prosecution." *Id.* A plaintiff "can rebut the presumption, however, by demonstrating that the indictment was procured on the basis of false testimony." *Id.*

Plaintiff was indicted by a grand jury and has failed to rebut the presumption of probable cause. Plaintiff argues the Secret Service agents presented false evidence by "blindly ignoring the evidence establishing [Plaintiff's] innocence in their possession." (Opposition at 19). In other words, Plaintiff argues that the Secret Service agents should have accepted the truth of the evidence and statements provided by Plaintiff, while conversely finding the statements and evidence provided by Defendant Girardi and AMEX to be false, and therefore, the "false" evidence should never have been presented to the grand jury. But, as this Court explained in the November 13 Order, the Secret Service agents were not required to weigh the evidence and statements in the specific manner that Plaintiff suggests. (November 13 Order at 8–9). While Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 23-07120-MWF (SKx)          **Date:**  March 18, 2025
**Title:**  Christopher Psaila v. Erika Girardi et al.

contends that "there was **only one way** to read the" exculpatory evidence, (Opposition at 21 (emphasis in original)), such argument discounts the other evidence in the Secret Service agents' possession, which could lead to an objectively reasonable belief that Plaintiff committed the crimes—a conclusion similarly reached by the grand jury.

Additionally, Plaintiff argues that the Secret Service agents possessed no evidence demonstrating specific intent to defraud, an element required for the charges listed in the indictment. Plaintiff contends that "[a]ll the evidence before the Secret Service indicated that this was, at best, a business mistake." (Opposition at 20). But "[i]t is a well-established principle that fraudulent intent may be established by circumstantial evidence and inferences drawn from all the evidence." *United States v. Cloud*, 872 F.2d 846, 852 fn. 6 (9th Cir. 1989) (citation omitted). While Plaintiff may subjectively construe the evidence—and specifically the secret recording where he agreed to have mistakenly committed accounting errors—as demonstrating an ordinary business dispute, the proper inquiry is whether the evidence provided an objectively reasonable basis for the Secret Service agents to suspect he had committed the crime. As explained in the November 13 Order, the Court believes that it did. *See Bouari v. United States*, No. 21-16762, 2023 WL 1794241, at *2 (9th Cir. Feb. 7, 2023) (Defendant's "actions are, at a minimum, 'slight, even marginal' evidence to 'create a reasonable inference' that [defendant] had [specific] intent—and that is enough for probable cause.") (citation omitted).

To reiterate, Plaintiff's arguments that the agents should have conducted a more thorough investigation, interpreted the evidence before them differently, or presented exculpatory evidence to the grand jury do not rebut the presumption of probable cause resulting from the indictment. *See Castro v. City of Union City*, No. 14-CV-00272-MEJ, 2016 WL 1569976, at *10 (N.D. Cal. Apr. 19, 2016) (plaintiff's argument that officer "did not conduct a thorough enough investigation" prior to his arrest did not negate finding of probable cause); *McSherry*, 584 F.3d at 1142 (evidence that officers fabricated victim's description of suspect did not negate probable cause because other evidence, including the victim's positive identifications of the suspect, established an objectively reasonable basis for probable cause); *United States v. Williams*, 504 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-07120-MWF (SKx)**  **Date:  March 18, 2025**
Title:  Christopher Psaila v. Erika Girardi et al.

36, 51 (1992) (Requiring a "prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role.").

Lastly, at the hearing, Plaintiff presented the Court with two additional cases, which were not briefed but that arguably supported his malicious prosecution claim: (1) *Myles v. United States*, 47 F.4th 1005 (9th Cir. 2022); and (2) *Engel v. United States*, 702 F. Supp. 3d 986 (D. Nev. 2023).  The Court disagrees.  In fact, rather than supporting Plaintiff's claim, *Myles* and *Engel* further demonstrate the deficiencies in the FAC.

First, in *Myles*, the Ninth Circuit reversed the district court's dismissal of a malicious prosecution claim, holding that the discretionary function exception did not shield the government from liability.  47. F.4th at 1014.  In doing so, the Ninth Circuit found that the plaintiff had undoubtedly met her burden in pleading a lack of probable cause.  *Id.* at 1015.  The claim was premised on the conduct of a Department of Homeland Security ("DHS") agent tasked with investigating workplace misconduct and who allegedly lied under oath, tampered with witnesses, and fabricated evidence.  *Id.* at 1008–1010.  In holding that the plaintiff had certainly alleged "more than a sheer possibility that the defendant ha[d] acted unlawfully", the Ninth Circuit emphasized the numerous underlying "factual assertions" that supported the plausibility of the claim.  *Id.* at 1015 (quoting *Iqbal*, 556 U.S. at 678).  Those factual assertions included statements in a motion drafted by a U.S. Attorney indicating she believed evidence had been fabricated, a separate failed DHS investigation previously conducted against the plaintiff, video evidence establishing that the plaintiff had not received improper overtime payments, and the defendant's clearly false representations that the plaintiff had submitted false wage reports during a period in which she could not have submitted such requests because she was on leave.  *Id.*

Similarly, in *Engel*, the district court relied on and cited to numerous factual allegations demonstrating that it was plausible that the government employees intentionally fabricated evidence and testimony, altered records, purposefully excluded or suppressed exculpatory evidence, and gave false testimony.  702 F. Supp. 3d at 1004.  Among other things, the complaint included multiple false statements made by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-07120-MWF (SKx) | Date: March 18, 2025 |
| Title: Christopher Psaila v. Erika Girardi et al. | |

prosecutors, a whistleblower's statements regarding the government employees' unlawful conduct, and specific descriptions of reports and video and photographic evidence that were affirmatively altered, destroyed, or concealed by the defendant employees. *Id.*

Thus, in both *Myles* and *Engel*, there were sufficient factual allegations from which a court could conclude probable cause was objectively lacking. Here, for the reasons detailed above, Plaintiff has not similarly met that burden.

Accordingly, the Motion is **GRANTED** with respect to Plaintiff's Sixth Claim for malicious prosecution.

### B. Remaining FTCA Claims (Claims 7, 8, and 9)

The United States next argues that Plaintiff's remaining FTCA claims are derivative of his malicious prosecution claim and thus, also fail. The United States relies exclusively on *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th 857 (1992), for the proposition that "California does not recognize a separate tort for the intentional infliction of emotional distress in putatively wrongfully 'causing' or 'conducting' a lawsuit." (Motion at 22) (*citing Cantu*, 4 Cal.App.4th at 889). Doing so would allow Plaintiff to circumvent the stricter pleading requirements of a malicious prosecution claim.

Plaintiff responds that his claims for IIED, general negligence, NIED, and negligent training, supervision, and failure to discipline are not premised on his malicious prosecution claim because they seek more than redress for the improper filing and continuation of a prosecution without probable cause. (Opposition at 22). Plaintiff argues that he pleads sufficient facts for his other tort claims, "which are premised on an additional set of facts and require different legal elements" than those of his malicious prosecution claims. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07120-MWF (SKx)           Date:  March 18, 2025
Title:  Christopher Psaila v. Erika Girardi et al.

### 1. IIED and Negligence/NEID (Claims 7 and 8)

The FAC does not support Plaintiff's argument that his IIED and NIED claims are premised on separate facts. For instance, Plaintiff alleges that the United States "acted outrageously when it criminally investigated and prosecuted Plaintiff without probable cause for over four years . . ." (FAC ¶¶ 201, 214). And the Secret Service agents "in investigating and prosecuting Plaintiff, had a mandatory duty . . . to not suppress exculpatory evidence, to not present false evidence to the judge . . . and the grand jury returning the indictment, and to not continue the prosecution of Plaintiff[.]" (FAC ¶¶ 202, 215). In fact, the Court cannot identify a single set of facts used in support of Plaintiff's IIED and NIED claims that is not premised on acts that the Secret Service agents committed in furtherance of the investigation and prosecution. And Plaintiff has similarly failed to specifically identify such facts in his Opposition.

Therefore, Plaintiff's general negligence, NIED, and IIED claims fail. *See Cantu*, 4 Cal.App.4th at 889 ("Given that the sole basis alleged for [the plaintiff's] cause of action for intentional infliction of emotional distress is the defendants' initiation of the . . . action," the cause of action "must be dismissed if for no other reason than that [the plaintiff] has otherwise sought to assert, albeit improperly, the only cause of action cognizable for the wrong alleged—malicious prosecution."); *Neaderbaomer v. United States*, No. 2:20-CV-07888-JWH-AS, 2024 WL 4414773, at *6 (C.D. Cal. Sept. 5, 2024) (dismissing IIED claim because plaintiff failed to reject argument that "there is no separate tort for intentional infliction of emotional distress in putatively 'causing' or 'conducting' a lawsuit other than malicious prosecution.") (internal quotation marks and citation omitted); *Halgat v. United States*, 22-CV-00592-ART-EJY, 2024 WL 1377116, at *3 (D. Nev. Mar. 29, 2024) (dismissing IIED and negligence claims because the claims were "based on prosecutorial activity and relie[d] on the malicious prosecution claim"); *Bouari*, 2023 WL 1794241, at *3 (IIED claim failed where plaintiff's arrest, indictment, and pretrial detention "were not extreme and outrageous because the prosecution was based on probable cause.").

Accordingly, the Motion is **GRANTED** with respect to Plaintiff's Seventh and Eighth Claims for IIED and general negligence/NIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-07120-MWF (SKx) | Date:  March 18, 2025 |
| Title:  Christopher Psaila v. Erika Girardi et al. | |

### 2. Negligent Training, Supervision, and Failure to Discipline (Claim 9)

Plaintiff's argument that his Ninth Claim is not derivative of the malicious prosecution claim has more weight.  Nevertheless, the Court concludes the claim is barred by the discretionary function exception to the FTCA.

The discretionary function exception precludes claims against the United States that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion was abused."  28 U.S.C. § 2680(a).  To determine whether the exception applies, courts engage in a two-step inquiry.  *Berkovitz v. United States,* 486 U.S. 531, 536 (1988).  First, the court must determine whether the challenged action was discretionary, i.e., whether it was governed by a mandatory statute, policy, or regulation.  *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000).  If the action is mandatory, it cannot be shielded under the discretionary function exception.  *United States v. Gaubert*, 499 U.S. 315, 324 (1991).  Second, the court must ask whether the challenged action is of the type Congress meant to protect, i.e., whether it involves a decision susceptible to social, economic, or political policy analysis.  *Berkovitz,* 486 U.S. 531 at 536.  So long as it is, "by its nature, susceptible to policy analysis," the challenged action "need not actually be grounded in policy considerations" to trigger the exception.  *Miller v. United States,* 163 F.3d 591, 593 (9th Cir.1998).

"[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."  *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *see also Dovenberg v. United States ex rel. U.S. Forest Serv.*, 407 F. App'x 149, 149 (9th Cir. 2010) ("Decisions regarding the training and supervision of government employees 'fall squarely within the discretionary function exception' to the Federal Tort Claims Act.") (citation omitted).

Plaintiff fails to allege conduct not covered by the discretionary function exception:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07120-MWF (SKx)                          Date:  March 18, 2025
Title:  Christopher Psaila v. Erika Girardi et al.

***First***, Plaintiff has not identified a federal statute, regulation, or policy that applies to the conduct challenged in his claim.  While Plaintiff asserts that the agents "violated policies proscribed by the Secret Service," he identifies no specific policy, statute, or regulation supporting that assertion.  (Opposition at 26).  As a result, Plaintiff's claim is not based on the kind of "specific and mandatory" regulation or policy that creates "clear duties incumbent upon the governmental actors."  *See Parsons v. United States*, 811 F.Supp. 1411, 1416 (E.D.Cal.1992) (general references to the "Forest Service policy" did not show that challenged conduct was prescribed by a "specific and mandatory" regulation or policy); *Ard v. F.D.I.C.*, 770 F. Supp. 2d 1029, 1034 (C.D. Cal. 2011) (requiring plaintiffs identify whether any federal statute, regulation, or policy applied to the conduct challenged in their lawsuit).  Because Plaintiff has not established that the agents violated a mandatory directive, the Court concludes the agents' actions involved judgment or choice and were, in fact, discretionary acts.

***Second***, as indicated above, the Ninth Circuit has held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield," *Vickers,* 228 F.3d at 950, and that claims of negligent supervision "fall squarely within the discretionary function exception," *Nurse*, 226 F.3d at 1001.  *See also*, *Gager v. U.S.*, 149 F.3d 918, 920–22 (9th Cir. 1998) (United States Postal Service's decision not to provide universal training and supervision in mail bomb detection fell within the discretionary function exception); *Bibeau v. Pac. Northwest Research Found.*, 339 F.3d 942, 945–46 (9th Cir.2003) (United States' decision not to supervise government-funded research experiments was discretionary and fell within the discretionary function exception).

While Plaintiff is correct that there is no absolute bar to these claims, he has failed to distinguish his claims from those rejected by the Ninth Circuit and other circuit courts across the country.  Plaintiff primarily argues that the discretionary actions of the agents must be consistent with and grounded in the underlying policy.  To support his proposition, Plaintiff relies on quoted language from a district court decision reversed by the Ninth Circuit.  (*See* Opposition at 26); (quoting *Kerns v. United States*, No. CV 04 01937 PHX NVW, 2007 WL 552227, at *19 (D. Ariz. Feb.

| | |
|---|---|
| **CIVIL MINUTES—GENERAL** | 12 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-07120-MWF (SKx)**                   **Date:  March 18, 2025**
**Title:  Christopher Psaila v. Erika Girardi et al.**

21, 2007), rev'd and remanded, No. 07-15769, 2009 WL 226207 (9th Cir. Jan. 28, 2009)).  To begin, the Court notes that "[u]nder Ninth Circuit law, the second step [in the two-part test] does not require a showing that the decision was 'actually grounded in policy considerations. . ." *Myles*, 47 F.4th at 1011.

Nevertheless, Plaintiff's argument necessarily fails.  The quoted language in the overturned case appears to be analyzing the Supreme Court's decision in *Gaubert*.  In *Gaubert*, the Supreme Court provided a paradigmatic example of discretionary conduct not "grounded in policy" and therefore, not subject to the discretionary function exception.  499 U.S. at 325 fn. 7.  Specifically, the Court reasoned that

> [t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Id.*

The conduct challenged by Plaintiff is clearly distinguishable from this garden-variety category of discretionary actions.  The FAC broadly alleges that the United States failed to supervise, train, and discipline the Secret Service agents at multiple stages of the investigation and criminal prosecution.  For example, the United States "failed to supervise [Special Agent in Charge] Savage, to ensure that he would not violate Plaintiff's rights by failing to disclose his bribe from [Tom] Girardi, failing to disclose his fake presidential trips, failing to disclose his conflict of interest in initiating the case against Plaintiff, being personally involved and supervising the [] investigation."  (FAC ¶ 227).  The FAC similarly alleges that the United States failed to supervise, train, and discipline Secret Service agents Steve Scarince and Kenneth Henderson in a manner consistent with Secret Service policies "requiring unbiased and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-07120-MWF (SKx)                    Date: March 18, 2025
Title: Christopher Psaila v. Erika Girardi et al.

conflict free investigations, the disclosure of *Brady* evidence, the requirement that fabricated and false evidence [] not be presented to judges issuing the search warrant and the grand jury returning the indictment. . ." (*Id.* ¶ 228).

Plaintiff's argument that this alleged conduct falls outside the discretionary function exception is unavailing. "An agency's supervision of its employees involves matters of balancing management interests in the administration and operation of the agency to carry out effectively its governmental mission." *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020). A supervisor's decision regarding how often to communicate or interact with "agents may be guided by the balancing of his need to divide his attention between multiple employees and his duty to ensure the safety of individual agents. Or the supervisor's judgment in how closely to monitor agents will be informed by the need to manage his resources efficiently." *Id.* Thus, the supervisory decisions challenged by Plaintiff "encapsulate the essence of the discretionary function exception." *Id.* at 773; *see also Nanouk v. United States*, 974 F.3d 941, 946–47 (9th Cir. 2020) (citation omitted) ("[A]ny attempt to find the Air Force negligent based on the level of oversight it exercised would require a court to second guess judgments that are 'susceptible to policy analysis.'"); *Tonelli v. United States,* 60 F.3d 492, 496 (8th Cir.1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception"). And the challenged decisions regarding discipline or training of the agents are similarly "ones that involve choice or judgment." *Vickers*, 228 F.3d at 951.

Accordingly, the Motion is **GRANTED** with respect to Plaintiff's Ninth Claim for Negligent Supervision, Training, and Failure to Discipline.

V.      **LEAVE TO AMEND**

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The Supreme Court identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-07120-MWF (SKx) | Date: March 18, 2025 |
| Title: Christopher Psaila v. Erika Girardi et al. | |

party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

The Court concludes that leave to amend should not be granted. Even in the absence of bad faith and undue delay, the remaining factors weigh against further amendment. Repeated amendments, of course, prejudice a defendant by requiring a written response. More importantly, granting leave to amend would be futile. Plaintiff has already amended his complaint once, in response to the Court's Prior Order. Plaintiff has not offered any amendments, and this Court does not perceive what amendments would be possible. Moreover, the Prior Order warned Plaintiff that he would only get one more opportunity to amend his Complaint. (Prior Order at 13).

## VI.   CONCLUSION

The Motion is **GRANTED** *without leave to amend*. Plaintiff's Sixth, Seventh, Eighth, and Ninth Claims against the United States are **DISMISSED**. Judgment will be entered in favor of the United States on these claims at the conclusion of the action.

IT IS SO ORDERED.